**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, | § | |
| SALES PRACTICES AND PRODUCTS | § | **MDL 1871** |
| LIABILITY LITIGATION | § | **2:07-md-01871-CMR** |
| | § | **HON. CYNTHIA M. RUFE** |
| THIS DOCUMENT RELATES TO | § | |
| ALL ACTIONS | § | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR AN ORDER ESTABLISHING A PLAINTIFFS' LITIGATION EXPENSE FUND TO COMPENSATE AND REIMBURSE ATTORNEYS FOR MDL ADMINISTRATION AND COMMON BENEFIT WORK**

### I.      INTRODUCTION

In October 2007, the Judicial Panel on Multidistrict litigation created this multidistrict litigation ("MDL"). The MDL now involves over thousands of filed cases and cases on tolling agreements, and it is anticipated that several thousand more claims will either be filed or made subject to tolling agreements. In the last seventeen months, the PSC has worked diligently to create a cohesive, cooperative team of dozens of lawyers from across the nation to prosecute this pharmaceutical mass tort litigation. To date this team of lawyers has, among other things:

- Negotiated and created numerous Pre-Trial Orders governing the discovery of plaintiffs and defendant;

- Briefed and argued remand motions;

- Worked diligently with Special Master Shestack to resolve numerous discovery disputes;

- Created a tolling agreement and process that has benefitted over 1600 claimants;

- Issued and pursued comprehensive written discovery;

- Received and reviewed millions of pages of documents;

- Taken numerous depositions;

- Coordinated with attorneys in a number of state court actions;

- Identified and worked with expert witnesses;

-       Participated in numerous court hearings; and,

-       Zealously pursued this litigation.

These efforts have been accompanied by a significant monetary investment as well.  The PSC and common benefit attorneys have made significant financial contributions to facilitate the creation of a centralized document management and review system, permit compensation of expert witnesses, cover the costs of discovery and document production, and offset the ongoing litigation management costs.

Going forward, the PSC and its common benefit attorneys will continue to zealously prosecute this case to a successful conclusion, including trying bellwether cases if necessary. This will require the continued investment of significant resources, including time, effort and money.  For example, it is anticipated that ten million pages of documents will be produced by GSK in the coming months.  Dozens of fact witness depositions have been scheduled and 30(b)(6) depositions are continuing.  The development of experts will continue through the summer as expert reports are due by year-end.  All of these efforts are focused on the upcoming Daubert hearing in the spring and the first trial setting at the end of next summer.

As the Court knows, claimants across the United States, including those with cases formally filed in the MDL, those on tolling agreements in the MDL, and those in federal or state courts in other jurisdictions, all have and will continue to benefit from the efforts of the PSC and its common benefit attorneys.  It is anticipated that the PSC will conclude its work in this action only when a premiere trial package is completed and this Court remands the coordinated cases back to their districts of origin.

Due to these efforts, investments and the work that remains to be completed, the PSC respectfully submits that the litigation has advanced to the point that it is necessary and appropriate to establish a common benefit fund for legal fees and expenses in anticipation of a

potential recovery for plaintiffs in the future.  The PSC submits that establishing a Plaintiffs' Litigation Expense Fund would provide for the fair and equitable sharing among plaintiffs of the cost of special services performed and expenses incurred by attorneys acting for the MDL administration and common benefit of all plaintiffs in this complex litigation.

At the November 10, 2008 hearing, the Court acknowledged that it was willing to entertain proposals to create a common benefit fund for this MDL.  *See* Ex. 1, Nov. 10 Hr'g Tr. at 18:6-14 (stating the Court believed it needed to exercise its discretion to provide guidance on how counsel should expect to be treated at the end of litigation).  The Court noted that, in order to provide proper notice to counsel, it would be better to address the issues of fees sooner rather than after a final settlement.  Ex. 1 at 16:16-19.

At the hearing, the Court also acknowledged the PSC's diligent efforts.  Specifically, the Court noted that it was pleased with (1) the progress of the litigation given that it was only a year old, (2) the PSC's compliance with the Special Master's process, and (3) the PSC's use of Court conferences to address and deal with many issues.  Ex. 1 at 23.

Based on the efforts to date, those to come in the future and the Court's expression of continuing confidence in the PSC's efforts, the PSC, on its behalf and on the behalf of all common benefit attorneys, respectfully request that the Court consider and approve the proposed order that establishes a means and a structure to create a Plaintiffs' Litigation Expense Fund.

## II.  ARGUMENT

### A.  The Court Has the Authority and Discretion to Create a Common Benefit Fund for this MDL.

A court has broad discretion and authority to coordinate and supervise complex multidistrict litigation.  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) (citing *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th

Cir. 1992)).  Indeed, a court's success in dealing with multi-party, multi-case litigation is "largely dependent on its ability to uncomplicate matters."  *Id.* (quoting *In re Recticel Foam Corp.*, 859 F.2d 1000, 1004 (1st Cir. 1988)).  To manage such complex litigation, the district court may appoint lead and liaison counsel to coordinate discovery and other pretrial preparation.  *See Manual for Complex Litigation (Fourth)*, § 22.62.

The "necessary corollary to court appointment of lead and liaison counsel . . . is the power to assure that these attorneys receive reasonable compensation for their work."  *In re Linerboard*, 292 F.Supp.2d at 653 (citing *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) (hereinafter *Florida Everglades*)); *see also Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) (noting that district courts may exercise their power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in a consolidated litigation).  As the court explained in *Florida Everglades*,

> if lead counsel are to be an effective tool, the court must have means at its disposal to order appropriate compensation for them.  The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation.

*Florida Everglades,* 549 F.2d at 1016.

Compensating lead plaintiffs' attorneys for their efforts is based on the "common fund doctrine" line of cases.  *See In re Linerboard*, 292 F.Supp.2d at 654; *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527 (1882).  Established over 125 years ago by the U.S. Supreme Court, the common fund doctrine recognizes that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful

litigant's expense." *Boeing Co.*, 444 U.S. at 478.

Although the common benefit doctrine is most frequently applied in class actions, numerous courts have enforced the common benefit doctrine in the context of multidistrict litigation. *See, e.g.*, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 497313 (E.D. Pa. May 9, 2001) (hereinafter "the Fen/Phen MDL"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1998 WL 118060 (E.D. Pa. Jan. 12, 1998) (MDL); *Florida Everglades*, 549 F.2d at 1016; *In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*, No. MDL 1387, 2002 WL 31834446 (D. Md. Apr. 12, 2002); *In re Rezulin Prods. Liab. Litig.*, No. 00 CIV. 2843, 2002 WL 441342 (S.D.N.Y. March 20, 2002); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 529 (D. Nev. 1987).

Indeed, the common benefit doctrine is particularly useful in the MDL context. By allowing a small group of plaintiffs' attorneys to litigate the MDL on behalf of all plaintiffs, significant benefit accrues to both parties, their counsel, and to the Court. Such benefit creation merits additional compensation. It is also for these reasons that the only work entitled to compensation from a common benefit fund is work which has provided a benefit to the litigation as a whole — the common benefit work. In contrast, work benefitting only a single plaintiff is, of course, compensated under the terms of that plaintiff's fee contract with his or her individual counsel.[1]

**B. A 7% Assessment is Reasonable and Appropriate in Light of the PSC's Diligent and Extensive Efforts in this MDL**

The PSC proposes that an assessment of seven percent (7%) of gross monetary recovery be applied to Avandia cases now pending or later filed in, transferred to, removed to this Court,

---

[1] The PSC has been diligent in ensuring there is and remains a bright-line distinction between work performed on behalf of individual plaintiffs and work performed for the benefit of all plaintiffs.

or subject now or in the future to the jurisdiction of this MDL, together with any state court cases that benefit from the PSC's efforts or the work product created by the PSC, including any unfiled, tolled, or settled cases.  In the event of Plaintiffs' recovery, these funds can be disbursed after review and approval by the Court.

After reviewing assessments in similar complex MDL actions, the PSC believes a 7% assessment to the common benefit fund is both reasonable and appropriate for this particular MDL.  Courts in this district, as well as others, have ordered that similar percentages be withheld from any future award or payment.  For example, in the Fen/Phen MDL, the court initially ordered the sequestration of 9% of all payments made by defendants in settlements or satisfactions of judgments.  *In re Diet Drugs*, PTO 467; *see also* 2001 WL 497313 at *2.[2]  The court granted the assessment order based on the Plaintiffs' Management Committee's efforts in the initial stages of the litigation.  Similarly, in *In re Protegen Sling*, the court set aside 9% of the aggregate amount to be paid to the plaintiffs in the future.  2002 WL 31834446 at *1 (D. Md. 2002); *see also In re MGM Grand*, 660 F. Supp. at 529 (apportioning 7% of settlement to court-appointed Plaintiffs' Legal Committee in a mass disaster litigation); *In re Rezulin*, 2002 WL 441342 at *1 (assessing 6% of recovery on federal cases and 4% of recovery on state cases where the attorneys bound themselves to an agreement).  Thus, assessing 7% of future recovery is well within the range established by other courts in similar MDL litigation.  Moreover, the PSC's diligent and extensive efforts invested to date, coupled with those to be incurred in the future, more than support a 7% assessment.

The PSC has drafted an Attorney Participation Agreement for those attorneys who wish voluntarily to subject their cases to this assessment and has attached a copy thereof.  *See* Exhibit

---

[2]   After it became clear there were sufficient funds available to compensate the common benefit lawyers, the court later reduced this amount to 6%.

1.  Additionally, the PSC has drafted and attached an Order implementing this request as well as approving the Attorney Participation Agreement.  *Id.*

### III.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court grant the PSC's Motion to Establish a Plaintiffs' Litigation Expense Fund by executing the attached Proposed Order.

Dated: June 8, 2009

Respectfully submitted,

**Plaintiffs' Steering Committee**

**By:** ___s /_____

Vance Andrus, Esq.
Andrus-Boudreaux, PLC
1775 Sherman Street, 31st Floor
Denver, Colorado 80203
(303) 376-6360