UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, | § | |
| SALES PRACTICES AND PRODUCTS | § | MDL 1871 |
| LIABILITY LITIGATION | § | 2:07-md-01871-CMR |
| | § | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO | § | |
| ALL ACTIONS | § | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR AN ORDER ESTABLISHING AN AVANDIA COMMON BENEFIT FUND TO COMPENSATE AND REIMBURSE ATTORNEYS FOR MDL ADMINISTRATION AND COMMON BENEFIT WORK**

## I. INTRODUCTION

In October 2007, the Judicial Panel on Multidistrict Litigation created this multidistrict litigation ("MDL"). The MDL now involves thousands of filed cases and cases on tolling agreements, and it is anticipated that several thousand more claims will either be filed or made subject to tolling agreements. In the last nineteen months, the PSC has worked diligently to create a cohesive, cooperative team of dozens of lawyers from across the nation to prosecute this pharmaceutical mass tort litigation. To date this team of lawyers has, among other things:

- Negotiated and created numerous Pre-Trial Orders governing the discovery of plaintiffs and defendant;
- Briefed and argued remand motions;
- Worked diligently with Special Master Shestack to resolve numerous discovery disputes;
- Created a tolling agreement and process that has benefitted over 5,000 claimants;
- Issued and pursued comprehensive written discovery;
- Received and reviewed millions of pages of documents;
- Taken numerous depositions;

- Coordinated with attorneys in a number of state court actions;
- Identified and worked with expert witnesses;
- Participated in numerous court hearings; and,
- Zealously pursued this litigation.

These efforts have been accompanied by a significant monetary investment as well. The PSC and common benefit attorneys have made significant financial contributions to facilitate the creation of a centralized document management and review system, permit compensation of expert witnesses, cover the costs of discovery and document production, and offset the ongoing litigation management costs.

Going forward, the PSC and its common benefit attorneys will continue to zealously prosecute this case to a successful conclusion, including trying bellwether cases if necessary. This will require the continued investment of significant resources, including time, effort and money. For example, it is anticipated that ten million pages of documents will be produced by GSK. Dozens of fact witness depositions have been scheduled, several have been taken, and 30(b)(6) depositions are continuing. Common benefit attorneys are currently defending depositions of plaintiffs and their spouses. The development of experts will continue through the summer as expert reports are due by year-end. All of these efforts are focused on the upcoming Daubert hearing in the spring and the first trial setting at the end of next summer.

As the Court knows, claimants across the United States, including those with cases formally filed in the MDL, those on tolling agreements in the MDL, and those in federal or state courts in other jurisdictions, all have and will continue to benefit from the efforts of the PSC and its common benefit attorneys. It is anticipated that the PSC will conclude its work in this action only when a premiere trial package is completed and this Court remands the coordinated cases back to their districts of origin.

Due to these efforts, investments, and the work that remains to be completed, the PSC respectfully submits that the litigation has advanced to the point that it is necessary and appropriate to establish a common benefit fund for legal fees and expenses in anticipation of a potential recovery for plaintiffs in the future. The PSC submits that establishing an Avandia Common Benefit Fund would provide for the fair and equitable sharing among plaintiffs of the cost of special services performed and expenses incurred by attorneys acting for the MDL administration and common benefit of all plaintiffs in this complex litigation.

At the November 10, 2008 hearing, the Court acknowledged that it was willing to entertain proposals to create a common benefit fund for this MDL. At the hearing, the Court also acknowledged the PSC's diligent efforts. Specifically, the Court noted that it was pleased with (1) the progress of the litigation given that it was only a year old, (2) the PSC's compliance with the Special Master's process, and (3) the PSC's use of Court conferences to address and deal with many issues.

At the subsequent June 19, 2009 hearing, the Court indicated that it intended to create a common benefit fund. However, issues remained regarding (1) whether GSK should deposit the common benefit assessment directly into the Fund and (2) whether the assessment should apply to state court plaintiffs who benefited from the work or work product of the common benefit attorneys. With this memorandum, the PSC submits that both questions must be answered in the affirmative.

Based on the PSC's efforts to date, those to come in the future and the Court's expression of continuing confidence in the PSC's efforts, the PSC, on its behalf and on the behalf of all common benefit attorneys, respectfully requests that the Court consider and approve the Proposed Order, attached hereto as Exhibit 1, that establishes a means and a structure to create

the Avandia Common Benefit Fund.

## II.	ARGUMENT

### A. The Court Has the Authority and Discretion to Create a Common Benefit Fund for this MDL.

A court has broad discretion and authority to coordinate and supervise complex multidistrict litigation. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) (citing *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th Cir. 1992)). Indeed, a court's success in dealing with multi-party, multi-case litigation is "largely dependent on its ability to uncomplicate matters." *Id.* (quoting *In re Recticel Foam Corp.*, 859 F.2d 1000, 1004 (1st Cir. 1988)). To manage such complex litigation, the district court may appoint lead and liaison counsel to coordinate discovery and other pretrial preparation. *See Manual for Complex Litigation (Fourth)*, § 22.62.

The "necessary corollary to court appointment of lead and liaison counsel . . . is the power to assure that these attorneys receive reasonable compensation for their work." *In re Linerboard*, 292 F.Supp.2d at 653 (citing *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) (hereinafter *Florida Everglades*)); *see also Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) (noting that district courts may exercise their power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in a consolidated litigation). As the court explained in *Florida Everglades*,

> if lead counsel are to be an effective tool, the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation.

*Florida Everglades,* 549 F.2d at 1016.

Compensating lead plaintiffs' attorneys for their efforts is based on the "common fund

doctrine" line of cases.  *See In re Linerboard*, 292 F.Supp.2d at 654; *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527 (1882).  Established over 125 years ago by the U.S. Supreme Court, the common fund doctrine recognizes that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Id.* at 478.

Although the common benefit doctrine is most frequently applied in class actions, numerous courts have enforced the common benefit doctrine in the context of multidistrict litigation.  *See, e.g.*, *In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*, MDL 1387, 2002 WL 31834446 (D. Md. Apr. 12, 2002); *In re Rezulin Prods. Liab. Litig.*, MDL 1348, 2002 WL 441342 (S.D.N.Y. March 20, 2002); *In re Diet Drugs (Phentermine/ Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 497313 (E.D. Pa. May 9, 2001) (hereinafter "the Fen/Phen litigation"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1998 WL 118060 (E.D. Pa. Jan. 12, 1998).

Indeed, the common benefit doctrine is particularly useful in the MDL context.  By allowing a small group of plaintiffs' attorneys to litigate the MDL on behalf of all plaintiffs, significant benefit accrues to both parties, their counsel, and to the Court.  Such benefit creation merits additional compensation.  However, the only work entitled to compensation from a common benefit fund is work that provided a benefit to the litigation as a whole — the common benefit work.  In contrast, work benefiting only a single plaintiff is, of course, compensated

under the terms of that plaintiff's fee contract with his or her individual counsel.[1]

### B. A 7% Assessment is Reasonable and Appropriate in Light of the PSC's Diligent and Extensive Efforts in this MDL

The PSC proposes that an assessment of seven percent (7%) of gross monetary recovery be applied to Avandia cases now pending or later filed in, transferred or removed to this Court, or subject now or in the future to the jurisdiction of this MDL, together with any state court cases that benefit from the PSC's efforts or the work product created by the PSC, including any unfiled, tolled, or settled cases. In the event of Plaintiffs' recovery, these funds can be disbursed after review and approval by the Court.

After reviewing assessments in similar complex MDL actions, the PSC believes a 7% assessment to the common benefit fund is both reasonable and appropriate for this particular MDL. Courts in this district, as well as others, have ordered that similar percentages be withheld from any future award or payment. For example, in the Fen/Phen litigation, the court initially ordered the sequestration of 9% of all payments made by defendants in any settlement or satisfaction of a judgment. *In re Diet Drugs*, PTO 467, attached hereto as Exhibit 2L, *infra*; *see also* 2001 WL 497313 at *2.[2] Similarly, in *In re Protegen Sling*, the court set aside 9% of the aggregate amount to be paid to the plaintiffs in the future. *See* 2002 WL 31834446 at *1 (D. Md. 2002), attached hereto as Exhibit 2J, *infra*; *In re Rezulin*, 2002 WL 441342 at *1 (assessing 6% of recovery on federal cases and 4% of recovery on state cases where the attorneys bound themselves to an agreement), attached hereto as Exhibit 2I, *infra*. Thus, assessing 7% of future recovery is well within the range established by other courts in similar MDL litigation.

---

[1] The PSC has been diligent in ensuring there is and remains a bright-line distinction between work performed on behalf of individual plaintiffs and work performed for the benefit of all plaintiffs.

[2] After it became clear there were sufficient funds available to compensate the common benefit lawyers, the court later reduced this amount to 6%.

Moreover, the PSC's diligent and extensive efforts invested to date, coupled with those to be incurred in the future, more than support a 7% assessment. Finally, to the extent that the Fund ultimately exceeds the amount needed to make payments as provided in the Proposed Order, the Court may order a refund, on a pro rata basis, to those who contributed to the Fund.

**C. Based on the Common and Tested Practice in Similar MDLs, GSK Should Be Required To Deposit the Assessment Into the Common Benefit Fund**

It is beyond dispute or argument that GSK must withhold the assessment from any future settlement or judgment and pay the amount directly into the Fund. This is the standard procedure that has been implemented by multiple courts around the country in similarly complex MDLs. Although there are likely many more, the PSC has located fifteen common benefit fund orders containing language requiring the defendant to deposit a common benefit assessment directly into the Fund. These orders include:

- *In re: Gadolinium Prods. Liab. Litig.*, MDL 1909 (N.D. Ohio) (Ex. 2A at 5);
  "For cases subject to an assessment, defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment."

- *In re: Bausch & Lomb Contact Lens Solution Prods. Liab. Litig.*, MDL 1785 (D.S.C) (Ex. 2B at 2);
  "For all cases in which a settlement was or is entered into, or a judgment was or is paid, beginning April 8, 2008 and going forward, defendant is directed to withhold this assessment from any amounts paid to a plaintiff and her counsel…"

- *In re: Bextra and Celebrex Prods. Liab. Litig.*, MDL 1699 (N.D. Cal.) (Ex. 2C at 3);
  "Defendants are directed to withhold the amount of this assessment from any amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the common benefit fund as a credit against the settlement or judgment."

- *In re: Guidant Defibrillators Prods. Liab. Litig.*, MDL 1708 (D. Minn.) (Ex. 2D at 3);
  "Defendants are directed to withhold the amount of this assessment from any amounts paid to plaintiffs and their counsel, and to pay the assessment

directly into the common benefit fund as a credit against the settlement or judgment."

- *In re: Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D. La.) (Ex. 2E at 2);
    "Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the fund as a credit against the settlement or judgment."

- *In re: Prempro Prods. Liab. Litig. (HRT)*, MDL 1507 (E.D. Ark.) (Ex. 2F at 2-3);
    "Before making any claim to a personal injury plaintiff whose claim has been resolved in federal court, defendants shall deduct from the payment an amount equal to five percent (5%) of the gross amount and shall pay such sum as hereinafter provided for deposit into the MDL 1507 Fee and Cost Trust Account."

- *In re: Baycol Prods. Liab. Litig.*, MDL 1431 (D. Minn.) (Ex. 2G at 2);
    "Before making any claim payment to a plaintiff or claimant to whom this Order applies, defendants shall deduct from such payments an amount equal to six percent (6%) of the aggregate amount being paid…"

- *In re: Silzone Heart Valves Prods. Liab. Litig.*, MDL 1396 (D. Minn.) (Ex. 2H at 2);
    "Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the fund as a credit against the settlement or judgment."

- *In re: Rezulin Prods. Liab. Litig.*, MDL 1348 (S.D.N.Y.) (Ex. 2I at 2);
    "Before making any Claim Payment, each paying defendant shall deduct therefrom and pay to the Clerk for deposit to the CRIS Account the Escrow Amount."

- *In re: Protegen Sling and Vesica Sys. Prods. Liab. Litig.*, MDL 1387 (N.D. Md.) (Ex. 2J at 1);
    "Defendants shall have primary responsibility for withholding nine percent (9%) of the claim payments and tendering such sums to the MDL 1387 Fee and Cost Account."

- *In re: Propulsid Prods. Liab. Litig.*, MDL 1355 (E.D. La.) (Ex. 2K at 2);
    "Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the fund as a credit against the settlement or judgment."

- *In re: Diet Drug Prods. Liab. Litig. (Fen/Phen)*, MDL 1203 (E.D. Pa.) (Ex. 2L at 2);
    "Defendants shall have primary responsibility for withholding nine percent (9%) of the claim payments and tendering such sums to the MDL 1203 Fee and Cost Account."

- *In re: Latex Gloves Prods. Liab. Litig.*, MDL 1148 (E.D. Pa.) (Ex. 2M at 3);
    "Defendants are hereby authorized and directed to pay all withheld amounts promptly and directly into the Escrow Fund at the time of payment of the settlement or judgment or other recovery."

- *In re: Orthopedic Bone Screw Prods. Liab. Litig.*, MDL 1014 (E.D. Pa.) (Ex. 2N at 3);
    "Each MDL 1014 defendant, before making any claim payment to any plaintiff, shall deduct from such payment an amount equal to 5% of the aggregate amount being paid, and any amounts to be paid in the future; and shall pay such sum as hereinafter provided for deposit into the MDL 1014 PLC Costs Account."

- *In re: Silicone Gel Breast Implants Prods. Liab. Litig.*, MDL 926 (N.D. Ala) (Ex. 2O at 2)
    "Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment into the fund as a credit against the settlement or judgment."

Exhibits 2A through 2O attached hereto. In all fifteen orders, the defendants are directed to withhold the assessment from amounts paid to any plaintiff and to deposit the assessment into the common benefit fund.

The commonality of this practice demonstrates that the procedure works to avoid complications rather than create further disputes. Under the Proposed Order, GSK would not be required to police the Fund or incur any increased burden. Rather, the Order sets forth the following straightforward process. Prior to distributing any settlement to a plaintiff's counsel, GSK will notify the PSC in writing regarding the existence of a settlement and the name of the individual plaintiff's attorney. Plaintiffs' Liaison Counsel will then advise Defendant's counsel in writing as to whether the individual plaintiff's attorney's cases or claims are subject to the assessment. If the Plaintiffs' Liaison Counsel notifies GSK that the claim falls within the scope of the Order, GSK would deposit seven percent of the settlement into the Fund. Once the assessment is deposited into the Fund, GSK is absolved of all liability with respect to the assessed amount. To the extent that the plaintiff or plaintiff's attorney has any objection to the

assessment, the Proposed Order directs the aggrieved party to seek recourse against the Fund. Thus, under the current Proposed Order, GSK will not be obligated to police, monitor, or bear any responsibility for assessments deposited in the Fund. Rather, needless complication and dispute will be avoided by insuring that any legitimately assessed amounts need only travel from point A to B rather than from A to C to B. Based on the common use of this procedure in many similarly complex products liability MDLs, the Court should be reassured that the process has been tested and approved.

    **D. This Court Has Authority to Assess a Common Benefit Reimbursement Fee Against State Court Claimants and their Attorneys Who Have Benefited From the Work of the PSC**

As proposed, the common benefit assessment Order applies to several types of claims: (1) those subject to the jurisdiction of the MDL and (2) any other claim where the plaintiff's attorney has (a) signed the Protective Order; (b) signed the Attorney Participation Agreement; or (c) benefitted from the PSC work product or the work performed by the PSC. There is no dispute with respect to the Court's authority to assess claims subject to the jurisdiction of the MDL. Neither has GSK contested the Court's authority to assess attorneys that signed the Participation Agreement or the Protective Order. Rather, the dispute has centered on whether the Court may assess state court plaintiffs and their attorneys who receive common benefit work product or otherwise benefit from the work performed by the PSC or other common benefit attorneys. The PSC submits that section 3(b)(iii) of the Proposed Order properly applies the common benefit fund assessment to "attorneys who receive common benefit work product or otherwise benefit by the work performed by the PSC or common benefit counsel working with the PSC."

In the unique context of MDL proceedings, there are some instances in which the MDL judge may have authority that crosses standard jurisdictional lines. For example, the federal MDL courts have administered global settlement agreements that apply to both federal and state plaintiffs. *See, e.g.*, *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL 1708 (D. Minn. 2008). In *Guidant*, the parties negotiated a $240 million dollar settlement that applied to: plaintiffs whose cases had been filed in or transferred to the MDL; plaintiffs whose cases were filed outside the MDL in state court proceedings; and potential plaintiffs who had not yet filed their cases. *See In re Guidant*, MDL 1708, 2008 WL 682174, *3 (D. Minn. March 7, 2008). The court ordered that $10 million and $34.5 million of the settlement be set aside for common benefit costs and attorneys' fees. *Id.* at *4, *16. Some plaintiffs objected on the basis that the Plaintiffs' Lead Liaison Counsel ("LLC") had failed to demonstrate that the state court plaintiffs had benefited from the LLC's work. *Id.* at *13. The court held that the common benefit assessment should apply to the state court plaintiffs. *Id.* The court reasoned:

> [T]his argument does have some merit, especially in relation to those state court cases where a significant amount of work was done on behalf of individual Plaintiffs with little to no sharing of work product from the MDL attorneys. However, the state court Plaintiffs raising this objection fail to acknowledge that, at a minimum, the MDL common benefit attorneys' extreme efforts in negotiating the global settlement and reaching a favorable result for all Plaintiffs, including the state Plaintiffs who originally were proceeding on their own, benefited all Plaintiffs. *Therefore, the state Plaintiffs did benefit from the common benefit attorneys' work, and the common benefit fund should apply to their clients as well.*

*Id.* (emphasis added). The court further noted that state court attorneys could petition for common benefit funds themselves for work that advanced the interests of all plaintiffs. *Id.* In short, the federal MDL had authority to assess state court plaintiffs for common benefit work because those state court plaintiffs and their attorneys did in fact benefit. *But see In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165-66 (4th Cir. 1992) (holding that

a transferee court's jurisdiction is limited to persons who are properly parties to the cases transferred); *cf. In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 267-69 (E.D.N.Y. 2006) (deciding that the issue of assessing state cases with the costs of a discovery process that benefits all cases should be left, in the first instance, to the state court judges).

As a matter of equity, state court plaintiffs and their attorneys should be assessed to the extent that they benefit from much of the work performed by the PSC and other common benefit attorneys. As the court in *Zyprexa* noted, requiring state plaintiffs' attorneys to pay their proportionate share of the time and costs incurred by the PSC in its work for the benefit of all plaintiffs

> would avoid the troubling potential for attorney conflict of interests that otherwise would exist: Attorneys face distorted incentives to file cases in state courts without respect for the best interests of their clients because attorneys can use [the PSC's] work without paying for it out of their fees when in state court, but would have to pay their fair share if they were in federal court.

467 F.Supp.2d at 269. Thus, as a matter of equity, a state court attorney who benefits from the work of the common benefit attorneys should contribute his or her proportionate share into the common benefit fund.

Even if this Court determines that its authority cannot reach state court plaintiffs solely on the basis of their having benefited from the PSC's work on behalf of all plaintiffs, there are other means by which the assessment can be ordered. At minimum, the MDL court has the authority to assess state court plaintiffs that have agreed to the assessment. This is the most common method by which federal courts have ordered that a common benefit assessment be applied to state court cases. *See, e.g.*, Exhibit 2B, May 21, 2008 Order, *In re Bausch & Lomb*, MDL 1785, (D.S.C. 2008) (stating that common benefit assessment applies to "any state court or unfiled case where the plaintiff's attorney and/or his or her firm has executed an agreement to

cooperate with the MDL and to pay the assessment"); *see also In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 644, 665 n.12 (E.D. Pa. 2003) (noting in dicta that a common benefit fund assessment could be applied to state court plaintiffs "by agreement of the parties").

Finally, the PSC respectfully submits that the parties and the Court should continue to encourage coordination and cooperation between the state and federal courts. Such cooperation can provide an additional avenue by which to resolve the issue of assessing state court plaintiffs' attorneys that benefit from the work of the common benefit attorneys. For example, in the Fen/Phen litigation, the federal court issued a common benefit assessment order that included a section regarding coordination between the MDL and similar state proceedings in California. *See* Exhibit 2L, PTO No. 467. The coordination section stated:

> [u]pon approval by the [coordinating California state judge], each action involving diet drug which is now or hereafter pending in any California State Court shall be subject to this [common benefit fund] Pretrial Order to the following extent. Before making any claim payment to any plaintiff who has brought any action in any California State Court, defendants shall deduct from such payments an amount equal to six percent of the aggregate amount being paid . . . to the plaintiff.

*Id.* at 4-5. Thus, although not currently included in the Proposed Order, this Court may consider revising it to state that the assessment also applies to cases in a state court to the extent so ordered by the presiding judge of that court.

In sum, the PSC respectfully proposes that the common benefit fund Order retain section 3(b)(iii) which includes in the Covered Claims all "attorneys who receive common benefit work product or otherwise benefit by the work performed by the PSC or common benefit counsel working with the PSC." If the Court determines that this provision should be removed from the Order, the PSC suggests that new language be added to extend the Covered Claims "to cases in state court to the extent so ordered by the presiding judge of that court." Finally, in accordance

with the interest of this Court as expressed in the last hearing, the PSC submits that this Proposed Order be circulated to all attorneys on the ECF Service Registry prior to the Order's execution.

### III. CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court grant the PSC's Motion to Establish an Avandia Common Benefit Fund by executing the attached Proposed Order.

Dated: July 21, 2009

Respectfully submitted,

**Plaintiffs' Steering Committee**

**By:** s/_____

Vance Andrus, Esq.
Andrus-Boudreaux, PLC
1999 Broadway, Ste. 4150
Denver, Colorado 80202
(303) 376-6360

**Plaintiffs' Liaison Counsel**

Thomas E. Mellon, Jr., Esq.
Stephen A. Corr, Esq.
Mellon, Webster & Shelly
87 N. Broad Street
Doylestown, PA 18901
(215) 348-7700