**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____
                          :
**IN RE:  AVANDIA MARKETING, SALES**   :
**PRACTICES AND PRODUCTS LIABILITY**  :
**LITIGATION**                             :
_____:     **MDL No. 1871**
                          :     **07-MD-01871-CMR**
**THIS DOCUMENT APPLIES TO:**     :
**ALL ACTIONS**                    :
_____:

**PRETRIAL ORDER NO._____**

**ESTABLISHING AVANDIA COMMON BENEFIT FUND TO COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT**

      This Order is entered to provide for the fair and equitable sharing among plaintiffs of the cost of special services performed and expenses incurred by Eligible Counsel acting for MDL administration and common benefit of all plaintiffs in this complex litigation.

  1.    **Avandia Common Benefit Fund (the "Fund") to be Established And Appointment Of Administrator Thereof**

      The Court hereby authorizes the establishment of an Avandia Common Benefit Fund (the "Fund") for the purposes and pursuant to the limitations set forth in this Order.

      The Court does hereby appoint Andrew A. Chirls as Administrator of the Fund and directs him to establish an insured, interest-bearing account to receive and disburse funds as provided in this Order.  He shall designate an escrow agent (the "Escrow Agent") for this purpose.  These funds will be held as funds subject to the direction of the Court.  No party or attorney has any individual right to any of these funds except to the extent of amounts directed to

1

be disbursed to such person by Order of the Court.  These funds will not constitute the separate property of any party or attorney nor be subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by Order of this Court to a specific person.  These limitations do not preclude a party or attorney from transferring, assigning, or creating a security interest in potential disbursements from the Fund if permitted by applicable state laws and if subject to the conditions and contingencies of this Order, provided, however, that no notice of lien or security interest in said disbursements or of a transfer or assignment of a right of said disbursements shall be effective except upon a filing in this Court or upon notice to the Administrator of the Fund and PSC made by certified mail, return receipt requested.

  In connection with his duties, the Administrator of the Fund shall:

   a. Have all such power and authority over such funds as necessary or convenient to exercise the authority granted herein;

   b. Keep and report periodically to this Court an accounting of the funds received, maintained and disbursed;

   c. Have the authority to instruct the Escrow Agent with respect to permitted investments of said such funds;

   d. Make decisions and take action with respect to treatment of such funds for purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes, including creating, maintaining and reporting such funds and the income, if any, derived therefrom as in a Qualified Settlement Fund (QSF) or such other entity as he deems appropriate;

2

e.      Out of the assets of the Fund, purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds;

f.      To procure, upon consultation with the PSC, professional accounting, legal and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services;

g.      To adopt and implement reasonable procedures consistent with this Order and in consultation with the PSC.

The Escrow Agent shall be a commercial bank which:  (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state thereof; and (3) has a total risk-based capital in excess of $5 billion and meets the minimum risk-based ratios established under the Federal Deposit Insurance Corporation Improvement Act of 1991.  The Escrow Agent may act as paying agent, depository, custodian or trustee with respect to funds it holds.

The Administrator of the Fund shall consider, in designating the Escrow Agent and in procuring professional services, the charges that the Escrow Agent or provider of professional services will impose for its actions and the ability of the Escrow Agent or provider of professional services to undertake the tasks called for with efficiency and responsiveness.

The Trust shall not acquire or hold for longer than 90 days, any debt securities, certificates or investments unless such instruments are a U.S. Treasury Bill, U.S. Treasury Money Market, U.S. Government Money Market or similar type of account guaranteed by the United States or an agency thereof, including an FDIC-Insured Account.  The U.S. Treasury Money Market or U.S. Government Money Market must be registered under the Investment Company Act of 1940, as amended, that have the highest rating obtained from either Moody's or

3

S&P.  In determining investments to be held by the Trust, primary regard shall be given by the Trustee to safety of principal.

In connection with their services, Mr. Chirls and the Escrow Agent shall be entitled to be paid reasonable fees and to be reimbursed for reasonable expenses when and as approved by this Court and they shall periodically submit statements to the Court, with copies to the PSC and Defendant's Liaison Counsel.  If funds are not then available in the Fund, they shall be paid by the PSC, which shall be reimbursed out of the Fund when and if it ever is funded.

2.      **Attorney Participation Agreement (Exhibit A)**

Attached hereto as Exhibit A and incorporated herein is a voluntary Attorney Participation Agreement ("Participation Agreement") between the Plaintiffs' Steering Committee ("PSC") and other plaintiffs' attorneys.  The Participation Agreement is a private and cooperative agreement between plaintiffs' attorneys only.  It is not an agreement with SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("Defendant" or "GSK"). "Participating Counsel" include: (1) all members of the PSC and (2) any other plaintiffs' attorneys who sign on to the Participation Agreement.  Participating Counsel are entitled to receive the MDL common benefit work product and the state court work product of those attorneys who have also signed the Participation Agreement and shall be entitled to seek disbursements as Eligible Counsel pursuant to paragraph 5 of this Order.  In return, Participating Counsel agree to pay the assessment amount provided in paragraph 4 of this Order on all filed and unfiled cases or claims in state or federal court in which they share a fee interest.

346549

3.    **Covered Claims**

This Order applies to the following Avandia, Avandamet, and Avandaryl (hereinafter collectively referred to as "Avandia") claims, whether direct or derivative:

  a.    All Avandia claims now or hereafter subject to the jurisdiction of MDL 1871, whether disposed of before or after remand regardless of whether counsel holding a fee interest in such Avandia claims in such cases have signed the Participation Agreement, including:

  i.    All Avandia claims settled pursuant to an MDL supervised Settlement Agreement between the parties;

  ii.   All Avandia claims on tolling agreements; and

  iii.  All Avandia claims in which any PSC member has a financial interest.

  b.    All Avandia claims, regardless of whether those claims are subject to the jurisdiction of MDL 1871, tolled, unfiled, or filed in another jurisdiction, in which the following attorneys have a fee interest, including but not limited to:

  i.    Protective Order: Those attorneys who executed the Endorsement of Protective Order, attached to Pretrial Order No. 10, and

  ii.   Participating Counsel: Members of the PSC and plaintiffs' attorneys who sign on to the Participation Agreement, attached hereto as Exhibit 1

(Collectively hereinafter referred to as the "Covered Claims").

4.    **Assessments and Payments into the Fund for All Covered Claims**

  a.    All Covered Claims, where the plaintiffs or their attorneys either agree or have agreed – for a monetary consideration – to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment

for monetary damages or other monetary relief, including such compensatory and punitive damages (hereinafter a "Settlement"), with respect to any Avandia claim are subject to an assessment on the Gross Monetary Recovery, as provided herein.

b.  A total assessment of seven percent (7%) of Gross Monetary Recovery shall apply to all Covered Claims ("the Assessment").  Of that amount, four percent (4%) shall be deducted from the attorneys' fees and three percent (3%) from the client's shares of the Gross Monetary Recovery.

c.  In measuring the Gross Monetary Recovery:

   i.  Include all sums to be paid in settlement of the claim;

   ii.  Exclude court costs that are to be paid by Defendant;

   iii.  Exclude any payments made directly by Defendant on a formal intervention asserted directly against the defendant by third-parties, such as to physicians, hospitals, and other health-care providers on Court recognized valid subrogation claims related to treatment of plaintiff; and

   iv.  Include the present value of any fixed and certain payments to be made in the future.

d.  Defendant is directed to withhold the Assessment from amounts paid on any Covered Claim and to pay the Assessment directly into the Fund as a credit against the Settlement or Judgment.  If for any reason the Assessment is not or has not been so withheld, the Defendant as well as the plaintiff and his or her counsel are jointly and severally responsible for paying the Assessment into the Fund promptly.

6

e.  From time to time, the PSC shall provide a list of all then known Covered Claims to the Administrator of the Fund, Defendant's Liaison Counsel, plaintiffs' counsel, and the Court or its designee.  In connection therewith, GSK shall, upon request from the PSC, supply to the PSC a list of all then known Covered Claims, including the name of each plaintiff and his or her attorney, if any.

f.  Defendant and its counsel shall not distribute any settlement proceeds with respect to any Covered Claims until (1) Defendant's counsel notifies the PSC in writing of the existence of a settlement and the name of the individual plaintiff's attorney holding such Covered Claims and (2) Plaintiffs' Liaison Counsel has confirmed to Defendant's counsel in writing that the individual plaintiff's attorney's cases or claims are subject to an assessment pursuant to this Order.

g.  No orders of dismissal for any Covered Claim shall be filed unless accompanied by a certificate of the plaintiff's and Defendant's counsel that the assessment has been withheld and deposited into the Fund.

h.  This assessment represents a hold back (*In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006)) and shall not be altered in any way unless each of the following occurs: (1) the entire PSC is consulted and provided an opportunity to be heard at a formally announced PSC meeting prior to the filing of any motion to change the assessment amount; (2) the PSC approves the proposed change to the assessment by a majority vote; (3) a noticed motion (including notice to Defendant's Liaison Counsel) with an opportunity

7

346549

to be heard is granted by the Court, and (4) this Court, upon good cause shown, amends this Order.

i.      This Order shall in no way be read to affect or otherwise encumber GSK or other defendant(s)' obligation to pay attorneys' fees and costs pursuant to consumer fraud claims or other fee shifting statutes, if any, that may apply in this case.

j.      Further, in the event of global settlement or settlement program in which the PSC accepts additional responsibilities beyond those described herein and/or GSK or other defendant(s) agree to pay to the PSC fees and expenses for settlement purposes, such fees are beyond the scope of those set forth in this Order.

k.      Provided assessments are paid as provided for herein, nothing in this Order is intended to impair the attorney/client relationship or any contingency fee contract deemed lawful by the attorneys' respective bar rules and/or state court orders.

l.      Upon payment of the Assessment into the Fund, GSK, the PSC, and its individual members shall be released from any and all liability to any person, attorney, or claimant with respect to the Assessment placed into the Fund. Any person, attorney, or claimant allegedly aggrieved by an Assessment pursuant to this Order shall seek recourse as against the Fund. Notwithstanding this, notice and an opportunity to be heard on any such claim shall be given both to GSK and the PSC.

5.      **<u>Disbursements from the Fund for Common Benefit Work</u>**

8

a.     Upon a proper showing and Order of the Court, payments may be made from the Fund to attorneys who have provided services or incurred expenses for the joint and common benefit of plaintiffs and claimants whose claims have been treated by this Court as a part of these proceedings in addition to their own client or clients.  Such "Eligible Counsel" include:

    i.   Plaintiffs' Liaison Counsel and members of the PSC;

   ii.   Attorneys who have signed the Participation Agreement;

  iii.   Court-appointed State Liaison Counsel; and

  iv.   Other attorneys performing similar responsibilities in state court actions, provided that all cases in which any putative common benefit attorneys have a financial interest are subject to this Order.

b.     **Disbursement of Fees for Common Benefit Work:**

    i.   Subject to Order of this Court, Eligible Counsel are eligible to receive payment from the Fund for time and efforts expended for Common Benefit Work, if said time and efforts are:

        1.   for the joint and common benefit of plaintiffs,

        2.   appropriately authorized by the PSC, or expended by a PSC member,

        3.   timely submitted and verified, and

        4.   approved by this Court.

   ii.   <u>Common Benefit Work</u>:  Common Benefit Work may include, but is not limited to:

        1.   investigation and research;

9

2. conducting discovery (e.g. reviewing, indexing, and coding documents);

3. drafting and filing pleadings, briefs, and pre-trial motions, and orders;

4. preparation and attendance at non-case specific depositions;

5. preparation for and attendance at State and Federal Court hearings;

6. attendance at PSC-sponsored meetings and addressing lawyers on the status of the litigation;

7. other PSC activities, including work on the Discovery, Sales and Marketing, Daubert, Science, Experts, and similar Committees;

8. work with expert witnesses;

9. trial preparation and trial; and

10. performance of administrative matters,

provided that all such work was conducted for the joint and common benefit of plaintiffs.

iii. In apportioning any fee award to Eligible Counsel, appropriate consideration will be given to the experience, talent, and contribution made by Eligible Counsel, and to the time and effort expended by each as well as to the type, necessity, and value of the particular legal services rendered.

10

iv. <u>Time Keeping</u>:   All time must be authorized and accurately and contemporaneously maintained.   Eligible Counsel shall keep a daily record of their time spent in connection with common benefit work on this litigation, indicating with specificity the hours, location, and particular activity.   All common benefit work time for each firm shall be maintained in a tenth-of-an-hour increment.   Time entries that are not sufficiently detailed may not be considered for common benefit payments.   Eligible Counsel must submit all time reports monthly to the PSC in accordance with the Billing Guidelines.

v. <u>Verification</u>:   All time entries shall be certified by a senior partner in the firm attesting to the accuracy of the submissions.

**c.      Reimbursement for Common Benefit Expenses:**

i. Subject to Order of the Court, Eligible Counsel are eligible for reimbursement from the Fund for Common Benefit Expenses, if said expenses were:

1.  for the joint and common benefit of plaintiffs,

2.  expended by the PSC or by Eligible Counsel,

3.  timely submitted and verified, and

4.  approved by this Court.

ii. <u>Common Benefit Expenses</u>:   Common Benefit Expenses may include, but are not limited to:

1.  assessments paid for the operation of the PSC;

11

2. costs related to obtaining, reviewing, indexing, and paying for hard copies of computerized images of documents for GSK;

3. deposition and court reporter costs for non-case specific depositions;

4. costs for the electronic storage, retrieval and searches of ESI;

5. certain Court, filing, and services costs for matters involving MDL, JCCP, or MTP-wide application;

6. PSC group administration matters such as meetings, food, and conference calls;

7. reasonable travel expenses including lodging and meals, and expenses incurred in connections with PSC approved meetings, events, and other common  benefit tasks;

8. legal and accountant fees;

9. expert witness and consultant fees and expenses;

10. paralegal fees;

11. investigator fees and expenses;

12. printing, copying, coding, scanning (out of house or extraordinary firm cost);

13. research by outside third-party vendors/consultants/ attorneys;

14. common witness expenses including travel;

15. translation costs; and

16. bank or financial institution charges,

provided that all such work was conducted for the joint and common benefit of plaintiffs.

iii. **Expense Limitations:**

1. <u>Travel Limitations:</u> Except in extraordinary circumstances approved by the PSC, all travel reimbursements are subject to the following limitations:

   a. Airfare: Only the price of a business or full fare coach seat for a reasonable itinerary will be reimbursed. First Class Airfare will not be reimbursed.

   b. Hotel: Hotel room charges for the average available room rate of a business hotel, including but not limited to the Hyatt, Westin, and Marriott hotels, in the city in which the stay occurred will be reimbursed.

   c. Meals: Meal expenses must be no greater than the reasonable and customary charges for the city in which the charges are incurred.

   d. Cash Expenses: Miscellaneous cash expenses for which receipts generally are not available (tips, luggage handling, pay telephone etc.) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

   e. Rental Automobiles: Standard rates for rentals of automobiles shall be reimbursed if necessary for the common benefit.

f.   Mileage: Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the Eligible Counsel's firm. The maximum allowable rate will be the maximum rate allowed by the IRS (currently 55 cents per mile).

2.   <u>Non-Travel Limitations:</u>

a.   Long Distance and Cellular Telephone: Long distance and cellular telephone charges must be documented. Copies of the telephone bills must be submitted with notations as to which charges relate to the Avandia MDL litigation.

b.   Shipping, Courier, and Delivery Charges: All claimed expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package.

c.   Postage Charges: A contemporaneous postage log or other supporting documentation must be maintained and submitted.   Postage charges are to be reported at actual cost.

d.   Telefax Charges: Contemporaneous records should be maintained and submitted showing faxes sent and received. The per-fax charge shall not exceed $1.00 per page.

346549

e.   In-House Photocopy: A contemporaneous photocopy log or other supporting documentation must be maintained and submitted.  The maximum copy charge is 20¢ per page.

f.   Computerized Research – Lexis/Westlaw: Claims for Lexis or Westlaw, and other computerized legal research expenses should be in the exact amount charged to or allocated by the firm for these research services.

iv.   <u>Verification</u>:

1.   The forms detailing expenses shall be certified by a senior partner in each firm attesting to the accuracy of the submissions.

2.   Attorneys shall keep receipts for all expenses.  Credit card receipts are an appropriate form of verification so long as accompanied by a declaration from counsel that work was performed and paid for the common benefit.

d.   **Excess Funds:**  If the Fund exceeds the amount needed to make payments as provided in this Order, the Court may order a refund to plaintiffs and their attorneys who were subject to the Assessment.  Any such refund will be made in proportion to the amount that was assessed.

6.   **<u>Incorporation by Reference</u>**

The Participation Agreement is attached hereto as Exhibit 1 and is incorporated by reference and has the same effect as if fully set forth in the body of this order.

15

SO ORDERED this _____day of _____, 2009.

_____
Honorable Cynthia Rufe

346549

# ATTORNEY PARTICIPATION AGREEMENT

This Attorney Participation Agreement is made this _____ day of _____, 20____, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Eastern District of Pennsylvania in MDL Docket No. 1871 and: _____

_____

(hereinafter "Participating Counsel").

WHEREAS, the United States District Court for the Eastern District of Pennsylvania has appointed Rachel Abrams, Vance Andrus, Bryan Aylstock, Marc Grossman, W. Mark Lanier, David P. Matthews, Shannon Medley, Karen B. Menzies, Michael J. Miller, Benedict Morelli, Dianne Nast, Tracy Rezvani, J. Paul Sizemore, Fred Thompson, and Joseph Zonies to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the use of Avandia, Avandamet, and/or Avandaryl (hereinafter collectively referred to as "Avandia");

WHEREAS, the PSC in association with other attorneys working for the common benefit of plaintiffs (the "Eligible Counsel") have developed or are in the process of developing work product which will be valuable in the litigation of state and federal court proceedings involving claims of Avandia-induced injuries (the "Common Benefit Work Product"); and

WHEREAS, the Participating Counsel are desirous of acquiring the Common Benefit Work Product and establishing an amicable, working relationship with the PSC for the mutual benefit of their clients;

1

NOW, THEREFORE, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

1.     This Agreement incorporates by reference any Order of the Court regarding assessments and incorporates fully herein all defined terms from such Order(s).

2.     This Agreement applies to each and every claim, case, or action arising from the use of Avandia in which the Participating Counsel has a financial interest, whether the claim, case, or action is currently filed in state or federal court, or is unfiled, or is on a tolling agreement (hereinafter collectively the "Covered Claims").

3.     With respect to each and every Covered Claim, Participating Counsel understand and agree that Defendant and its counsel will hold back a percentage proportion of the gross recovery that is equal to seven percent (7%) of the Gross Monetary Recovery ("the Assessment").  Of that amount, four percent (4%) shall be deducted from the attorneys' fees and three percent (3%) from the client's shares of the Gross Monetary Recovery.  Defendant or its counsel will deposit the Assessment in the Avandia Common Benefit Fund ("the Fund").  Should Defendant or its counsel fail to hold back the Assessment for any Covered Claim, Participating Counsel and their law firms shall deposit or cause to be deposited the Assessment in the Fund.  It is the intention of the parties that absent extraordinary circumstances recognized by MDL 1871 Court Order, such Assessment shall be in full and final satisfaction of any present or future obligation on the part of each Plaintiff and/or Participating Counsel to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the PSC, Participating Counsel, and/or any other counsel eligible

2

to receive disbursements from the Fund pursuant to an Order of the Court regarding assessments or the Fund.

4.      The Participating Counsel, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any recovery by any client who they represent or in which they have a financial interest in connection with any Avandia-induced injury, to the full extent permitted by law, in order to secure payment of the Assessment. The Participating Counsel will undertake all actions and execute all documents that are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

5.      The amounts deposited in the Fund shall be available for distribution to Participating Counsel pursuant and subject to any Order of the Court regarding assessments or the Fund.  Participating Counsel may apply to the Court for common benefit fees and reimbursement of expenses, provided that Participating Counsel:

      a.  were called upon by the PSC to assist it in performing its responsibilities;

      b.  expended time and efforts for the common benefit either in MDL 1871, the CA JCCP, or the PA MTP; and

      c.  timely submitted such time and expenses in accordance with the Court's orders, or in the absence of such orders, the procedures established by the PSC.

6.      This Agreement is without prejudice to the amount of fees or costs to which Participating Counsel may be entitled to in such an event.

3

346549

7.      Upon request of the Participating Counsel, the PSC will provide within a reasonable time to the Participating Counsel, to the extent developed, the Common Benefit Work Product, including access to the PSC's virtual depository, and, if and when developed a complete trial package.

8.      As the litigation progresses and Common Benefit Work Product continues to be generated, the PSC will provide Participating Counsel with such work product and will otherwise cooperate with the Participating Counsel to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.

9.      No assessments will be due by the Participating Counsel on any recoveries resulting from a medical malpractice claims against treating physicians.

10.      Both the PSC and the Participating Counsel recognize the importance of individual cases and the relationship between case-specific clients and their attorneys. The PSC recognizes and respects the value of the contingency fee agreement as essential in providing counsel to those who could not otherwise avail themselves of adequate legal representation, and it is the intent of the PSC to urge the Court to not interfere with any such agreements so long as they comport with the applicable law or bar rules.


PLAINTIFFS' STEERING COMMITTEE




By: _____
Vance Andrus, Esq.
Andrus-Boudreaux, PLC

4

346549

1999 Broadway, Ste. 4150
Denver, Colorado 80202
(303) 376-6360


PARTICIPATING ATTORNEYS

By: _____

_____

_____

_____

_____

_____

_____

_____

[Here List the Name and Address of the
Participating Counsel's Firm and Individual
Attorneys]

5

346549