# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |  |
|---|---|---|
| **IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | : : : | **MDL No. 1871** **07-md-01871-CMR** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | : : : : : | |

---

## EIGHTH REPORT AND RECOMMENDATION OF THE SPECIAL MASTER AS TO DOCUMENTS WITHHELD PURSUANT TO THE ATTORNEY-CLIENT PRIVILEGE AND/OR THE WORK-PRODUCT DOCTRINE

---

### Background

Pretrial Order No. 28 sets forth the procedures regarding discovery disputes and directs the parties first to present discovery disputes to the Special Master for informal mediation efforts. For much of this year, the Special Master and the parties have attempted to resolve a dispute over GSK's assertion of attorney-client privilege or work-product protection for tens of thousands of documents. The parties have worked cooperatively to develop a process to begin narrowing and eventually resolving this dispute, but this process has taken longer than expected.

As a first step in attempting to resolve the dispute, GSK submitted approximately 120 documents, chosen by the PSC from GSK's privilege log, for *in camera* review by the Special Master. After a number of meetings with the parties, *in camera* discussions with GSK, and the submission of multiple briefs and affidavits, the Special Master made rulings on GSK's assertion of attorney-client privilege and work-product protection for the reviewed documents. In an effort to facilitate the review of the remaining documents, the Special Master also prepared a set of detailed

Guidelines for review of the remaining documents.  The PSC accepted the Special Master's rulings on the specific documents and did not object to the Guidelines.  GSK, however, objected to the rulings on a number of the documents and also objected to certain of the Guidelines.  Thus, on June 1, 2009, the Special Master submitted his Seventh Report and Recommendation to the Court, recommending that the Court adopt the Guidelines developed by the Special Master.

After submission of the Seventh Report and Recommendation, GSK filed timely objections to certain of the recommended Guidelines, while the PSC indicated that it would not object to any of them.  On September 9, 2009, following briefing and argument before the Court, the Court issued Pretrial Order No. 74, declining to approve and adopt the Guidelines and instead directing the parties "to revisit the underlying discovery dispute with the Special Discovery Master forthwith, and in any event within ten (10) days of the date of the filing of this Order."  The Court also ordered that, "if any dispute remains after such conference, the Special Discovery Master is expected to promptly file a report and recommendation stating his proposed findings and rulings" regarding the reviewed documents.

The Special Master and the parties have now complied with the Court's Order.  On September 15, 2009, the Special Master met at length with GSK, at which time GSK indicated that it would withdraw its objections to many of the documents that the Special Master found not to be privileged, on the condition that the parties agree to a Non-Waiver Order regarding production of any previously withheld documents.  On September 16, 2009, the Special Master met with the PSC to discuss GSK's willingness to produce certain documents subject to a Non-Waiver Order.  The PSC readily agreed to execute a Non-Waiver Order, and on September 22, 2009, GSK submitted to the Special Master and the PSC a proposed Non-Waiver Order for the parties' consideration.  On September 23, 2009, the PSC agreed to GSK's proposed Non-Waiver Order.  The Special Master

suggested a slight modification, which the parties accepted.  The modified Order is attached hereto and the Special Master recommends that the Court approve it.

On September 30, 2009, GSK submitted additional material to the Special Master, including a brief and five affidavits from in-house counsel, in support of its claims of attorney-client privilege and/or work-product protection for these documents.  For the most part, these affidavits explain why certain documents were sent to the lawyers in question; they do not, however, demonstrate that the primary purpose of the communications was the seeking or providing of legal advice.  While there is no doubt that the circumstances surrounding many of the communications — drug labeling changes, FDA inspections or meetings, press inquiries regarding potential problems with a drug — implicated legal issues and necessitated the involvement of GSK's in-house counsel, these circumstances (explained at length in GSK's affidavits) do not suffice to render the primary purpose of the documents the seeking or providing of legal advice.  Indeed, under GSK's reasoning, *all communications* involving such matters as drug labeling changes, FDA oversight, or responses to media inquiries would be privileged, so long as an attorney was included in such communications.  As set forth in the Special Master's Seventh Report and Recommendation, the Special Master does not believe that this is an accurate statement of the law of attorney-client privilege.  Similarly, the affidavits demonstrate that GSK's in-house counsel reviewed many of the draft documents that have been withheld as privileged.  However, the fact that an attorney (as well as many non-attorneys) reviewed an otherwise non-privileged document does not transform that document into a privileged one.

As a result of the Special Master's meetings with the parties and further discussions among the parties and the Special Master, substantial reductions have been made in the number of documents for which privilege is claimed.  Of the original 120 documents, there remain 25 distinct documents, excluding duplicates, for which the Special Master has rejected GSK's claims of

attorney-client privilege and/or work-product protection and that GSK still believes are protected.[*] In accordance with Pretrial Order No. 74, the Special Master is now submitting this Eighth Report and Recommendation setting forth his recommended rulings on these 25 documents. Each document is addressed below and is identified by Bates number (with duplicates identified in parentheses). These documents also are being submitted separately to the Court for *in camera* review. Where appropriate, the documents have been grouped together for discussion, but the claim of privilege has been addressed for each individual document.

While the Court, in Pretrial Order No. 74, declined to adopt the Guidelines recommended by the Special Master, the Court has not ruled that the authorities cited in the Guidelines do not reflect the applicable law in this Circuit regarding attorney-client privilege and work-product protection. Therefore, in explaining his rulings on the 25 disputed documents in this Report and Recommendation, the Special Master has relied on the authorities cited in the Special Master's Seventh Report and Recommendation regarding the Guidelines. Because the PSC has not objected to any of the Special Master's rulings in favor of GSK, the Special Master will address in this Report and Recommendation only those documents that GSK is withholding and which the Special Master has ruled are *not* protected by the attorney-client privilege or work-product doctrine.

---

[*] While the parties have referred to these as distinct "documents," in many cases, what has been identified as a single document is in actuality more than one document (*e.g.*, an e-mail and attachment, or multiple attachments to an e-mail). In accordance with the terminology used thus far, the Special Master will continue to refer to these as single "documents," even though in some cases they are actually collections of documents.

**Documents For Which Attorney-Client Privilege or Work-Product Protection Is Claimed**

*Document #1.*  AVMDLZ00140749-00140781.

Document #1 is proposed prescribing information for Avandamet.  GSK asserted the attorney-client privilege for Document #1.  Document #1 is attached to a September 26, 2001 e-mail from GSK attorney Rob MacRae to GSK employee Margaret Kreider, with copies sent to eleven other GSK employees, one of whom (Kurt Henjes) is an attorney.  MacRae's e-mail was sent in response to a September 25, 2001 e-mail from Kreider to the same twelve individuals.  GSK's privilege log describes Document #1 as "Regulatory documents containing legal advice from Rob MacRae, Esq. regarding communications with a governmental authority, and sent to Kurt Henjes, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

Document #1 is a draft internal document that incorporates comments of numerous GSK employees, including possibly attorneys.  This is an insufficient basis to deem the document protected by the attorney-client privilege.  *See, e.g.*, *Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477-78 (E.D. Pa. 2005) (Surrick, J.); *Applied Telematics, Inc. v. Sprint Communs. Co.*, No. 94-4603, 1996 U.S. Dist. LEXIS 13782, at *19 (E.D. Pa. Sept. 18, 1996) (Rueter, M.J.); *Allegheny Ludlum Corp. v. Nippon Steel Corp.*, No. 89-5940, 1991 U.S. Dist. LEXIS 5173, at *8 (E.D. Pa. Apr. 15, 1991) (Naythons, M.J.).  Moreover, there is no indication that Document #1 was prepared in anticipation of any particular litigation and therefore it is not protected by the work-product doctrine.  *See* Fed. R. Civ. P. 26(b)(3); *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260-61 (3d Cir. 1993); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990).

**Document #2.**  AVMDLZ00094684 (and AVMDLZ00061155 and
AVMDLZ00176505), AVMDLZ00094685-00094702 (and AVMDLZ00061156-00061187 and
AVMDLZ00176506-00176537), and AVMDLZ00094703-00094721 (and AVMDLZ00061188-
00061219 and AVMDLZ00176538-00176569).

**Document #3.**  AVMDLZ00061220 (and AVMDLZ00094722 and
AVMDLZ00176570), AVMDLZ00061221-000222 (and AVMDLZ00094724 and
AVMDLZ00176571), AVMDLZ00061223-000224 (and AVMDLZ00094725-00094726 and
AVMDLZ00176572-00176573), and AVMDLZ00061225 (and AVMDLZ00094727 and
AVMDLZ00176574).

Document #2 contains a July 26, 2007 e-mail from GSK employee Amy Ebel to
GSK employee Margaret Kreider, neither of whom is an attorney, and two attachments of proposed
prescribing information for Avandia.  GSK asserted the attorney-client privilege for Document #2.
Copies of the e-mail were sent to twelve other GSK employees, one of whom (Stuart Greer) is an
attorney.  The e-mail appears to ask for approval of the text of the attached document from each of
these twelve employees who were copied on the e-mail.  GSK's privilege log describes the e-mail as
"Email sent to Stuart Greer, Esq. for the purpose of obtaining legal advice regarding
communications with a governmental authority," and the attachments as "Regulatory documents
sent to Stuart Greer, Esq. for the purpose of obtaining legal advice regarding communications with a
governmental authority."

Document #3 consists of four responses to the e-mail in Document #2.  GSK
asserted the attorney-client privilege for Document #3.  The responses that are part of Document
#3 are from GSK employees Alexander Cobitz, Willa Phyall, Lauren Karak, and Eric Dube, none of
whom is an attorney.  GSK's privilege log describes each of the responses contained in Document

#3 as "Email sent to Stuart Greer, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

While the e-mail in Document #2 does arguably contain a request for legal advice (or approval) from an attorney, even if this e-mail were privileged, it would not make the attachments privileged. *See, e.g., Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (Wolfson, M.J.). However, GSK has not demonstrated that the primary purpose of the e-mail was to seek legal advice. The e-mail was sent to thirteen GSK employees for review, only one of whom was an attorney. Under these circumstances, the primary purpose of the e-mail was not the obtaining or giving of legal advice, and it is not protected by the attorney-client privilege. *See, e.g., Rhone-Poulenc Rorer v. Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir. 1994); *SEPTA v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) (Restrepo, M.J.); *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 805, 809 (E.D. La. 2007) (Fallon, J.).

The primary e-mails that are part of Document #3 do not contain legal advice or a request for legal advice. While a prior e-mail in the chain (the same one as in Document #2) does arguably contain a request for legal advice (or approval) from an attorney, even if this prior e-mail were privileged, it would need to be redacted and the primary non-privileged e-mail produced. *See, e.g., Vioxx*, 501 F. Supp. 2d at 812-13; *Rhoads Indus., Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238, 240-41 (E.D. Pa. 2008) (Baylson, J.). However, as noted above, GSK has not demonstrated that the primary purpose of the e-mail in Document #2 was to seek legal advice, and thus Document #3 is not protected by the attorney-client privilege.

There is no indication that the attachments in Document #2 contain legal advice. In addition, the attachments are draft internal documents that incorporate comments of numerous GSK employees, including possibly attorneys. This is an insufficient basis to deem them protected

by the attorney-client privilege.  *See, e.g., Apotex*, 232 F.R.D. at 477-78; *Applied Telematics*, 1996 U.S. Dist. LEXIS 13782, at *19; *Allegheny Ludlum*, 1991 U.S. Dist. LEXIS 5173, at *8.

> **Document #4.**  **AVMDLZ00048693-00048694, and AVMDLZ00048695-00048741.**

> **Document #5.**  **AVMDLZ00176475.**

> **Document #6.**  **AVMDLZ00063423-00063424.**

> **Document #7.**  **AVMDLZ00176356, and AVMDLZ00176357-00176360.**

> **Document #8.**  **AVMDLZ00095048-00095049 (and AVMDLZ00095048-00095049).**

> **Document #9.**  **AVMDLZ00063379-00063382, and AVMDLZ00063383-0063390.**

Document #4 consists of an e-mail and attachment.  The e-mail is dated August 22, 2007 and was sent from GSK employee David Cocchetto to GSK employees Ronald Krall and Moncef Slaoui, none of whom is an attorney.  While three other GSK employees (none of whom is an attorney) were copied on the e-mail, the text of the e-mail is addressed specifically to Krall and Slaoui.  The attachment is draft labeling for Avandia, with comments and other edits by unidentified persons.  A prior e-mail in this chain was sent from GSK employee Traci Lee to eleven GSK employees, one of whom was an attorney (Stuart Greer), and copied to four additional GSK employees.  In the prior e-mail, Lee asked for approval of the proposed Avandia label from seven GSK employees, including attorney Greer.  GSK's privilege log describes the e-mail as "Email communications sent to Stuart Greer, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority," and the attachment as "Regulatory documents sent to Stuart Greer, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

Document #5 is a July 26, 2007 e-mail from GSK employee Alexander Cobitz to GSK employee Eric Dube, neither of whom is an attorney, with copies sent to four other GSK employees, one of whom is an attorney (James Schell).  A prior e-mail in this chain was sent from Dube to four GSK employees, including attorney Schell, seeking approval for an attached regulatory document.  GSK's privilege log describes Document #5 as "Email sent to James Schell, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

Document #6 is an August 21, 2007 e-mail from GSK employee David Cocchetto to GSK employee Willa Phyall, neither of whom is an attorney, transmitting revised draft labeling for Avandia.  A prior e-mail in this chain was sent from Traci Lee to fourteen GSK employees, one of whom is an attorney (Stuart Greer), seeking approval for an attached regulatory document, and copied to three additional GSK employees.  GSK's privilege log describes Document #6 as "Email communications sent to Stuart Greer, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

Document #7 consists of an e-mail and attachment.  The e-mail is dated July 25, 2007 and was sent from GSK employee Carol Koro to GSK employee Melinda Stubbee, neither of whom is an attorney.  While five other GSK employees (one of whom, James Schell, is an attorney) were copied on the e-mail, the text of the e-mail is addressed specifically to Stubbee.  The attachment is a Q&A regarding a recent study.  A prior e-mail in this chain was sent from Stubbee to Koro and specifically asked Koro to review the Q&A and fill in gaps in the document.  The prior e-mail was copied to four GSK employees, including attorney Schell.  GSK's privilege log describes the e-mail as "Email sent to James Schell, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority," and the attachment as "Media communications sent to James Schell, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

Document #8 is a July 30, 2007 e-mail from GSK employee Hubert Chou to GSK employee Amy Ebel, neither of whom is an attorney.  Twelve other GSK employees, one of whom is an attorney (Stuart Greer), were copied on the e-mail.  A prior e-mail in this chain was sent from Ebel to six GSK employees, including attorney Greer, and copied to seven additional GSK employees, none of whom is an attorney.  In the prior e-mail, Ebel asked for approval of attached proposed labels.  GSK's privilege log describes Document #8 as "Email sent to Stuart Greer, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

Document #9 consists of an e-mail and attachment.  The e-mail is dated August 21, 2007 and was sent from GSK employee Alan Metz to GSK employee Pearl Pugh, neither of whom is an attorney.  Ten other GSK employees, two of whom are attorneys (James Schell and Stuart Greer), were copied on the e-mail and the salutation in the e-mail ("folks") implies that Metz was addressing the e-mail to more than just Pugh.  The attachment is a draft slide deck of points for responding to physician questions.  A prior e-mail in this chain (the first of three) was sent from Pugh to eight GSK employees, including attorneys Schell and Greer, asking them to review the attachment.  GSK's privilege log describes the e-mail as "Email sent to Stuart Greer, Esq. and James Schell, Esq. for the purpose of obtaining legal advice regarding communications with medical professionals," and the attachment as "Memorandum sent to Stuart Greer, Esq. and James Schell, Esq. for the purpose of obtaining legal advice regarding communications with medical professionals."

GSK asserted the attorney-client privilege for Documents #4, 5, 6, 7, 8, and 9.

The primary e-mail in each of Documents #4, 5, 6, 7, and 8 does not contain legal advice or a request for legal advice.  While a prior e-mail in the e-mail chain for Documents #4, 5, 6, 7, and 8 arguably contains a request for legal advice (or approval) from an attorney, even if this prior

e-mail in each Document were privileged, it would need to be redacted and the primary non-privileged e-mail in each Document produced.  *See, e.g.*, *Vioxx*, 501 F. Supp. 2d at 812-13; *Rhoads*, 254 F.R.D. at 240-41.

        However, GSK has not demonstrated that the primary purpose of the prior e-mail in the e-mail chain for Documents # 4, 5, 6, and 7 was to seek legal advice.  Nor has it demonstrated that the primary purpose of the e-mail in Document #9 was to seek legal advice.  In Document #4, Attorney Greer was only one of fifteen people who received the prior e-mail and only one of seven from whom approval was sought, including employees from GSK's regulatory, clinical, safety, and marketing departments.  In Document #5, Attorney Schell was only one of four people who received the prior e-mail and from whom approval was sought.  In Document #6, Attorney Greer was only one of seventeen people who received the prior e-mail and one of five from whom approval was sought, including employees from GSK's regulatory, clinical, safety, and marketing departments.  In Document #8, Attorney Greer was only one of thirteen people who received the prior e-mail and only one of at least six from whom approval was sought.  In Document #9, Attorneys Schell and Greer were only two of eleven people who received the e-mail.  Thus, the e-mail in Documents #4, 5, 6, 7, 8, and 9 are not privileged.  *See, e.g.*, *Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.  Moreover, in Document #7, Attorney Schell was copied on an e-mail sent to a non-attorney for the primary purpose of having that non-attorney fill gaps in a Q&A document for use with the media.  Thus, the e-mail is not privileged.  *See, e.g.*, *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 164 (D.N.J. 2008) (Falk, M.J.).

        The attachments in Documents #4 and 9 are draft internal documents that incorporate comments of numerous GSK employees, including possibly attorneys.  The attachment in Document #7 is an internal Q&A for use with the media that may incorporate comments by an

attorney (though this is not apparent from the document).  Even assuming the attachment in each

case incorporates comments from an attorney, this is an insufficient basis to deem the attachment

protected by the attorney-client privilege.  *See, e.g.*, *Apotex*, 232 F.R.D. at 477-78; *Applied Telematics*,

1996 U.S. Dist. LEXIS 13782, at *19; *Allegheny Ludlum*, 1991 U.S. Dist. LEXIS 5173, at *8.

Moreover, the attachment in Document #4 was sent to fifteen GSK employees, only one of whom

was an attorney; the attachment in Document #7 was sent to a non-attorney and copied to five

other GSK employees, only one of whom was an attorney; and the attachment in Document #9 was

sent to eleven GSK employees, only two of whom are attorneys.  Under these circumstances, the

primary purpose of the attachments to Documents #4, 7, and 9 was not the obtaining or giving of

legal advice, and they are not protected by the attorney-client privilege.  *See, e.g.*, *Rhone-Poulenc*, 32

F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.

### *Document #10.*  **AVMDLZ00060996-00060997 (and AVMDLZ00060995).**

This document consists of (1) a July 24, 2007 e-mail from GSK employee David

Cocchetto to GSK employee Eric Dube, neither of whom is an attorney, with two other GSK

employees copied, one of whom is an attorney (James Schell); and (2) a July 24, 2007 e-mail from

Dube to four GSK employees, including attorney Schell, and copied to two additional GSK

employees, neither of whom is an attorney.  GSK asserted the attorney-client privilege for

Document #10.  In the second e-mail, Dube indicated that, about a week later, he would be asking

the recipients to review materials for sales representatives.  GSK's privilege log describes Document

#10 as "Email sent to James Schell, Esq. for the purpose of obtaining legal advice regarding

Avandia resource materials."

Document #10 arguably contains a request for legal advice.  However, the e-mail

was directed to a non-attorney and only copied to an attorney.  In addition, it also seeks non-legal

advice from a non-attorney.  While this is a close issue, GSK has not demonstrated that the primary

purpose of this e-mail was the seeking or obtaining of legal advice, and therefore, the e-mail is not privileged. *See, e.g.*, *Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.

**Document #11.  AVMDLZ00176449-00176458 (and AVMDLZ00152572-00152581 and AVMDLZ00102779-00102788), and AVMDLZ00176459-00176462 (and AVMDLZ00152568-00152571).**

This document consists of two attachments to an e-mail.  The e-mail is dated July 26, 2007 and was sent from GSK employee Melinda Stubbee to GSK employee Margaret Kreider, neither of whom is an attorney.  GSK asserted both attorney-client privilege and work-product protection for Document #11.  The two attachments are a draft Q&A for use with the media and a draft press release.  The attachments include comments from GSK attorney James Schell.  GSK's privilege log describes each of the attachments as "Memorandum containing legal advice from James Schell, Esq. regarding media communications."

The Special Master has ruled that GSK should redact the attorney comments on the attachments and then produce the redacted document.  GSK has not demonstrated that the primary purpose of the attachments was to seek legal advice.  While the document apparently was sent to attorney Schell for the purposes of obtaining his legal advice — and he appears to have provided such advice — this does not convert a non-privileged document into a privileged one.  Rather, in such a case, the non-privileged document may be redacted to remove the privileged communications from the attorney before being produced.  *See, e.g.*, *Vioxx*, 501 F. Supp. 2d at 810-11; *see also Apotex*, 232 F.R.D. at 477-78; *Applied Telematics*, 1996 U.S. Dist. LEXIS 13782, at *19; *Allegheny Ludlum*, 1991 U.S. Dist. LEXIS 5173, at *8.  Moreover, there is no indication that Document #11 was prepared *because of* the prospect of litigation, and therefore it is not protected by the work-product doctrine.

*See* Fed. R. Civ. P. 26(b)(3); *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260-61 (3d Cir. 1993); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990).

>    *Document #12.*  **AVMDLZ00103119-00103131.**
>
>    *Document #13.*  **AVMDLZ00103132-00103142.**
>
>    *Document #14.*  **AVMDLZ00103066-00103068.**
>
>    *Document #15.*  **AVMDLZ00102659-00102660.**

These document are: an internal GSK document, dated July 23, 2007, for use in responding to media inquiries (#12); an internal GSK document, dated July 22, 2007, for use in responding to media inquiries (#13); a July 23, 2007 list of key messages, proof points, and Q&A (#14); and a June 22, 2007 list of key messages (#15).  GSK asserted both attorney-client privilege and work-product protection for all of these documents.  GSK's privilege log describes Document #12 as "Media communications created for the purpose of obtaining legal advice regarding Avandia studies," and Documents #13, 14, and 15 as "Memorandum created for the purpose of obtaining legal advice regarding media communications."

GSK has not demonstrated that these documents constitute confidential communications made for the primary purpose of obtaining or giving legal advice, and they therefore are not protected by the attorney-client privilege.  *See, e.g.*, *Commonwealth v. Chmiel*, 889 A.2d 501, 531-32 (Pa. 2005); *Kelly v. Ford Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954, 965 & n.9 (3d Cir. 1997); *see also Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.  Moreover, there is no indication that these documents were prepared *because of* the prospect of litigation, and therefore they are not protected by the work-product doctrine.  *See* Fed. R. Civ. P. 26(b)(3); *see also Martin*, 983 F.2d at 1260-61; *Rockwell*, 897 F.2d at 1266.

**Document #16.** **AVMDLZ00046916, and AVMDLZ00046917-00047002.**

This document consists of an e-mail and a powerpoint presentation.  The e-mail is dated July 24, 2007 and was sent from GSK employee Joanna Balcarek to eight GSK employees, none of whom is an attorney, and copied to Bill Christopher, a GSK attorney.  GSK asserted the attorney-client privilege for Document #16.  GSK's privilege log describes the e-mail as "Email sent to William Christopher, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority," and the attachment as "Memorandum sent to William Christopher, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

The primary purpose of the e-mail that is part of Document #16 was not to seek legal advice.  The e-mail contains no request for legal advice; it simply transmits the current draft of a presentation to nine GSK employees, one of whom is an attorney.  Thus, the e-mail is not privileged.  *See, e.g., Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.  The attachment is simply a draft presentation and does not constitute a communication made for the purpose of obtaining or giving legal advice, and thus it is not protected by the attorney-client privilege.  *See, e.g., Apotex*, 232 F.R.D. at 477-78; *Applied Telematics*, 1996 U.S. Dist. LEXIS 13782, at *19; *Allegheny Ludlum*, 1991 U.S. Dist. LEXIS 5173, at *8.

**Document #17.** **AVMDLZ00102676-00102687.**

**Document #23.** **AVMDLZ00099847-00099848.**

These documents are: a July 22, 2007 draft Q&A for a July 2007 FDA Advisory Committee ("Ad Com") meeting on Avandia (#17), and a July 2007 draft "Dear Health Care Provider" letter regarding changes to the prescribing information for Avandia (#23).  GSK asserted both attorney-client privilege and work-product protection for Document #17, and the attorney-client privilege for Document #23.  GSK's privilege log describes Document #17 as "Media

communications created for the purpose of obtaining legal advice regarding communications with a governmental authority," and Document #23 as "Letter created for the purpose of obtaining legal advice regarding communications with medical professionals."

GSK has not demonstrated that Documents #17 and 23 constitute confidential communications made for the primary purpose of obtaining or giving legal advice, and therefore they are not protected by the attorney-client privilege. *See, e.g.*, *Chmiel*, 889 A.2d at 531-32; *Kelly*, 110 F.3d at 965 & n.9; *see also Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809. The fact that a draft document such as Document #23 incorporates comments from numerous GSK employees, including possibly attorneys, is an insufficient basis to deem it protected by the attorney-client privilege. *See, e.g.*, *Apotex*, 232 F.R.D. at 477-78; *Applied Telematics*, 1996 U.S. Dist. LEXIS 13782, at *19; *Allegheny Ludlum*, 1991 U.S. Dist. LEXIS 5173, at *8. Moreover, there is no indication that Document #17 was prepared *because of* the prospect of litigation, and therefore it is not protected by the work-product doctrine. *See* Fed. R. Civ. P. 26(b)(3); *see also Martin*, 983 F.2d at 1260-61; *Rockwell*, 897 F.2d at 1266.

> **Document #18.** AVMDLZ00047069-00047072.
>
> **Document #19.** AVMDLZ00047073-00047078.
>
> **Document #20.** AVMDLZ00047079-00047082.

Document #18 is a July 25, 2007 e-mail from GSK employee Moncef Slaoui to GSK employee Ronald Krall, neither of whom is an attorney. The document contains three earlier e-mails, the first of which was sent from Krall to Slaoui and two other GSK employees, neither of whom is an attorney, and copied to Bill Christopher, an attorney. This initial e-mail is a draft of Krall's Ad Com presentation; it is the initial e-mail in the e-mail chain in Documents #18, 19, and 20. Document #19 is a July 25, 2007 e-mail from GSK employee Moncef Slaoui to GSK employee Ronald Krall, neither of whom is an attorney, and is a response to Krall's e-mail mentioned above.

The e-mail was copied to three other GSK employees, one of whom (Bill Christopher) is an attorney.  Document #20 is a July 25, 2007 e-mail from GSK employee Lawson Macartney to GSK employee Ronald Krall, neither of whom is an attorney, and also is a response to Krall's e-mail mentioned above.  The e-mail was copied to three other GSK employees, one of whom (Bill Christopher) is an attorney.

GSK asserted both attorney-client privilege and work-product protection for Documents #18 and 20, and the attorney-client privilege for Document #19.  GSK's privilege log describes Documents #18, 19, and 20 as "Email sent to William Christopher, Esq. for the purpose of obtaining legal advice regarding communications with a governmental authority."

The primary e-mail in Document #18 was not sent by or to a lawyer.  The primary e-mail in each of Documents #19 and 20 was not sent by an attorney and is expressly addressed only to non-attorneys.  GSK has not demonstrated that the primary e-mail in each of Documents #18, 19, and 20 contains legal advice or a request for legal advice.  Even if the prior e-mail from Krall that was copied to attorney Christopher were privileged, it would need to be redacted and the primary non-privileged e-mail produced in each case.  *See, e.g., Vioxx*, 501 F. Supp. 2d at 812-13; *Rhoads*, 254 F.R.D. at 240-41.  However, the prior e-mail from Krall was sent to four GSK employees (directly to three and copied to one), only one of whom was an attorney.  Moreover, the text of the prior e-mail from Krall was specifically addressed to the three non-attorneys and not to attorney Christopher.  Under these circumstances, the primary purpose of the prior e-mail was not the obtaining or giving of legal advice, and it is not protected by the attorney-client privilege.  *See, e.g., Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.

Moreover, there is no indication that Documents #18 and 20 were prepared in anticipation and because of litigation — rather, they were prepared in anticipation and because of

the Ad Com meeting — and therefore they are not protected by the work-product doctrine.  *See*

Fed. R. Civ. P. 26(b)(3); *see also Martin*, 983 F.2d at 1260-61; *Rockwell*, 897 F.2d at 1266.

> **Document #21.  AVMDLZ00053491 (and AVMDLZ00053888).**

> **Document #22.  AVMDLZ00053492-00053493 (and AVMDLZ00053889-00053890).**

> **Document #24.  AVMDLZ00178027.**

Documents #21 and 22 are August 22, 2007 e-mails from GSK employee Lucille

Castagna to GSK employees Laraine Caponi and Christina Mishinkash, none of whom is an

attorney, regarding a telephone conference with an FDA inspector.  A prior e-mail in Document

#21 was sent from GSK Vice-President for Clinical Safety Ed Pattishall to four GSK employees,

none of whom is an attorney, and copied to three GSK employees, one of whom (William Zoffer) is

an attorney.  A prior e-mail in Document #22 was sent from GSK employee Doug Butler to six

GSK employees, none of whom is an attorney, and copied to six more GSK employees, one of

whom (William Zoffer) is an attorney.  Document #24 is an August 20, 2007 e-mail from GSK

employee Paul Huckle to GSK employee Lucille Castagna, neither of whom is an attorney.  GSK's

submissions to the Special Master indicate that the e-mail relates to a draft submission to the FDA.

The e-mail was copied to twenty-six GSK employees, two of whom (Stuart Greer and Christina

Diaz) are attorneys, and to one outside counsel.

GSK asserted the attorney-client privilege for Documents #21, 22, and 24.  GSK's

privilege log describes Documents #21 and 22 as "Email communications sent to William Zoffer,

Esq. for the purpose of obtaining legal advice regarding communications with a governmental

authority," and Document #24 as "Email sent to Christina Diaz, Esq., Sean Fahey, Esq. and Stuart

Greer, Esq. for the purpose of obtaining legal advice regarding communications with a

governmental authority."

The primary e-mail in each of Documents #21 and 22 does not contain legal advice or a request for legal advice, and was not sent by or to a lawyer.  Even if the prior e-mail in the e-mail chain in each Document that was copied to attorney Zoffer were privileged, it would need to be redacted and the primary non-privileged e-mail produced.  *See, e.g.*, *Vioxx*, 501 F. Supp. 2d at 812-13; *Rhoads*, 254 F.R.D. at 240-41.

However, GSK has not demonstrated that the primary purpose of the prior e-mails in the chain in each of Documents #21 and 22 was to seek legal advice.  Nor has it demonstrated that the primary purpose of Document #24 was to seek legal advice.  The prior e-mail in Document #21 was sent to seven GSK employees (directly to four and copied to three), only one of whom was an attorney.  Moreover, the text of the prior e-mail expressly addresses only a non-attorney in describing outstanding questions or issues.  The prior e-mail in Document #22 was sent to twelve GSK employees (directly to six and copied to six more), only one of whom was an attorney. Moreover, the text of the prior e-mail discusses the purpose of an upcoming FDA inspection and notes that a core team was being put together to address the inspector's questions; none of the six members of that team is an attorney.  The e-mail in Document #24 was sent to twenty-seven GSK employees, only two of whom are attorneys, as well as to outside counsel.  Moreover, the text of the e-mail simply makes a suggestion (from a non-attorney) for the change to a draft submission to the FDA.  Under these circumstances, the primary purpose of Documents #21, 22, and 24 was not the obtaining or giving of legal advice, and they are not protected by the attorney-client privilege.  *See, e.g.*, *Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.

**Document #25.  AVMDLZ00047453, AVMDLZ00047454-00047495, AVMDLZ00047496-00047523, and AVMDLZ00047524-00047546.**

This document consists of an e-mail and three attachments.  GSK asserted the attorney-client privilege for Document #25.  The e-mail is dated July 31, 2007 and was sent from GSK employee Suzette Osei to GSK employees Ronald Krall and Trevor Gibbs, none of whom is an attorney, and copied to six GSK employees, one of whom (Bill Christopher) is an attorney.  The attachments are draft global prescriber information for Avandamet, Avandia, and Avandaryl.  GSK's privilege log describes the e-mail as "Email sent to William Christopher, Esq. for the purpose of obtaining legal advice regarding Avandia resource materials," and each of the attachments as "Memorandum sent to William Christopher, Esq. for the purpose of obtaining legal advice regarding Avandia resource materials."

The primary purpose of the e-mail that is part of Document #25 was not to seek legal advice.  The e-mail contains no request for legal advice; it simply transmits the current draft of prescriber information to eight GSK employees, one of whom is an attorney.  Thus, the e-mail is not privileged.  *See, e.g.*, *Rhone-Poulenc*, 32 F.3d at 862; *CaremarkPCS*, 254 F.R.D. at 258; *Vioxx*, 501 F. Supp. 2d at 805, 809.  The attachments are simply draft prescriber information and do not constitute communications made for the purpose of obtaining or giving legal advice, and thus they are not protected by the attorney-client privilege.  Even if the attachments incorporate comments of GSK employees, including possibly attorneys, this is an insufficient basis to deem them protected by the attorney-client privilege.  *See, e.g.*, *Apotex*, 232 F.R.D. at 477-78; *Applied Telematics*, 1996 U.S. Dist. LEXIS 13782, at *19; *Allegheny Ludlum*, 1991 U.S. Dist. LEXIS 5173, at *8.

\* \* \* \*

Pursuant to Pretrial Order Nos. 8 and 28, any party seeking to prevent this Report and Recommendation from taking effect must file with the Court an appeal in the form of a motion with the Court within ten (10) calendar days from the date this Report and Recommendation is filed with the Court, setting forth the relief requested.  If no appeal is filed with the Court within the ten (10) day period, this Report and Recommendation will be deemed to be accepted by all parties and the Court will enter an Order accordingly.

Dated:  October 2, 2009                     /s/ Jerome J. Shestack
                                            Jerome J. Shestack, Special Master

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

**IN RE: AVANDIA MARKETING, SALES**    :

**PRACTICES AND PRODUCTS LIABILITY**    :      **MDL No. 1871**

**LITIGATION**    :      **07-md-01871-CMR**

_____    :

   :

**THIS DOCUMENT RELATES TO ALL**    :

**ACTIONS**    :

_____    :

## CERTIFICATE OF SERVICE

I, Bruce P. Merenstein, hereby certify that on October 2, 2009, I caused to be electronically filed the foregoing **Eighth Report and Recommendation of the Special Master As to Documents Withheld Pursuant to the Attorney-Client Privilege and/or Work-Product Doctrine**.  Through the Court's ECF system, this document is available for viewing and downloading.

/s/ Bruce P. Merenstein_____
Bruce P. Merenstein