IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIBILITY LITIGATION | MDL Docket No. 1871<br>07-MD-1871 |
| THIS DOCUMENT RELATES TO:<br><br>VIVIAN SHIELDS,<br><br>Plaintiff,<br><br>    -against-<br><br>SMITHKLINE BEECHAM CORP., D/B/A GLAXO SMITHKLINE.<br><br>Defendant. | **ORDER ESTABLISHING QUALIFIED SETTLEMENT FUND AND APPOINTING FUND ADMINISTRATOR**<br><br>Case No. 2:08-cv-02061-CMR<br><br>JUDGE CYNTHIA M. RUFE |

Upon Stipulation (attached) between Defendant, GLAXOSMITHKLINE LLC, formerly known as SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE) ("GSK"), and Plaintiff, VIVIAN SHIELDS, and similarly situated Avandia-related personal injury Plaintiffs in state or federal litigation and claimants who are represented by The Lanier Law Firm ("Claimants"), and for good cause shown, this Court hereby Orders as follows:

1.    The Lanier Avandia Settlement Fund (the "Fund") shall be established as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1 and pursuant to this Court's subject matter jurisdiction under Treas. Reg. Section 1.468B-1(c)(1). All settlements reached by and between Claimants and GSK shall be paid into the Fund.

2.    The Garretson Firm Resolution Group, Inc. is appointed as Fund Administrator pursuant to the terms, conditions, indemnification, and restrictions of the Stipulation to Establish

Qualified Settlement Fund, Appoint Fund Administrator and said Fund Administrator is given the authority to conduct any and all activities necessary to administer the Fund as described in said Stipulation.

3. The Fund shall be held at PrivateBank and Trust Company, a financial institution doing business in Chicago, Illinois (the "Bank"), and said financial institution shall be responsible for any and all investment-related decisions. The Bank shall not distribute any income or principal from the Fund except pursuant to joint instruction to the Fund Administrator by GSK, or its counsel, and The Lanier Law Firm ("LLF"). No other person or entity is permitted to authorize or make any withdrawals from the Fund.

4. The Fund is authorized to enter into Fund Agreements with Claimants, including any entity asserting a claim of subrogation, which may permit periodic payments in a manner prescribed and approved by this Court.

5. The Fund is authorized to effect qualified assignments of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee.

6. The Fund Administrator is authorized to distribute attorneys' fees and litigation expenses to counsel, consistent with existing contingency fee contracts and including the use of settlements with periodic payments for the benefit and convenience of the Claimants.

7. The Fund Administrator is authorized, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the Fund, and thereafter the Fund Administrator is discharged from any further responsibility with respect to the Fund.


**IT IS SO ORDERED.**

SIGNED this 7th day of June, 2010

Honorable Cynthia M. Rufe
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIBILITY LITIGATION | MDL Docket No. 1871<br>07-MD-1871 |
| THIS DOCUMENT RELATES TO:<br><br>VIVIAN SHIELDS,<br><br>Plaintiff,<br>     -against-<br><br>SMITHKLINE BEECHAM CORP., D/B/A GLAXO SMITHKLINE.<br><br>Defendant. | **STIPULATION TO ESTABLISH QUALIFIED SETTLEMENT FUND AND APPOINT FUND ADMINISTRATOR**<br><br>Case No. 2:08-cv-02061-CMR<br><br>JUDGE CYNTHIA M. RUFE |

**IT IS HEREBY STIPULATED AND AGREED**, by and between The Lanier Law Firm ("LLF"), on behalf of Plaintiff, VIVIAN SHIELDS, and similarly situated Avandia-related personal injury Plaintiffs in state or federal litigation and claimants who are represented by LLF ("Claimants"), and Defendant, GLAXOSMITHKLINE LLC, formerly known as SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE) ("GSK"), that:

1. Claimants are individuals represented by LLF who are seeking damages on account of certain acts and events as more particularly described in the Master Complaint concerning the *IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIBILITY LITIGATION.*

2. GSK is alleged to be liable for the Claimants' bodily injuries.

3. LLF and GSK have recently entered into a Master Settlement Agreement (the "Master Settlement Agreement") to settle Avandia claims, at a time when the exact allocation

among and distribution to the Claimants cannot be finalized. Hence, in the best interest of all parties, a fund - which will be identified as the "Lanier Avandia Settlement Fund" (the "Fund") - should be established to resolve or satisfy these claims, while allowing for the allocation and final disbursement of monies to be finalized.

4.   The Fund shall be a Qualified Settlement Fund ("QSF") as described in Treas. Reg. Section 1.468B-1, established by order of this Court, and the Fund shall remain subject to the continuing jurisdiction of this Court.

5.   This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a QSF "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

6.   Given valid concerns about adding unreasonable delay or expense to the transfer of settlement monies to clients, a QSF in this matter will: (1) facilitate placement of a structured settlement annuity without requiring the signature / participation of GSK; (2) permit resolution of claims by private companies or government agencies that may have a reimbursement right or lien against a Claimant's settlement amount; (3) "fast track" the payment of settlement proceeds to those Claimants who determine quickly that they are not interested in any form-of-settlement options besides a lump sum award[1]; and (4) minimize expenses.

---

[1] If the "form-of-settlement" component of the client-counseling model is employed early, lawyers should be able to identify these clients prior to settlement and shape the 468B motion practice to allow the 468B Administrator to transfer funds to these "fast track" clients as soon as the defendant tenders the settlement proceeds to the 468B.

7. The Garretson Firm Resolution Group, Inc. ("GFRG") shall be appointed as the "Fund Administrator". GFRG possesses extensive experience administering Qualified Settlement Funds. GFRG's address is as follows: 7775 Cooper Rd., Cincinnati, Ohio 45242. GFRG and its respective attorneys submit personally to the jurisdiction of this Court. Upon the dissolution of GFRG, inability or unwillingness to act, or bankruptcy, its appointment shall terminate, and LLF and GSK will seek court approval of their nominated successor Fund Administrator. Matthew Garretson's curriculum vitae annexed to this Stipulation.

8. Until such time that Claimants are entitled to settlement monies under the Master Settlement Agreement, no settlement monies shall be set apart for any Claimant, or otherwise made available so that he or she may draw upon or otherwise control said settlement monies.

9. The Fund shall only make payments to the Claimants and any entities asserting a claim of subrogation according to the terms of the Master Settlement Agreement.

10. The Fund may purchase and assign any structured settlements created under any Release Agreements. Any structured settlement shall be issued by a life insurance company that is rated A+ or better by A.M. Best Company.[2]

11. The claims made against GSK are made on account of physical bodily injury and arise out of alleged liability in tort or violation of law. Claimants shall agree in writing to a discharge of the Fund and the Fund Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the Fund, any necessary documents required or related to the discharge of those liabilities.

---

[2] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Internal Revenue Code. The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Internal Revenue Code to fund any structured settlement payments assigned to the qualified assignee.

12. The settlement monies are the sole property of the Fund. No portion of such monies shall be made available to Claimants except as specifically set forth in the Master Settlement Agreement. Until such time as monies are distributed, Claimants shall not possess any rights to demand or receive any portion of the monies or the escrowed monies or to mortgage, pledge, or encumber the same in any manner. To the extent possible, the terms of this Stipulation shall be construed so as to prevent Claimants from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the Fund.

13. The Fund Administrator shall be indemnified and held harmless by Claimants from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund. Should the Fund Administrator be named as a party to, or threatened to be made a party, to any threatened, pending or completed action, suit, or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Fund, the Fund Administrator shall be indemnified and held harmless by Claimants against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by the Court that the Fund Administrator was grossly negligent or acted with willful misconduct in connection with the administration of the Fund.

14. No bond shall be required, provided that all monies received by the Fund, which includes all principal and interest earned thereon, shall be deposited in an account comprised of

(i) United States Agency, Government Sponsored Enterprises (GSEs) or Treasury securities or obligations (or a mutual fund invested solely in such instruments) and (ii) cash equivalent securities. The Fund shall be held at PrivateBank & Trust Company, a financial institution doing business in Chicago, Illinois, according to the above terms and conditions, and said financial institution shall be responsible for any and all investment related decisions, pursuant to these terms and conditions. Notwithstanding the foregoing, PrivateBank & Trust Company shall not be allowed to distribute any income or principal from the Fund except pursuant to joint instruction to the Fund Administrator by GSK, or its undersigned counsel, and LLF.

15. The Fund Administrator shall be authorized to distribute all attorney fees and litigation expenses to counsel for Claimants, consistent with existing contingency fee contracts and, to the extent required by law, upon Court approval.

16. All taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, the expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be paid by the Fund Administrator pursuant to joint instruction by GSK, or its undersigned counsel, and The Lanier Law Firm ("LLF").

17. Upon request, the Fund Administrator will prepare and deliver Fund Statements ("Statements") to LLF, GSK and/or this Court. The Statements shall include, without limitation, a statement of receipts, investment earnings, and disbursements. The Fund Administrator shall provide the Statement no later than 10 business days following the request.

18. The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the Fund Administrator to be

genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in his reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by LLF.

19. Upon final distribution of all monies paid into the Fund, the Fund Administrator shall take appropriate steps to wind-down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

20. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the Fund upon the execution of the Order by the Court establishing the Fund.

Dated: May 2F, 2010

/s/ Richard Meadow/jr
Richard Meadow, Esquire
Catherine Heacox, Esquire
The Lanier Law Firm
Tower 56
123 E. 56th Street, 6th Floor
New York, New York 10022
(T) 212-421-2800
(F) 212-421-2878

**ATTORNEYS FOR PLAINTIFFS**

George A. Lehner, Esquire
Kenneth H. Zucker, Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
(T) 215.981.4950
(F) 215.981.4750

**ATTORNEYS FOR DEFENDANT**

## Exhibit 1

Matthew L. Garretson
The Garretson Firm Resolution Group, LLC
7775 Cooper Rd.
Cincinnati, Ohio 45242
513-794-0400 (ph)
513-936-5186 (fx)
mlg@garretsonfirm.com

Matt Garretson is the founding partner of The Garretson Firm Resolution Group which provides mass tort / class action settlement allocation and fund administration services. The firm also handles Medicare / Medicaid reimbursement claims, government benefit preservation strategies, and probate administration for individual and mass tort plaintiffs. He received his BA from Yale University and his law degree at Kentucky's Salmon P. Chase College of Law.

Matt is a frequent speaker at Continuing Legal Education seminars about lawyers' professional responsibilities in individual or mass tort settlements. He has spoken at numerous state trial lawyer and state bar associations' annual events, The Association of Trial Lawyers of America, Mealey's as well as at Mass Torts Made Perfect.

Matt is the author of a legal text book published ATLA / West Publishing entitled Negotiating and Settling Tort Cases. In addition, he has authored several articles regarding professional responsibility in individual and mass tort settlements that have been published in *Trial Magazine,* The American Bar Association's *The Professional Lawyer, Ohio Trial, Academy of Florida Trial Lawyers Journal, Utah Trial Journal,* and *Insurance Day* in the United Kingdom. In 2005, Loyola University Journal of Public Interest Law published an article by Matt entitled *"A Practical Approach to Avoiding Conflicts of Interest in Aggregate Settlements."*

Matt is an adjunct professor at Salmon P. Chase College of Law, where he teaches a course on law practice management with an emphasis on how to avoid professional liability claims. Matt's "form-of-settlement" client counseling model (re: impact of settlement on government benefits, liens / subrogation, structured settlements and the taxation of damages) has received national recognition and is designed to protect clients as well as help lawyers avoid "failure to inform" professional liability claims.

Matt serves as the special master and / or administrator of settlement funds throughout the country.

**Legal Ethics / Professional Responsibility Speaking Engagements**

- The Association of Trial Lawyers of America (Annual Seminar 2003, 2006)
- The Association of Trial Lawyers of America (Case For Hormone Therapy 2004)
- The Association of Trial Lawyers of America (Mid Winter Seminar 2005, 2006)
- The Association of Trial Lawyers of America (Legal Ethics Teleseminar)
- The Association of Trial Lawyers of America (Weekend With The Stars 2006)
- Dallas Bar Association (2002)
- Mississippi Trial Lawyers Association (2002)
- Academy of Florida Trial Lawyers (2003)
- Mass Torts Made Perfect (2003, 2004, 2006)
- Louisiana Bar Mass Tort Symposium (2002, 2004)
- Wyoming Trial Lawyers Association (2003)
- Utah Trial Lawyers Brain Injury Seminar (2002, 2003, 2004, 2005, 2006)
- Utah Bar Association Annual Seminar (2005)
- Ohio Academy of Trial Lawyers Annual (2003, 2004, 2005, 2006)
- Ohio Trial Advocacy Seminar (2004, 2006)
- Ohio Academy of Trial Lawyers Subrogation Seminar (2006)
- Ohio State Bar Association Annual Convention (2006)
- Mealeys (Lexis/Nexis) Emerging Drug and Devices Seminar (2004)
- Mealeys (Lexis/Nexis) Heart Device Litigation Seminar (2005)
- Mealeys (Lexis/Nexis) Medical Products and Heart Device Seminar (2005)
- Mealeys (Lexis / Nexis) Teleseminar concerning client expenses (2006)
- North American Brain Injury Society – Medical Issues in Brain Injury (2005, 2006)
- The Consumer Attorneys of Sonoma County (2001)
- The Consumer Attorneys of California (2001, 2003, 2004, 2006)
- Academy of Rail Labor Attorneys (2003, 2004)
- Alaska Trial Lawyer Association (2004)
- West Virginia Trial Lawyers (2003, 2006)
- Kansas Trial Lawyers Association (2003, 2004)
- Cleveland Bar Association (2001, 2005)
- Norfolk and Portsmouth Bar Association (2003)
- Virginia Trial Lawyers Association (2005)
- Finkelstein & Partners (New York, 2002, 2003)
- Jeff Anderson & Associates / Clergy Abuse Network Meeting (2003)
- TBI Symposium - Brain Injury Association of Ohio (2004, 2006)
- Doctor's Hospital - Joseph M. Still Burn Center (2002)
- Richardson, Patrick, Westbrook & Brickman Annual Meeting (SC, 2004, 2006)
- New York Academy of Trial Lawyers (2007)
- Hamilton Country Trial Lawyers Association (2005)
- Kentucky Academy of Trial Lawyers (2006)

**Relevant Publications**

I. Negotiating and Settling Tort Cases, ATLA / West Publishing (2007)
II. *A Fine Line We Walk: Counseling Clients About the "Form" of Settlement*, 13 A.B.A. Prof'L Law. 4, (2002).
III. *Don't Get Trapped By A Settlement Release*, Trial Magazine, September 2003.
IV. *Structured Settlement Factoring Transactions: New Laws Protect Clients Who Sell Their Structured Settlement Benefits*, Ohio Trial, Volume 13, Issue 2 (2004).
V. *A Practical Approach to Proactive Client-Counseling and Avoiding Conflicts of Interest in Aggregate Settlements*, The Loyola University Journal of Public Interest Law, Vlm 6 (2004).
VI. *Deferring Attorney Fees: Is There Now a Critical Mass of Enabling Legislation?* Ohio Trial, Volume 14, Issue 2 (2005)
VII. *Making Sense of Medicare Set-Asides*, Trial Magazine, May 2006
VIII. *What Does the Ahlborn Decision Really Mean?*, Ohio Trial (Fall 2006).
IX. *Medicare's Reimbursement Claim - The Only Constant is Change,* Ohio Trial (Spring 2007).