**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:  AVANDIA MARKETING, SALES PRACTICES AND PRPODUCTS LIABILITY LITIGATION | : : : : : |
| THIS DOCUMENT APPLIES TO: | : : |
| ALL ACTIONS | : : |

**MDL No. 1871**
**07-md-01871**

**RESPONSE OF HENINGER GARRISON DAVIS, LLC, TO THE PLAINTIFFS'
ADVISORY COMMITTEE'S MOTION FOR ORDER TO SHOW CAUSE
REGARDING THE JURISDICTION OF THIS COURT AND
<u>REGARDING PRETRIAL ORDER 70'S COMMON BENEFIT ASSESSMENT</u>**

The law firm Heninger Garrison Davis, LLC ("Heninger Garrison"), through

counsel, respectfully responds to the Motion of the Plaintiffs' Advisory Committee

("PAC") seeking this court's determination of whether certain claimants who are

represented by Heninger Garrison and whose Avandia cases are pending exclusively

in Alabama state court are subject to this court's jurisdiction and whether such

claimants are subject to the common benefit assessment established by Pretrial

Order 70.

At issue are 503 settled Avandia claims handled by Heninger Garrison

(hereinafter "the Heninger Garrison 503 cases"). None of those claims were ever

filed in any United States District Court and, as a result, none one of those claims

have ever been transferred to MDL 1871.  Heninger Davis has previously argued[1]

that of the 503 clients whose claims they handled, 94 executed a tolling agreement

with defendant GSK, and as such, they may be subject to the Common Benefit

Assessment established by PTO 70. For the reasons set forth below, Heninger

Garrison respectfully asks this court to conclude as follows:

   1)   The 94 Heninger Garrison claimants who executed "tolling

        agreements" with GSK but who never accessed or utilized any

        common benefit work product – apart from the tolling of the

        statute of limitations itself – owe only a reduced common benefit

        assessment (hereinafter "the 94 Heninger Garrison tolling

        agreement cases"); and

   2)   The remaining 409 Heninger Garrison claimants whose cases have

        been pending exclusively in the state court of Alabama, who never

        executed a "tolling agreement" with GSK, and who never accessed

        or utilized any common benefit work product (hereinafter "the 409

        Heninger Garrison claims"), owe no common benefit assessment.

---

[1] Heninger Garrison has previously filed a Motion to Determine Which Claimants
Are Subject to Multidistrict Litigation Common Benefit Fee Assessment with the
Circuit Court of Jefferson County, Alabama, the court with jurisdiction over the
Qualified Settlement Fund for the 504 clients represented by Heninger Garrison.
That Motion was attached as Exhibit 1 to the PAC's Memorandum in Support of
Motion For Order To Show Cause.

I.      **PTO 70 Expressly Limited the Claimants Subject to a Common Benefit Assessment**

In this court's PTO 70, the Avandia Common Benefit Fund was created to "provide for the ***fair and equitable*** sharing among plaintiffs of the cost of special services performed and expenses incurred by Eligible Counsel acting for the MDL administration and common benefit of all plaintiffs ***in this complex litigation***." (PTO 70, p. 1) (emphasis added). As established by this court, this fund was not intended to include, nor did it actually include, an assessment of *every* Avandia claim regardless of where it was filed. Rather, PTO 70 set forth clear categories of "Covered Claims" which would be obligated to pay a Common Benefit Assessment.

A.      **The 409 Heninger Garrison claims are NOT "Covered Claims" under PTO 70**

PTO 70 applies only to a defined group of "covered claims." This court's analysis of whether the 409 Heninger Garrison claims are "covered claims" should be straightforward.

Paragraph 3 of PTO 70 generally divides the definition of "covered claims" into two sub-paragraphs. Sub-paragraph "a." relates to "All Avandia claims now or hereafter subject to the jurisdiction of MDL 1871, whether disposed of before or after remand regardless of whether counsel holding a fee interest in such Avandia claims in such cases have signed the Participation Agreement... ." (PTO 70, p. 5). The use of the term "jurisdiction" clearly refers to those cases filed in the federal courts and transferred to this MDL court for handling as part of MDL 1871. The

3

inclusion of cases "before or after remand" makes it clear that this concept of "jurisdiction" applies only to cases actually filed in the United States District Courts. None of the Heninger Garrison claims have ever been filed in the United States District Courts. As such, none of the Henninger Garrison claims have ever been transferred to MDL 1871.

### 1.   The Heninger Garrison 409 Cases are not "Covered Claims" under PTO 70, sub-paragraph 3.a.

Sub-paragraph "a." set forth three defined categories of cases over which this court would have jurisdiction as part of MDL 1871:

i.      All Avandia claims settled pursuant to an MDL supervised Settlement Agreement between the parties;

ii.     All Avandia claims on tolling agreements; and

iii.    All Avandia claims in which any PSC member has a financial interest.

(PTO 70, p. 5).

It is undisputed that the Heninger Garrison claims were settled with GSK; however, that settlement was a private resolution and was not an "MDL supervised Settlement Agreement." This court should take judicial notice that it was never involved in the negotiation, nor approval, of GSK's privately negotiated settlement of the Heninger Garrison claims. Moreover, the Qualified Settlement Trust into which the settlement funds were deposited was created by the state court in Alabama and this court lacks control over any aspect of the administration of that trust.

The second defined category of "covered claims" in sub-paragraph 3.a. included Avandia claims "on tolling Agreements." Heninger Garrison has

consistently acknowledged that the 94 Heninger Garrison tolling agreement cases would fall under sub-paragraph 3. a. ii. of PTO 70. What Heninger Garrison disputes is that any of these cases realized any "common benefit" apart from the tolling of the statute of limitations. While Heninger Garrison acknowledges the role of the PSC in the negotiation of the tolling agreement, it is clear that the purpose of the common benefit assessment is far broader and contemplates a comprehensive range of case-specific work product and MDL administration. None of that work product was ever accessed by Heninger Garrison.[2] Moreover, none of the Heninger Garrison claims were ever filed in federal court such that they would have realized any "benefit" whatsoever from the MDL administration performed by the PSC. For these reasons, Heninger Garrison respectfully asks this court to reduce the percentage of the common benefit assessment owed by the 94 Heninger Garrison tolling agreement cases.

> 2.      **The 503 Heninger Garrison Cases are not "Covered Claims" under PTO 70, sub-paragraph 3.b.**

The final defined category in sub-paragraph 3 relates to all claims in which any PSC member has a financial interest. Heninger Garrison wants to be clear in this

---

[2] PTO 70 also referenced and attached a "voluntary Attorney Participation Agreement" between the PSC and other plaintiffs' attorneys. Had any of the Heninger Garrison attorneys, or any of the attorneys with a fee interest in the Heninger Garrison 503 cases, signed the Participation Agreement, which they did not, they would have been "entitled to receive the MDL common benefit work product and also the state court work product of those attorneys who have also signed the Participation Agreement." (PTO 70, p. 4). Because they never signed the Participation Agreement and because they never received the "MDL common benefit work product", the benefit justifying a full 7% common benefit assessment from the 503 Heninger Garrison cases was never received. There was no "fair and equitable sharing" for the benefit of the 503 Heninger Garrison cases, as such there is no basis to impose a full 7% Common Benefit Assessment on those cases.

regard: no member of the PSC for MDL 1871 has any financial interest in the 503 Heninger Garrison cases.

PTO 70 also defined "covered claims" in sub-paragraph 3. b. :

> All Avandia claims, regardless of whether those claims are subject to the jurisdiction of MDL 1871, tolled, unfiled, *or filed in another jurisdiction*, in which the *following attorneys have a fee interest*, including, but not limited to:
>
> i. <u>Protective Order</u>: Those attorneys who executed the Endorsement of Protective Order, attached to Pretrial Order No. 10, and
>
> ii. <u>Participating Counsel</u>: Members of the PSC and plaintiffs' attorneys who sign on to the Participation Agreement, attached hereto as Exhibit 1.

(PTO 70, p. 5.) (emphasis added).  This court's analysis of whether the Heninger Garrison cases became "covered claims" pursuant to sub-paragraph 3. b. should not be difficult. It is readily acknowledged that the 503 Heninger Garrison cases were "filed in another jurisdiction" and, as such, must be analyzed pursuant to this sub-paragraph.

For cases like the Heninger Garrison 503 cases, PTO 70 established two broad classes of "covered cases" which required an analysis of the actions and identities of the attorneys having a fee interest in the cases. For sub-paragraph 3.b.i., this court must only determine whether any of the attorneys with a fee interest in

the Heninger Garrison 503 cases executed the Endorsement of Protective Order which was attached to Pretrial Order No. 10. Heninger Garrison represents to this court that neither it, nor any attorney with a fee interest in the Heninger Garrison 503 cases, executed the "Endorsement of Protective Order" in the MDL.[3]

Sub-paragraph 3.b.2. also defined "covered claims" to include "participating counsel." It is clear that neither Heninger Garrison, nor any attorney having a fee interest in the Heninger Garrison 503 cases, is a member of the PSC.  The only relevant consideration under sub-paragraph 3.b.2. of PTO 70 is whether any of the Heninger Garrison attorneys, or lawyers having a fee interest in the Heninger Garrison 503 cases, signed the "Participation Agreement" which was attached to PTO 70 as an exhibit. Quite simply, they did not.

II.      **This Court Does NOT Have "Exclusive Jurisdiction" Over Disputes About the Tolling Agreement and the Common Benefit Fund**

Heninger Garrison is constrained to respond to the unprecedented and bold assertion by the "Court-Appointed Advisory Committee" in its Memorandum In Support of Motion For Order To Show Cause that this court has "exclusive jurisdiction to resolve any disputes about the Tolling Agreement and the Common Benefit Fund." In support of that claim, the committee cited this court to the Tolling Agreement, ¶ 11.

_____

[3] In the Alabama litigation, GSK previously asked Heninger Garrison to identify all attorneys with a fee interest in the Heninger Garrison 504 cases. Heninger Garrison provided that information to GSK. GSK subsequently sought permission to share that information with the PSC from MDL 1871. Heninger Garrison agreed, and by information and belief asserts that the identity of every attorney having a fee interest in the Heninger Garrison 504 cases was disclosed by GSK to the PSC of MDL 1871.

That paragraph is silent about the concept of "exclusive jurisdiction." On the contrary, paragraph 11 contemplates that despite signing the Tolling Agreement, a claim may nevertheless be filed in state court: "If a Claimant files a lawsuit in state court...no tolling under this Tolling Agreement shall apply, and the statute of limitations shall be deemed to have run without suspension or interruption *as if this Tolling Agreement did not exist.*" (emphasis added). There was absolutely no language or inference in the paragraph to which the committee has cited·this court that "exclusive jurisdiction" to resolve disputes about the Tolling Agreement was contractually vested in this court.

Moreover, if filing the 94 Heninger Garrison tolling agreement cases in Alabama state court nullified the Tolling Agreement, then the only conceivable basis supporting the imposition of a 7% Common Benefit Assessment was also nullified.

The issue as to whether this court has jurisdictional power to enforce a common benefit assessment against cases pending exclusively in Alabama has been extensively briefed by Heninger Garrison before the Circuit Court of Jefferson County, Alabama in the matter of ***Shirley Battle, as Personal Representative of the Estate of Phillip Battle, et al. v. SmithKline Beecham (d/b/a GlaxoSmithKline)***.  A true and correct copy of that Brief is adopted in its entirety and incorporated by reference herein and is attached hereto as Exhibit "A."

Finally, by Order dated December 3, 2010, the Honorable Houston L. Brown, of the Circuit Court of Jefferson County, Alabama created the Heninger Garrison Davis Avandia Settlement Fund as a Qualified Settlement Fund and asserted his "subject matter jurisdiction" over the QSF. By the very terms of Judge Brown's Order, he

clearly asserted his ongoing jurisdiction over the QSF until "final distribution of all monies paid into the Fund." Judge Brown's assertion of ongoing subject matter jurisdiction is entirely inconsistent with the relief sought by the Plaintiffs' Advisory Committee in this matter. A true and correct copy of Judge Brown's Order of December 3, 2010 is attached hereto as Exhibit "B."

**CONCLUSION:**

For all of the reasons set forth above, this Court should decline the request of the Court-appointed Advisory Committee to require Heninger Garrison to pay any common benefit assessment on the 503 Henninger Garrison cases.

Respectfully submitted,

SHRAGER, SPIVEY & SACHS

By: _____
Wayne R. Spivey

By: _____
Robert L. Sachs, Jr.

**Counsel for**
**Henninger Garrison Davis, LLC**

9

# Exhibit "A"

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO DETERMINE WHICH CLAIMANTS ARE SUBJECT TO MULTIDISTRICT LITIGATIONCOMMON BENEFIT FEE ASSESSMENT**

Filed in the matter of ***Shirley Battle, as Personal Representative of the Estate of Phillip Battle, et al. v. SmithKline Beecham (d/b/a GlaxoSmithKline)***



AlaFile E-Notice

01-CV-2009-903739.00

Judge: HOUSTON L. BROWN

To:  CHRISTOPHER B. HOOD
     chood@hgdlawfirm.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

SHIRLEY BATTLE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PHILLIP BA
01-CV-2009-903739.00

The following matter was FILED on 6/19/2012 4:50:13 PM

**C069 ARANOWITZ JACK**

**C002 AUSTIN LINDA**

**C048 BARNIE GIBSON MICHAEL GIBSON AS PERSONAL REPRESENT**

**C057 BENNIE NEAL, JR. GLADYS NEAL AS PERSONAL REPRESENT**

**C030 BLACK EUGENE**

**C043 BRAWLEY RONALD**

**C044 BROWN ETHEL**

**C003 BUCHANAN GLORIA**

**C045 BYNUM MARY**

**C004 CASH ALLEN**

**C029 CLYDE ANDERSON, JR. ESTHER ANDERSON AS PERSONAL RE**

**C040 COLEMAN JAMES**

**C006 CRANE BILLY**

**C046 CULBERSON GLORIA**

**C007 DAILEY RICHARD**

**C033 DAVIS LINDA**

**C047 DIXON EDDIE**

**C008 ELLIS WILLIE**

**C034 FROST FELECIA**

**C009 GARRETT TERESA**

**C010 GHOLSTON MONICA**

**C050 GRAHAM KENNETH**

**C066 GREIG NORMAN**

**C011 HALL NAOMI**

C051 HARRIS MARY

C012 HATTAL ROBERT

C005 HAZEL COX BENNY COX, AS PERSONAL REPRESENTATIVE OF

C035 HOLMES DEBRA

C052 HUBBARD METTIE

C068 HUFF JERRY

C065 JENKINS ROSE

C049 JOE GIBSON IDA GIBSON, AS PERSONAL REPRESENTATIVE

C056 JOHN MILES DELORES JONES AS PERSONAL REPRESENTATIV

C071 KATHERINE WILLIAMS CHRISTY WILLIAMS AS PERSONAL RE

C067 KENNEDY DELROY

C013 KENNETH LEMLEY JEANETTE LEMLEY, AS PERSONAL REPRES

C053 KEYS LAWYER  JR.

C014 LINDSEY MAXINE

C054 LOCKHART CLEFSTON

C055 LOCKHART SYLVESTER

C015 MATTHEWS RUTH

C036 MAXWELL HIRAM

C016 MCCANTS WILLIE

C070 MILLER WILLIAM

C037 MOORE CYNTHIA

C017 MOORE ROBERT

C042 MORGAN JOHN

C058 NEWSOME JOANN

C020 ORA LEE SIMMONS ANNIE RYLES AS PERSONAL REPRESENTA

C018 PATTERSON ELIZABETH

C001 PHILLIP BATTLE SHIRLEY BATTLE, AS PERSONAL REPRESE

C019 POUNDERS HOYT

C059 RANDELL MARY

C027 REDICK BETTY

C039 RICHARDSON BARBARA

C038 SELLERS ANNIE

C021 SMITH JOE

C028 SMITH KAREN

C060 SMITH WILLIE

C061 SULLIVAN ROBERT

C062 TAPER JAMES

C063 TURNER JOHN

C022 WARE ARVIN

C031 WHITE ROBBIE

C023 WILLIAMS CORINE

C032 WILLIAMS ELLA

C024 WILLIAMS MARTHA

C064 WILLIAMS ROBERT

C041 WILSON GLORIDEAN

C025 WOMACK HELOISE

MOTION TO APPROVE SETTLEMENT TO PLAINTIFFS

**C026 ZUBOCK JEWELL**

MOTION TO APPROVE SETTLEMENT TO PLAINTIFFS

[Filer: HOOD CHRISTOPHER BOYCE]

Notice Date:     6/19/2012 4:50:13 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov

ELECTRONICALLY FILED
6/19/2012 4:50 PM
CV-2009-903739.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

IN THE CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| SHIRLEY BATTLE, as Personal Representative of The Estate of Phillip Battle, et al | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Case Number: |
| v. | ) | CV-2009-903739 |
| | ) | |
| SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, | ) | **Hearing date and time:** |
| | ) | **June 27, 2012, 11 a.m.** |
| Defendant. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO DETERMINE WHICH CLAIMANTS ARE SUBJECT TO MULTIDISTRICT LITIGATION COMMON BENEFIT FEE ASSESSMENT**

COME now the Plaintiffs to supplement their motion for a determination that no more than 94 of the claimants in this settlement are subject to the Common Benefit Fee fixed at seven percent (7%) by the federal judge overseeing the consolidated proceedings in Philadelphia, MDL 1871, or alternatively that only 42 of the claimants in this settlement are subject to that Common Benefit Fee.

The Plaintiffs, based on the Qualified Settlement Fund (QSF) established by order in this case, seek and move for an order immediately releasing and distributing pursuant to the terms of the Master Settlement Agreement (MSA) approved by this Court all putative MDL 1871 assessments. Pursuant to that order, the Common Benefit Fee fixed at seven percent would be distributed and paid in MDL 1871 (to the Common Benefit Fund in the MDL) for the 94 claimants on the tolling agreement GSK exhibits as a basis for its response in the matter (Exh. B of GSK response filed June 14, 2012). No assessment would remain withheld

in the QSF for the remaining 409 claimants in this settlement.  Any such funds would be distributed to the Claimants and their counsel.

Before filing their instant motion, the Plaintiffs conceded that the 94 persons on the tolling agreement GSK exhibits are subject to the Common Benefit Fee.  GSK does not disagree. (Those 94 persons are also identified on Exhibit A of this Reply Brief, which is the same exhibit the Plaintiff intended to exhibit with their Motion but inadvertently omitted from it.)  However, the tolling agreement by its terms applies to only 42 of the 94 persons on it, which raises the question whether only those 42, not the entire 94, should be subject to the Common Benefit Fee in the federal MDL. The Plaintiffs present the question now, and move in the alternative on it, in view of the demand which has been made in the federal MDL by certain attorneys that all 503 Plaintiffs be charged the Common Benefit Fee.  Those certain attorneys are referred to in GSK's papers as the "Avandia MDL Advisory Committee." Their demand in the MDL is Exhibit A of the response GSK filed on June 14, 2012.

The Plaintiffs ask the Court to decide if the stated assessment in the federal MDL is due to be paid for 94 of 503 Plaintiffs or 42 of 503 Plaintiffs.  GSK does not contend that it is due to be paid for all 503 Plaintiffs.  It cannot for good reason.  The MSA it entered into does not require a Common Benefit Fee to paid into the federal MDL for all the Plaintiffs. It does not prescribe such a fee.  It says only that the assessment will be paid for those Plaintiffs who owe it. GSK is estopped from arguing otherwise, based on the MSA it entered into and upon which it won approval of the settlement it submitted to the Court with the

2

Plaintiffs. It cannot join or support the attorneys in federal MDL who seek to levy against all 503 of the Plaintiffs and thereby oust this Court's jurisdiction over the QSF.

## ARGUMENT

The bid to levy against the 503 Plaintiffs is astonishing. It necessarily relies on a set of startling beliefs -- that the federal MDL court can oust and usurp the authority of state courts, contrary to law which prohibits such action; that it can ignore the federal regulation under which the QSF was approved and exists; that its power can be contracted to reach and dictate performance of agreements not before it; that it can exercise dominion over persons (these Plaintiffs) and property (the QSF) not before it; and that it can exercise all of those powers outside constitutional bounds.

**1.** **Power to Distribute Funds from the QSF Rests with This Court.**

This Court has jurisdiction over the matter, and its jurisdiction cannot be relinquished or ousted. That conclusion is established by the order entered here on December 3, 2010, whereby the Court established the QSF, and by the federal law invoked in the MSA between GSK and the 503 settling claimants. That law, under which the QSF came into existence and was approved by the Court, is 26 C.F.R. § 1.468B–1, which codifies U.S. Treasury regulation 1.468B–1. In the order of December 3, 2010, the Court appointed an administrator of the QSF and authorized him to distribute attorney fees "consistent with existing contingency fee contracts." Order at ¶¶ 1, 6. The order authorizes distributions only at the joint instruction of the parties' counsel and directs the administrator to wind down the fund upon distribution of all monies paid into it. Id. at ¶¶ 3, 7. Those rulings reflect and give effect to the Court's

continuous jurisdiction over the fund.

According to precedent, as follows, 26 C.F.R. § 1.468B–1 requires the Court to exercise continuous jurisdiction over the fund:

> Under 26 C.F.R. § 1.468B–1, a QSF is a trust, account or fund: 1) established pursuant to an order of, among others, a Court of the United States, 2) that is established to satisfy one or more contested or uncontested claims, and 3) that is a trust under state law or has its assets segregated from other assets of the transferor. 26 C.F.R. § 1.468B–1. A QSF must be subject to the continuing jurisdiction of the entity establishing it (in this case, the Court). 26 C.F.R. § 1.468B–1(c)(1). The fund is established upon the preliminary approval or order creating the fund, "even if that order or approval may be subject to review or revision." 26 C.F.R. § 1.468B–1(e).

F.T.C. v. QT, Inc., 249 F.R.D. 305, 308 (N.D. Ill. 2008) (emphasis added).  Other courts, including in a case also involving GSK as a defendant and transferor under the QSF regulations, agree that a QSF requires the continuing jurisdiction of the court which approves it. E.g., Nichols v. SmithKline Beecham Corp., 2005 WL 950616 at **30 (E.D. Pa. Apr. 22, 2005) ("The Court finds that the Settlement Fund is a 'qualified settlement fund' as defined in section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the following requirements: (a) The Settlement Fund is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court; (b) The Settlement Fund is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and (c) The assets of the Settlement Fund are segregated from other assets of GSK, the transferor of payments to the Settlement Fund.").  Therefore, distributions from the fund are a matter for this Court alone and can be made only in accordance with its orders.

4

Other requirements of a QSF bear out the point, including GSK's status as a transferor of money to the QSF to resolve or satisfy claims described in paragraph (c)(2) of 26 C.F.R. § 1.468B–1, as follows:

> (c) Requirements. A fund, account, or trust satisfies the requirements of this paragraph (c) if --
>
>> (1) It is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority;
>> (2) It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability --
>>
>> * * * *
>>
>> (ii) Arising out of a tort, breach of contract, or violation of law; or . . .
>
> (d) Definitions. For purposes of this section --
>
>> (1) Transferor. A "transferor" is a person that transfers (or on behalf of whom an insurer or other person transfers) money or property to a qualified settlement fund to resolve or satisfy claims described in paragraph (c)(2) of this section against that person.

26 C.F.R. § 1.468B-1.

## 2.     There Is No Controversy and No Risk of Inconsistency.

GSK, in the response it filed on June 14, 2012, does not attack the Plaintiffs' stance that the assessment due to the federal MDL is owed by the 94 persons on the tolling agreement GSK exhibits. There is no controversy on that score. GSK apparently believes, however, that the Court can relinquish its power over the fund to the federal district court which presides in the MDL. It contends that this Court should relinquish a decision in the

matter to that court, chiefly to avoid the risk of inconsistent decisions.  GSK is wrong.  There is no such risk.  The federal district court lacks jurisdiction to decide on or require distributions from the QSF, so it cannot decide the matter at all, inconsistently with this Court or otherwise.

This Court has dominion over the funds GSK transferred to the QSF, so its decision on the Plaintiffs' motion will control.  Inconsistency is impossible, because only one court has jurisdiction to decide on distributions.  GSK agreed to that when it entered into the MSA and when it joined the Plaintiffs in seeking the Court's approval of the QSF.  Assuming there is any doubt about that, 26 C.F.R. § 1.468B-1 dispels it.  It requires, as shown, this Court to exercise continuing jurisdiction over the funds GSK transferred to the QSF.  "A QSF must be subject to the continuing jurisdiction of the entity establishing it."  F.T.C., 249 F.R.D. at 308.  It follows that the jurisdiction cannot be interrupted, ousted, or relinquished.  GSK has not cited law to the contrary, and it cannot.

A.    The Federal Court Which Presides in the MDL Cannot Interfere.

Inconsistency also is impossible for purely legal reasons which constrain the federal MDL court and bar it from usurping this Court.  The federal MDL cannot upset or interfere with this Court's judgments approving the settlement, establishing the QSF, and prescribing the manner by which distributions from it are made and the fund is wound down.  See e.g., ITT Corp. v. Intelnet Int'l, 366 F.3d 205, 210-11 (3d Cir. 2004).  Therefore, a decision by it which is in any way inconsistent with this Court's orders, or which would render the orders ineffectual, is impossible.  The federal MDL court lacks jurisdiction to take that action.  Id.

That bar is the well-known "Rooker-Feldman doctrine," id. at 211, whereby federal district and appellate courts (the Art. III courts) are prohibited from reviewing a state court judgment or taking action which would render the state court's orders ineffectual. Id.

      B.    The Federal MDL Court Lacks Jurisdiction to Decide the Fee Issue.

The federal MDL court cannot decide the matter for reasons in addition to those given above. It lacks jurisdiction to abrogate the MSA, which is a contractual agreement. Under the plain words of 26 C.F.R. § 1.468B-1, it cannot takeover the QSF. It likewise lacks jurisdiction over the Plaintiffs' fee agreements with their counsel. Any putative judgment by it involving those subjects would be due to be vacated, as shown in cases involving an issue the same as or similar to the issue here. Brown v. Watkins Motor Lines, Inc., 596 F.2d 129, 131-32 (5th Cir 1979); see Adams v. Allied Chemical, 503 F.Supp. 253 (E.D. Va. 1980) (approved by Ryther v. KARE 11, 976 F.Supp. 853, 857-58 (D. Minn. 1997)), aff'd sub nom., Taylor v. Kelsey, 666 F.2d 53 (4th Cir.1981) (per curiam) (approved by Foster v. Board of Trustees of Butler Co. Comm. College, 771 F.Supp. 1118, 1121 (D. Kan. 1991)); Minersville Coal v. Anthracite Export Assoc., 55 F.R.D. 429 (M.D.Pa. 1972); cf. Bounougias v. Peters, 369 F.2d 247 (7th Cir. 1966) (vacating for lack of jurisdiction judgment for attorney on question arising from contingency fee agreement) (approved by Taylor, 666 F.2d at 54, and Ryther, 976 F.Supp. at 857), cert. denied 386 U.S. 983 (1967).

No Plaintiff's claim was filed in the MDL. None was settled there. All were settled by the MSA and this Court's approval of it. The QSF is the exclusive means by which the settlements have been funded and will be paid. Nonetheless, GSK claims, or apparently

7

believes, that the tolling agreement between it and the 94 Plaintiffs on the agreement confers jurisdiction on the federal MDL court to dictate performance of the MSA and distributions from the QSF. Its position is flatly contradicted by settled law.

A federal court's jurisdiction cannot be created by agreement, which means it cannot be contracted. The tolling agreement cannot, therefore, vest the MDL court with power to reach, revoke, revise, or dictate performance of (a) fee agreements between the 503 claimants and their attorneys, or (b) the MSA entered into by GSK and the 503 claimants. To argue otherwise, as GSK apparently does, is a mistake. Settled law, starting with U.S. Supreme Court decisions, proves it.

"[N]o action of the parties can confer subject-matter jurisdiction upon a federal court." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099 (1982). The tolling agreement and MSA are contracts, but they cannot confer jurisdiction on the federal court. "[J]udicial review is not a creature of contract, and the authority of a federal court to review an arbitration award – or any other matter – does not derive from a private agreement." Hoeft v. MVL Group, Inc., 343 F.3d 57, 66 (2d Cir. 2003) (emphasis added). The MDL court is a federal district court, so its jurisdiction arises only from and may be exercised in cases or controversies within the meaning of Art. III of the U.S. Constitution. That jurisdiction "may not be enlarged by consent or waiver." Adams, 503 F.Supp. at 254 (citing Pacific National Insurance Co. v. Transport Ins. Co., 341 F.2d 514, 516 (8th Cir.), cert. denied, 381 U.S. 912 (1965)).

This Court, no differently than the federal MDL court, must honor the foregoing

8

principles.  The jurisdiction which exists here over the question cannot be ousted in favor of

the MDL court.  To be sure, no ground for such action arises in federal law.  The federal

statute which authorized the MDL, 28 § U.S.C. 1407, does not expand the jurisdiction of the

MDL court.  It empowers it only to consolidate cases transferred to it from other federal

courts.  The suits of these 503 Plaintiffs never were transferred to it, much less filed in any

federal court.  The MDL court has power only over cases and controversies, and only those

controversies which satisfy 28 U.S.C. §§ 1330, 1331, which vest it with subject-matter

jurisdiction of diversity cases and cases in which federal questions are presented. So, absent

a case or controversy within the meaning of Art. III, and absent complete diversity or a

federal question, the MDL court has no authority of any kind.  That conclusion is ironclad

and unchangeable regardless of GSK's position or the position taken in the MDL by those

attorneys who seek to levy against the Plaintiffs.  This decision clearly supports that point:

> Lack of jurisdiction of the subject matter of litigation cannot be waived by the parties or ignored by the court. If jurisdiction is lacking the trial court should, on its own motion, decline to proceed in the case, and if the court tries a case where jurisdiction is lacking the jurisdiction of the appellate court on review is limited to correcting the error of the trial court in entertaining the action.  The appellate court must satisfy itself not only of its own jurisdiction but also of that of the district court.

Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 27 (8th Cir. 1964)

(citations omitted) (quoted in part in Hunter v. Underwood, 362 F.3d 468, 476-77 (8th Cir.

2004)).

C.     Any Decision in the Matter by the MDL Court Would Be a Nullity.

In light of the above, any order of the MDL court purporting to alter or abrogate the

9

MSA or the QSF, or otherwise to dictate to the parties, would be a nullity, because "jurisdiction may not be conferred by consent[,] and lack of jurisdiction of the subject matter cannot be waived by the parties or ignored by the court." Pacific National Insurance Co. v. Transport Ins. Co., 341 F.2d 514, 516 (8th Cir.), cert. denied, 381 U.S. 912 (1965).  The MDL court cannot create a case or controversy within the meaning of Art. III of the U.S. Constitution simply by attempting to exert power over parties who are not before it and who have not brought their claims in that court, must less litigated the claims to settlement there. It cannot do so by attempting to exercise power over settlement proceeds which are property within this Court's continuing jurisdiction.

In Brown v. Watkins Motor Lines, Inc., 596 F.2d 129 (5th Cir 1979), a case likewise involving a fee question, id. at 131-32, the federal appeals court which now is the Eleventh Circuit held that the federal district court, in acting in the matter, had exceeded its power. It held, "The court's . . . Sua sponte invocation of its equity power in an effort to protect the minor as its ward, was the assumption of a jurisdiction it lacked." Id. at 132.  Accord Taylor v. Kelsey, 666 F.2d 53, 54 (4th Cir.1981) (per curiam) ("The fee dispute did not arise as a matter of necessity from anything which occurred in the proceedings of the Kepone litigation . . . There can be no alternative basis of jurisdiction.").

The Brown decision, like the Taylor case also cited above, is more compelling for the plain reason that the fee issue in it involved parties before the court which was found to lack jurisdiction over the issue.  These Plaintiffs are not before the federal MDL court, and their lawsuits and claims never have been before that court.

3.      **The Plaintiffs Did Not Agree to the Common Benefit Fee.**

Nothing in the record here or in the MDL indicates that the Plaintiffs knew and agreed that the MDL court would levy against the settlement of their claims in Alabama state court. The MSA says no more than that if any settling claimant owes a Common Benefit Fee in the MDL, that obligation will be paid. The MSA itself does not fix or impose the Common Benefit Fee, and indeed it could not, given that it and the related QSF operate in and were approved and created by this Court, not the MDL court.

Thus, absolutely nothing in any of the controlling documents vests jurisdiction in the MDL court or supports any decision by this Court at odds with the concession already made that the 94 settling claimants whose names appear on the tolling agreement GSK exhibits are due to have their settlements assessed for a Common Benefit Fee in the MDL. The tolling agreement itself provides only a ground for lowering the levy which is due to be paid. That aspect of it is the basis of the Plaintiffs' motion in the alternative for a determination that only 42 of the 94 persons on the agreement are due to pay the Common Benefit Fee. The agreement states that persons who did not fulfill the provision of the agreement requiring fact sheets to be submitted to GSK within a time certain are excluded from the agreement. As to those persons, the agreement is considered never to have existed at all. Tolling Agreement at ¶ 10 (exhibited by GSK as Exhibit B of its June 14th response). 52 of the 94 persons on the agreement did not submit the fact sheets, a circumstance GSK cannot dispute. Thus, as to those 52, the tolling agreement never existed. It follows that their settlements cannot be

levied against based on the agreement.[1]

## 4.     **The Alabama Constitution Prohibits Interference.**

The order of December 3, 2010, provides (as shown) that fees to attorneys shall be distributed in accordance with the contingency fee agreements between the Plaintiffs and their counsel.  No court, by judicial fiat, can impair those contracts.  To do so would violate Alabama's constitution.  See United Companies Lending Corp. v. Autrey, 723 So. 2d 617, 622 (Ala. 1998).

## 5.     **The Levy Would Be an Unjust Windfall.**

The words "common benefit" are not magic.  They do not bestow a lottery ticket or a license to take property.  That conclusion should be obvious, but GSK does not appear to be aware of it.  It should be aware of it, because the only law which ever allows a common benefit fee to be paid makes it abundantly clear.  That law directly opposes any levy against all 503 Plaintiffs, for reasons which are crystal clear.  The Plaintiffs' settlement did not result from the MDL.  94 of them entered into a tolling agreement with GSK which refers to the MDL, but none of the others benefitted in any way from the MDL.

This case will determine the extent to which common benefit fees will be paid to a committee of plaintiffs' attorneys appointed by the federal court overseeing the MDL.

_____

1/     Any dispute between the Plaintiffs and GSK about a reduction to 42 claimants (from the 94 on the agreement) can be arbitrated, as provided for by the MSA (at p. 31, Sec. X).  The arbitration, if ordered, would be consistent with 26 C.F.R. § 1.468B-1, the regulation governing the QSF, as long as this Court continues to exercise jurisdiction over the QSF and the arbitration is enforceable and reviewable by it.  See id. at (e).

Recent trends which putatively expand the reach of MDL courts to assess plaintiffs who never touched the MDL are neither equitable nor constitutionally permissible. When a PSC ("plaintiffs' steering committee") is appointed by a federal MDL court, such committee has the sole authority to litigate the case on behalf of the plaintiffs in federal court. Attorneys not on the PSC who have cases in federal court have no ability to prosecute their own cases. In this instance, the Avandia PSC litigated the case, and at some point, GSK decided to begin efforts to resolve some of the cases. Not surprisingly, the PSC takes full credit for this settlement, but discovery would need to be extracted from GSK in order to ascertain all of the reasons GSK decided to settle the litigation.[2] Regardless, although the PSC could claim that it made plaintiffs' cases "easier" to settle, such does not justify the imposition of the MDL assessment. If that were the case, once an MDL was formed, every case and every claim, no matter where situated, would owe the MDL assessment when a settlement occurred. This is an absurd suggestion, yet it is quite analogous to what the Avandia PSC is attempting to do in this case.

Using the tolling agreements, which are not unique and are virtually standard in every large pharmaceutical litigation, the PSC seeks to taint the entire settlement group by apparently claiming that its efforts made it "easier" for the plaintiffs to settle their cases.

_____

2/      The Plaintiffs also would need to obtain from the PSC all documents, if there are any, which show a common benefit bestowed on the 503 Plaintiffs individually, to include but not be limited to work product which refers to any benefit. Conspicuously, other than the tolling agreement which applies by its terms to only 42 of the 503 Plaintiffs, no such evidence has been submitted in the MDL by the PSC in support of its demand against all the Plaintiffs. The failure is telling. It indicates that no benefit was bestowed.

Without deciding whether that is true, it is utterly irrelevant in any event. The Avandia PSC cannot cross the jurisdictional rubicon and tax cases which were filed and remained in Alabama state court, or were never filed at all, merely because of a claim that their efforts greased the wheels of settlement.

Work product was not shared, and no discovery from the MDL was shared with any of the 503 Plaintiffs, including the 94 originally on the tolling agreement. Only the 94 can be said to have reaped a modest benefit, and that would be their initial use of the tolling agreement. And as said, of those 94, only 42 can be said to have benefitted from tolling based on the agreement.

These facts show the incredible audacity of the suggestion to "tax" extra-jurisdictionally, in contradiction of the QSF regulation and all the foregoing law, the compensation of all 503 settling claimants. The tax would lavish an undeserved windfall on attorneys who played no role whatsoever in the settlement. It cannot conceivably be justified on the ground that the windfall attorneys bestowed a "common benefit" on the Plaintiffs. This controlling decision demonstrates as much:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); cf. Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The common-fund doctrine reflects the traditional practice in courts of equity, Trustees v. Greenough, supra 105 U.S., at 532-537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S., at 257-258, 95 S.Ct., at 1621-1622. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without

14

contributing to its cost are unjustly enriched at the successful litigant's expense.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  Accord Estate of Wanamaker, 314

Pa. Super. 177, 183, 460 A.2d 824, 825-27 (1983) (citing Boeing, ante, and holding that

"[t]his contention [of a common benefit] does not support payment of appellants' fees from

the fund.  Rather, it suggests, as the courts of California have decided, that the "common

fund" doctrine has no application where other primary beneficiaries or their attorneys have

rendered services substantially the same or similar to those who seek compensation from the

fund. It has no application, these courts hold, because in such instances no one party has been

unjustly enriched at the expense of another.").

## CONCLUSION

The Plaintiffs' motion is due to be granted.

Respectfully submitted by:

> s/ W. Lewis Garrison, Jr.
> W. Lewis Garrison, Jr.
> William L. Bross
> Christopher B. Hood
>
> *Attorneys for Plaintiffs*
> HENINGER GARRISON DAVIS, LLC
> 2224 First Avenue North
> Birmingham, Alabama 35203
> Telephone: (205) 326-3336
> Facsimile: (205) 326-3332
> Email: wlgarrison@hgdlawfirm.com
> Email: wlbross@hgdlawfirm.com
> Email: chood@hgdlawfirm.com

CERTIFICATE OF SERVICE

      I do hereby certify that on June 19, 2012, I have electronically filed the foregoing with the Clerk of the Court using the e-filing system which will send notification of such filing to all registered counsel of record as follows:

Joseph P.H. Babington, Esq.
Russell C. Buffkin, Esq.
D. Andrew Stivender, Esq.
HELMSING, LEACH, HERLONG, NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, AL 36652-2767
jpb@helmsinglaw.com
rcb@helmsinglaw.com
das@helmsinglaw.com

Kenneth H. Zucker
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
zuckerk@pepperlaw.com

Edgar C. Gentle, III
GENTLE TURNER & SEXTON
501 Riverchase Parkway East, Suite 100
Birmingham, AL 35244
escrowagen@aol.com

                              /s/ W. Lewis Garrison, Jr.
                              OF COUNSEL

16

Exhibit A - Tolled Claimants
Heninger Garrison Davis, LLC Group

ELECTRONICALLY FILED
6/19/2012 4:50 PM
CV-2009-903739.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

| FIRST | LAST |
|---|---|
| Jackie | Adams, Sr. |
| Tommy | Adesina |
| Nancy | Agerton (Dec.) |
| Carlos | Alvarez, Sr. (Dec.) |
| Clyde | Anderson, Jr. (Dec.) |
| Ronald | Ash |
| Doris | Baker |
| Sallie | Bell |
| Hollisfield | Bethea |
| George | Birney |
| Margie | Bishop |
| Cherry | Black |
| Mary | Bogguess |
| Edward | Brostowicz |
| Johnnie | Brumfield |
| Zetlee | Bush (Dec.) |
| Frances | Carter (Dec.) |
| Joseph | Carter (Dec.) |
| Amy | Chavez - Lavender |
| Billy | Crane |
| Lavada | Criswell |
| Glenda | Curtis |
| Annette | Davis |
| Dillard | Dees |
| Ronald | Derr (Dec.) |
| Rebecca | Dicus |
| Brenda | Edwards |
| Robert | England |
| Luella | Everett |
| Earlie | Farmer |
| Ralph | Furbush |
| Monica | Gholston |
| Marcia | Gose |
| James | Griffin |
| Jeanette | Harper |
| David | Hill |
| Doris | Hopkins |
| Jerry | Huff |
| Frances | James |
| Donnis | Jefferson |
| Rose | Jenkins |
| David | Jones |
| Earlean | Jones (Dec.) |
| Lawyer | Keys, Jr. |
| Mark | Killion |
| Donald | King |

Exhibit A - Tolled Claimants
Heninger Garrison Davis, LLC Group

| FIRST | LAST |
| --- | --- |
| Stanley | Kusmierz |
| James | Lang |
| Roy | Layne |
| Ronald | Leatherberry |
| Delores | Lee |
| Kenneth | Lemley (Dec.) |
| Clefston | Lockhart |
| Ruth | Matthews |
| Hiram | Maxwell |
| Willie | McCants (Dec.) |
| William | Miller |
| Juanita | Miramontes |
| Robert | Moore |
| Marie | Morgan (Dec.) |
| Benny | Murphy |
| Billy | Pack (Dec.) |
| Bobby | Pannell |
| Hoyt | Pounders |
| Reuben | Powell |
| Mary | Randell |
| Betty | Redick |
| Nancy | Resendiz |
| Gary | Reynolds |
| Barbara | Richardson |
| Morris | Roberts, Jr. |
| Arline | Robinson (Dec.) |
| Clyde | Rost |
| Glyndia | Rowell |
| Annie | Sellers |
| James | Shockley |
| Ora | Simmons (Dec.) |
| Henry | Smith |
| Larry | Stanfield (Dec.) |
| Clifford | Stone |
| Richard | Strawn |
| James | Taper (Dec.) |
| Mattie | Thrash |
| Juanita | Torres |
| McArthur | Turner |
| Charles | Van House |
| Michael | Waddington |
| Eddie | Walker, Sr. (Dec.) |
| Clarence | Watkins (Dec.) |
| Caleb | Weatherspoon (Dec.) |
| Samuel | Weinberg |
| Robbie | White |

Exhibit A - Tolled Claimants
Heninger Garrison Davis, LLC Group

| FIRST | LAST |
|---|---|
| Catherine | Wilson (Dec.) |
| Fred | Wolfe, Sr. |

# Exhibit "B"

## ORDER ESTABLISHING QUALIFIED SETTLEMENT FUND AND APPOINTING SETTLEMENT ADMINISTRATOR

Filed in the matter of *Shirley Battle, as Personal Representative of the Estate of Phillip Battle, et al. v. SmithKline Beecham (d/b/a GlaxoSmithKline)*

ELECTRONICALLY FILED
12/3/2010 2:33 PM
CV-2009-903739.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY

SHIRLEY BATTLE, as Personal Representative )
of The Estate of Phillip Battle, et al )
                             )
       **Plaintiffs** )
                             )         **CASE NO.:**
**v.** )         **CV 2009-903739 HLB**
                             )
SMITHKLINE BEECHAM CORPORATION )
d/b/a GLAXOSMITHKLINE, )
                             )
       **Defendant.** )

## ORDER ESTABLISHING QUALIFIED SETTLEMENT FUND
## AND APPOINTING SETTLEMENT ADMINISTRATOR

Upon the Joint Motion of Plaintiffs and Defendant, and for good cause shown, the Court hereby **ORDERS** as follows:

1.     The Heninger Garrison Davis Avandia Settlement Fund (the "Fund") shall be established as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1 and pursuant to this Court's subject matter jurisdiction under Treas. Reg. Section 1.468B-1(c)(1). All settlements reached by and between Claimants and GSK shall be paid into the Fund.

2.     Edgar C. Gentle, III of the firm Gentle, Turner & Sexton is appointed as Fund Administrator and Trustee (the "Fund Administrator") pursuant to the terms, conditions, indemnification, and restrictions of the Joint Motion to Establish Qualified Settlement Fund and Appoint Fund Administrator and Trustee (the "Stipulation"), and the Fund Administrator is given the authority to conduct any and all activities necessary to administer the Fund.

3.     The Fund shall be held at First Commercial Bank, a financial institution doing business in Birmingham, AL (the "Bank"), and said financial institution shall be responsible for any and all investment-related decisions, following the Fund Administrator's investment policy for fiduciaries, which is based on safety of principal, no bank balance sheet exposure and zero

sweep accounts for distributions to Claimants once authorized. The Fund Administrator shall not authorize any distributions of income or principal from the Fund except pursuant to joint instruction to the Fund Administrator by GSK, or its counsel, and Heninger Garrison Davis, LLC. No other person or entity is permitted to authorize or make any withdrawals from the Fund.

4.      The Fund, by and through the Fund Administrator, is authorized to enter into Fund Agreements with Claimants, including any entity asserting a claim of subrogation, which may permit periodic payments in a manner prescribed and approved by this Court.

5.      The Fund, by and through the Fund Administrator, is authorized to effect qualified assignments of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee.

6.      The Fund Administrator is authorized to distribute attorneys' fees and litigation expenses to counsel, consistent with existing contingency fee contracts and including the use of settlements with periodic payments for the benefit and convenience of the Claimants.

7.      The Fund Administrator is authorized, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the Fund and thereafter the Fund Administrator is discharged from any further responsibility with respect to the Fund.

**DONE and ORDERED** this the 3rd day of December. 2010.

**HOUSTON L. BROWN**
**CIRCUIT JUDGE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICS AND PRODUCTS LIABILITY LITIGATION | : : : | MDL No. 1871 07-md-01871 |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | : : : : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June, 2012, a true and correct copy of the foregoing document was electronically served to the individual below-noted:

Dianne M. Nast, Esquire
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000

Vance R. Andrus, Esquire
Andrus, Hood & Wagstaff, PC
1999 Broadway, Suite 4150
Denver, Colorado 80202
(303) 376-6360

Joseph J. Zonies, Esquire
Rielly Pozner, LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 70202
(303) 893-6100

Bryan F. Aylstock, Esquire
Aylstock, Witkin,Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, Florida
(850) 916-7450

Thomas P. Cartmell, Esquire
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
(816) 701-1102

Paul R. Kiesel, Esquire
Kiesel Boucher Larson, LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
(310) 854-4444
Plaintiffs' Coordinating Counsel

Stephen A. Corr, Esquire
Mellon & Webster, P.C.
87 North Broad Street
Doylestown, PA 18901
(215) 348-7700
Plaintiffs' Liaison Counsel

Shrager, Spivey & Sachs

Date:  June 21, 2012         BY:  _____

Wayne R. Spivey
Robert L. Sachs, Jr.