IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : | MDL No. 1871<br>No. 07-md-01871-CMR |
| THIS DOCUMENT RELATES TO: | : : | |
| COUNTY OF SANTA CLARA, Individually, and on behalf of the People of the State of California, | : : : : | No. 10-cv-01637-CMR |
| Plaintiff, | : : | |
| v. | : : | |
| SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, a Pennsylvania Corporation; and DOES 1-100, Inclusive, | : : : : | |
| Defendants. | : : | |

**EIGHTEENTH REPORT AND RECOMMENDATION OF
THE SPECIAL MASTER AS TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF ALL CALIFORNIA CALL NOTES**

Pretrial Order No. 28 sets forth the procedures regarding discovery disputes and directs the parties first to present discovery disputes to the Special Master for informal mediation efforts. On numerous occasions over the past few months, during in-person and telephone conferences, the parties have discussed with the Special Master plaintiff's request for production from defendant of all Avandia-related California call notes from 1999 until the time GSK ceased promoting Avandia through the use of sales representatives. As discussed below, the parties have

reached an impasse on this issue and, as a result, the Special Master submits this Report and Recommendation on the dispute.

**BACKGROUND**

Plaintiff first requested production of "all documents reflecting Avandia-related communications between sales representatives and healthcare providers in California, including but not limited to call-notes and electronic databases, from 1999 to the present" in November 2011, as part of plaintiff's first request for production of documents. GSK objected to producing *all* call notes, primarily on the ground that, as it put it in an April 19, 2012 letter, "the burden and expense of the proposed discovery greatly outweighs any probative value of the call notes." GSK already produced a random sample of 10% of call notes in the MDL for the period 2003 to 2007, so plaintiff has access to approximately 175,000 call notes for California-based sales representatives. GSK also agreed to produce an additional sample of 10% of California call notes for the period 1999 to 2003. GSK contended this was sufficient and that plaintiff was not entitled to production of additional call notes.

At meetings with the parties in May and June 2012, the Special Master indicated that he found it reasonable for GSK to produce a random sample of call notes, rather than all of the California call notes, *if* the parties could agree on a sampling and extrapolation method that would not prevent plaintiff from pursuing its claim for civil penalties under the California False Advertising Law for each alleged misstatement in the marketing of Avandia. The Special Master charged the parties with meeting and conferring in an attempt to arrive at a sampling and extrapolation method that was acceptable to both parties.

When these attempts were unsuccessful, plaintiff renewed its request for production of all call notes, supported by a June 20, 2012 letter to the Special Master. GSK responded on June

26, 2012, reiterating its position that production of all call notes was unnecessary and burdensome. After review of the parties' submissions, the Special Master recommended on July 6, 2012 that GSK either produce all call notes or propose (by July 11, 2012, later extended at GSK's request to July 13, 2012) a sampling and extrapolation method.  On July 13, 2012, GSK notified the Special Master that it would not propose a sampling method and that it objected to the Special Master's recommendation.  As a result, the Special Master is submitting this Report and Recommendation.

**ANALYSIS**

The Special Master recommends that GSK produce all requested call notes.  Plaintiff is entitled to production of any documents that are relevant to its claims and reasonably calculated to lead to the discovery of admissible evidence.  FED. R. CIV. P. 26(b)(1).  In the Court's October 26, 2011 opinion denying in part GSK's motion to dismiss, the Court held that, if plaintiff prevails in this action, the civil penalties under the California False Advertising Law that plaintiff seeks would be measured by the "instances of misstatements made in marketing." Slip Op. at 11.  Plaintiff plausibly alleges that the call notes it seeks contain such "instances of misstatements" regarding Avandia and the call notes are therefore discoverable.

GSK has argued that the call notes are not admissible at trial, but many courts have held otherwise.  *See, e.g.*, *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 460 (D.N.J. 2009) (finding "sales call notes highly probative as to whether false advertising was occurring and to what proportion of the audience the allegedly false messages were being disseminated"); *Zeneca, Inc. v. Eli Lilly & Co.*, No. 99 Civ. 1452, 1999 U.S. Dist. LEXIS 10852, at *5-*8 (S.D.N.Y. July 19, 1999) (holding that "call notes satisfy the business records exception to the hearsay rule" and "are also admissible as admissions under Federal Rule of Evidence 801(d)(2)(D)").  In any event, this is not the proper standard for production of documents in discovery.  *See* FED. R. CIV. P. 26(b)(1).

GSK has argued that plaintiff exaggerates the significance of the call notes, but this argument once again ignores the standard for discoverability of documents. Plaintiff is entitled to production of all relevant information, not just the most important pieces of information. The fact that call notes may be informal and in some cases fragmentary or unclear does not diminish their relevance, though it may undercut their probative value at trial.

GSK also has proposed to conduct searches of its call note database for words or phrases suggested by plaintiff, but plaintiff is under no obligation to confine its discovery request to those documents meeting particular word-search criteria. The call notes are unquestionably relevant and in the absence of an agreement allowing for production of a sample of the notes, plaintiff is entitled to production of all them, so that it can conduct any word searches itself.

As noted, the Special Master urged the parties to agree on a method by which GSK could produce a sample (such as 10 percent) of the California call notes that would allow for extrapolation, but the parties were unable to agree on such a method. In its submissions to the Special Master, GSK complained that plaintiff had not provided sufficient detail on its proposed extrapolation, but the burden of developing an extrapolation method that is acceptable to both parties does not fall exclusively on plaintiff. In fact, because GSK is resisting plaintiff's request for production of all call notes — material to which plaintiff is presumptively entitled under Rule 26 — GSK has an equal, if not greater, obligation to propose an extrapolation method that would provide plaintiff with the necessary information to prove its case at trial if it does not receive all of the call notes containing potential instances of misstatements. *See, e.g., Perez v. State Farm Mut. Auto. Ins. Co.*, No. C-06-01962, 2011 U.S. Dist. LEXIS 64435, at *4-*8 (N.D. Cal. June 16, 2011) (noting that the court authorized defendants to produce a "statistically valid sample" of certain documents if they stipulated that they would not argue that plaintiffs' case "is deficient based on any responsive documents not produced"); *Ralston v. Mortgage Investors Grp., Inc.*, No. 08-cv-00536, 2011 U.S. Dist.

LEXIS 30832, at *3-*4 (N.D. Cal. Mar. 14, 2011) (holding that magistrate judge's order offering defendant a choice of producing all documents or a sample, along with a stipulation to not challenge plaintiff's case on the basis of the non-produced documents, was "entirely appropriate").

The Special Master reiterates that it is in both parties' interests to agree on a method of extrapolation that would allow GSK to produce a sample of California call notes for the relevant time period, but that would not impair plaintiff's ability to rely on call notes to demonstrate the total number of instances of alleged misstatements. *Cf.* FED. R. CIV. P. 26(b)(2)(C)(iii) (providing that a court must limit the extent of discovery if it determines, after weighing various factors, that "the burden or expense of the proposed discovery outweighs its likely benefit"). The Special Master urges the parties to continue working toward this end and to agree on a method of sampling and extrapolation that minimizes any burden of production on GSK while providing plaintiff with the information it needs to present its case on both liability and remedy. At this time, however, given the impasse of the parties, the Special Master recommends that the Court compel GSK to produce all Avandia-related California call notes.

\* \* \* \*

Pursuant to Pretrial Order Nos. 8 and 28, any party seeking to prevent this Report and Recommendation from taking effect must file with the Court an appeal in the form of a motion with the Court within ten (10) calendar days from the date this Report and Recommendation is filed with the Court, setting forth the relief requested. If no appeal is filed with the Court within the ten (10) day period, this Report and Recommendation will be deemed to be accepted by all parties and the Court will enter an appropriate Order.

Dated:  July 18, 2012            /s/ Bruce P. Merenstein
                                                 Bruce P. Merenstein, Special Master

## CERTIFICATE OF SERVICE

I, Bruce P. Merenstein, hereby certify that on July 18, 2012, I caused to be electronically filed the foregoing **Eighteenth Report and Recommendation of the Special Master as to Plaintiff's Request For Production of All California Call Notes**.  Through the Court's ECF system, this document is available for viewing and downloading.

/s/ Bruce P. Merenstein
Bruce P. Merenstein
