## Individual Claimant and MAO PLRP Agreement

The Garretson Resolution Group ("Garretson" or "GRG"), which serves as the Lien Resolution Administrator ("LRA") of certain Avandia settlements involving GlaxoSmithKline LLC ("GSK") as a settling party, and the Medicare Advantage Organization identified below (the "MAO") enter into this agreement in order to to resolve the MAO's potential reimbursement and subrogation claims arising from their coverage under Medicare Part C with respect to certain claimants who are identified as being both settling parties in the Avandia settlements and an insured of the MAO.  The LRA acknowledges that settling Avandia claimants' counsel identified in Schedule "A" hereto ("Claimant Counsel") have agreed to adopt a Medicare Advantage Organization Private Lien Resolution Program (the "Program" or "PLRP") to verify, resolve, and satisfy outstanding reimbursement and subrogation claims with respect to those individual claimants they represent who have agreed to disclosure of their personal identifying data and who have been identified by the LRA to have been insured by the MAO for Medicare Advantage/Part C coverage during the period determined by the LRA to have been the period during which medical care was provided for the alleged Avandia-related injury for which settlement compensation is being paid.  This Agreement is intended to identify the core elements of the Program, its intended consequences, and to bind the MAO, Claimant Counsel, and LRA, to the Program described herein.  Although GSK is not a party to this Agreement, GSK is an intended third-party beneficiary of this Agreement.  This voluntary program shall be distributed by the LRA to all claimants' counsel who thereafter may elect to participate herein by signing and returning to the LRA a "consent to participate" form and thereafter by giving notice to their individual affected clients of the Program Materials.  Signature by such law firms shall constitute an amendment to this Agreement.

**Program Structure**

1)   MAO Participation: The MAO shall be bound to the terms of this Program as of the date of its acceptance of this Agreement and it shall be strictly bound not to divulge the name, personal identifying information or settlement terms or amounts of any claimant, or associated Avandia user, to any other entity.

2)   Participating Claimant Counsel: The LRA has secured agreement from Claimant Counsel to distribute the Program materials to individually affected clients of those Claimant Counsel.

3)   Program Materials: LRA to draft all Program materials.  Program materials shall include program introduction, participating claimant participation, resolution and repayment forms.

4)   Exemption Case Criteria: Parties agree that the MAOs will not pursue recovery and hereby release any purported claims against, and against GSK with respect to, claimants whose gross Avandia settlement values are equal to or less than $5,000.00 or as to whose settlement the MAO has already reached resolution of a claim for reimbursement.

5)   Program Participation: Program participation by an Avandia claimant is voluntary. Affected claimants who have settled with GSK, and whose law firms agree to distribute Program materials, shall have the option to participate in this Program as they wish.

      Unless and until a claimant agrees, in writing, to participate, the LRA shall not divulge to the MAO any name, personal identifying information or settlement terms or amounts for that claimant or any associated Avandia user, and further the LRA shall divulge that data only for those claimants who have agreed to disclosure of their personal identifying data and who have been identified by the LRA to have been insured by the MAO for Medicare Advantage/Part C coverage during the period determined by the LRA to have been the period during which medical care was provided for the alleged Avandia-related injury for which settlement compensation is being paid.

6) Program Administration Cost: The MAO will pay the LRA $200.00 for each reimbursable lien; however, the amount of the MAO's payment to the LRA for each individual lien shall not exceed the reimbursable amount of said lien. An individual claimant owing reimbursement to the MAO shall owe and pay to the LRA the sum of $200.00, provided however that the individual claimant shall not owe the LRA any fee related to any claim submitted to the LRA by the MAO that was not submitted in compliance with the claims process described in paragraph 8 below.

7) Use of Claimant Data: A claimant's or any associated Avandia user's name, personal identifying information or settlement terms or amounts shall not be divulged to any person or entity not bound by this Agreement other than GSK or used for any other purpose, including the identification of reimbursement claims for non-participating MAOs or other insurance plans or claimants.

8) Claimant Match: The MAO and the LRA shall engage in the claims process outlined in the following protocol:

    a. Within 90 days of the execution date of the PLRP, and periodically thereafter, the LRA shall provide the MAO with a list containing the Full Name, Address, DOB, and SSN, together with member ID where available, of all Avandia claimants, or associated Avandia user for claimants, who have voluntarily agreed to participate in the PLRP, and who have been identified by the LRA to have been insured by the MAO for Medicare Advantage/Part C coverage during the period determined by the LRA to have been the period during which medical care was provided for the alleged Avandia-related injury for which settlement compensation is being paid, but excluding those claimants whose Avandia gross settlement values are known to the LRA to be equal to or less than $5,000.00.

    b. The MAO will confirm coverage of individuals within 90 days of receipt of each list. Without good cause shown, matches not provided within 90 days shall be excluded.

9) Program Holdback Provision: The LRA will coordinate the holdback of 20% of the gross funds due to eligible claimants. A claimant's 20% holdback shall be reduced to an amount equal to that of the FLV described in paragraph 17.

10) Claims Generation: Within 90 days of providing the LRA with a list of confirmed insureds, the MAO shall deliver to the LRA individual claims listing payments made on behalf of each individual insured for the treatment of injuries allegedly caused by

Avandia (hereinafter the "IBV," or "Inbound Values").  IBVs shall comply and shall be limited to those charges and limitations provided for in the Injury Related Care procedure provided by the LRA.

11) Operational Workflow:  Operational Workflow shall be as set forth in the Claims and Audit Protocol attached hereto, which includes a list of eligible Injury Related Care ("IRC") procedures and medication codes.

12) Claims Audit: The IBV shall be audited by the LRA and it shall declare an audited claims value ("ACV") for every eligible claim.

13) Audit Protocol: Parties agree to the attached audit protocol to ensure accuracy and uniformity in an effort to identify injury related medical care costs incurred by MAOs as a result of a compensable injury.

14) Approved Value ("AV"):  The Approved Value ("AV") shall be the ACV less any offsets under sections 16. LRA shall determine the AV based on the agreed upon Audit Protocols and has no discretion to deviate from those Protocols in any manner.  The MAO as well as individual claimants may appeal subject to section 15, below.

15) Appeal:  Parties shall have 10 business days from the date notice of the AV is received to appeal the AV in writing to the LRA, with copies to the affected attorneys.  Appeals are limited to disputes regarding the relatedness of medical care to the compensable injury, disputes relating to insurance coverage and the calculations made pursuant to this PLRP.  The parties agree that if they cannot mutually resolve any protest within 30 days, an appeal may be submitted by either party to a neutral third party for a binding, non-appealable decision.  The party that the neutral third party rules against will be responsible for associated fees of the neutral third party.  The parties agree that Special Master Bruce Merenstein shall be the neutral third party contemplated in this section regarding Appeals.

16) Program Offset Application:  A Program Offset of 50% shall apply to the ACV generated by an MAO.

17) Program Cap: The LRA determines the Final Lien Value ("FLV") by comparing the program caps (detail below) to the AV.  The lesser of the program caps below or the AV becomes the FLV.  Program Caps:

   a. 15% of gross settlement amount; OR,

   b. if in addition to a Medicare C obligation, statutory governmental liens such as Medicare A or B, military liens (such as Veterans Affairs and Tricare), Indian Health Services or government Medicaid obligations exist, the total medical obligation cap shall not exceed 20% of the gross settlement amount with prioritization of payment to Medicare A or B, government Medicaid, military, Indian Health Services; OR,

   c. the amount remaining after all of the following are deducted from the gross settlement amount: 1) attorney's fees, obligations to pay the Common Benefit Fund Assessment under Avandia Multidistrict litigation PTO 70, and case-related expenses

   (for these purposes all fees and expenses of any kind may not exceed 50% of gross settlement amount); 2) 1/3 of the gross settlement amount is deducted for the claimant; 3) any other medical obligations, such as Medicare A or B, government Medicaid, or military liens.

   The FLV shall be inclusive of all private healthcare liens and shall not be increased regardless of the number or dollar amount of private healthcare liens asserted against an individual participating claimant.

18) Program Release: Within the period provided in section 10 above, the MAO shall deliver to the LRA "no interest" letters for participating claimants that did not generate a reimbursement interest and then, within 30 days from receipt of final funds on all claimants against whom the MAO is entitled to recovery, an aggregate release of claims against or with respect to all participating claimants with payable reimbursement or subrogation interests.

19) Attorney Release: The MAO shall release Claimant Counsel for the participating claimant from any legal action to force that law firm to divulge to the MAO personal information on non-participating claimants. However, the MAO reserves the right to identify and pursue claims against non-participating claimants.

20) GlaxoSmithKline Release. The MAO hereby fully discharges GSK's liability, if any, for or related to each participating claimant's, and associated Avandia user's, reimbursement or subrogation obligation.

21) Miscellaneous: This document shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to conflict of laws principles. If any provision is construed to be invalid, illegal or unenforceable, the remaining provisions shall not be affected thereby. This Agreement may be executed in counterparts, whether via facsimile, electronic mail, or otherwise, with each signature constituting an original. This Agreement may also be amended in writing, in whole or in part, with the written consent of the parties.

22) The parties and GSK agree to submit any disputes or disagreements involving the PLRP to binding arbitration before Special Master Bruce Merenstein, who shall have the authority, in his sole discretion to interpret and amend this agreement so as to do substantial justice to the parties.

**THE GARRETSON RESOLUTION GROUP, INC.**

By:_____

Jason A. Wolf, President

This __ Day of ____, 2012

MAO:  _____

Title:  _____

Signature:  _____

Date:  _____