IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : | MDL No. 1871<br>07-md-01871 |
| THIS DOCUMENT APPLIES TO:<br>*Madelyn Kirbyson v. Jean-Pierre Garnier* | : : : : | Civil Action No. 12-4085 |

## MEMORANDUM OPINION AND ORDER

Rufe, J.                                                                                                            September 6, 2013

Plaintiff has filed a *pro se* complaint against Jean-Pierre Garnier, on behalf of her late husband, George Kirbyson, seeking to recover damages for personal injury to her late husband following his ingestion of Avandia, as well as derivative injuries to herself. It is alleged that George Kirbyson took Avandia daily from February 20, 2004, until his death from myocardial infarction on September 27, 2005, and that Avandia was the cause of his death. It is essentially a single-count complaint, asserting that Avandia was defective in design or formulation and unreasonably dangerous to consumers.[1] During the relevant time period, the sole defendant to this action, Jean-Pierre Garnier, was the Chief Executive Officer ("CEO") of GlaxoSmithKline LLC ("GSK"), the company that developed, manufactured, and marketed Avandia.

Before the Court are the parties' cross-motions for summary judgment. Plaintiff seeks summary judgment on the merits of her personal injury claims. Defendant also moves for summary judgment, arguing that Plaintiff previously entered into a Settlement Agreement and

---

[1] Count 1 of the complaint is captioned "Equitable Tolling of Applicable Statutes of Limitation." This is a procedural issue and is not a substantive claim against Defendant.

Confidential Release with GSK which bars her from bringing the present lawsuit against GSK's CEO Jean-Pierre Garnier.

The Court turns first to Defendant's motion. It is undisputed that, prior to the filing of the present case against Mr. Garnier, Plaintiff asserted similar claims against GSK itself. Those claims were settled in the fall of 2011, when Plaintiff, who was then represented by able counsel, signed a Settlement Agreement and Confidential Release ("Release"). Pursuant to that agreement, GSK made payment to Plaintiff of a confidential sum as consideration for the "release of all past, existing and future claims relating to Avandia, whether known or unknown."[2]

The Release states that "Claimant and GSK have reached a settlement and resolution of all Avandia-related claims that he or she has or may have against GSK, including but not limited to, all claims that were or could have been asserted . . . ."[3] The Release defines GSK as "GlaxoSmithKline LLC, a limited liability company, the entire company, and the following related entities and persons ("Related Entities and Persons"): past, present, and future officers, directors, employees, members . . . ."[4] By the terms of the Release, "Claimant agree[d] not to seek anything further from GSK or any other person or entity, including any other payment, in regard to such claims."[5] Under the caption **Release**, the document reads:

> For and in consideration of payment described in Paragraph 2 of this confidential Release, and other good and valuable consideration, **Claimant KNOWINGLY AND VOLUNTARILY RELEASES, ACQUITS, AND FOREVER DISCHARGES GSK from any and all claims and/or causes of action of whatever kind or character, which have accrued or may accrue, whether known or unknown, and includes, but is not limited to, those claims that**

---

[2] Doc. No. 5, Ex. B. Plaintiff does not dispute Defendant's representation that Plaintiff accepted the payment proffered pursuant to the Settlement Agreement and Release. See Doc. No. 5 at 3.

[3] Doc. No. 5, Ex. B.

[4] Id.

[5] Id.

2

> **Claimant or any associated Avandia user, ever had, or now has, or hereafter can, shall, or may have in the future against GSK arising out of, relating to, resulting from, or in any way connected with Avandia, including those claims and damages of which Claimant, or any associated Avandia user, is not aware and/or that Claimant, or any associated Avandia user, has not yet anticipated. Claimant expressly waives the provisions of any applicable law protecting against the release of unknown or unanticipated claims.**
>
> In addition to GSK, this Confidential Release extends to all Avandia-related claims against . . . all Related Entities and Persons.[6]

Finally, the Release states that it was made and "shall be enforced pursuant to the laws of the State of Delaware."[7]

The Release was signed by Madelyn Kirbyson on October 12, 2011, in the presence of a witness, with an acknowledgment that she understood the release and had the opportunity to obtain the advice of counsel regarding the release.[8] Claimant was represented by counsel with regard to her Avandia-related claims against GSK, and the Release was also signed by Ms. Kirbyson's counsel on October 27, 2011, beneath a statement indicating that counsel had represented Plaintiff's interest at all relevant times, had provided Plaintiff with a copy of the Release, and had made himself available to answer any and all question with respect to the substance of the Release.[9] Plaintiff later received and accepted the agreed upon financial consideration in exchange for the Release.[10]

---

[6] Id. (emphasis in the original).

[7] Id. Plaintiff does not dispute that Delaware law applies.

[8] Id.

[9] Id.

[10] Doc. No. 5, Ex. C.

3

As the Court finds that intent of the parties and terms of the agreement are unambiguous,[11] it is proper for the Court to determine whether the Release bars Plaintiff's claims, as a matter of law, on a motion for summary judgment.[12]

To determine whether the Release bars the claims raised in the present suit, the Court looks at the scope of the Release, the subject matter of the Release, and the intent of the parties to foreclose the types of claims the new litigation asserts.[13] Upon review, the Court finds the Release explicitly covered *all* Avandia-related injuries to Plaintiff's husband and her own derivative claims, and the claims set forth in the present complaint arise out of the same alleged conduct by GSK and the same alleged injuries to Plaintiff as the settled case.[14] Furthermore, the Release explicitly precluded future claims against not just GSK itself but "all Related Entities and Persons," which include "past, present, and future officers, directors, employees, members." Defendant Garnier was CEO of GSK at all relevant times, and, as such, clearly falls within the category of Related Entities and Persons. Accordingly, the Court finds that Plaintiff's claims against Mr. Garnier are barred by the Release.

Finally, the Court notes that under Delaware law, an unambiguous signed release is binding on the parties unless executed and procured by fraud, duress, accident or mutual mistake.[15] Plaintiff does not claim that she signed the Release under duress, that the Release was

---

[11] Whether a term is clear or ambiguous is a question of law, and properly before the Court on a motion for summary judgment. Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 362 (3d Cir. 1987); Osborn ex rel Osborn v. Kemp, 991 A.2d 1153 (Del. 2010). Here, Plaintiff does not argue that the terms of the Release were unclear or ambiguous, and the Court finds that they are not.

[12] Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001 (3d Cir. 1980); Chavez v. David's Bridal, 979 A.2d 1129, 1134 (Del. Super. 2008).

[13] Gunser v. City of Philadelphia, 241 Fed. App'x 40 (3d Cir. 2007); Dueley v. DynCorp Intern'l, Inc., 8 A.3d 1156, 1163 (Del. 2010)..

[14] In fact, Plaintiff's Motion for Summary Judgment [Doc. No. 4] states "the tort liability and acts of GSK and Jean-Pierre Garnier, Defendant, are identical."

[15] Dueley, 8 A.3d 1156, 1163 (Del. 2010).

procured by fraud, or that there was any accident or mutual mistake. Accordingly, the Court finds Plaintiff has provided no reason not to enforce the Release insofar as it bars the claims raised in the present litigation.

Defendant has requested the award of reasonable attorneys' fees and costs under the indemnity provisions of the Release. The Court recognizes that the Release agreement permits the award of fees and costs. The Court declines to order Plaintiff to pay reasonable attorneys' costs and fees at this time, but does so without prejudice to Defendant's right to renew his request for reimbursement for the fees and costs incurred in this litigation should Plaintiff file an unsuccessful appeal or otherwise continue to litigate claims barred by the terms of the Release.

For the reasons set forth above, the Court finds that summary judgment in favor of Defendant is appropriate and that Plaintiff's claims are barred by the Release. Accordingly, the Court will not reach Plaintiff's motion for summary judgment on the merits of her claims. An appropriate Order follows.