UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| IN RE: AVANDIA MARKETING, SALES | : | |
| PRACTICES AND PRODUCTS | : | MDL No. 1871 |
| LIABILITY LITIGATION | : | 07-md-01871 |
| | : | |
| THIS DOCUMENT APPLIES TO: | : | |
| ALL ACTIONS | : | |
| | : | |

**PLAINTIFFS' ADVISORY COMMITTEE'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE**

The Plaintiffs' Advisory Committee ("PAC") respectfully submits this Reply Memorandum in further support of its Motion for an Order to Show Cause, seeking to ensure that Girardi Keese pays its fair share to the Common Benefit Fund established by this Court in Pretrial Order No. 70 ("PTO 70").

**I.      INTRODUCTION**

Girardi Keese and the Avandia PSC made a deal.  The PSC shared its efforts and work product with Girardi Keese, in the form of documents, deposition transcripts, trial exhibit lists, trial witness lists and the institutional know-how that PSC attorneys had generated over years of litigation with GSK.  In exchange, Girardi Keese agreed to compensate the PSC for that work product by paying the court-ordered 7% common benefit assessment on its cases.  The PSC held up its end of the bargain, but Girardi Keese now wants, at best, a substantial discount on PSC work product[1] and, at worst, it expects to use it for free.  Girardi Keese is trying to break the contract it made with the PSC.

The filing of this motion should not have been necessary because the evidence that Girardi Keese should pay a common benefit assessment is overwhelming.  For this reason, the PAC also

---

[1] Girardi Keese is now asserting that only the twenty-five cases pending before this Court are subject to the common benefit assessment.  Girardi Br. at 2.

asks that this Court award it the fees and costs incurred to prosecute it.

## II.     FACTUAL BACKGROUND

Here is the evidence presented during the Hearing held by this Court on March 26, 2014:

1.      An attorney at Girardi Keese, Paul Sizemore, was a member of the Avandia PSC and, in fact, was the Chair of the PSC's Science Committee and had access to all documents and work product.  *See In re Avandia Marketing, Sales Practices and Prods. Liability Litig.*, MDL No. 1871, Order (E.D. Pa. Apr. 9, 2008) (Docket No. 108) (appointing Paul Sizemore to the PSC); March 26, 2014 Hearing Transcript (hereinafter "Tr.") 54:18-23, excerpts attached as Exhibit 1.[2]

2.      In the summer of 2007, Mr. Sizemore was part of a working group of attorneys that met and commenced the *Avandia* litigation, negotiating with GSK, even before his formal appointment to the PSC.  Tr. 45:15-24.

3.      In January 2009, Mr. Sizemore left Girardi Keese.  Tr. 63:23-25.

4.      On May 12, 2009, Keith Griffin of Girardi Keese signed an Attorney Participation Agreement, which provides for the payment of a common benefit assessment in exchange for access to PSC work product.  *See* Griffin Attorney Participation Agreement, attached as Exhibit 2.

5.      Giarardi Keese received two letters from Vance Andrus, informing it that the PSC believed Girardi Keese cases were subject to a common benefit assessment and Girardi Keese did not protest its inclusion on that list, despite an invitation to do so.  *See* Letters from V.Andrus to N.Gussack, dated August 31, 2009 and September 21, 2009, attached as Exhibit 3; Tr. 53:12-15; 54:10-14.

6.      Girardi Keese has twenty-five cases filed in this MDL from the years 2008 through 2011.  *See in re Avandia*, Stipulation and Order to Place Cases in the Suspense Docket (E.D. Pa. Oct. 9, 2012) (Docket No. 2740), attached as Exhibit 4; Tr. 59:9-12.  Some of these cases were filed after Mr. Sizemore's departure from Girardi Keese.

7.      When the common benefit fund was distributed, Girardi Keese had submitted time for payment and was allocated approximately $200,000.00, which it then declined to accept.  *See* Tr. 66:8-16.

8.      Heard Robins Cloud ("Heard Robins") was a member of the PSC and was also actively involved in the Avandia litigation before the California JCCP.  *See* Tr. 69:2-18.

9.      Both Heard Robins cases and Girardi Keese cases were part of the California JCCP trial pool.  Tr. 70:4-10.

10.     All of the attorneys with cases in the California JCCP trial pool, including Girardi

---

[2] All Exhibits to this Memorandum were admitted as evidence during the March 26, 2014 Hearing or is the Transcript of that Hearing.

Keese, worked on responding to summary judgment motions filed by GSK together, using MDL work product.  Tr. 70:11-20; 71:2-4.  The pleadings filed in response to GSK's summary judgment motions relied on evidence developed by the PSC.  Tr. 70:21-25.

11.     Girardi Keese relied on experts developed by the PSC in responding to GSK's summary judgment motions – Dr. Suzanne Parisian, Dr. Elliot Brinton, and Dr. Nicholas Jewell.  Tr. 71:11-21.  This Court held *Daubert* hearings on each of those experts in the Avandia MDL.  Tr. 71:24-72:10.

12.     Girardi Keese used the MDL trial exhibit list for its *LaVoise* case in California state court.  *See* Trial Exhibit List, attached as Exhibit 5; Tr. 73:19-25.  The MDL developed the first 1000 documents on the list and then Heard Robins (while on the Avandia MDL PSC and working in the California JCCP) added approximately 1400 additional documents to the list.  *Id.*  The list was then given to Girardi Keese and contains MDL Bates Numbers.  Tr. 74:3-16.  Heard Robins made all documents produced in the MDL available to Girardi Keese.  Tr. 81:9-11.

13.     Girardi Keese used an MDL witness list for its *LaVoise* case.  *See* Witness List, attached as Exhibit 6; Tr. 75:13-15.  The list contains depositions cuts for GSK witnesses and the deposition cuts contained in the list were done by Heard Robins.  Tr. 77:1-4.

14.     Girardi Keese played no role in taking the video depositions of GSK witnesses that they planned to use in the *LaVoise* trial and disclosed in their trial witness list.  *See generally*, Tr. 77-79.  All of these depositions were taken by MDL lawyers and cuts of the depositions were prepared by Heard Robins for the purpose of trying the first trial pool case in the California JCCP.  Tr. 76:18-77:4.

The uncontroverted evidence admitted by this Court established that Girardi Keese agreed to pay a common benefit assessment in exchange for access to PSC work product; Girardi Keese received PSC work product; and Girardi Keese used PSC work product in its state court cases.

## III.    ARGUMENT

### A.    A Girardi Keese Attorney was a Member of the Avandia PSC

It is undisputed that Mr. Sizemore, an attorney at Girardi Keese, was appointed to the PSC. PTO 70 could not be more clear.  It applies to all claims where a PSC member has a financial interest.  While at Girardi Keese, Mr. Sizemore plainly had a financial interest in all the Avandia clients represented by that firm.[3]

---

[3] Girardi Keese bizarrely asserts that Mr. Sizemore had no financial interest in any of the Girardi Keese cases.  That makes no sense.  Mr. Sizemore was employed by Girardi Keese, so unless he worked for free, his financial interests were tied to the success (or failure) of Girardi Keese cases.

The fact that Mr. Sizemore later left Girardi Keese is of no moment.  The bell cannot be unrung.  Girardi Keese benefited from Mr. Sizemore's involvement and access to PSC work product while he was employed there.  All the information learned from the PSC during that time did not vaporize.  It is not possible for all attorneys and staff members that had access to PSC work product to forget everything they learned the moment Mr. Sizemore walked out the door.  The information accumulated during Mr. Sizemore's tenure inured to Girardi Keese's benefit and it should not be permitted to shirk its responsibility to compensate the PSC for it.

Girardi Keese also argues that PTO 70 only applies to attorneys who served on the PSC *and* signed Pretrial Order No. 10 ("PTO 10") – the Protective Order in this case.  But this argument fails, since by its own terms, PTO 10 did not have to be signed by *any* counsel of record in the MDL.  *In re Avandia*, MDL No. 1871, Pretrial Order No. 10 (Protective Order), at ¶6(o) (E.D. Pa. June 11, 2008) (Docket No. 138).  Only counsel who had not appeared in the MDL, but wanted access to PSC work product had to sign PTO 10.  *Id.* at ¶6(f).  This applied primarily to attorneys with cases in state court, many of whom have since paid the common benefit assessment, in recognition of the assistance they received from the PSC.  PTO 70 thus applies to attorneys who signed PTO 10 (primarily state court counsel) *and also to* the PSC members and other counsel who signed PTO 70's Participation Agreement.  Counsel become subject to the common benefit assessment by doing either, not both.

### B.    A Girardi Keese Attorney Signed an Attorney Participation Agreement

Girardi Keese also admits that Keith Griffin, an attorney at Girardi Keese, signed an Attorney Participation Agreement (the "Agreement").  The Agreement explains that the PSC has been working to develop common benefit work product that will be valuable to both federal and state cases.  It also states that counsel who sign the Agreement want to obtain PSC work product and maintain a working relationship with the PSC.  Girardi Keese did both these things – obtained

4

PSC work product, and maintained a working relationship with the PSC through Heard Robins.

Girardi Keese makes a tortured argument that the Agreement only applies to cases that existed at the time the Agreement was signed.  This argument fails for at least two reasons.

First, Paragraph 1 of the Agreement expressly incorporates by reference "any Order of the Court regarding assessments."   This plainly means PTO 70, the only Common Benefit Order entered by this Court.  And, PTO 70 expressly refers to future claims.  *See* PTO 70 ¶3(a).

Second, Paragraph 2 of the Agreement states that it applies to "unfiled" claims, as well as those currently filed in state or federal court.[4]  Unfiled claims are clearly those that may become filed claims in the future.  Without interpreting "unfiled" as "claims that may be filed in the future," there is no practical way to determine what would qualify as an unfiled claim.  The alternative would be to define it as claims that an attorney has in inventory at a particular time, but there is no good way to describe that.  It could be defined as claims with signed fee agreements; it could be claims that are still under investigation; it could be claims where the client has called, but not yet come in for a consultation.  Regardless, all of these amorphous stages share the definition that they are claims that may be filed in the future.  And Girardi Keese has agreed to pay the common benefit assessment on those cases.

### C.      Girardi Keese used Avandia PSC Work Product

The majority of Girardi Keese's argument is focused on how its attorneys purportedly developed its cases and evidence completely independently of PSC work product, repeatedly mentioning the financial investment it made in its cases.[5]  The PAC has no reason to doubt the accuracy of Girardi Keese's accounting and are familiar with the costs of medical records and case-

---

[4] Girardi Keese limits its argument to the "currently filed in state or federal court" clause and does not address the "unfiled" clause.

[5] Girardi Keese actually asserts that the PSC should pay it for the work Girardi Keese did in the California JCCP.  This is an interesting assertion, given that the PSC tried to pay Girardi Keese for the time it spent on common benefit work in the MDL and Girardi Keese sent the money back.  Tr. 66:8-16.  The $200,000.00 remains in escrow, should Girardi Keese decide to collect it.  Tr. 67:18-68:1.

specific experts when working with individual clients, but as this Court pointed out, it's entirely irrelevant to the matter at hand.  Tr. 14:13-23.

The evidence demonstrated that the substantial work done by the PSC was freely shared with Girardi Keese and it used that work product.  In fact, Girardi Keese filed PSC work product in its *LaVoise* case, in the California JCCP, as if it was its own.  Girardi Keese did not take any general liability depositions of GSK witnesses, it relied on the work done by the PSC.  Tr. 77:13-79:24. Girardi Keese did not even make its own deposition cuts when assembling the *LaVoise* witness list, it relied on the work done by the PSC.  Tr. 76:18-77:4.  Girardi Keese, in concert with PSC counsel, even used the same experts that were subject to *Daubert* proceedings before this Court to survive motions for summary judgment filed by GSK in California.  Tr. 71:11-72:10.  As Mr. Kaufman testified, the exhibit list filed by Girardi Keese "took some years off my life" while his firm, Heard Robins, was on the PSC.  Tr. 73:19.  And, Mr. Kaufman could not identify any documents that Girardi Keese had added to the exhibit list work product initially generated by the PSC.  Tr. 74:3-9.

In the face of all the above testimony and documentation, Girardi Keese still claims it did all its own work.  That claim is unsupportable and not credible.  It is hard to imagine how Girardi Keese could have received and used more work product from the PSC than it actually did.

D.      **This Court has Jurisdiction to Enforce PTO 70**

Girardi Keese asserts in passing, without any support, that most of its cases are not subject to MDL jurisdiction for purposes of paying a common benefit assessment.  Girardi Keese is incorrect.

The Supreme Court has concluded that courts have the right and power to require those who benefit from a lawsuit to share in the costs of the litigation:

> Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it.  But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation-the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis, rather than through a decree-hardly touch the power of equity in doing justice as

between a party and the beneficiaries of his litigation.

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939).  The Supreme Court has explained that

jurisdiction for employing the common benefit doctrine stems from preventing unjust enrichment:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole…. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense…. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) (internal citations omitted).  The fund concept is

flexible.  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 770 (9th 1977) (explaining that a money

judgment or settlement can serve as a fund); *In re Air Crash Disaster at Florida Everglades*, 549

F.2d 1006, 1018 (5th Cir. 1977) ("whether a fund exists is a combination of traditional and

pragmatic concepts centering around the power of the court to control the alleged fund").

The power of the court to order compensation is reinforced by the body of law concerning

the inherent equitable power of a trial court to allow counsel fees and litigation expenses out of the

proceeds of a fund that has been "created, increased, or protected" by successful litigation.  *Florida*

*Everglades*, 549 F.2d at 1017.  As an example, a trust estate is a fund for purposes of exercising

jurisdiction, even though the only nexus between the trust and court may be that the trustee is a

party to the suit.  *Id.* at 1018.

Jurisdiction over a common fund is generally satisfied by jurisdiction over a party that

controls the fund.  Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee*

*Litigation* 2d ed. at 68 (Federal Judicial Center 2005).  Here, Girardi Keese's settlement is under the

partial control of GSK.  As this Court undeniably has jurisdiction over GSK with regard to the

*Avandia* litigation, this Court plainly has jurisdiction over the fund.  This is, of course, consistent

with the entire purpose of Multi-District Litigation.  One foundation of consolidated litigation is to

benefit a defendant, like GSK, by permitting efficient prosecution of cases and preventing a multitude of inconsistent rulings, subjecting a defendant's principals to multiple depositions and discovery requests.

As discussed at length above, Girardi Keese received significant benefits from the work of the PSC. And, the Third Circuit has acknowledged that merely making discovery material available confers a benefit sufficient to trigger an assessment. *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liability Litig.*, 582 F.3d 524, 548 (3rd Cir. 2009). In *Diet Drugs*, the plaintiffs' management committee ("PMC"), defendant pharmaceutical company, and a coalition of counsel involved in the state court class actions negotiated a nationwide settlement. *Id.* at 530. An attorney in Texas State Court objected to the MDL attorney fee assessment because, *inter alia*, he did not use the PMC discovery. *Id.* at 533. The Third Circuit explained that the *mere availability* of the discovery substantially influenced the defendant's evaluation of every plaintiff's case, regardless of whether the MDL discovery material was actually obtained or used by the state court plaintiffs. *Id.* at 548. The court then concluded:

> We think it beyond reasonable denial that the initial opt-out and PPH claimants benefitted from Wyeth's loss of bargaining power due to the PMC's efforts. As the District Court noted, Wyeth had to defend itself against the initial opt-out and PPH claimants knowing that they had access to pertinent discovery and understanding that they, in turn, knew Wyeth was heavily invested in settling. It stands to reason, then, that those plaintiffs stood a better chance of recovery from Wyeth than they would have absent the PMC's efforts. Thus, the PMC conferred a substantial benefit on the initial opt-out and PPH claimants.

*Id.*

Here, not only did the PSC make its work product available, Girardi Keese used it in state court. When the original Avandia case was filed, Avandia was widely viewed as a very risky litigation. The science was not well-developed and based largely upon a single study. In addition, the prospect of preemption of all pharmaceutical cases loomed large in the background. Despite these very real risks, members of the PSC and common benefit team vigorously prosecuted this

case.

The PSC performed extensive discovery in the Avandia MDL.  The PSC performed tens of thousands of hours of common benefit work.  This included demanding and reviewing tens of millions of pages of documentary evidence, taking many depositions of GSK employees and former employees, developing expert witnesses in the fields of cardiology, epidemiology, biostatistics, diabetology, endocrinology, FDA regulations, and marketing.  The PSC deposed numerous GSK expert witnesses and fully briefed *Daubert* motions.  The PSC and common fund attorneys essentially took a case that was very difficult and risky and, through its efforts, supported the Court's work in creating a settlement for over 60,000 claimants.[6]

Further, in implementing a common benefit fund, courts have explicitly included related state court actions.  *See, e.g., In re Latex Gloves Prods. Liab. Litig.*, MDL No. 1148, 2003 U.S. Dist. LEXIS 18118, at *5 (E.D. Pa. Sept. 5, 2003) (upholding common benefit assessment including state court actions because "[p]ermitting them to use discovery information in their state cases without charge would produce an anomalous and undesirable predicament"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1996 WL 900349, at *3 (E.D. Pa. June 17, 1996) (including state court cases and noting that the court expected those counsel to comply).

The Federal Judicial Center ("FJC") agrees.  In one of its publications, the FJC explains "[c]ourts may direct contributions to be made by defendants, or by plaintiffs' counsel out of individual settlement payments received.  Fees may not be imposed by a transferee judge on attorneys with no cases in the MDL and who do not use federal discovery material."  Barbara J. Rothstein and Catherine R. Borden, *Managing Multidistrict Litigation in Products Liability Cases, A Pocket Guide for Transferee Judges* at 14-15 (Federal Judicial Center 2011).  Girardi Keese's

---

[6] The Court has recognized the substantial contributions that the PSC made to the advancement of the Avandia litigation. *In re Avandia*, MDL No. 1871, Pretrial Order No. 175 (Findings of Fact and Conclusions of Law Related to the Avandia Fee Committee's Petition for an Award of Common Benefit Attorneys' Fees), at ¶5 (E.D. Pa. Oct. 19, 2012) (Docket No. 2820).

actions are precisely those contemplated by the FJC.  Girardi Keese has twenty-five cases in the MDL and it made open use of PSC work product in state court.

Including related state court cases addresses the "free rider" problem, to prevent counsel new to the litigation or third parties who pursue their claims elsewhere from riding the coattails of the parties who have performed the litigation tasks.  *See, e.g., Smiley v. Sincoff*, 958 F.2d 498, 502 (2d Cir. 1992) (transferee judge has authority to assess all counsel for work performed by committee members).  The district court in *Diet Drugs* likewise observed:

> Congress created the JPML [Judicial Panel on Multidistrict Litigation] and vested it with the authority to transfer related cases to a single court for consolidated or coordinated pretrial proceedings.  *See* 28 U.S.C. § 1407.  It is important that the transferee court have the power to appoint and compensate a plaintiffs' committee by levying an assessment against all other plaintiffs.  We understand how this may seem unfair to some of the individual attorneys involved who did a lot of work on their individual cases.  Nonetheless, it is necessary to carry out the will of Congress for the good of the public as a whole.

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liability Litig.,* MDL Docket No. 1203, 2002 WL 32154197, at * 21 (E.D. Pa. Oct. 3, 2002).

Requiring Girardi Keese to contribute to the common benefit fund will serve the interests of justice by preventing counsel who did not contribute to the common benefit of all plaintiffs from being unjustly enriched by using the PSC's work product without providing recompense.

## IV.   CONCLUSION

Based on the evidence submitted at the March 26, 2014 Hearing and the PAC's original motion and this reply, the PAC respectfully requests that this Court find that Girardi Keese must pay its fair share for the use of PSC work product and enforce the common benefit assessment on all Girardi Keese cases.  The PAC also requests that this Court award it the fees and costs incurred in the prosecution of this motion.

Dated: April 14, 2014                          /s/ Dianne M. Nast
                                               Dianne M. Nast, Esq.
                                               NastLaw LLC
                                               1101 Market Street
                                               Suite 2801
                                               Philadelphia, Pennsylvania 19107
                                               (215) 923-9300
                                               dnast@nastlaw.com

                                               Vance R. Andrus, Esq.
                                               AndrusWagstaff, PC
                                               7171 East Alaska Drive
                                               Lakewood, Colorado 80226
                                               (303) 376-6360

                                               Bryan F. Aylstock, Esq.
                                               Aylstock, Witkin, Kreis & Overholtz PLLC
                                               17 East Main Street, Suite 200
                                               Pensacola, Florida  32502
                                               (850) 916-7450

                                               Thomas P. Cartmell, Esq.
                                               Wagstaff & Cartmell LLP
                                               4740 Grand Avenue, Suite 300
                                               Kansas City, Missouri  64112
                                               (816) 701-1102

                                               Joseph J. Zonies, Esq.
                                               Reilly Pozner LLP
                                               1900 Sixteenth Street, Ste. 1700
                                               Denver, Colorado  80202
                                               (303) 893-6100

                                               *Plaintiffs' Advisory Committee*


                                               Paul R. Kiesel, Esq.
                                               Kiesel Boucher Larson LLP
                                               8648 Wilshire Blvd.
                                               Beverly Hills, California  90211
                                               (310) 854-4444

                                               *Plaintiffs' Coordinating Counsel*

11

Stephen A. Corr
Stark and Stark
777 Township Line Road, Suite 120
Yardley, Pennsylvania 19067
(267) 759-9684

*Plaintiffs' Liaison Counsel*