IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : | MDL No. 1871 07-md-1871 |
| This Document Applies to: | : : | |
| *GSK v. Girardi | Keese* | : : | 14-cv-1701 |

# DECLARATION OF THOMAS V. GIRARDI IN RESPONSE TO ORDER TO SHOW CAUSE

I, Thomas V. Girardi, declare:

1. I am an attorney at law, duly licensed to practice law in the State of California. I am a member of Girardi & Keese, counsel of record for Plaintiffs in the above-entitled action.

2. I make this Declaration in response to the Court's Order to Show Cause re: Sanctions (Master Docket No. 3961).

3. The matters set forth in this Declaration are of my own personal knowledge and if called upon to do so, I could and would competently testify thereto.

## I.

## INTRODUCTION

4. As the Court knows, the Girardi Firm and GlaxoSmithKline ("GSK") agreed to a settlement of all the Girardi plaintiffs nearly two years ago. Since that time, several disputes regarding payment have arisen.

1

## II.

## FACTS

### A. The Girardi-GSK Settlement Agreement

5.  The Girardi Firm and GSK preliminarily agreed to a settlement of all Girardi plaintiffs in April 2012. One of the reasons I entered into the agreement was the massive financial need many of my clients had as a result of debilitating injuries.

6.  Nearly a year and a half later, and after many subsequent negotiations, GSK agreed to pay a certain portion of the settlement to certain plaintiffs they agreed met the eligibility requirements.

7.  Following two partial payments to certain Girardi plaintiffs, I raised some concerns to GSK regarding numerous plaintiffs GSK contended did not meet the eligibility requirements.

8.  On January 17, 2014, I met with Ken Zucker (GSK's counsel) to discuss possible avenues to resolve these eligibility disputes. The meeting lasted nearly eight hours without any finalized result. We agreed to meet again a few weeks later.

9.  On February 10, 2014, I met with Nina Gussack and George Lehner in Washington D.C. to further discuss these disputes. We orally agreed to a resolution to the issues and cases in dispute. This agreement included specifics as to distributions and holdbacks.

10. A few days after this agreement, Ken Zucker sent me "the agreement" via email. The written proposal was vastly different from the orally agreed to terms just a few days prior.

11. I informed Mr. Zucker, as well as Ms. Gussack and Mr. Lehner, that these terms were not those we had agreed to, and that I was not willing to accept this counter-proposal. They replied that they refused to honor the oral agreement as promised. At this point, GSK further refused to make partial payments to any plaintiff, even those they had agreed met the eligibility requirements.

12. It was after this debacle that I indicated I may need to seek an order from the California court to enforce this agreement, and to monitor the resolution of the settlement

program. I also suggested that the parties resolve the issues through a neutral arbitrator at Alternative Dispute Resolution Services.

13. GSK responded with a Motion for a Temporary Restraining Order in this Court. [Docket No. 3, Case No. 14-cv-1701]

**B.    The Arbitration Process**

14. Following a hearing on GSK's Motion for a Temporary Restraining Order, this Court ordered the parties to submit the disputes to arbitration [Master Dkt. No. 3928]. Further, the Court ordered that the parties submit a status report to Court the following day as to whether the parties had mutually agreed to an arbitrator. *Id.*

15. Immediately following the hearing, our law firm put together a list of twenty nationally known arbitrators and mediators. We verified with their staff availability. The names were submitted to counsel for GSK.

16. GSK refused every proposal by our firm and instead responded with their own list of proposed arbitrators. In the interest of abiding by the Court's orders and to resolve the disputes as quickly as possible and without further delay, our firm selected Judge Layn Phillips from the list. We submitted a status report to the Court on March 27, 2014 advising of the parties' agreement to Judge Phillips. [Master Dkt. No. 3929].

17. Immediately after advising the Court, we contacted Judge Phillips' office. We spoke with Michelle Yoshida, his associate. We explained that there was some urgency due to the fact that the settlement had occurred more than two years ago and these harmed clients had yet to receive what they were entitled to.

18. On April 3, 2014, Michelle requested a conference call with Mr. Lehner and Judge Phillips to set a proposed briefing schedule and discuss other procedures.

19. Judge Phillips set April 27, 2014 for the first day of the arbitration. I cancelled a very important personal family commitment so I could leave on Saturday and get to New York on Sunday, April 27, 2014.

20.     Several days after the initial conference call, Judge Phillips' office sent the parties a conflict disclosure. This disclosure stated that Judge Phillips' law firm, Irell & Manella represents GlaxoSmithKline in pending litigation.

21.     With this knowledge, I sent Judge Phillips a letter with our position on the matter. I felt the interests of my clients and the need for an arbitrator without any potential conflict of interest warranted my letter. Judge Phillips then recused himself from the arbitration.

22.     Given the efforts Judge Phillips and the parties had put in to that point, I suggested that we keep the April 27th date as a mediation date, with Judge Phillips as the mediator. I felt that the parties may have been able to resolve the issues without the need for a two month arbitration.

23.     Shortly after my proposal, I was informed that GSK rejected the April 27, 2014 mediation date "since they could not be prepared."

24.     I cannot understand the reasoning for this, and it seemed that GSK was engaging in a deliberate pattern of stalling not only the settlement, but the arbitration process without good cause.

## III.
## CONCLUSION

25.     It has always been my intent to follow this Court's orders and resolve this matter amicably. Sadly, I have not felt the same from GSK.

26.     I am, and have always been, willing to participate in an arbitration process to resolve these disputes. I feel the interests of my clients warrant that a truly neutral arbitrator be selected in order to resolve this.

27.     I apologize for the tone of my letter to counsel for GSK. It is not my style. I believe the heartfelt concern for these people that I represent required something a little different than "I am so disappointed. I was lied to."

//

//

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Respectfully submitted,

DATED: April 22, 2014                GIRARDI | KEESE

By: _____*/s/ Thomas V. Girardi*_____
THOMAS V. GIRARDI
KEITH D. GRIFFIN
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 22, 2014, I electronically filed the foregoing document entitled **DECLARATION OF THOMAS V. GIRARDI IN RESPONSE TO ORDER TO SHOW CAUSE** with the Clerk of the Court using the CM/ECF system, which will provide notice of electronic filing to all counsel of record.

Respectfully submitted,

DATED: April 22, 2014         GIRARDI | KEESE

By:    */s/ Keith D. Griffin*
THOMAS V. GIRARDI
KEITH D. GRIFFIN
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554