IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 1871<br>07-md-01871 |
| THIS DOCUMENT APPLIES TO:<br><br>The Girardi Keese Law Firm | FILED<br>MAY 12 2014<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

## ORDER

**RUFE, J.**                                                                                               May 12, 2014

The Plaintiffs' Advisory Committee moved the Court to issue an Order to Show Cause, requiring the Girardi Keese law firm to appear and show cause why its entire inventory of settled Avandia cases should not be subject to Pretrial Order ("PTO") No. 70's Common Benefit Assessment.[1] The Court issued such an Order and held a hearing on March 26, 2014, on the issue of whether Girardi Keese is subject to the Common Benefit Assessment on all cases in which it has a financial interest.

PTO 70, which the Court entered on August 26, 2009, authorized the creation of an Avandia Common Benefit Fund, for the purpose of compensating and reimbursing attorneys for services performed and expenses incurred for the common benefit of Avandia claimants. Pursuant to PTO 70, all cases in which Plaintiff's Steering Committee ("PSC") members have a financial interest are subject to the common benefit assessment. In addition, non-PSC members who sign a voluntary Attorney Participation Agreement are eligible to receive MDL work product from the PSC and other participating attorneys, and in exchange, participating counsel are required to pay a 7% assessment to the Avandia Common Benefit Fund on all filed and unfiled cases or claims in

---

[1] MDL 1871, Doc. No. 495.

state or federal court in which they share a fee interest.

Members of the Girardi Keese firm served as lead counsel for thousands of Avandia claims being litigated in the California Judicial Counsel Coordinated Proceedings ("JCCP"). Early in Avandia litigation, the Girardi Keese law firm also filed at least four lawsuits directly into this MDL on behalf of Avandia Plaintiffs, and additional claims were transferred to this Court from other federal district courts.

On April 9, 2008, J. Paul Sizemore, Esq., an attorney at Girardi Keese, was appointed to the Avandia MDL's Plaintiffs' Steering Committee ("PSC"). Girardi Keese paid the initial assessment using a firm check. Mr. Sizemore served as the chair of the Science Committee for the PSC while working for Girardi Keese, and therefore Mr. Sizemore and Girardi Keese had access to all documents and work product. Mr. Sizemore participated in producing MDL common benefit work, for which the firm submitted time and costs sheets for reimbursement from the common fund.[2]

Mr. Sizemore left Girardi Keese in early 2009, but Girardi Keese continued to serve as co-counsel with Mr. Sizemore on the cases filed in and transferred to the MDL. Additional Girardi Keese cases were filed in the MDL after Mr. Sizemore left the firm. On May 12, 2009, Keith Griffin, Esq. of Girardi Keese signed an Attorney Participation Agreement, which agreed to the payment of a Common Benefit Fund assessment in exchange for access to MDL work product and the opportunity to maintain a working relationship with the PSC, and which incorporated by reference any court order regarding assessments.  PTO 70, which the Court entered on August 26, 2009, is such an order.

---

[2] The firm was awarded a $200,000 MDL common benefit fee, based on submitted common time for work performed by Mr. Sizemore while he was with Girardi Keese, but the firm returned the check.  March 26, 2014, Hearing Tr. 66:6-16 (Doc. No. 3963).

In 2012, Girardi Keese settled its state court and federal court Avandia claims together, in one master settlement agreement. Girardi Keese has subsequently taken the position that it does not owe a 7% assessment on all the settled claims in which the firm has a financial interest, but only owes the assessment to the Common Benefit Fund on a subset of its settled cases. Specifically, Girardi Keese argues that only the Avandia claims it filed in the MDL are subject to the assessment, as it did not use MDL work product to litigate its cases in California. Alternatively, Girardi Keese argues that the Court should interpret the Attorney Participation Agreement to require an assessment only on the Avandia claims Girardi Keese had in its inventory at the time the firm signed the agreement.

*Use of MDL Work Product*

At the hearing, the Court heard testimony from Justin Kaufman of the Heard Robins Cloud law firm ("Heard Robins"). Bill Robins, of Heard Robins, was a leader of the PSC, and the firm was also litigating cases in the same California JCCP trial pool as Girardi Keese. Because the firms had cases in the same JCCP trial pool, Heard Robins observed which MDL materials were sought and used by Girardi Keese in state court litigation. Mr. Kaufman testified that Heard Robbins made all documents GSK produced in the MDL available to Girardi Keese. He also testified that Girardi Keese, along with the other attorneys with cases in the JCCP trial pool, used MDL work product in their responses to GSK's motions for summary judgment, including the opinions of general causation experts Drs. Parisian, Brinton, and Jewell, who were the subject of *Daubert* motions in the MDL. The Court also heard from Thomas Girardi, Esq., who testified that Girardi Keese retained and paid their own experts, but did not specify whether these were general or specific causation experts. The testimony of Mr. Kaufman indicates that Girardi Keese utilized the

opinions of the MDL's general causation experts. Moreover, Mr. Kaufman testified that Girardi Keese requested, was provided, and advised the JCCP court that it intended to use other MDL work product in the *LeVoise* case, which was scheduled for trial in California state court. These MDL materials included documents, deposition videotapes, transcripts and cuts, and trial exhibits.

In support of its opposition to the assessment, Girardi Keese asserts that it spent $14 million litigating Avandia claims on behalf of its clients, and argues that this proves that the firm conducted its own discovery and did not utilize MDL work product. At the hearing, Mr. Girardi testified that "we totally prepared these cases outside of any influence of the MDL."[3] The Court does not doubt that Girardi Keese expended significant time and money litigating its cases. Girardi Keese represents thousands of clients, and needed to incur the cost of obtaining and reviewing medical records for each of those clients, regardless of whether or not the firm used MDL work product. In addition, the Court does not doubt that the firm incurred costs associated with state court motions practice and court appearances. However, Girardi Keese's litigation expenses are not sufficient to establish that the firm did not use MDL work product, especially in light of the contrary evidence. The evidence before the Court establishes that Girardi Keese did not rely solely on its own work in advancing its Avandia litigation, but received and relied upon MDL work product to resolve its cases.[4]

*Interpretation of the Attorney Participation Agreement*

Finally, Girardi Keese urges the Court to read its Attorney Participation Agreement to cover only cases Girardi Keese was handling *at the time it was signed* (approximately 400 claims,

---

[3] Tr. 12:13-14.
[4] The Third Circuit has held that the mere availability of MDL discovery material influences a defendant's evaluation of non-MDL plaintiffs' cases, and thus confers a benefit sufficient to trigger an assessment. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liability Litig.*, 582 F.3d 524, 548 (3d Cir. 2009).

4

about 10% of the firm's eventual inventory).[5] The Court declines to adopt this interpretation. The agreement plainly states that GSK would hold back 7% of the gross monetary recovery with respect to each and every assessed case. Four percent would be deducted from attorneys' fees, and 3% from the clients' shares of the gross monetary recovery. The hold-back would apply to "each and every claim, case or action arising from the use of Avandia in which the participating counsel has a financial interest . . . whether the claim, case or action is currently filed in State or Federal Court or is unfiled or is on a tolling agreement, hereinafter collectively [] assessed cases."[6] As the Court reads it, this clause emphasizes signing counsel's financial interest in the case at the time of resolution, and does not exclude any cases based upon the timing of retention. This agreement also expressly incorporates by reference any Order of the Court regarding assessments, and PTO 70 includes similar language, creating an obligation to pay an assessment on all claims in which a firm has a financial interest at the time of resolution. Any other reading would be illogical, as well as inconsistent with the prior application of PTO 70 to other, similarly situated law firms. All cases in Girardi Keese's inventory benefitted from the firm's access to MDL work product, not just its earliest-filed cases, and it would be unjust to read the agreement to require contribution from only a subset of claimants.

Accordingly, upon consideration of the Plaintiffs' Advisory Committee's Motion for Order to Show Cause [Doc. No. 3901], Girardi Keese's responses, the PAC's reply, and the Declaration submitted by counsel for GSK, and after a hearing held in court on March 26, 2014, the Court finds that *all settled claims* in which the Girardi Keese firm has a financial interest, regardless of whether they were filed in state or federal court, and regardless of when the firm was

---

[5] Tr. 22:2-4.
[6] Tr. 26:9-15.

5

retained, are "assessed cases" and "covered claims" as defined by the terms of the Attorney Participation Agreement and PTO 70, and thus are subject to a Common Benefit Assessment under PTO 70. GSK shall hold back a 7% assessment on the gross recovery, with 4% deducted from attorneys' fees and 3% from the clients' shares of the gross monetary recovery, and deposit the 7% assessment in the Avandia Common Benefit Fund. If GSK fails to hold back the assessment for any or all assessed cases, Girardi Keese shall be responsible for depositing the assessment in the Common Benefit Fund.

It is so **ORDERED.**

BY THE COURT:

May 12, 2014

CYNTHIA M. RUFE, J.