**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

————————————————————————

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION : ———————————————————————— : : THIS DOCUMENT RELATES TO: Case No. 2:10-cv-01637-CMR : : COUNTY OF SANTA CLARA and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Acting Santa Clara County Counsel Lori E. Pegg, : : Plaintiffs, : : v. : : SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE L.L.C., : : Defendant. : | MDL No. 1871 No. 07-md-01871-CMR |

IN RE: AVANDIA MARKETING, SALES  :
PRACTICES AND PRODUCTS LIABILITY  :    MDL No. 1871
LITIGATION  :    No. 07-md-01871-CMR
————————————————————————  :
  :
THIS DOCUMENT RELATES TO:  :
Case No. 2:10-cv-01637-CMR  :
  :
COUNTY OF SANTA CLARA and THE  :
PEOPLE OF THE STATE OF CALIFORNIA,  :
acting by and through Acting Santa Clara  :
County Counsel Lori E. Pegg,  :
  :
        Plaintiffs,  :
  :
      v.  :
  :
SMITHKLINE BEECHAM CORPORATION  :
d/b/a GLAXOSMITHKLINE L.L.C.,  :
  :
        Defendant.  :
————————————————————————  :

————————————————————————

**TWENTY-FOURTH REPORT AND RECOMMENDATION OF**
**THE SPECIAL MASTER AS TO PLAINTIFF'S MOTION TO DISMISS**
**IN *COUNTY OF SANTA CLARA V. GSK***

————————————————————————

The Special Master submits this Report and Recommendation recommending that the Court

deny plaintiff's motion to dismiss for lack of subject-matter jurisdiction in *County of Santa Clara v.*

*GSK*, No. 2:10-cv-01637-CMR.

**BACKGROUND**

This action was filed in federal court in California more than five years ago by the County of

Santa Clara, "Individually, and on behalf of the People of the State of California." The county was

represented by the Office of the County Counsel for the County of Santa Clara and private counsel. The complaint alleged that GlaxoSmithKline ("GSK") engaged in "false, misleading and deceptive marketing of Avandia," and that this allegedly false marketing caused financial harm to California residents, including Avandia users, insurers, public health care providers, and government payors, as well as to the County of Santa Clara itself.[1] The county sought restitution from GSK on behalf of all California residents or entities allegedly harmed by the false marketing, as well as "civil penalties and all other relief to which it and the People of the State of California are entitled."[2] The county's claims were brought under the California false advertising law.[3] The county contended that the court had subject-matter jurisdiction under the diversity statute,[4] because the plaintiff and defendant were citizens of different states.[5]

The Judicial Panel on Multidistrict Litigation transferred the case to the MDL pending in this Court shortly after it was filed in California. Since that time, the parties have engaged in extensive fact discovery and are now in the final stages of expert discovery. Defendant has filed three summary judgment motions, two of which remain pending.

In November 2012, while this case was being actively litigated, the Attorney General of California, as counsel for "the People of the State of California," entered into a stipulated final judgment with GSK in state court in California.[6] The final judgment was based on claims similar to

---

[1] Orig. Compl. ¶¶ 12-13.

[2] *Id.* ¶ 14.

[3] CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; *see* Orig. Compl. ¶ 15.

[4] 28 U.S.C. § 1332(a)(1).

[5] Orig. Compl. ¶ 24.

[6] *People of the State of Cal. v. GlaxoSmithKline LLC*, No. 37-2012-00085491-CU-MC-CTL, Final Judgment (Sup. Ct. Nov. 15, 2012) (Dckt. No. 82, Exh. B).

those made by the county in this case and included certain proscriptions on GSK's marketing activities, as well as an agreement that GSK pay the State of California approximately $7.3 million.[7]

The final judgment released GSK from similar claims under the false advertising law. The release excluded certain claims, including GSK's promotional and marketing practices involving Avandia "brought by the Santa Clara County Counsel's Office" for violations of the false advertising law "to which persons resident in the County of Santa Clara were exposed."[8] The exception to the release also noted that it "applies to and in favor of only persons or entities resident in the County."[9]

After the State of California and GSK entered into the final judgment, plaintiff in this case filed a second amended complaint. Unlike the original and first amended complaints, which named a single plaintiff, the second amended complaint named two parties as plaintiffs, the County of Santa Clara and the People of the State of California "acting by and through" the acting County Counsel, and referred throughout the complaint to the plural "plaintiffs."[10] The second amended complaint once again sought "restitution of all money wrongfully acquired by defendants from the sale of Avandia and restitution for hospital and medical care and treatment provided to Avandia users who suffered heart attacks, strokes, and/or sudden cardiac death, whether expended by California Avandia users, their insurers, public health care providers, or government payors."[11] Plaintiff also sought civil penalties.[12]

---

[7] *Id.* ¶ 9.

[8] *Id.* ¶ 11(E).

[9] *Id.*

[10] This Report and Recommendation will refer throughout to the singular "plaintiff," in reference to the County of Santa Clara, the original named plaintiff in this case.

[11] Sec. Am. Compl. ¶ 14 (Dckt. No. 42).

[12] *Id.*

On February 10, 2015, plaintiff filed a motion to dismiss its complaint on the ground that the Court does not have subject-matter jurisdiction.[13] Plaintiff argued that the county was never a real party in interest and the State of California was the real party, and because a state is not a citizen for diversity purposes, no subject-matter jurisdiction existed in federal court over this case. GSK responded that, even if the state was initially a party, it no longer was, after the entry of the final judgment between the State of California and GSK.[14] Thus, GSK argued, the county was now the real party in interest and, as a political subdivision of the state, it was a citizen of California and there was complete diversity in this case. The Court referred plaintiff's motion to the Special Master for a Report and Recommendation.[15]

## ISSUES PRESENTED

Plaintiff's motion and GSK's response essentially present three issues for the Court to decide:

1.   Did complete diversity of citizenship exist when this case was initially filed in federal court in 2010, such that federal subject-matter jurisdiction was present?

2.   Does complete diversity exist now on the basis of the second amended complaint filed in 2013?

3.   If complete diversity of citizenship did not exist at the time the case was initially filed, but exists now, does a federal court have subject-matter jurisdiction over this case?

---

[13] Dckt. No. 75.

[14] Dckt. No. 82.

[15] Dckt. No. 78.

ANALYSIS

Neither the parties nor the Special Master has found a Supreme Court, Third Circuit, or Ninth Circuit case that directly addresses the issues in this case. The fundamental question in this case is who is the real party in interest when a political subdivision of a state brings an action pursuant to a state law authorizing it to bring suit in the name of "the people" of that state for harm allegedly suffered by some of the state's citizens. Is the political subdivision or the state the real party in interest in that situation? And what if plaintiff's claims are limited to harm solely within that political subdivision? Does that change the calculus? These issues are further complicated here by the fact that the plaintiff's status may have changed when it was forced to narrow the scope of the relief it sought on behalf of "the people"; does such a change in the middle of a case alter the jurisdictional analysis? If the real party in interest initially is the state, can a narrowing of the scope of the case alter the plaintiff's status so that the political subdivision becomes the real party in interest? And if so, does this affect the question whether the court has subject-matter jurisdiction over the case?

Again, the parties have been unable to point to any binding precedent that would directly answer these questions and the Special Master likewise has been unable to find any such authority. Much case law exists, however, addressing related issues involving the status of a party for subject-matter jurisdiction purposes and whether a change in a party's status can affect the jurisdictional analysis. That case law is discussed below.

I.   **Legal Principles**

It has been well established for more than 150 years that diversity jurisdiction is determined on the basis of the citizenship of the real parties to a case.[16] As the Supreme Court noted, "[i]t has been

---

[16] *See Wood v. Davis*, 59 U.S. 467 (1856).

repeatedly decided by this court, that formal parties, or nominal parties, or parties without interest, united with the real parties to the litigation, cannot oust the federal courts of jurisdiction, if the citizenship, or character of the real parties, be such as to confer it . . . ."[17] It also has been long established that a state is not a citizen for diversity purposes.[18] And, with certain limited exceptions not applicable here, federal jurisdiction exists under the diversity statute only when there is complete diversity—that is, all plaintiffs are citizens of different states from all defendants.[19] These background principles establish the foundation for the inquiry into the specific issues here.

### A. States as real parties in interest.

Courts frequently have been called upon to determine whether a state is the real party in interest to litigation, thereby defeating any possibility of complete diversity. In a leading case decided at the beginning of the twentieth century (*Missouri Railway*), the Supreme Court held that the state is the real party in interest "when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate."[20] The Court explained that in an earlier case, a lower court had properly found the state to be the real party, although the action was brought in the name of a shore inspector, where "all the moneys recovered were payable into the treasury of the State," the action was brought for the state's "sole benefit," and the state "alone was to be benefited by the recovery."[21] By contrast, in *Missouri Railway*, the state's general interest in "the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in

---

[17] *Id.* at 469.

[18] *See, e.g., Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996) ("More than one hundred years ago, the United States Supreme Court ruled that a state cannot be considered a citizen for purposes of establishing diversity of citizenship jurisdiction in federal court.").

[19] *See* 28 U.S.C. § 1332(a)(1); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).

[20] *Missouri, Kan. & Tex. Ry. Co. v. Missouri R.R. & Warehouse Comm'rs*, 183 U.S. 53, 59 (1901).

[21] *Id.*

securing compliance with all its laws" was insufficient to make the state a party in interest to litigation between state railroad commissioners and a railroad involving railway rates and charges.[22]

The Third Circuit reiterated these principles in a 1979 case that originated in federal court in New Jersey, *Ramada Inns, Inc. v. Rosemount Memorial Park Association*.[23] Although the underlying dispute in *Ramada Inns* involved a contract between two private parties (a Delaware corporation and New Jersey cemetery association), a New Jersey statute made the state attorney general and state cemetery board indispensable parties to any New Jersey litigation involving a cemetery.[24] The district court held that this statute made the state a real party in interest, destroying diversity and requiring dismissal of the case.[25] The Third Circuit disagreed, noting that the determination whether the state was a real party in interest "can only be derived from the essential nature and effect of the proceeding."[26] Because there was no possibility that any damages awarded in the litigation would be paid from the state treasury, no equitable relief would be satisfied by the state, and the state was "completely neutral" about the outcome of the litigation, the state was not a real party in interest.[27]

Although the Third Circuit has applied similar analyses to determine whether a state was a real party in interest in the Eleventh Amendment and the diversity contexts, the former context only arises when the state is a purported defendant. The principles developed in the Eleventh Amendment context do not necessarily apply to the diversity analysis when a state is allegedly the plaintiff in a federal action.

---

[22] *Id.* at 59-60.

[23] 598 F.2d 1303 (3d Cir. 1979).

[24] *Id.* at 1304.

[25] *Id.*

[26] *Id.* at 1306 (internal quotation omitted).

[27] *Id.* at 1307.

For example, in *Blake v. Kline*, a case relied on heavily by GSK here, the court analyzed whether a defendant—the state public school employee retirement board—was the state for diversity and Eleventh Amendment purposes.[28] The court noted that the "most important factor" for the Eleventh Amendment analysis was "whether judgment will have to be paid from the state treasury."[29] This emphasis on whether payment of any judgment will come from the state treasury makes sense in the Eleventh Amendment context, as that constitutional provision was intended to demonstrate respect for state sovereignty, as well as to shield state funds from demands brought outside the normal democratic process.[30] Yet, that purpose is less relevant—arguably irrelevant—when it is the party *bringing suit* in federal court that allegedly is the state. In that situation, there is no concern about invasion of the state treasury to pay a judgment or federal court interference with the state's right to order its own affairs.

Similarly, the court in *Blake* noted that the retirement board's degree of autonomy was "crucial" to the court's analysis because the "primary purpose of the eleventh amendment is to assure that the federal courts do not interfere with a state's public policy and its administration of internal public affairs."[31] But again, when the entity in question is the plaintiff seeking to obtain relief or alter the internal affairs of another party and is not a defendant being dragged into federal court in a challenge to the state's public policy or administration of its affairs, these concerns are far from "crucial." Thus, while there certainly is some overlap in the analysis courts apply to determine whether the state is the real party in interest (that is, the real *defendant*) for Eleventh Amendment

---

[28] 612 F.2d 718, 720 (3d Cir. 1979).

[29] *Id.* at 723.

[30] *See, e.g.*, *Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 765 (2002).

[31] 612 F.2d at 725.

purposes and the analysis undertaken to determine if a state is a party in interest for diversity purposes, the similarities are less forceful when the entity at issue is the *plaintiff.*

Indeed, while GSK urges the Court to apply an Eleventh Amendment analysis to the determination whether the state is the real plaintiff here, it points to only a single circuit court decision (from the Fourth Circuit) that actually did so, *Maryland Stadium Authority v. Ellerbe Becket Inc.*[32]

In *Ellerbe Becket*, a case brought in state court by the Maryland Stadium Authority and the University of Maryland against an architectural and engineering firm was removed to federal court on diversity grounds; the plaintiffs moved to remand the matter, arguing they were alter egos of the state and therefore not citizens for diversity purposes.[33] Applying an Eleventh Amendment analysis, the court held that the University was an alter ego of the state because any recovery obtained by the University in the litigation would be deposited in the state treasury, the state retained a veto over most of the University's actions, and the University lacked the power to tax.[34] The *Ellerbe Becket* case is of little aid here, not only because it is not binding on this Court (or a federal court in California), but primarily because the issue in that case—whether the state university was an arm of the state— was quite different from the one here.

Similarly, the Third Circuit has noted it considers three factors to determine whether a state is the defendant for Eleventh Amendment purposes—"(1) whether the money to pay for the judgment would come from the state; (2) the status of the agency under state law; and (3) what

---

[32] 407 F.3d 255 (4th Cir. 2005).

[33] *Id.* at 256.

[34] *Id.* at 263-65.

degree of autonomy the agency has"[35]—but these factors are used to examine the *entity* in question and to determine whether it is an arm or alter ego of the state, the same issue addressed in *Ellerbe Becket.* There is no contention here that the county is an arm or alter ego of the state; rather, the issue that must be addressed is whether the state is the real party with *an interest in this litigation*, despite the fact the case was brought by an entity that unquestionably is a local government body.

### B.  Representative parties as real parties in interest.

Case law addressing diversity issues in representative actions is also instructive, though not directly on point with the issues presented here. For example, in *Mecom v. Fitzsimmons Drilling Co.*, the Supreme Court confronted the issue whether the citizenship of an estate administrator or that of the estate beneficiaries was relevant for diversity purposes.[36] The Court agreed with the administrator that "he is the real party in interest and his citizenship, rather than that of the beneficiaries, is determinative of federal jurisdiction."[37] The Court relied on the fact that the applicable state statute made the administrator responsible for bringing a wrongful death claim on behalf of the estate, as well as litigating or settling the suit and distributing any proceeds from it.[38] The Court also noted that the administrator was "liable upon his official bond for failure to act with diligence and fidelity."[39]

Almost fifty years after *Mecom*, the Court addressed a similar issue in *Navarro Savings Association v. Lee*—whether the citizenship of the trustees of a business trust or that of the trust's beneficial

---

[35] *Estate of Lagano v. Bergen County Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014).

[36] 284 U.S. 183, 186 (1931). The precise issue addressed in *Mecom* is now governed by 28 U.S.C. § 1332(c)(2), which provides that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."

[37] 284 U.S. at 186-87.

[38] *Id.* at 186.

[39] *Id.*

shareholders is determinative of whether diversity exists.[40] In doing so, the Court reiterated certain basic principles applicable to cases such as this one: "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."[41] The Court held that a trustee is a real party to a controversy "when he possesses certain customary powers to hold, manage, and dispose of assets for the benefits of others."[42] The trustees in *Navarro* met this requirement, and were more than "'mere conduits' for a remedy flowing to others."[43]

Finally, while the present case is not a class action, it shares certain features with such cases. For example, plaintiff seeks relief—restitution—on behalf of non-parties injured by the defendant's alleged wrongful conduct. In effect, plaintiff contends that the citizenship of all these persons on whose behalf it seeks relief—the people of the State of California—is relevant to the jurisdictional determination. In a class action, however, "only the citizenship of the named class representatives must be diverse from that of the defendants."[44] If this principle applied by analogy here, only the citizenship of the representative plaintiff—the County of Santa Clara—would be relevant to the diversity analysis.

### C.  Cases under the FAL and similar laws.

A number of cases have arisen in the past fifteen years specifically involving California's false advertising law (the statute on which plaintiff's claims here are based) and similar statutes

---

[40] 446 U.S. 458 (1980).

[41] *Id.* at 460-61 (citations omitted).

[42] *Id.* at 464.

[43] *Id.* at 465.

[44] *In re Sch. Asbestos Litig.*, 921 F.2d 1310, 1317 (3d Cir. 1990).

authorizing city or county attorneys to bring actions in the name of the people of the State of California. While the courts have typically held that the state is the real party in interest in these cases, some have concluded otherwise. For example, in a case brought by the city attorney for the City of Lodi, California ("the Lodi case"), the court determined that the city and not the state was the real party in interest.[45]

The statute at issue in the Lodi case authorized a city attorney to bring an action to abate a public nuisance "in the name of the people of the State of California."[46] Notably, the false advertising law uses the same language, authorizing the county counsel to bring an action such as this one "in the name of the people of the State of California."[47] The court in the Lodi case noted that the Attorney General of California had taken the position that the city attorney did not represent the state by virtue of the statutory authority to bring an action "in the name of the people of the State of California."[48] While the state actively opposed the city attorney in the Lodi case, this factor only appears to have reinforced the court's view that a city attorney (and similarly, a county counsel) was limited to representing its city (or county), even in an action brought in the name of the people of the State of California.[49] As the court held, "while the statute gives a city attorney the authority to act *for the benefit of* the people of California, it does not expressly confer upon the city attorney authority to *represent* all Californians as an entity separate and apart from the city itself."[50]

---

[45] *People of the State of Cal. v. M&P Invs.*, 213 F. Supp. 2d 1208, 1219 (E.D. Cal. 2002).

[46] *Id.* at 1212 n.11 (quoting CAL. CIV. PROC. CODE § 731).

[47] CAL. BUS. & PROF. CODE § 17535.

[48] 213 F. Supp. 2d at 1213.

[49] *Id.* at 1214-16.

[50] *Id.* at 1216 (emphasis in original).

Other factors that bolstered the court's holding were that the city council (not "the people of the state" or a state entity) had directed the filing of the action in the Lodi case; the city (not state taxpayers) was financing the litigation; and any award of damages, costs, or sanctions would be paid by the city, not the state.[51] As the court concluded:

> In sum, it seems absurd to argue that the state legislature intended that under CCP § 731 a city attorney represents the "People of California" as a separate, albeit "virtual," client when the "actual" client, the city, alone, authorizes, directs, finances, and assumes complete responsibility for the litigation in which the State of California is not a party and refuses to participate. Rarely has the phrase "real party in interest" seemed so apropos.[52]

As noted, however, a number of courts have found that the state *is* the real party for diversity purposes when local government entities have filed suit under the false advertising law or similar statutes. Most if not all of these decisions arise in the context of a remand motion after an action originally filed in state court was removed to federal court by the defendant. In concluding that diversity jurisdiction is absent and ordering remand, these courts often rely on the principle that "a court must construe the removal statute strictly and reject jurisdiction if there is any doubt regarding whether removal was proper."[53] Of course, the present case was not removed to federal court by defendant but filed there by plaintiff.

In remanding to state court a removed case brought by the San Francisco city attorney under the state's deceptive business practices law, one district court expressly rejected the analysis from the Lodi case, noting that the court in that case "conflated two different concepts—whether a city attorney has authority under the statute to sue on behalf of the State and if so, what is the scope of

---

[51] *Id.*

[52] *Id.* at 1216-17.

[53] *People of the State of Cal. v. Check 'N Go of Cal., Inc.*, No. C 07-02789, 2007 U.S. Dist. LEXIS 65650, at *7 (N.D. Cal. Aug. 20, 2007).

such authority."[54] The court held that the latter question (the scope of any such authority) is not relevant to the jurisdictional analysis, which turns solely on whether the state is the real party in interest when a city attorney brings an action on behalf of the people of the State of California.[55] Because the city attorney brought the action on behalf of the people, the court held, the state was the real party in interest.[56] Other than criticizing the Lodi case (and distinguishing it on the basis of its unusual facts), the court included little analysis of the real-party issue before remanding the case to state court.

Similarly, in another case brought by a city attorney in the name of the people of the State of California (this time under the false advertising law) and removed to federal court, a district court remanded the action after little analysis but after finding the state was the real party in interest.[57] The court found that, by enacting the false advertising law and unfair competition law, "and expressly limiting any civil penalties to the enforcement of consumer protection laws, the State of California has made it an interest of the State to enforce compliance with consumer protection laws."[58] Thus, "the State's interest in the enforcement of its consumer protection laws establishes enough of an interest to create doubt that the real party of interest is only the City of Los Angeles."[59]

A district court remanded another case brought by a county pursuant to the false advertising and unfair competition laws on the ground that, because the state "has a substantial interest in the outcome" of the case and any injunctive remedies "will provide a benefit to all of the citizens of the

---

[54] *Id.* at *19.

[55] *Id.* at *21.

[56] *Id.* at *22.

[57] *People of the State of Cal. v. Time Warner, Inc.*, No. CV 08-4446, 2008 U.S. Dist. LEXIS 109387 (C.D. Cal. Sept. 17, 2008).

[58] *Id.* at *7.

[59] *Id.*

state," the state was the real party in interest.[60] Of course, the state could have a substantial interest and all of its citizens could benefit from an injunction issued in many cases, including those brought by private citizens.[61]

Although plaintiff here relies heavily on these district court cases, the Ninth Circuit implicitly rejected the reasoning of these cases and adopted an analysis that is more faithful to Supreme Court precedent involving real-party issues in *Department of Fair Employment & Housing v. Lucent Technologies, Inc.*[62] In *Lucent*, a state agency sued Lucent Technologies in state court, contending that Lucent had violated the state fair employment law when it terminated one of its employees.[63] Lucent removed the suit to federal court and after the trial court denied a remand motion, summary judgment was eventually entered for Lucent.[64] The state agency and the employee (who had intervened in the action) appealed and renewed their challenge to jurisdiction, contending that the state was the real party in interest, destroying diversity.[65] The Ninth Circuit rejected this argument.[66]

Quoting a 1908 Supreme Court decision, the court noted that "the mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no real interest in the controversy."[67] Rather, the court held, a state's presence will

---

[60] *People of the State of Cal. v. Universal Syndications, Inc.*, No. C 09-1186, 2009 U.S. Dist. LEXIS 64066, at *15 (N.D. Cal. June 16, 2009).

[61] *Cf. Archila v. KFC U.S. Props., Inc.*, 420 F. App'x 667, 668 (9th Cir. 2011) (non-precedential) (holding that the state was not a party for jurisdictional purposes even if it was "a real party in interest" to an action under a state private attorney general act).

[62] 642 F.3d 728, 737-38 & n.2 (9th Cir. 2011).

[63] *Id.* at 734-35.

[64] *Id.* at 735-36.

[65] *Id.* at 736-37.

[66] *Id.* at 740.

[67] *Id.* at 737 (quoting *Ex parte Nebraska*, 209 U.S. 436, 444 (1908)).

only defeat diversity jurisdiction if "the relief sought is that which inures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate."[68] In a lengthy footnote following this statement, the court noted that a number of district courts (including some of those discussed above) had "held that a decree will effectively operate in favor of a state so long as [its] interests [in the well-being of its populace] are present."[69] The court held that this analysis was inconsistent with the Supreme Court's jurisprudence in this area, including its seminal decision in *Missouri Railway*.[70]

Ultimately, the court held that, although the state agency sought broad equitable relief affecting Lucent's employees throughout California, the state did not have such a substantial interest in the litigation to render it the real party in interest.[71] While plaintiff here attempts to distinguish *Lucent* as a case in which a state agency sought relief for a single individual, this description fails to account for the full relief the agency sought, which included an order requiring defendant to (1) cease and desist from discriminating against *all its employees*; (2) develop, implement, and disseminate a non-discrimination policy affecting *all its employees*; (3) train *all its managers* regarding its non-discrimination obligations; and (4) post a notice in *all its work locations* about its violations of the law.[72]

Despite the holding in *Lucent* and the Ninth Circuit's apparent rejection of the analysis employed by many district courts in determining whether a state is a real party in interest, at least a couple district courts have remanded similar actions post-*Lucent* on the ground that the state was the real party in interest. As with the pre-*Lucent* cases, however, the analysis in these cases is not persuasive

---

[68] *Id.* (quoting *Missouri Ry.*, 183 U.S. at 59).

[69] *Id.* at 737-38 n.2.

[70] *Id.*

[71] *Id.* at 739-40.

[72] *Id.* at 739.

and they are at least somewhat distinguishable from the present case in that they rely on the strong presumption against removal.

For example, in a case brought by the plaintiff here (the County of Santa Clara), represented by some of the same counsel involved in this case, a district court remanded an action to state court on the ground that the plain language of the false advertising law rendered the county "only a nominal or formal party to the proceeding," or "the conduit upon which the real party is tied to this suit—namely the State of California."[73] This conclusion, however, was based in large part on the court's view that the false advertising law authorized a county counsel to bring an action "*on behalf of* the People of the State of California."[74] In fact, the statute authorizes county counsel to bring an action "*in the name of* the people of the State of California."[75]

Even aside from the court's reliance on "plain language"[76] that in fact did not exist in the statute, its analysis ignored relevant precedent such as the Supreme Court's *Missouri Railway* decision and the *Lucent* case.[77] The court's determination that the county was a "mere conduit" also ignored that the county controlled the litigation (as it does here).[78] Finally, as noted, the court relied on the

---

[73] *County of Santa Clara v. Bristol Myers Squibb Co.*, No. 5:12-cv-03256, 2012 U.S. Dist. LEXIS 133405, at *13 (N.D. Cal. Sept. 17, 2012).

[74] *Id.* at *12-*13 (emphasis in original).

[75] CAL. BUS. & PROF. CODE § 17536(a) (emphasis added); *see also id.* § 17535 (authorizing a county counsel to "prosecute" an action for injunctive relief "in the name of the people of the State of California").

[76] *Bristol Myers Squibb*, 2012 U.S. Dist. LEXIS 133405, at *13.

[77] *See, e.g., id.* at *14-*15 (relying on the fact that the plaintiff county sought state consumer remedies, which "only serve[d] to benefit the People of the State").

[78] *Id.* at *13.

presumption against removal, noting that (unlike in this case), the plaintiff had not submitted to federal jurisdiction.[79]

Similarly, in a recent case brought in state court by the County of Santa Clara (as well as the district attorney of Orange County) and removed by the defendant, a California district court remanded the action after applying a real-party-in-interest analysis that is almost certainly inconsistent with the *Lucent* decision.[80] Once again, the court appeared to ignore the reality of the litigation, finding that the counties were only formal parties and the conduit for the real party, the state, despite the county counsel and district attorney's control over the conduct of the litigation.[81] The court also found that the state had a substantial interest in the litigation, which the court found sufficient to render the state the real party in interest,[82] because the plaintiffs alleged that the defendant's conduct jeopardized the health and safety "of all Californians" and indirectly harmed all California communities "in the form of increased crime rates, hospital utilization, joblessness and broken families,"[83] allegations that are absent in the present case.

At least one California district court has faithfully applied *Lucent* and declined to find that the state was the real party in interest in an action brought by a local government entity in the name of the people of the State of California.[84] As the court explained:

> In *Lucent*, the Ninth Circuit announced a new, more rigorous standard for ascertaining the real party in interest in cases removed to federal court based on

---

[79] *Id.* at *9.

[80] *People of the State of Cal. v. Purdue Pharma L.P.*, No 14-1080, 2014 U.S. Dist. LEXIS 159952, at *6-*9 (C.D. Cal. Nov. 12, 2014).

[81] *Id.* at *6 (quoting *Bristol Myers Squibb*, 2012 U.S. Dist. LEXIS 133405, at *13).

[82] *Id.* at *8-*9.

[83] *Id.* at *7.

[84] *People of the State of Cal. v. Northern Trust Corp.*, No. 12-01813, 2013 U.S. Dist. LEXIS 53155, at *1 (C.D. Cal. Apr. 10, 2013).

> diversity jurisdiction. After *Lucent*, a State's general governmental interests in the welfare of its citizenry and enforcement of its laws will not satisfy the real party to the controversy requirement for the purposes of defeating diversity unless the suit seeks relief that inures to the State alone.[85]

The court acknowledged that the law at issue (the unfair competition law) authorized the city attorney to bring the action "'in the name' of the State," but it rejected other district courts' view that this language supported a conclusion "that the State is in fact the real party in interest for diversity purposes."[86] Rather, consistent with *Lucent*, it analyzed the case "as a whole to determine the real party in interest" and whether the state had "more than general governmental interests in the outcome of the suit."[87] Because civil penalties and injunctive relief were not "a primary purpose or driving force" of the action, and the plaintiff sought substantial restitution, the court held that the real party in interest was the city retirement system that brought the action and not the state.[88]

Finally, although it did not involve a California consumer protection statute, the Ninth Circuit issued a relevant decision involving a Nevada statute about a year after its *Lucent* decision.[89] In that case, the Nevada Attorney General brought an action under a state deceptive trade practices law in state court against Bank of America for allegedly misleading consumers about home mortgage modification and foreclosure processes and for violating the terms of a prior consent judgment.[90] Bank of America removed the action on the ground that it was a class or mass action under the Class Action Fairness Act and because it allegedly arose under federal law.[91] It did *not* allege that the

---

[85] *Id.* at *3-*4 (internal quotations and brackets omitted).

[86] *Id.* at *7.

[87] *Id.* at *10 (internal quotations omitted).

[88] *Id.* at *11.

[89] *State of Nev. v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012).

[90] *Id.* at 664-65.

[91] *Id.* (citing 28 U.S.C. §§ 1331, 1332(d)).

state was not the real party in interest and that therefore there was diversity jurisdiction.[92] The court

was required to undertake a similar analysis, however, because the question whether the action was a

"mass action" under the Class Action Fairness Act "turns on whether the State of Nevada or the

hundred-plus consumers on whose behalf it seeks restitution are the real party(ies) in interest."[93]

The court discussed at length its earlier decision in *Lucent*,[94] but reached the opposite result in the

Nevada case, largely because the state brought the action to protect "the integrity of mortgage loan

servicing":

> Foreclosures work a widespread and devastating injury not only to those borrowers
> who are defrauded, but also on other Nevada residents and the Nevada economy as
> a whole. Nevada has been particularly hard hit by the current mortgage crisis, and
> has a specific, concrete interest in eliminating any deceptive practices that may have
> contributed to its cause.[95]

As the court explained, in the Nevada case, unlike in *Lucent*, the state sought "substantial relief

that is available to it alone."[96] Thus, because the state attorney general brought an action to vindicate

the state's rights in an area that had broadly affected the state's populace and economy and sought

relief that only the state could seek, the state was the real party in interest.[97]

## D.  Changes in parties, citizenship, or circumstances.

This case presents an additional twist on the already complex task of determining whether a state

is the real party in interest for subject-matter jurisdiction purposes. Here, GSK argues that, whatever

---

[92] *Id.* at 666.

[93] *Id.* at 669.

[94] *Id.* at 669-70.

[95] *Id.* at 670 (citing *Lucent*'s holding that the state's interest in that case was "too 'general' to render it a party in interest").

[96] *Id.* at 671-72.

[97] *Id.* at 672.

the status of the plaintiff at the outset of the lawsuit in 2010, following the State of California's resolution of its false marketing claims against GSK in 2012, the nature of this case and of the plaintiff changed, making the County of Santa Clara, and not the state, the plaintiff. Yet, GSK's argument must overcome the general rule that "jurisdiction is tested by the facts as they existed at the time the action was commenced."[98] While this rule is subject to certain exceptions, the scope and applicability of those exceptions is fairly narrow.

For example, it is well-established that a party's change in domicile after a case is filed in federal court will not alter the jurisdictional equation: "[I]f diversity of citizenship did not exist at the time the action was filed, it cannot be created retroactively by a subsequent change of domicile by one of the parties."[99] Similarly, "jurisdiction cannot be conferred retroactively by the subsequent substitution of a diverse claimant for a non-diverse party."[100] As the Third Circuit has noted, the latter rule applies even though the diverse party that seeks to substitute itself for the non-diverse one may be able to bring a new action in federal court.[101] The Ninth Circuit has made a similar point in a removed case, rejecting a non-diverse party's post-judgment attempt to alter its allegations regarding the real party in interest, despite the "waste of judicial resources" of sending the case back to state court: "Equity is no substitute for subject matter jurisdiction."[102]

---

[98] *Field v. Volkswagenwerk AG*, 626 F.2d 293, 304 (3d Cir. 1980); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("In determining federal court jurisdiction, we look to the original, rather than to the amended, complaint. Subject matter jurisdiction must exist as of the time the action is commenced.").

[99] *Field*, 626 F.2d at 304.

[100] *Id.*

[101] *Id.* at 305.

[102] *Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Grp.*, 823 F.2d 302, 304 (9th Cir. 1987).

One exception to the general rule has been adopted for the situation in which the lack of complete diversity at the outset of a case is remedied by the dismissal of a diversity-destroying party prior to the entry of final judgment.[103] In a leading case arising in the removal context, *Caterpillar Inc. v. Lewis*, the Supreme Court held that "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered."[104] The Court posed the relevant question as whether "the District Court's initial misjudgment still burden[s] and run[s] with the case, or is it overcome by the eventual dismissal of the nondiverse defendant?"[105] The decision in *Caterpillar*—that the initial defect was overcome by the dismissal of the nondiverse defendant—was based at least in part on the posture of the case as one removed from state court (which distinguishes it from the present case). As the Court noted in reaffirming the holding of an earlier case, "an erroneous removal need not cause the destruction of a final judgment, if the requirements of federal subject-matter jurisdiction are met at the time the judgment is entered."[106]

Despite the general rule that a case that lacks subject-matter jurisdiction at the outset must be dismissed even if inefficiency and waste will ensue from the dismissal, the Court in *Caterpillar* noted an "overriding consideration" in its ruling: "Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), considerations of finality, efficiency, and economy become overwhelming."[107] As the Court emphasized, "To wipe out the adjudication postjudgment, and return to state court a case now

---

[103] *See, e.g.*, *Knop v. McMahan*, 872 F.2d 1132, 1138 (3d Cir. 1989).

[104] 519 U.S. 61, 64 (1996).

[105] *Id.* at 70.

[106] *Id.* at 73 (citing *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699 (1972)).

[107] *Id.* at 75.

satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice."[108]

Other exceptions to the general rule that jurisdiction is determined at the outset of a case arise from federal rules or statutes, but none of these would appear to apply here. For example, Rule 21 of the Federal Rules of Civil Procedure provides that "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." As the Supreme Court explained in *Newman-Green, Inc. v. Alfonzo-Larrain*, this rule "invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."[109] Here, however, if the state is deemed to be the real party at the outset of the litigation, it was not "misjoined," and more to the point, it was not "dropped," making Rule 21 inapplicable.

Similarly, while 28 U.S.C. § 1653 provides that "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," the issue here is not whether plaintiff's original complaint inadequately *alleged* diversity; it is whether complete diversity actually existed at that time. Section 1653 "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves."[110]

Cases like *Caterpillar* and *Newman-Green* hardly signaled a relaxation of the general rule that diversity is determined at the time of filing in favor of a rule focusing more on efficiency and avoidance of waste. Indeed, the Supreme Court has adhered strictly to the general rule in other contexts in which a party sought to salvage a final judgment where complete diversity was lacking at

---

[108] *Id.* at 77; *see also CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 381 n.6 (3d Cir. 2004).

[109] 490 U.S. at 832.

[110] *Id.* at 831.

the outset. Most prominently, in *Grupo Dataflux v. Atlas Global Group, L.P.*, the Court rejected an argument that "a party's post-filing change in citizenship can cure a lack of subject-matter jurisdiction that existed at the time of filing in an action premised upon diversity of citizenship."[111]

The Court in *Grupo Dataflux* explained that in *Caterpillar* and *Newman-Green*, the jurisdictional problem was solved by dropping the diversity-destroying party from the case, whereas in *Grupo Dataflux*, the lineup of parties remained the same but one of the parties—a partnership—altered its internal make-up to drop diversity-destroying partners.[112] The Court reaffirmed the longstanding rule that, where there is no change in parties to a lawsuit, the presence of diversity is determined by the status of the parties at the commencement of the litigation.[113] The Third Circuit similarly has noted that "the time-of-filing rule admits exceptions in cases where the parties change, in contrast to cases in which the circumstances attendant to those parties change."[114]

GSK also relies on cases holding that a court should look to a plaintiff's amended allegations in determining the existence of jurisdiction, but these cases are distinguishable from this one. For example, GSK cites the Supreme Court's decision in *Rockwell International Corp. v. United States* for the proposition that courts look to an amended complaint to determine jurisdiction.[115] The issue in *Rockwell* was whether there was federal jurisdiction under the False Claims Act where a *qui tam* relator's amended complaint failed to include allegations that provided the basis for federal

---

[111] 541 U.S. 567, 568 (2004).

[112] *Id.* at 572 n.3, 573, 579-80.

[113] *Id.* at 574.

[114] *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009); *see also* 13E WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3608, at 376 (3d ed. 2009) ("A corollary of the general rule that diversity is determined as of commencement is that if diversity of citizenship did not exist when the action was commenced, the courts generally are in agreement that it cannot be created by a later change of domicile by one of the parties or some other potentially diversity-creating event.").

[115] 549 U.S. 457, 473-74 (2007).

jurisdiction in his original complaint.[116] The question whether a court has federal-question jurisdiction when an amended complaint deletes the original basis for jurisdiction is very different from the issue whether an amended complaint can provide the basis for diversity jurisdiction that was absent when an action was first commenced. Moreover, *Rockwell* and similar cases cited by GSK involved federal-question jurisdiction, where the plaintiff's *claims* determine whether the court has jurisdiction.[117] This case involves diversity jurisdiction, where the parties' *citizenship* determines whether the court has jurisdiction.[118]

## II.  Recommendations

As noted above, plaintiff's motion challenging this Court's subject-matter jurisdiction effectively requires the Court to answer three questions. First, did complete diversity of citizenship exist when this case was initially filed in federal court in 2010, such that federal subject-matter jurisdiction was present? Plaintiff contends no such jurisdiction existed, while GSK largely avoids addressing this question (choosing to focus on the second and third questions discussed below to support its contention that the Court has jurisdiction). For the reasons that follow, the Special Master

---

[116] *Id.* at 473.

[117] *See, e.g.*, *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008) ("Notwithstanding the impressive pedigree of the time-of-filing rule, it is inapposite here. The letter and spirit of the rule apply most obviously in diversity cases, where the rule originated, and where heightened concerns about forum-shopping and strategic behavior offer special justifications for it." (citing, *inter alia, Grupo Dataflux*, 541 U.S. at 568-71)). *But see Nuveen Mun. Trust v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012) ("Although we once declined to apply the time of filing rule in a federal question case, subsequent Supreme Court decisions demonstrate the continuing vitality of the rule." (citing, *inter alia, Grupo Dataflux*, 541 U.S. at 582, and *New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1503-04 (3d Cir. 1996))).

[118] Of course, the plaintiff's claims establish whether the amount-in-controversy threshold for diversity cases is met, but there is no dispute that this requirement is met here.

recommends that the Court hold that federal subject-matter jurisdiction existed when this case was initially filed in 2010 and that therefore, plaintiff's motion to dismiss should be denied.

Because the Court may disagree with the Special Master's recommendation, it is necessary to address the second and third questions. The second question is whether complete diversity exists now on the basis of the second amended complaint filed in 2013? Largely for the reasons that the Special Master concludes that jurisdiction existed at the outset of this case, which have added force in light of the relief sought in the second amended complaint, the Special Master recommends that the Court hold that subject-matter jurisdiction exists under the second amended complaint.

The third question is whether the Court has subject-matter jurisdiction if complete diversity of citizenship did *not* exist at the time the case was initially filed, but exists now? The Special Master recommends that the Court hold that federal subject-matter jurisdiction must be determined by the circumstances at the commencement of the case and not those existing upon the filing of the second amended complaint. Thus, the Special Master recommends that the Court hold that subject-matter jurisdiction is absent if the Court concludes that there was not complete diversity at the outset of the case.

### A. Complete diversity of citizenship existed when this case was initially filed in federal court in 2010, such that federal subject-matter jurisdiction was present.

Both the plain language of the statute at issue here and the relevant case law support the conclusion that there was complete diversity at the outset of this case and that the Court therefore has subject-matter jurisdiction.

***The Language of the Statute.*** Plaintiff seeks injunctive relief and restitution under Section 17535 of the California false advertising law and civil penalties under Section 17536 of the law.[119] The plain language of these provisions fails to support plaintiff's contention that the State of California was the real party in interest when this action was initially brought.

Actions for injunctive relief and restitution may be prosecuted by the Attorney General or certain local government attorneys (including a county counsel) *or* by any individual who has been injured as a result of an alleged violation of the false advertising law.[120] The Attorney General or local government attorney may bring the action "in the name of the people of the State of California," while an individual may bring a representative action if the requirements under the state civil procedure rules for such an action are met.[121] Specifically, under a 2004 amendment to the statute, an individual may bring a representative action if the plaintiff complies with Section 382 of the California Code of Civil Procedure, which provides that such an action may be brought "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."

An action brought by the Attorney General or a local government attorney may be brought "upon their own complaint or upon the complaint of any board, officer, person, corporation or association."[122] Injunctive relief may be ordered as "necessary to prevent the use or employment . . . of any practices which violate" the false advertising law, and restitution may be ordered that is

---

[119] In the original complaint, plaintiff's prayer for relief did not specifically mention injunctive relief, though it sought relief under Section 17535 and asked for "such other and further relief that the court deems just and proper." Orig. Compl., Prayer for Relief, ¶¶ 1, 2, 7; *see also* Sec. Am. Compl., Prayer for Relief, ¶¶ I, II, IV (Dckt. No. 42) (seeking restitution, civil penalties, and injunctive relief).

[120] CAL. BUS. & PROF. CODE § 17535.

[121] *Id.*

[122] *Id.*

"necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in [the false advertising law] declared to be unlawful."[123]

Thus, the statute broadly authorizes virtually anyone to bring an action seeking injunctive relief and restitution. State and local government attorneys and regular citizens alike can bring actions seeking broad injunctive relief and restitution for "any person in interest." Whether the case is brought by a government attorney or private party, the scope of any injunctive relief would appear to be the same and any restitution would be limited to that necessary to restore losses to any person injured by the false advertising. In other words, government plaintiffs would have no greater authority to obtain broad restitution on behalf of "the people" of the state, but would be limited to the same restitution on behalf of "any person in interest" as would a private plaintiff.

Indeed, it would appear that any private party injured by GSK's alleged false advertising could have brought the present action and pursued the same injunctive relief and restitution sought by the county. While the elements and required proof for a private-party action may differ from those in a government action, the same broad injunctive relief to prevent continued false statements and restitution to "parties in interest" who suffered losses as a result of false marketing are available in private-party actions.[124] The state would not be the real party in interest to such an action brought by a private party, and, as discussed below, the statute's authorization to local government attorneys to bring an action "in the name of the people of the State of California" does not transform such a local government action into one brought by the state.

---

[123] *Id.*

[124] *See, e.g., Pfizer Inc. v. Superior Court*, 105 Cal. Rptr. 3d 795, 802-03 (Cal. Ct. App. 2010).

Unlike injunctive relief and restitution, civil penalties are available only in actions brought by the Attorney General or a local government attorney.[125] Significantly, however, in an action such as this one brought by a county counsel, "the entire amount of penalty collected shall be paid to the treasurer of the county in which the judgment was entered."[126] Thus, while an action brought by a government attorney (whether state or local) is distinguishable from one brought by a private party in that civil penalties can be assessed only in the former category of actions, government actions are themselves divided into Attorney General actions, in which one-half of the civil penalties are paid to the state treasury, and local attorney actions such as this one, in which all the civil penalties are paid to the local government treasury.[127]

In short, the plain language of the false advertising law provides little support for plaintiff's claim that the State of California was the real party in interest when this action was first commenced. The fact that the original complaint sought restitution for injured parties throughout the state does not make the case one on behalf of the state, even though it was nominally brought (as the statute requires) "in the name of the people of the State of California." The same statewide relief could have been sought by private parties injured by GSK's alleged false advertising. And while only a government entity such as the county could have sought the civil penalties it included as part of its requested relief, any such penalties, even if paid for alleged false statements made statewide, would have inured solely to the benefit of the county.

---

[125] CAL. BUS. & PROF. CODE § 17536(a).

[126] *Id.* § 17536(c). It is at least somewhat noteworthy that plaintiff's original complaint appeared to focus primarily on its request for restitution and mentioned "civil penalties and all other relief to which it and the People of the State of California are entitled" only in passing. *See* Orig. Compl. ¶ 14.

[127] CAL. BUS. & PROF. CODE § 17536(c).

**The Applicable Case Law.** The relevant case law provides no greater support for plaintiff's claim that the state is the real party in interest. The Supreme Court's leading decision in *Missouri Railway* provides that a state is the real party in interest when the relief sought in a case would inure to it alone and any judgment entered for the plaintiff would effectively operate for the state's benefit.[128] Here, any restitution would benefit specific individuals and entities harmed by GSK's alleged false advertising, while civil penalties would inure solely to the county's benefit. From the beginning, the "essential nature and effect of [this] proceeding"[129] was an action brought by a local government entity to benefit itself (or its citizens) through the payment of a civil penalty and to benefit specific individuals harmed by allegedly false marketing through restitution.

Even if plaintiff is considered to have brought this action "on behalf of the people" of the State of California (as opposed to "in the name of the people," as the statute provides), this would not render "the people" the real party in interest. As the representative party cases discussed above make clear, where a representative party has responsibility for bringing and prosecuting an action on behalf of others and is liable for the costs or consequences of any such action, that party and not the absent beneficiaries of the suit is the real party in interest.[130]

Among the cases addressing claims under the California false advertising law and similar statutes, *Lucent* is most apposite. While the specific facts of *Lucent*—claims brought by a *state* agency, ostensibly on behalf of a single *individual*—are quite different from those in the present case, the principles from *Lucent* strongly support the conclusion that the state was not the real party in interest when this case was initially filed.

---

[128] *Missouri Ry.*, 183 U.S. at 59.

[129] *Ramada Inns*, 598 F.2d at 1306.

[130] *See, e.g.*, *Mecom*, 284 U.S. at 186-87; *Navarro*, 446 U.S. at 465.

First, the *Lucent* court's determination that the state's presence as a party (as it ostensibly is here, in an action brought "in the name of the people") will not defeat jurisdiction "when it appears that the state has no real interest in the controversy" applies with equal force here, where the state has had nothing to do with bringing or prosecuting this action, and would receive no direct benefit from a settlement or judgment in plaintiff's favor.[131]

Second, the *Lucent* court rejected the analysis of many California district courts that had "held that a decree will effectively operate in favor of a state so long as [its] interests [in the well-being of its populace] are present."[132] The plaintiff in *Lucent* had sought broad equitable relief affecting all of the defendant's employees and work locations throughout California, just as plaintiff in this case sought equitable relief in its original complaint on behalf of Avandia users, insurers, public health care providers, and government payors throughout California.[133] Yet, as in *Lucent*, this broad request for statewide relief does not constitute a "substantial state interest" that makes the state the real party in interest.[134]

While plaintiff points to many district court cases holding that the state is the real party in interest in cases such as this one, those cases are unpersuasive and inconsistent with *Lucent* (and the Supreme Court cases on which it relied). Most of these cases rely heavily on a presumption against jurisdiction that is employed when a removal from state court to federal court is challenged. Some of these cases also rely on the fact that the actions were purportedly brought "on behalf of the people" of the state, but the courts failed to analyze whether this was actually so; in reality, the actions were

---

[131] *Lucent*, 642 F.3d at 737 (internal quotation omitted).

[132] *Id.* at 737-38 n.2.

[133] *Id.* at 739-40.

[134] *Id.* at 739.

brought only "in the name of the people" of the state, a factor that has little relevance to the real-party-in-interest analysis.[135]

Some of these cases hold that a plaintiff such as the county here is merely a "conduit" for the state or the people of the state, but neither the language of the false advertising law nor leading cases such as *Missouri Railway* and *Lucent* support the notion that the county here is a mere conduit.[136] From the outset of this case, the county sought civil penalties that would go solely to its own coffers; the fact that the law limits the use of those funds to consumer protection purposes does not mean that the penalties inure to the benefit of the *state*, as opposed to the county (or perhaps the people of the county). Similarly, while the original complaint sought restitution on behalf of Californians statewide, such relief would have been limited to those harmed by GSK's alleged false marketing and would not have inured to the benefit of the state itself or all Californians.[137]

Finally, the Ninth Circuit's decision in the *Bank of America* case involving the State of Nevada does not alter this analysis. Even aside from the fact that *Bank of America* did not involve the issue of a party's citizenship or diversity jurisdiction, the Ninth Circuit in that case did not recede from its holding in *Lucent*.[138] Moreover, the case was brought by *a state attorney general*, not a county counsel, to

---

[135] *See, e.g., M&P Invs.*, 213 F. Supp. 2d at 1212-13 & n.11. While not a perfect analogy, it is worth noting that the federal False Claims Act authorizes a private party to bring a *qui tam* action "in the name of the Government," 31 U.S.C. § 3730(b)(1), but a private FCA action is not considered to be "brought by the Government," *Rockwell*, 549 U.S. at 477-78, and the government is not considered a party to such an action, *United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 (2009).

[136] *See, e.g., Purdue Pharma*, 2014 U.S. Dist. LEXIS 159952, at *6; *Bristol Myers Squibb*, 2012 U.S. Dist. LEXIS 133405, at *13.

[137] *See also Northern Trust Corp.*, 2013 U.S. Dist. LEXIS 53155, at *7, *10-*11.

[138] *Bank of Am.*, 672 F.3d at 669-70.

vindicate *state* rights broadly affecting the *state's* citizens and its economy and to obtain relief that was available to the *state* alone.[139] It does not aid plaintiff's argument here.

In short, the county has been the real party in interest in this litigation from the outset. It chose the counsel to prosecute the action and has controlled the strategy and progress of the case. The county and not the state will determine whether the case is settled or voluntarily dismissed. The county and not the state is subject to any court order requiring the payment of costs, sanctions, or attorneys' fees. And the county treasury will receive any funds paid as a civil penalty. The fact that the county initially sought restitution for many California residents for their injuries does not convert this action into one for all the people of the state. From the beginning of this case, the county, and not the state or the people of the state, has been the real party in interest. Thus, there is complete diversity and the Court has subject-matter jurisdiction over this action.

### B. Complete diversity of citizenship exists now, on the basis of the second amended complaint, such that federal subject-matter jurisdiction is present.

For the same reasons that the county was the real party in interest when this case was filed—and therefore complete diversity existed—the county was the real party in interest when it filed the second amended complaint in 2013. The factors supporting the conclusion reached in Section II.A above apply with even greater force under the second amended complaint. While diversity jurisdiction is based on the citizenship of the parties and not the scope of the plaintiff's claims, the real-party-in-interest analysis focuses on the nature of the plaintiff's claims,[140] and thus, the narrower scope of plaintiff's claims in the second amended complaint and the limitation of the action to

---

[139] *Id.* at 672.

[140] *See, e.g., Ramada Inns*, 598 F.2d at 1306.

county-based claims strengthen the conclusion that the county, and not the state, is the real party in interest to this litigation.

Under the second amended complaint, plaintiff may obtain restitution only for "persons or entities resident in the County."[141] Any injunctive relief will be limited to preventing violations of the false advertising law within the county, and while any civil penalties will still be paid exclusively to the county, they will now be limited to penalties for violations of the law within the county.[142] Finally, the import of the *Lucent* analysis is even greater following the entry of the final judgment in the state's case against GSK and the subsequent narrowing of plaintiff's claims under the second amended complaint. If the state ever had any interest in this case (which, as discussed above, was not substantial enough to render it the real party in interest), it has disclaimed any such interest following its resolution of its claims against GSK and unquestionably has left this case in the county's hands. Similarly, any judgment in this case would operate not for the benefit of the state, which already has obtained a judgment in its favor covering any interest it had in preventing and remedying the effects of GSK's alleged false marketing, but solely for the benefit of the county and its residents.[143] Under the second amended complaint, the County of Santa Clara is the real party in interest.

**C.  If complete diversity of citizenship did not exist at the time the case was initially filed, a federal court cannot exercise subject-matter jurisdiction over this case even if diversity now exists.**

If the Court agrees with the Special Master's recommendation in Section II.A that complete diversity existed at the time this action was commenced, there is no need to answer the question

---

[141] Dckt. No. 82, Exh. B, ¶ 11(E).

[142] *Id.*

[143] *See, e.g., Missouri Ry.*, 183 U.S. at 59.

whether jurisdiction exists under the more compelling circumstances of the second amended complaint. If the court disagrees with the Special Master's recommendation in Section II.A, however, but agrees with the Special Master's recommendation in Section II.B that jurisdiction exists under the circumstances of the second amended complaint, the Court must address the question whether the absence of complete diversity at the outset of the case may be cured by the existence of complete diversity later in the case. The Special Master recommends that, if the Court addresses this question, it hold that jurisdiction must be determined as of the initiation of this case and not at some later time, and that, therefore, if complete diversity was lacking at the outset, it cannot be cured by its presence at the time of the filing of the second amended complaint.

The Supreme Court's decision in *Grupo Dataflux* controls this issue. Broadly speaking, *Grupo Dataflux* stands for the proposition that where complete diversity is lacking at the outset of a case, it cannot be cured through a change in circumstances involving a particular party or a party's claims.[144] Rather, only where the make-up of the parties themselves changes through the dismissal of a diversity-destroying party can a jurisdictional defect be cured after the commencement of a case.[145]

Here, there was no change in parties or dismissal of a non-diverse party when the county filed the second amended complaint. From the outset of this case, there was only one party: the County of Santa Clara. While the county initially brought claims on its own behalf and on behalf of "the People of the State of California,"[146] all of the claims were brought by a single plaintiff, the county. After the state entered into the final judgment with GSK and the county filed its second amended

---

[144] 541 U.S. at 572 n.3, 574, 580.

[145] *Id.* at 573, 579-80.

[146] The county's claims on its own behalf were dismissed by the Court in 2011. *See* Dckt. No. 23.

complaint, the county remained the sole plaintiff.[147] All that changed was the *scope* of the county's claims allegedly brought on behalf of the people of the state. As in *Grupo Dataflux*, in which the changes in a partnership mid-case failed to cure a jurisdictional defect, the changes in the nature of the plaintiff's claims here are insufficient to save any lack of complete diversity at the outset of the case.

This case is thus distinguishable from cases such as *Caterpillar* and *Newman-Green*, in which a diversity-destroying *party* was dismissed after a case lacking complete diversity was filed. The "people of the State of California" were not dismissed from this case. The scope of the claims brought in their name was simply narrowed. The general rule that diversity is determined at the time a case is commenced and the Supreme Court's reiteration in *Grupo Dataflux* of the narrowness of any exceptions to this rule point to the conclusion that if complete diversity was absent at the outset of this case (because the state was the real party in interest), the changes in the second amended complaint cannot save this lack of complete diversity and the case must be dismissed.

Finally, as discussed above in Section I.D, the cases on which GSK relies that hold that an amended complaint supersedes an original complaint and renders the latter a nullity are distinguishable. While courts have sometimes questioned whether jurisdiction that indisputably *existed* at the outset of a case *continues* to be present when the plaintiff files an amended complaint that completely changes the nature of its claims,[148] GSK points to no cases supporting its argument in the opposite situation—where diversity jurisdiction that purportedly was absent at the outset of a

---

[147] While plaintiff's second amended complaint for the first time listed two plaintiffs—the County of Santa Clara *and* the People of the State of California—this nominal change does not alter the fact that there is only one real plaintiff in this case and it does not affect the analysis under *Grupo Dataflux* and similar cases of whether the change in the nature of a case can cure the absence of jurisdiction when the case was commenced.

[148] *See, e.g., Brough v. Strathmann Supply Co.*, 358 F.2d 374, 375-76 (3d Cir. 1966).

case is found to exist after a plaintiff files an amended complaint changing the nature of its claims. Thus, if diversity jurisdiction was absent at the outset of this case, it does not exist now as a result of the filing of the second amended complaint.

<div align="center">

**CONCLUSION**

</div>

The Special Master recommends that the Court deny plaintiff's motion to dismiss for the reasons set forth above.

<div align="right" style="margin-right: 20%;">

/s/ Bruce P. Merenstein
Bruce P. Merenstein, Special Master

</div>

Dated: May 8, 2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— :

IN RE: AVANDIA MARKETING, SALES : 
PRACTICES AND PRODUCTS LIABILITY :     MDL No. 1871
LITIGATION :     No. 07-md-01871-CMR
———————————————————— :
  :
THIS DOCUMENT RELATES TO: :
Case No. 2:10-cv-01637-CMR :
  :
COUNTY OF SANTA CLARA and THE :
PEOPLE OF THE STATE OF CALIFORNIA, :
acting by and through Acting Santa Clara :
County Counsel Lori E. Pegg, :
  :
        Plaintiffs, :
  :
     v. :
  :
SMITHKLINE BEECHAM CORPORATION :
d/b/a GLAXOSMITHKLINE L.L.C., :
  :
        Defendant. :
———————————————————— :

## CERTIFICATE OF SERVICE

I, Bruce P. Merenstein, hereby certify that on May 8, 2015, I caused to be electronically filed the foregoing **Twenty-Fourth Report and Recommendation of the Special Master As to Plaintiff's Motion to Dismiss in *County of Santa Clara v. GSK*.** Through the Court's ECF system, this document is available for viewing and downloading.


                                 /s/ Bruce P. Merenstein
                                 Bruce P. Merenstein