T 617.482.3700   F 617.482.3003



Thomas M. Sobol
Partner
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com

**tom@hbsslaw.com**

February 19, 2016

The Honorable Cynthia M. Rufe          *Via ECF*
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Suite 12614
Philadelphia, Pennsylvania 19106-1797

Re:     **In re Avandia Marketing, Sales Practices and Products Liability Litigation
MDL No. 1871; Case No. 07-md-1871**

Dear Judge Rufe:

Attached for your consideration is plaintiffs' proposed Case Management Order No. 1 (Governing Initial Discovery and Case Schedule) (Ex. 1).

As Your Honor is aware, Plaintiffs have each brought a putative class action against defendant GlaxoSmithKline LLC ("GSK") alleging violations of RICO, various consumer protection laws, and unjust enrichment claims.  The Court denied GSK's motion to dismiss (except as to unjust enrichment), and the Court of Appeals for the Third Circuit affirmed that ruling.  Although GSK has expressed its intention to petition for a writ of *certiorari* to appeal to the United States Supreme Court, both sides agree that, pending the Supreme Court's decision whether to hear the case, a case schedule should be established, and that some discovery is warranted.  As such, and per Your Honor's order of February 11, 2016, the parties were to submit an agreed case management order or, absent an agreement, competing proposals.  *See* Order, Dkt. No. 4809.

On January 20, 2016, Co-Lead Counsel and the Executive Committee received GSK's initial draft order, and on February 10, 2016, Co-Lead Counsel and the Executive Committee responded with their own proposed order.[1]  Co-Lead Counsel and the Executive Committee have since conferred with counsel to GSK, by telephone and email, regarding plaintiffs' proposal. However, there remain three issues on which the parties have differing positions.

---

[1] Attached to this letter is a redline showing the differences between GSK's initial proposed case management schedule and plaintiffs' (Ex. 2).  As reflected in the redline, plaintiffs have accepted the large majority of GSK's proposal.  Plaintiffs did not receive a written counterproposal to, or comments on, their February 10 draft.

February 19, 2016
Page 2

As detailed below, plaintiffs' position on these disputed issues is: (1) a reasonable trial schedule should be set, which in keeping with the Court's expressed desire, sets trial for approximately 18 months hence; (2) GSK should be required to produce as initial discovery a circumscribed set of documents unquestionably relevant to the claims of third party payors ("TPPs"); and (3) GSK should submit to a limited number of Rule 30(b)(6) depositions, as each plaintiff has agreed to do.  Plaintiffs' position on each disputed issue is grounded in twin desires: (1) to bring these cases to trial as soon as is practicable, and (2) to minimize the burden on the Court and the parties in doing so.

**1.      The Court should adopt plaintiffs' proposed trial schedule.**

Plaintiffs first propose that the Court enter a reasonable case management schedule. *See* Ex. 1, ¶ 1. Key scheduled events include the close of fact discovery (January 31, 2017), the deadline for plaintiffs to file their motion for class certification (March 1, 2017), the deadline for the parties to file summary judgment and *Daubert* motions (June 1, 2017), and trial (October 30, 2017).  Plaintiffs' proposed schedule is thus consistent with the Court's expressed wishes that trial be set for roughly 18 months from now.  However, the proposed schedule is also subject to adjustment, with input from all parties, based on the resolution of GSK's *certiorari* petition. With those considerations in mind, plaintiffs respectfully submit that the Court should adopt their proposed schedule.

**2.      GSK should be required to produce the requested initial discovery.**

Although plaintiffs have access to the documents produced by GSK in this litigation, and to the transcripts of depositions of GSK employees relating to Avandia, GSK is concededly in possession or control of additional, relevant information that was *not* the subject of any previous discovery.  To that end, plaintiffs next propose that GSK produce, over the next three and a half months and to the extent it has not done so already, five categories of documents.  *See* Ex. 1, ¶ 4.

- Three of the five identified categories comprise documents GSK has already turned over in other, related litigations.  *See* Ex. 1, Schedule B, items (a) through (c).  Upon information and belief, those previous productions contain documents and information directly relevant to TPPs' claims against GSK.  And because GSK has produced these materials before, producing them here will impose no undue burden on GSK.

- The fourth category of initial GSK production reflects plaintiffs' basic need for sales data regarding GSK's type 2 diabetes products, including Avandia – the request simply mirrors GSK's request that plaintiffs provide GSK with their own prescription data.  *See* Ex. 1, Schedule B, item (d); *see also* Ex. 1, Schedule B-1.

February 19, 2016
Page 3

- Plaintiffs' final category of requests ("All documents reflecting communications by GSK to plaintiffs regarding Avandia and/or any other type 2 diabetes medication") adopts, with some minor expansion, GSK's own proposal to provide plaintiffs "documents reflecting communications to plaintiffs regarding Avandia." *See* Ex. 2, Schedule B, item (e).

This information, particularly sales data, is relevant to plaintiffs' anticipated motion for class certification. In deciding whether this action is to be maintained as a class action, this Court must make a searching inquiry and an affirmative determination with respect to each of the requirements under Rule 23. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008). To meet their burden under Rule 23, plaintiffs will have to demonstrate, among other things, that the common issues predominate over any individual issues that GSK may contend exist. To the extent that making a determination of any element of Rule 23 necessitates the Court addressing the merits, the Court is required to do so. *See Hydrogen Peroxide*, 552 F.3d at 307. Therefore, in making these determinations, the Court should have a complete record that will allow it to make the requisite factual findings and apply the appropriate legal rules to those findings. *See Hydrogen Peroxide*, 552 F.3d at 316-18.

Sales data of the type plaintiffs request supported the analysis that the First Circuit Court of Appeals found sufficient to show that common issues predominate with respect to causation in *In re Neurontin Mktg. & Sales Practices*, 712 F.3d 21 (1st Cir. 2013) (*cited with approval in In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, No. 09-CV-730, 2013 WL 5761202, at *1 (E.D. Pa. Oct. 23, 2013)). So too here -- when properly analyzed, the data requested will permit the Court to see that issues susceptible to common proof will predominate.

Because the requested initial production comprises materials directly relevant to this litigation, and because their production will impose no undue burden on GSK, plaintiffs respectfully submit that the Court should direct GSK to produce the requested discovery by entering plaintiffs' proposed order.[2]

**3.     A limited number of Rule 30(b)(6) depositions will narrow the issues for further discovery.**

Finally, plaintiffs' proposed order contemplates that (1) plaintiffs will submit their own representatives for 30(b)(6) depositions, and (2) plaintiffs will take no more than four Rule 30(b)(6) depositions from GSK on topics of particular relevance to the TPPs' claims, including

---

[2] As for the initial discovery to be produced by plaintiffs to GSK, in a gesture of good faith and in keeping with interests of efficiency, plaintiffs' proposal adopts GSK's proposed ten-point list of initial production categories nearly whole cloth. *See* Ex. 2, ¶ 2 and Schedule A (reflecting the minor differences between GSK's initial proposal and plaintiffs' counter-proposal).

February 19, 2016
Page 4

the creation and maintenance of databases containing marketing data.  *See* Ex. 1, ¶ 6 (enumerating the topics to be covered at the proposed depositions).

These databases are likewise relevant to plaintiffs' class certification motion.  As set forth above, plaintiffs will be required to show that there are common issues; that the common issues predominate over any individual issues that GSK may contend exist; and that the case will be manageable as a class action. Plaintiffs believe, and have reason to believe, that the information in these databases will demonstrate the extent to which GSK's broad-based marketing scheme has been managed by GSK in the aggregate and the extent to which common proof can be used to establish the elements of plaintiffs' claims and enable this class action to be managed effectively. The databases contain information that the Court should have as part of the record on which it bases its class certification determinations because, when properly analyzed, these databases will permit the Court to see how plaintiffs can prove their case at trial and ensure that the case will be manageable as a class action and, again, that the issues susceptible to common proof will indeed be predominant.

What is more, if the Court adopts plaintiffs' proposal, these initial depositions will allow the parties to appropriately narrow the scope and breadth of their subsequent discovery on these topics, saving time and reducing costs.  And to further facilitate the efficient sequencing of discovery and to minimize the burden on the parties and the Court, plaintiffs have agreed not to propound any additional discovery on the enumerated topics until after the depositions conclude. *See* Ex. 1, ¶ 6. Because the proposed depositions best balance the parties' interests in efficiency, on one hand, and in the robust prosecution and defense of this litigation, on the other, GSK should be directed to cooperate.

For all of these reasons, plaintiffs respectfully request that the Court enter the proposed Case Management Order attached as Exhibit 1 to this letter.

Respectfully,

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Thomas M. Sobol*

Thomas M. Sobol
Partner

cc:     James R. Dugan, II, Esquire (via e-mail:  jdugan@dugan-lawfirm.com)
        Anthony Vale, Esquire (via e-mail:  valea@pepperlaw.com)

Enclosures