**EXHIBIT 1**

**Plaintiffs' Proposed Case Management Order No. 1
(Governing Initial Discovery and Case Schedule)**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>All Third Party Payor Actions | MDL NO. 1871<br><br>Case No. 07-MD-1871 |

**CASE MANAGEMENT ORDER NO. 1**
**(Governing Initial Discovery and Case Schedule)**

WHEREAS, plaintiffs have each brought a putative class action against GSK LLC ("GSK") alleging violations of RICO, various consumer protection laws, and unjust enrichment claims;

WHEREAS, the Court denied GSK's motion to dismiss (except as to unjust enrichment), and the Court of Appeals for the Third Circuit has affirmed that ruling;

WHEREAS, GSK will petition for a writ of *certiorari* to appeal to the United States Supreme Court, but it is reasonable to engage in some additional limited discovery pending the Supreme Court's decision whether to hear the case;

WHEREAS, plaintiffs have access to all documents produced by GSK in MDL 1871 and to the transcripts of 62 depositions of former or current employees of GSK relating to Avandia, Avandamet, and Avandaryl (collectively "Avandia") but require additional information particularly relevant to the claims of third party payors that were not the subject of previous discovery in this MDL; and

WHEREAS, in order to ensure that such initial discovery, on both sides, is conducted expeditiously and in order to manage the conduct of this case in an efficient manner, a case schedule is necessary.

**IT IS HEREBY ORDERED:**

**A. Case Schedule.**

1.     The following case schedule shall apply to the above-captioned actions.  If and when the United States Supreme Court grants GSK's motion for a writ of *certiorari,* the parties shall confer concerning the appropriate adjustments to the case schedule, and submit a joint or, if necessary, competing proposals for the Court's consideration.

| EVENT | DATE |
| --- | --- |
| Fact discovery begins | March 15, 2016 |
| Initial fact discovery, as set forth in this Order, completed | June 1, 2016 |
| All fact discovery closes | January 31, 2017 |
| Plaintiffs serve opening expert reports addressing class certification and merits issues | February 14, 2017 |
| Plaintiffs file motion for class certification (along with previously served expert reports on class) | March 1, 2017 |
| Defendants serve opposition expert reports addressing class certification and merits issues | March 14, 2017 |
| Plaintiffs rebuttal expert reports addressing class certification and merits issues | March 28, 2017 |
| Defendants file opposition to class certification (along with previously served expert reports on class) | March 31, 2017 |
| Plaintiffs file reply on class certification | April 14, 2017 |
| Hearing on class certification | May 1, 2017 |

| | |
|---|---|
| Close of expert discovery | May 9, 2017 |
| Parties file Rule 56 and Daubert motions | June 1, 2017 |
| Parties file Rule 56 and Daubert oppositions | June 30, 2017 |
| Parties file replies to Rule 56 and Daubert motions | July 14, 2017 |
| Hearing on Rule 56 and Daubert motions | August 1, 2017 |
| Trial | October 30, 2017 |

**B. Plaintiffs' Initial Production to Defendants.**

2.  Each plaintiff shall provide to GSK, on a rolling basis, the information and documents listed on **Schedule A** hereto. Each plaintiff shall complete such production by June 1, 2016.

3.  GSK may take one (1) Rule 30(b)(6) deposition of each plaintiff. GSK shall serve notice of such depositions by March 16, 2016.

**C. Defendant's Initial Production to Plaintiffs.**

4.  To the extent GSK has not previously produced the information and documents into the MDL depository, GSK shall provide to plaintiffs, on a rolling basis, the information and documents listed on Schedule B hereto. GSK shall complete such production by June 1, 2016.

5.  Plaintiffs may take depositions of any GSK employee who communicated with plaintiffs.

6.  Plaintiffs may take up to four (4) Rule 30(b)(6) depositions of GSK regarding the creation and maintenance of any databases containing the following:

- Invoice level sales data regarding Avandia or any other type 2 diabetes drug, including information on discounts, rebates, chargebacks, as well as any such data or documents

- acquired concerning Avandia or other Type 2 diabetes drug from IMS or other third parties.

- Data concerning physician detailing, including call logs, regarding Avandia or any other type 2 diabetes drug and any such related data acquired from IMS or any other third party.

- Data concerning marketing expenditures on Avandia or any other type 2 diabetes drug and any such related data acquired from IMS or any other third party.

- Data or documents regarding patient switching within the therapeutic category, and any such data or documents acquired from IMS or any other third party.

- Data or analysis concerning the relationship between marketing efforts and sales of Avandia, and any such data or documents acquired from IMS or any other third party.

- Data regarding Avandia's placement on TPP formularies, and any such data or documents acquired from IMS or any other third party.

- Data or documents concerning institutional marketing of Avandia, and any such data or documents acquired from IMS or any other third party.

- Data or documents concerning Avandia's competitor drugs, and any such data or documents acquired from IMS or any other third party.

- Data or documents regarding projected sales of Avandia, and any such data or documents acquired from IMS or any other third party.

- Data or documents on patient use of Avandia.

Plaintiffs shall serve notices of such depositions by March 16, 2016. In order to facilitate the efficient sequencing of discovery and to minimize the burden on the parties and the Court, plaintiffs shall not propound any additional discovery regarding the topics listed above before the referenced 30(b)(6) depositions are complete.

### D. Parties to Meet and Confer Upon Completion of Initial Discovery.

7. After initial discovery is completed, as outlined above, the parties will meet and confer to determine and advise the Court on whether additional discovery is necessary pending resolution of the writ of *certiorari* before the Supreme Court.

                                                                                         _____

                                                                                         Cynthia M. Rufe, J.

Dated:_____, 2016

## SCHEDULE A

### Plaintiffs' Initial Production to Defendants

a. The name of each person formerly or currently employed by or affiliated with plaintiff who is knowledgeable about the pharmacy benefit provided by plaintiff to its members or beneficiaries.

b. The name of each pharmacy benefit manager (PBM) and third party administrator (TPA) engaged by plaintiff from 1999 to the present, and the dates during which each PBM and/or TPA was engaged.

c. The status of Avandia on the formulary used by plaintiff from 1999 to the present.

d. Copies of the contracts entered into between plaintiff and the identified PBMs and TPAs.

e. Subject to the terms of any applicable protective order and, if necessary, relief from the terms of any applicable protective order, copies of the transcripts of depositions, including exhibits, given by or on behalf of plaintiff in litigation in the last ten years involving an allegation that plaintiff paid too much for a prescription drug or paid for too many prescriptions of the drug.

f. Plaintiff's purchase or reimbursement data for 1999 to the present that includes, for each patient who received a prescription for a type 2 diabetes medication paid for or reimbursed by plaintiff, the following:

   i. Identification of the patient by unique identifying number (and not by name or social security number).
   ii. Name of the medication and dose, or NDC code;
   iii. Fill date of prescription;
   iv. Prescriber of the medication;
   v. Co-pay paid by the patient;
   vi. Amount paid by the plaintiff;
   vii. Amount of any rebate received by plaintiff as a result of the individual prescription, if available. In the absence of such individualized rebate information, plaintiff shall provide aggregate rebate information concerning rebates received as a result of reimbursement for any type 2 diabetes medication, as available.

   All such data shall be de-identified so protected health information of insureds is not revealed.

g.  The minutes of each meeting of plaintiff's board or committee at which the filing of the action against GSK was authorized, and at which Avandia was discussed.

h.  Any document in the custody or control of plaintiff relating to Avandia.

i.  All written communication between plaintiff and its PBM or TPA relating to Avandia.

j.  All documents prepared for beneficiaries or insureds of plaintiff that describes the extent of coverage for prescription drugs under the pharmacy benefit plan offered by plaintiff.

7

## **SCHEDULE B**

### **Defendants' Initial Production to Defendants**

a. All documents turned over to the federal government by GSK as part of the criminal plea agreement reached in <u>United States of America v. GlaxoSmithKline LLC</u>, Criminal Action No. 12-cr-10206 (D. Mass), concerning GSK's unlawful promotion of Avandia and GSK's introduction of misbranded drugs, Paxil and Wellbutrin, into interstate commerce.

b. All documents GSK produced, and all transcripts of all depositions taken in, the case captioned *County of Santa Clara v. Smithkline Beecham Corp. et al.*, Case No. 2:10-cv-01637 (N.D. Cal.).

c. All documents produced by GSK to State Attorneys General concerning GSK's unlawful promotion of any drug, including Avandia.

d. Invoice level sales data from 1999 to present concerning sales of any type 2 diabetes medication, including, but not limited to, Avandia, as delineated in detail on Schedule B-1 hereto.

e. All documents reflecting communications by GSK to plaintiffs regarding Avandia and/or any other type 2 diabetes medication.

**SCHEDULE B-1**

Electronic data in a tab-delimited, comma-delimited, or semicolon-delimited ASCII flat text file or similar electronic format from January 1, 1999 to the present sufficient to identify all sales of any type 2 diabetes medication, including, but not limited to, Avandia, in transaction-by-transaction format, as follows:

    a.    All direct sales/invoice transactions (as well as any discounts or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount, (ii) source of the transaction price, (iii) number of units sold, (iv) number of units returned or otherwise affected by the transaction, (v) unit of measure, (vi) date of transaction, (vii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (viii) NDC, (ix) UPC, (x) SKU, (xi) product description, (xii) product form, (xiii) product strength, (xiv) package size in extended units per package, (xv) customer name, (xvi) customer number, (xvii) customer address, (xviii) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to customer and the ship-to customer), and (xix) the customer's parent company (if the data identify a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

    b.    All indirect sales/invoice/chargeback transactions, together with any discounts, price adjustments or offsets contained in the transaction data, including fields containing the following information: (i) wholesaler name; (ii) wholesaler number; (iii) wholesaler DEA number; (iv) indirect customer name; (v) indirect customer number; (vi) indirect customer DEA number; (vii) indirect customer complete address; (viii) indirect customer class of trade code; (ix) indirect customer class of trade code description; (x) NDC; (xi) product description; (xii) product form; (xiii) product strength; (xiv) product package size; (xv) date of transaction between the wholesaler and its customer (i.e., the indirect customer); (xvi) date of chargeback payment; (xvii) chargeback amount; (xviii) contract price; (xix) wholesale price; (xx) number of units sold; (xxi) location of transaction (city and state); and (xxii) gross profit, net profit, or rate of return.

    c.    All data concerning chargebacks, rebates, discounts, and other consideration given or accrued, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity whom Defendants paid, or on whose behalf Defendants accrued, the chargeback, rebate, discount or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which Defendants paid or accrued the chargeback, rebate,

        discount or other consideration; (iv) the sales, or group of sales, upon which the rebate, discount or other consideration is based, including: (v) the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction; (vi) the bill-to customer; (vii) the ship-to customer; (viii) the dates of the sales, or group of sales; (ix) customer DEA number; (x) customer class of trade code; (xi) customer class of trade code description; (xii) product description; (xiii) the invoice amount in dollars for the sales or group of sales; (xiv) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; (xv) date of payment of the chargeback, rebate, or discount, and (xvi) the contract, agreement, or other basis upon which the chargeback, rebate, discount, or other consideration is calculated.

d. All administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales concerning the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code.

e. Any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, and all other transaction types not reflected in the above (a through d), whether created or maintained daily, monthly, quarterly, or at some other periodicity.

f. The complete documentation for all items above (a through e) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g. field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade designations, etc.), including but not limited to (aa) a separate product list, including NDC, SKU, UPC, product description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (cc) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating (1) whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold and (2) how negative unit and dollar values should be treated in calculating net quantities and dollar amounts; (dd) all datasets and calculations used (1) to determine accrued rebates or chargebacks or (2) to periodically reconcile accrued rebates or chargebacks with actual rebates or chargebacks; (vi) return or exchange policies; and (vii) payment terms.