IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | : : : | MDL NO. 1871 07-MD-01871 |
| | : | |
| | : | |
| THIS DOCUMENT APPLIES TO | : | |
| | : | |
| *County of Santa Clara v. GSK* | : | 10-CV-1637 |
| | : | |

MEMORANDUM OPINION

RUFE, J.                                                                         FEBRUARY 28, 2017

I.      INTRODUCTION

Plaintiff has filed a Motion Appealing the Twenty-Fourth Report and Recommendation

of the Special Master ("R&R 24").  R&R 24 addressed an unusual situation: five years into this

litigation, in a case that was filed in—rather than removed to—federal court, Plaintiff filed a

Motion to Dismiss the case for lack of subject matter jurisdiction, claiming that the parties were

not completely diverse at the outset of the case, and therefore this Court lacks subject matter

jurisdiction over the case.[1]  R&R 24 concluded that jurisdiction was and is proper in this case.

Upon consideration of Plaintiff's Motion appealing the R&R, Defendant's Response, and

Plaintiff's Reply, and pursuant to this Court's power to conduct a *de novo* review of proposed

recommendations to which objections are made,[2] the Court will approve and adopt

R&R 24 for the reasons set forth below.

---

[1] Pursuant to 28 U.S.C. § 1332(a)(1),  "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  A state (or "the people" of the state) is not considered a citizen for diversity purposes, but a county is considered a citizen of the state. *Moor v. Cty. of Alameda*, 411 U.S. 693, 717 (1973).

[2] *See* Fed. R. Civ. P. § 53(f)(3).

II.     BACKGROUND

The Avandia Multidistrict Litigation ("MDL 1871") was created by the United States

Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, to consolidate cases in

federal court that "arise from allegations that certain diabetes drugs manufactured by [Defendant

GlaxoSmithKline]—Avandia and/or two sister drugs containing Avandia (Avandamet and

Avandaryl)—cause an increased risk of heart attack and other physical injury, and that GSK

failed to provide adequate warnings concerning that risk."[3]  Both personal injury claims and

sales and marketing claims were consolidated in MDL 1871.  The stated goal of the panel in

creating the MDL was to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and

conserve the resources of the parties.[4]  In its role as the MDL Court, this Court has, with the

assistance of court-appointed Special Discovery Masters and Settlement Masters, directed

discovery efforts, resolved common questions of law, decided *Daubert* motions, and overseen

the settlement of tens of thousands of individual cases.

In 2010, the County of Santa Clara ("the County"), individually and on behalf of the

People of the State of California ("the People"), filed this sales and marketing suit against

Defendant GlaxoSmithKline ("GSK"), alleging violations of California's False Advertising Law

("FAL") in the marketing of Avandia.  Plaintiff opted to file the suit in federal court, asserting

that the federal courts had diversity jurisdiction over the controversy, as Plaintiff and Defendant

were citizens of different states.  Plaintiff originally filed suit in the United States District Court

for the Northern District of California, and the Judicial Panel on Multidistrict Litigation

subsequently transferred the case to MDL 1871 by a Conditional Transfer Order dated March 11,

---

[3] October 16, 2007 Transfer Order of the United States Judicial Panel on Multidistrict Litigation, at *2 [07-1871, Doc. No. 1].

[4] *Id.*

2010.  There were no objections to the transfer.  Before an answer was filed, Plaintiff filed a first

amended complaint on June 10, 2010.  The amended complaint, like the original complaint,

alleged one count: "Violations of the California Business and Professions Code Section 17500, *et

seq.*, by Plaintiff County of Santa Clara, individually, and on behalf of the People of the State of

California as against all Defendants."[5]

Defendant filed a motion to dismiss the amended complaint, seeking dismissal of claims

raised by the County on its own behalf, arguing that the County lacked standing under the FAL,

and further arguing that the County had failed to state a claim on behalf of the People.  The Court

found that the County did not have standing to sue on its own behalf, but that it had adequately

pled its claims on behalf of the People.[6]

After the Court ruled on the motion to dismiss, GSK filed an answer and the parties

began discovery efforts.  In November 2012, while discovery was ongoing, the Attorney General

of California, as counsel for the People of the State of California, entered into a stipulated Final

Judgment with GSK in California state court, settling claims similar to those brought by the

County in federal court.  GSK agreed to curtail or modify certain marketing activities, and to pay

the State of California approximately $7.3 million.  The Final Judgment released GSK from

similar claims under the FAL, but excluded claims brought by the Santa Clara County Counsel's

office for violations of the FAL to which residents of Santa Clara County were exposed.  The

exception to the release "applies to and in favor of only persons or entities resident in the

---

[5] Amended Compl. ¶¶ 88-96.  Under the FAL, it is unlawful to make or disseminate any statement concerning property or services that is untrue or misleading.  Cal. Bus. & Prof. § 17500.  "To state a claim for false advertising, a plaintiff must allege that (1) the statements in the advertising are untrue or misleading and (2) the defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading."  *Goldsmith v. Allergan, Inc.,* No. 09–7088, 2011 WL 147714, at *3 (C.D. Cal. Jan. 13, 2011) (citing *People v. Lynam,* 253 Cal. App. 2d 959, 965 (Cal. Ct. App. 1967)).

[6] *See In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 10-1637, 2011 WL 5105503, at *3 (E.D. Pa. Oct. 26, 2011).

County."[7]  Because the Final Judgment limited the scope of Plaintiff's claims, the Court granted

Plaintiff leave to file a Second Amended Complaint ("SAC").  The SAC was filed on February

26, 2013 and named as Plaintiffs "County of Santa Clara and the People of the State of

California."[8]  GSK filed an answer, and the parties continued discovery efforts.

Shortly thereafter, on May 10, 2013, GSK filed a motion for partial summary judgment,

which sought to limit the scope of the County's claims.  First, the motion asked the Court to

interpret the release exclusion provision in the Final Judgment as limiting recovery not just to

Santa Clara residents exposed to allegedly misleading Avandia marketing, but to those Santa

Clara residents who could establish that that exposure occurred within the County limits.  The

Court denied this request, as it was not supported by the language of the Final Judgment.  GSK

also asked the Court to make certain rulings regarding the calculation of restitution, should

liability be established.  The Court dismissed this issue without prejudice as premature.

As fact and expert discovery continued to proceed, on December 22, 2014, GSK filed

another motion for partial summary judgment, seeking dismissal of the County's claim for

restitution under the FAL.  On February 10, 2015, before the issue was fully briefed, Plaintiff

filed the instant Motion to Dismiss for Lack of Jurisdiction.[9]  Although Plaintiff had opted to file

suit in federal court in 2010, then asserting that the federal court had diversity jurisdiction over

the case, and no party had suggested that the Court lacked jurisdiction during the subsequent five

years of litigation, Plaintiff now sought dismissal of the action so that it could be refiled in state

court.

---

[7] *People of Cal. v. GlaxoSmithKline LLC*, No. 37-2012-00085491-CU-MC-CTL, Final Judgment (Sup. Ct. Nov. 15, 2012).

[8] SAC, at 42.

[9] Though Plaintiff in this Motion and in subsequent filings styles itself as "the People," the Court will refer to a singular Plaintiff in reference to the County of Santa Clara, the original named plaintiff in this case.

The Motion to Dismiss for Lack of Jurisdiction was referred to the Special Master for an R&R. The Special Master reviewed the relevant case law, analyzed the facts of the case, and concluded that this Court had diversity jurisdiction under the initial complaint, as the County had asserted therein. Specifically, the Special Master concluded that the County, and not the People, was the real party in interest to this suit, and as the County is a citizen of California, and GSK is not, the parties were diverse. Plaintiff filed objections to the R&R. The matter was fully briefed and the Court held oral argument on the issue.

III.   **PLAINTIFF'S OBJECTIONS TO R&R 24**

Plaintiff objects to the R&R on several grounds. Plaintiff maintains that diversity jurisdiction has never existed in this case, because the People, that is, the State of California, is the only possible plaintiff in this case. Additionally, Plaintiff disagrees with the R&R's interpretation of Ninth Circuit cases, arguing that the case law supports a finding that there is no diversity of citizenship in this case. Plaintiff contends that California courts routinely refuse to exercise diversity jurisdiction in FAL cases brought by prosecutors on behalf of the People, and this Court should follow their lead.[10]  Plaintiff also argues that R&R 24 "betrays a fundamental misunderstanding" of an earlier ruling by the Court in this case. Defendant agrees with the findings of the Special Master, asserting that the County is the real party in interest in this case because it is the County that stands to benefit.

---

[10] The Court and the parties focus on decisions from the Ninth Circuit because of those courts' familiarity with California statutes.

## IV.   DISCUSSION

### A.  The County Is the Real Party in Interest

Federal district courts have original jurisdiction of civil actions "between . . . citizens of different States" where the amount in controversy exceeds $75,000.[11]  It is well settled that diversity jurisdiction is based on the citizenship of the parties to a case, and that a state is not a citizen for diversity purposes.[12]  A county is considered a citizen for diversity purposes.[13]  To determine whether diversity of citizenship exists, a court must "look behind the pleadings" and inquire into the real party in interest because "in cases involving a State or state official, . . . a State's presence as a party will destroy complete diversity."[14]  "The defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction."[15]  Diversity jurisdiction depends on the status of the parties as they existed at the time the complaint was filed.[16]  Thus, the Court must look to the original complaint in determining the existence of diversity of citizenship.

Plaintiff contends that the R&R misapplied a 2011 Ninth Circuit case upon which it relied, as well as a subsequent Ninth Circuit case, and that the cases instead support a finding that there is no diversity of citizenship in this case.  The Court disagrees.

In *Department of Fair Employment & Housing v. Lucent Technologies, Inc.*, the Ninth Circuit established a new standard for determining the real party in interest, holding that the determination should be made based on the record of the case as a whole, and that "general

---

[11] 28 U.S.C. § 1332(a)(1).

[12] *See, e.g., Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *see also Moor*, 411 U.S. at 717.

[13] *Moor*, 411 U.S. at 721.

[14] *Miss. ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 745 (2014) (citing *Mo., Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 58-59 (1901)).

[15] *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing Fed. R. Civ. P. 12(h)(3)).

[16] *Knop v. McMahan*, 872 F.2d 1132, 1138 (3d Cir. 1989).

governmental interest[s] will not satisfy the real party to the controversy requirement."[17] The

court considered whether diversity jurisdiction was proper in an action filed by the California

Department of Fair Employment and Housing ("DFEH") in state court on behalf of an aggrieved

employee, and subsequently removed to federal court by the defendant-employer.[18] The Ninth

Circuit held that the real party in interest for diversity purposes was not the State of California

(acting through the DFEH), but rather the individual on whose behalf the DFEH had brought

suit.[19] Quoting a seminal Supreme Court case, the *Lucent* court held that a state's general

interest in the welfare of its people will not make the state the real party in interest unless "the

relief sought is that which inures to it alone."[20]

The court in *Lucent* examined whether the state had a "substantial state interest" distinct

from the relief sought on behalf of the aggrieved individual.[21] The court focused on the broad

equitable relief sought, noting that it did not constitute a substantial state interest because it

"could be obtained by the individual aggrieved," even though such relief would affect employees

of the company at work locations throughout California.[22] The court found that since the

interests of the DFEH were merely "tangential to the alleged relief sought" for the individual, the

true party in interest was the individual on whose behalf the DFEH had sued.[23]

---

[17] 642 F.3d 728, 734 (9th Cir. 2011) (internal citations omitted).

[18] *Lucent*, 642 F.3d at 736-38.

[19] *Id.* at 738-39.

[20] *Id.* (quoting *Mo., Kan., & Tex. Ry. Co.*, 183 U.S. at 59).

[21] *Lucent*, 642 F.3d at 739.

[22] *Id.* Although Plaintiff argues *Lucent* is distinguishable because there the agency sought relief on behalf of a single person, as the R&R notes, "this description fails to account for the full relief the agency sought, which included an order requiring defendant to (1) cease and desist from discriminating against *all its employees*; (2) develop, implement, and disseminate a nondiscrimination policy affecting *all its employees*; (3) train *all its managers* regarding its non-discrimination obligations; and (4) post a notice in *all its work locations* about its violations of the law." R&R 24, at 16.

[23] *Lucent*, 642 F.3d at 739.

Applying the standard it announced in *Lucent*, the Ninth Circuit came to the opposite conclusion in *Nevada v. Bank of America Corp.*, in which the Attorney General of Nevada sued Bank of America under a state deceptive trade practices law in state court for allegedly misleading customers about mortgage and foreclosure procedures.[24]  The Ninth Circuit distinguished the facts in *Nevada* from those in *Lucent* and found that the State of Nevada was the real party in interest.[25]  The court noted that "the Nevada Attorney General sued to protect the hundreds of thousands of homeowners in the state allegedly deceived by Bank of America, as well as those affected by the impact of Bank of America's alleged frauds on Nevada's economy."[26]  The court underscored that foreclosures "work a widespread and devastating injury" affecting not just defrauded borrowers, but also the economy of the state as a whole.[27]  In holding that the state of Nevada was the real party in interest, the Ninth Circuit focused on the relief sought and noted that the state stood to benefit from enforcement of a consent judgment, civil penalties under the statute, injunctive relief, and recoupment of costs of investigations into Bank of America's practices.[28]

The Court agrees with the R&R that *Lucent* supports a finding that the real party in interest is the County, and *Nevada* does not alter that conclusion.  Instead, *Nevada* reinforces *Lucent*'s holding that a court must examine "the essential nature and effect of the proceeding as it appears from the entire record" to determine the real party in interest.[29]  Here, as discussed below, the record establishes that the real party in interest is the County.

---

[24] 672 F.3d 661, 664 (9th Cir. 2012).

[25] *Id.* at 670-71.

[26] *Id.* at 670.

[27] *Id.*

[28] *Id.* at 672.

[29] *Id.* at 670 (quoting *Geeslin v. Merriman*, 527 F.2d 452, 455 (6th Cir. 1975)).

In addition to arguing that *Lucent* and *Nevada* compel the conclusion that the State is the real party in interest in this case, Plaintiff cites several district court decisions in support of the contention that California courts "have uniformly rejected diversity jurisdiction" where public prosecutors bring cases on behalf of the People under the FAL or similar statutes.[30]  None of these cases presents a set of facts substantially similar to those presented here, and none shares the procedural posture of this case.  Additionally, four of the cases cited by Plaintiff pre-date *Lucent*, and therefore do not apply the governing standard discussed above.[31]  Of the cases that came after *Lucent*, some inexplicably do not mention *Lucent*.[32]

Additionally, the cases cited by Plaintiff were all decided in the context of a motion for remand.[33]  The rulings in favor of remand in these cases are often based on the principle that "a court must construe the removal statute strictly and reject jurisdiction if there is any doubt regarding whether removal was proper."[34]  The removal statute is not a concern in cases where

---

[30] Pl. Mot. Appealing R&R 24, at 5.

[31] *See People of Cal., ex rel. Herrera v. Check 'N Go of Cal., Inc.*, No. C 07-02789 JSW, 2007 WL 2406888, at *1 (N.D. Cal. Aug. 20, 2007); *People of Cal. v. Time Warner, Inc.*, No. CV 08-4446 SVW(RZX), 2008 WL 4291435, at *1 (C.D. Cal. Sept. 17, 2008); *People of Cal. v. Universal Syndications, Inc.*, No. C 09-1186 JF(PVT), 2009 WL 1689651, at *1 (N.D. Cal. June 16, 2009); *People of Cal. v. Steelcase Inc.*, 792 F. Supp. 84, 85 (C.D. Cal. 1992).

[32] *See Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*, No. CIV. 14-00180 HG-RLP, 2014 WL 3427387, at *1 (D. Haw. July 15, 2014) (holding state is real party in interest in case brought by Attorney General of Hawaii alleging false, deceptive, and unfair marketing of the prescription drug Plavix); *Cty. of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*, No. 5:12-CV-03256-EJD, 2012 WL 4189126, at *4 (N.D. Cal. Sept. 17, 2012) (citing the Ninth Circuit's strong presumption against removal in finding state is real party in interest and remanding case); *California v. Smartwear Techs.*, No. 11CV1361 JAH (NLS), 2012 WL 243343, at *1 (S.D. Cal. Jan. 25, 2012) (finding state real party in interest and granting motion to remand); *see also People of Cal. v. N. Trust Corp.*, No. CV 12-01813 DMG (FMOX), 2013 WL 1561460, at *4 (C.D. Cal. Apr. 10, 2013) ("Because *Lucent* announces a new standard for the real party in interest analysis, *Bristol Myers's* and *Smartwear's* silence on the applicability of that case is of little assistance here.").

[33] *See, e.g., People of Cal. v. Purdue Pharma L.P.*, No. SACV 14-1080-JLS (DFM), 2014 WL 6065907, at *4 (C.D. Cal. Nov. 12, 2014) (holding that, under *Lucent* and *Nevada*, defendant had not met burden of showing removal was proper).

[34] *Check 'N Go*, 2007 WL 2406888, at *2; *see also* 28 U.S.C. § 1441 (providing bases for removal).

the plaintiff originally brought suit in federal court by invoking diversity jurisdiction,[35] as the

County here did.

The record in this case supports the conclusion that the County is the real party in

interest, and has been since the case was filed.  The original complaint stated, in relevant part:

> In short, GSK bilked purchasers, including California diabetics, their insurers,
> public healthcare providers, public entities, and government payors, including
> Plaintiff County of Santa Clara, out of hundreds of millions of dollars by making
> false representations that Avandia was better at lowering blood sugar and could
> decrease diabetics' cardiovascular risks.  Plaintiff County of Santa Clara alone
> paid approximately $2 million for Avandia between May 1999 and July
> 2009 . . .[36]

In addition to restitution and civil penalties, the County sought treble damages, prejudgment

interest, fees and costs, and any other relief "that the Court deems just and proper."

The language of the FAL does not support Plaintiff's claim that the State is the real party

in interest.  Though the complaint initially sought restitution on behalf of the People of

California, this restitution would go to individuals who had suffered harm, not to the state itself

or to the entire California population.  Plaintiff insists that R&R 24 is incorrect in stating that the

civil penalties sought in this case would benefit the County, arguing instead that any such

penalties would benefit the public.  However, the statute is clear that the entire amount of any

civil penalties collected would go to the County treasury to aid in enforcement of consumer

protection laws:

> If the action is brought by the Attorney General, one-half of the penalty collected
> shall be paid to the treasurer of the county in which the judgment was entered, and

---

[35] *See* 1-8 Moore's Federal Practice and Procedure § 8.05 (2015) ("The entitlement to removal is very narrowly construed because it is a purely statutory right, and because of the concerns of federalism, a clear congressional intent to limit removal jurisdiction, and the traditional preference to allow a plaintiff to choose the forum of litigation.").  Whereas in a removal context a court must "reject jurisdiction if there is any doubt regarding whether removal was proper, *Check 'N Go*, 2007 WL 2406888, at *2, when a case is originally filed in federal court under 28 U.S.C. § 1332, the appropriate standard of proof is preponderance of the evidence. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 289 (3d Cir. 2006).

[36] Orig. Compl. ¶ 79.

one-half to the State Treasurer. *If brought by a district attorney or county counsel, the entire amount of penalty collected shall be paid to the treasurer of the county in which the judgment was entered.* If brought by a city attorney or city prosecutor, one-half of the penalty shall be paid to the treasurer of the county and one-half to the city. The aforementioned funds shall be for the exclusive use by the Attorney General, district attorney, county counsel, and city attorney for the enforcement of consumer protection laws.[37]

Thus, the relief sought would not inure to the benefit of the state alone.[38] Furthermore, as in *Lucent*, the statute here allows individuals to bring suits seeking injunctive relief and restitution, so the relief sought here could also be sought by an aggrieved individual.[39]

Moreover, since the start of this litigation in 2010, the county counsel that prosecuted the action "controlled the strategy and progress of the case."[40] As explained in R&R 24:

> The county and not the state will determine whether the case is settled or voluntarily dismissed. The county and not the state is subject to any court order requiring the payment of costs, sanctions, or attorneys' fees. And the county treasury will receive any funds paid as a civil penalty.[41]

The SAC further highlights that diversity jurisdiction is proper in this case. As the R&R notes, "If the state ever had any interest in this case (which, as discussed above, was not substantial enough to render it the real party in interest), it has disclaimed any such interest following its resolution of its claims against GSK and unquestionably has left this case in the county's hands."[42] Whereas the original complaint and the first amended complaint had named only one plaintiff (the County), the SAC named as plaintiffs both the County of Santa Clara and the People of the State of California "acting by and through" the acting County counsel. In

---

[37] Cal. Bus. & Prof. Code § 17536(c) (emphasis added).

[38] *Lucent*, 642 F.3d at 737 ("a State's presence in a lawsuit will defeat jurisdiction under 28 U.S.C. § 1332(a)(1) only if 'the relief sought is that which inures to it alone'") (quoting *Mo., Kan. & Tex. Ry. Co.*, 183 U.S. at 59).

[39] *Lucent*, 642 F.3d at 739 ("DFEH's claim that these equitable remedies constitute a substantial state interest is unavailing, as most of these forms of equitable relief could be obtained by the individual aggrieved.").

[40] R&R 24, at 33.

[41] *Id.*

[42] *Id.* at 34.

11

addition to the relief sought in the original complaint, the SAC requested permanent injunctive

relief against Defendant.  The SAC recognized that the relief requested was limited by the Final

Judgment entered into by the Attorney General of California, as counsel for the People of the

State of California, and GSK.[43]  Thus, because the Final Judgment released GSK from claims by

the People, it is even clearer under the SAC that the relief sought would not inure to the State.

Finally, Plaintiff argues that this Court's earlier ruling that the County does not have

statutory standing to sue on its own behalf establishes that the County is not the real party in

interest.  This is a misstatement of the Court's decision.  In its October 26, 2011 ruling, the Court

noted that the FAL allows an individual, partnership, firm, association, or corporation to bring a

claim, but does not expressly provide for suits by a county on its own behalf.  Accordingly, the

Court rejected Plaintiff's argument that the County was a corporation, and found that it therefore

did not have standing to sue on its own behalf under the FAL.  In so doing, the Court did *not*

hold that the State of California was the real party in interest.[44]  The interests that dictate whether

a party has standing do not necessarily dictate whether the party is the real party in interest,[45]

---

[43] The Final Judgment stated, in relevant part:

> By execution of this Judgment, the State of California releases and forever discharges Defendant
> . . . from the following: all civil claims, causes of action, damages, restitution, fines, costs,
> attorneys' fees, remedies and/or penalties that were or could have been asserted against the
> Released Parties by the Attorney General . . . .

Final Judgment ¶ 10.  The Final Judgment excluded "[a]ny claims that have been brought by the Santa Clara County Counsel's Office, as of the date of entry of this Judgment, for violations of California Business and Professions Code section 17500 concerning all Covered Conduct as defined in this Judgment, to which persons resident in the County of Santa Clara were exposed."  *Id.* ¶ 11(E).

[44] *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 10-1637, 2011 WL 5105503, at *3 (E.D. Pa. Oct. 26, 2011).  It bears noting that Plaintiff did not question the Court's jurisdiction at that time.

[45] *See Lucent*, 642 F.3d at 738 ("Although there is little doubt that this provision supports a finding that California is a real party in interest for the purposes of [] standing, . . . this language fails to render it a real party in the controversy for the purposes of diversity jurisdiction because these articulated interests are the very "general governmental interest[s]" that the Supreme Court has stated cannot satisfy the diversity requirement."); *Davis v. Yageo Corp.*, 481 F.3d 661, 678 (9th Cir. 2007) ("'real party in interest' is very different from standing") (quoting *Kent v. N. California Reg'l Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1329 (9th Cir. 1974); *In re O'Kelley*, 420 B.R. 18, 23 (D. Haw. 2009) ("Whether a party is 'real party in interest' is a different inquiry than whether the party has standing; a party may meet one requirement but not the other."); *Ramada Inns, Inc. v. Rosemount Mem'l*

and, as discussed above, the facts of this case make clear that the County, and not the state, has

been the real party in interest since the beginning of the case.  Moreover, the Final Judgment and

subsequent narrowing of Plaintiff's complaint only reinforce the fact that the State does not have

sufficient interest in the case to render it the real party in interest.

Because the Court concludes that the real party in interest is the County of Santa Clara,

diversity of citizenship existed when the case was filed and continues to exist now.

### B. The Court Will Certify this Matter for Interlocutory Review

A district court may certify an order for interlocutory review if (1) the order involves a

"controlling question of law"; (2) there is a "substantial ground for difference of opinion" as to

the question; and (3) interlocutory appeal may "materially advance the ultimate termination of

the litigation."[46]

First, this matter involves a "controlling question of law" because the issue of subject

matter jurisdiction "goes to the very power of a court to hear a controversy."[47]  Second, there is

"substantial ground for difference of opinion" in this case.  The procedural posture of this case is

uncommon, and there appear to be no Supreme Court, Third Circuit, or Ninth Circuit cases that

directly address the issue presented here.  Finally, regarding whether interlocutory review would

materially advance the termination of the case, if the analysis of this Court is incorrect and the

Court in fact does not have jurisdiction over this case, "continued litigation would waste time

and resources by requiring the Court to render decisions that would ultimately be deemed

---

*Park Ass'n*, 598 F.2d 1303, 1306 (3d Cir. 1979) ("the question whether a state is the real party in interest will turn on factors widely variant from case to case").

[46] *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir. 1974) (citing 28 U.S.C. § 1292(b)).

[47] *Ala. Hosp. Ass'n v. United States*, 656 F.2d 606, 610 (Ct. Cl. 1981); *see also Beazer E., Inc. v. The Mead Corp.*, No. 91-408, 2006 WL 2927627, at *2 (W.D. Pa. Oct. 12, 2006) ("the fundamental issue of subject matter jurisdiction is one of the clearest examples of a 'controlling question of law' within the meaning of § 1292(b)").

void."[48]   Accordingly, the Court will certify the matter for interlocutory review and grant

Plaintiff's request for a stay pending review by the Third Circuit.

## V. CONCLUSION

The Court will approve and adopt R&R 24 in its entirety and deny Plaintiff's Motion to

Dismiss.  The Court will certify the matter for interlocutory review.  An appropriate Order

follows.

---

[48] Pl. Mot. Appealing R&R 24, at 15.