IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : MDL NO. 1871<br>: 07-md-1871<br>: |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | :<br>:<br>: |

## MEMORANDUM

Rufe, J.                                                                                                                                         January 2, 2018

It has been brought to this Court's attention that Steven M. Johnson, Esquire is once again refusing to pay a seven percent assessment to the Avandia Multidistrict Litigation ("MDL") common benefit fund from claims that he settled in the state court action captioned *Gabel v. GlaxoSmithKline*,[1] filed in the Twentieth Judicial Circuit in St. Clair County, Illinois, despite the Court's prior ruling that he do so. Rather than complying with this Court's ruling, Johnson now opposes the disbursement of funds in the Illinois court.

The Plaintiffs' Advisory Committee of the Avandia MDL moves this Court to issue an injunction, preventing the Illinois court from taking any further action to prevent or delay payment to the common benefit fund from any clients or counsel in the *Gabel* litigation. The Committee further moves this Court to enjoin the Illinois court from ordering any disbursement of the common benefit assessment monies that are currently held by counsel to GlaxoSmithKline ("GSK") in escrow, and to order GSK to pay forthwith the funds into the Avandia common benefit fund.

The dispute before this MDL Court concerned only whether Johnson and the *Gabel* claimants were subject to the seven percent assessment. This Court determined that, because

---
[1] Case No. 09-L-621 (20th Jud. Cir. St. Clair Co.).

Johnson's co-counsel used the Committee's work product to secure a settlement in the *Gabel* case, he and the *Gabel* plaintiffs were subject to the seven percent assessment on their gross recovery. Therefore, GSK was ordered to deposit the seven percent assessment it holds in escrow on behalf of Johnson and the *Gabel* plaintiffs into the Avandia common benefit fund. The United States Court of Appeals for the Third Circuit affirmed this decision.[2]

Johnson now attempts to relitigate this MDL Court's order in the Illinois Court. He also argues that applying the assessment puts him at risk of violating the Illinois Rules of Professional Conduct because he failed to advise his clients that their recovery may be subject to the assessment, and that applying the assessment may result in payments to his co-counsel that would otherwise be barred by Illinois rules concerning conflicts of interest. Because Johnson's arguments about his duties and his co-counsels' fees under the Illinois Rules of Professional Conduct can be separately litigated in the Illinois court, and do not affect the MDL Court's prior ruling that Johnson and the *Gabel* claimants are subject to the assessment, there is no reason for Johnson to continue to impede payment to the Avandia common benefit fund.

**I.   BACKGROUND**

This Court has already ruled on Johnson's refusal to contribute to the common benefit fund; therefore, the following facts are taken from the Court's prior Memorandum Opinion issued on July 21, 2015:

> In February 2015, the Plaintiffs Advisory Committee ("PAC") in the federal Avandia Multi-District Litigation ("MDL") filed a motion for an order to show cause why claims settled in the Illinois state court Avandia action captioned *Gabel v. GlaxoSmithKline* should not be considered "covered claims" subject to the Avandia MDL common benefit assessment, pursuant to Pre-Trial Order Number 70 ("PTO 70"). The Court issued the requested order to show cause. Lead counsel for the *Gabel* plaintiffs, the Law Offices of Steven M. Johnson, P.C. ("Johnson Firm"), contests the MDL Court's jurisdiction to enter or

---

[2] *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.*, 658 F. App'x 29 (3d Cir. 2016).

enforce any orders reaching it or its clients. The parties briefed the relevant issues, and the Court held a hearing on April 22, 2015, at which attorneys Michael Baum and Erick Rosemond testified as fact witnesses. . . . .

The Avandia MDL was created in 2007 to consolidate, for pretrial proceedings, all product liability cases against GlaxoSmithKline, the maker of Avandia, filed in or properly removed to federal court. This Court, which oversees the Avandia MDL, created a Plaintiff's Steering Committee ("PSC"), which spent years conducting fact and expert discovery and briefing pretrial motions. On August 26, 2009, the Court entered Pretrial Order 70 ("PTO 70"), establishing the Avandia common benefit fund. This is a funding mechanism to reimburse plaintiffs' lawyers (including but not limited to PSC members) for expenses and time spent conducting discovery and litigating legal issues for the common benefit of all MDL plaintiffs.

Although all federal cases were consolidated in the MDL, thousands of Avandia cases were litigated in state courts. In some state court cases, plaintiffs' counsel entered into voluntary Attorney Participation Agreements with the PSC, agreeing to pay an assessment to the Fund, as outlined in PTO 70, in exchange for access to the MDL common benefit work product. By its express terms, once counsel signs on to the Attorney Participation Agreement, all Avandia claims in which counsel has a financial interest (including filed state and federal claims, as well as tolled and unfiled claims) are "covered claims," subject to a common benefit fund assessment. PTO 70 further provides that a total assessment of 7% of gross monetary recovery applies to all covered claims, with 4% deducted from attorneys' fees and 3% from the clients' shares of the recovery.

In 2009, the Johnson Firm filed a multi-plaintiff lawsuit, *Gabel v. GlaxoSmithKline*, in Illinois state court. The Complaint alleged that the claimants had been injured by the ingestion of Avandia. The *Gabel* case was litigated exclusively in state court; neither the individual plaintiffs nor the Johnson Firm litigated any Avandia claims in federal court.

In Spring 2012, Johnson attended an Avandia litigation meeting led by Paul Kiesel, who had been appointed by this Court as coordinating counsel for the MDL. The meeting was convened after thousands of MDL cases and claims had been settled, for the purpose of distributing the MDL's work product, dubbed "trial in a box," to attorneys still litigating Avandia cases in state courts. Kiesel announced that he would be circulating paperwork (the PTO 70 Participation Agreement and the PTO 10 Confidentiality Agreement), which the attorneys present should sign as a prerequisite to obtaining the MDL "trial in a box" flash drives being distributed at the meeting.

During that conference, Johnson met with Michael Baum of the law firm Baum, Hedlund, Aristel & Goldman ("Baum") and Erick Rosemond of Rosemond Law Group, P.C. ("Rosemond"), both of whom had cases in the MDL, had signed the

PTO 10 Confidentiality Agreement and the PTO 70 Attorney Participation Agreement in the course of litigating those cases, and had performed common benefit work for the MDL. As signatories to the Participation Agreement, Baum and Rosemond agreed to pay "the assessment amount provided in paragraph 4 of [PTO 70] on all filed and unfiled cases or claims in state or federal court in which they share a fee interest."

Knowing of Baum and Rosemond's connection to the MDL, and "hopeful that by having a trial team, it would enable him to get the type of settlements he thought his cases ought to receive," Johnson asked Baum and Rosemond to serve as trial counsel in *Gabel*. Rosemond testified that Johnson understood that Rosemond "had worked extensively with the PSC, knew the PSC's work product and was well positioned to go get his cases ready for trial." Baum testified that Johnson understood that if he retained Baum and Rosemond as trial counsel, they would use the MDL work product in *Gabel* and a common benefit assessment would be owed from any recovery or settlement. Baum and Rosemond agreed to assist as trial counsel, and they filed *pro hac vice* motions and entered appearances in the *Gabel* case.

Baum testified that he proposed a fee split of the Johnson Firm's contractual contingency fee agreements, based upon which Baum believed that he would receive 75% of fees obtained from bellwether trials, and 10% of fees from all other cases in the *Gabel* litigation. Email communications between Baum and Johnson regarding fee sharing again made it clear that trial counsel were planning to use the MDL trial in a box and other work product, and indicated that trial counsel's fees would be calculated on the balance of the fees remaining after subtracting the debt owed to the PSC for the use of the MDL work product. Although trial counsel believed they had reached a fee-sharing agreement with the Johnson Firm via email, and began conducting depositions and working up cases for the *Gabel* trials based upon this belief, the feesharing agreement was not formalized by the parties. Baum testified that he was reimbursed for expenses incurred litigating the *Gabel* case (nearly $200,000), and received 75% of the fees generated from the trial pick cases, but the division of fees for the other settled claims is currently being litigated in state court.

The judge in the *Gabel* case had scheduled trials beginning in the fall of 2012, and so Baum and Rosemond immediately began to prepare for trial. Baum testified that he reviewed Johnson's entire inventory of cases, and identified cases which would make viable bellwether cases. Baum testified that "neither Mr. Johnson nor his local counsel knew enough about the science and mechanisms of liability in the cases to figure out which ones would be good bellwethers and they, in fact, had selected some that were not suitable." Baum testified that because of the short time frame, counsel all agreed that trial counsel would be using the MDL "trial in a box," including the MDL's experts and their reports, and other MDL work product. He further testified that he explained to Johnson, in an email, that because they were relying upon MDL work product, the cases in the *Gabel* case

would be subject to the common benefit fund assessment, although they could discuss the possibility of a set-off or reduction of the assessment required by PTO 70 with the MDL PAC. The relevant email chain was introduced into evidence at the hearing (PSC Exhibit 6). In preparing for the *Gabel* trials, Baum relied primarily upon the MDL database of discovery documents, which had been assembled, coded, and organized by the PSC, rather than the discovery produced directly to the Johnson Firm from GSK. He worked with the MDL experts to provide updated reports, incorporating new research and regulatory findings. And he and Rosemond used MDL work product to support successful motions to take the deposition of the CEO of GSK or a surrogate. Rosemond also testified that he used the MDL work product extensively in his capacity as trial counsel for the *Gabel* case.

Late in 2012, before any trial began, but while Baum was "feverishly getting all of the last bits of trial prep done, all the last bits of motions, motions in limine, summary judgment oppositions, the depo designations ...," the Johnson Firm was, unbeknownst to Baum, negotiating a master settlement agreement with GSK. By December 10, 2012, the Johnson Firm had reached an agreement in principle with GSK to settle the claims asserted on behalf of the *Gabel* plaintiffs, although the details of that agreement were not worked out for some time. Rosemond testified that because they had been getting a case ready for trial, the *Gabel* plaintiffs received a more favorable settlement than any they had been offered prior to Baum and Rosemond's involvement.

In January 2015, the Illinois state court entered an order requiring GSK to hold 7% of the *Gabel* settlement fund in reserve, pending disposition of any MDL common benefit fund obligations under the MDL's PTO 70. Pursuant to that order, the reserved funds are being held in an attorney trust account in Philadelphia. The Illinois court scheduled a hearing to determine whether Johnson and its clients were obligated to pay a common benefit assessment to the MDL's common benefit fund, pursuant to PTO 70. Before the Illinois court could hold that hearing, however, the PAC moved for an order to show cause why the MDL Court should not interpret its own order and determine whether a common benefit assessment is owed. The Court issued the order to show cause.

In response, trial counsel for the *Gabel* case, Baum and Rosemond, filed declarations stating that their firms did not dispute their obligations to pay an assessment on all state and federal claims in which they had a fee interest, including the *Gabel* claims. Local (Illinois) counsel for the *Gabel* case, Robert G. Jones, The Jones Law Firm, P.C., and David R. Jones, also filed a declaration indicating that they did not oppose payment of the common benefit fees to the PAC.

The Johnson Firm responded by challenging the Court's jurisdiction over it and its clients. Specifically, the Johnson Firm challenge[d] both the Court's power and jurisdiction to issue an MDL order which purports to reach purely state court

5

actions, and the Court's jurisdiction to enforce PTO 70 with regard to the *Gabel* settlement. The Court held a hearing, at which evidence was presented on the issue of the Court's jurisdiction to issue and enforce PTO 70.[3]

The Court held that it has jurisdiction over Johnson, and that the Johnson Law Firm "implicitly entered into a contract with the MDL Plaintiffs' Steering Committee, agreeing to be bound by the terms of . . . PTO 70 in exchange for access to MDL work product, by its conduct, including retaining signatories Baum and Rosemond as trial counsel, and extensively using MDL work product to advance the *Gabel* case."[4] This Court also ruled that Johnson was obligated to pay the PTO 70 assessment on all settled claims in the *Gabel* litigation.

Johnson appealed the Court's decision to the United States Court of Appeals for the Third Circuit, and on July 27, 2016, the Third Circuit affirmed, writing in part:[5]

> The specific question that we address is whether the MDL pretrial order entered in the District Court establishing a common benefit fund for plaintiffs' attorneys working for the common benefit of all similarly situated plaintiffs includes assessments from proceeds recovered in the Illinois cases if attorneys participating with lead counsel in the Illinois cases obtained discovery materials gathered and created by MDL common benefit counsel and consented to the proceeds from the Illinois cases being contributed to the fund. We conclude that the Court did not exceed its jurisdiction in resolving the issue and did not err in finding that the seven-percent assessment was warranted. Consequently, we will affirm its order of July 21, 2015.[6]

Johnson then filed a petition for writ of certiorari to the United States Supreme Court, which was denied.[7] Therefore, according to the Court's decision, the seven percent assessment on the gross recovery from the *Gabel* case that is currently being held in escrow should have been deposited into the Avandia common benefit fund. To date, no such deposit has been made.

---

[3] *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 07-md-1871, 2015 WL 4480827, at *1-3 (E.D. Pa. July 21, 2015) (citations omitted).

[4] *Id.* at *6.

[5] *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.*, 658 F. App'x 29 (3d Cir. 2016).

[6] *Id.* at 30.

[7] *Law Offices of Steven M. Johnson, P.C. v. Plaintiffs' Advisory Committee*, 137 S. Ct. 1099 (2017).

Instead, when GSK moved the Illinois court for an order to be released from that court's prior order directing it to hold the funds in escrow,[8] Johnson opposed the motion, arguing that the MDL Court lacked personal jurisdiction over him and that imposing the assessment would violate Illinois rules regulating the conduct of lawyers.[9] The Committee therefore seeks an order enjoining the Illinois court from ordering any disbursement of the common benefit assessment monies currently held by GSK's counsel in escrow, and ordering GSK to pay forthwith the funds into the Avandia common benefit fund pursuant to this Court's prior ruling.

## II. STANDARD OF REVIEW

The All Writs Act authorizes "[t]he Supreme Court and all courts established by Act of Congress" to "issue writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[10] Under the Act, the Court may "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction."[11]

The Anti-Injunction Act,[12] however, limits the reach of the All Writs Act. On its face the Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions:"[13] (1) "as expressly authorized by Act of Congress," (2) "where necessary in aid of its jurisdiction," or (3) "to protect

---

[8] On January 27, 2015, the Illinois court entered an order setting aside seven percent of the gross recovery from the *Gabel* litigation for satisfaction of any assessment that might ultimately be deemed proper.

[9] Resp. to Mot. for Permanent Injunction at 2-3.

[10] 28 U.S.C. § 1651.

[11] *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

[12] *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").

[13] *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).

7

or effectuate its judgments."[14] The three exceptions are to be construed narrowly,[15] and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting state courts to proceed."[16]

## III.  DISCUSSION

In response to the instant motion, Johnson again contends this MDL Court lacks personal jurisdiction over him. He also asserts that the Anti-Injunction Act bars the proposed injunction.[17]

### A. JOHNSON'S CLAIM OF LACK OF PERSONAL JURISDICTION IS BARRED BY THE DOCTRINE OF RES JUDICATA

Under the doctrine of *res judicata*, or claim preclusion, a prior judgment forecloses successive litigation on the very same claim.[18] To assert *res judicata*, a party must show: "(1) a

---

[14] 28 U.S.C. § 2283.

[15] *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 364 (3d Cir. 2001) (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)).

[16] *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011) (quoting *Atlantic Coast Line R.R. Co.*, 398 U.S. at 297) (internal quotation marks omitted).

[17] In addition, Johnson argues that the doctrine of *Younger* abstention bars the injunction. Under the *Younger* abstention doctrine, when there is a parallel pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. *See Younger v. Harris*, 401 U.S. 37 (1971). This doctrine has been extended to state civil proceedings that invoke "important state interests." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). *Younger* abstention, however, does not apply here. Johnson claims that this Court's prior ruling on payment of the common benefit fund assessment invokes important state interests regarding Illinois rules regulating the conduct of lawyers. In particular, he contends "that the common benefit fund represented a fee sharing agreement that, under strict Illinois law, would have had to have been agreed to by his clients in writing; . . . and that the assessment would result in payments to Baum that were barred by Illinois law concerning conflicts of interest." Resp. to Mot. for Permanent Injunction at 3. Despite Johnson's contentions, the Court's prior ruling only required that payment of the assessment be made, and did not expressly dictate how counsel and their clients chose to divide payment amongst themselves. In fact, Johnson can assume his clients' share of the assessment, if necessary. As the Third Circuit previously explained in this case, "We are not concerned in this appeal with the arrangements between Johnson and Baum and Rosemond. Moreover, as we held in *Avandia I*, whether counsel must 'reimburse its clients for [their] share of the assessment is a question governed by the representation agreement between [the lawyers and their] clients.'" *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.*, 658 F. App'x 29 (3d Cir. 2016) (quoting *In re Avandia*, 617 F. App'x 136, 144 n.5 (3d Cir. 2015, *cert. denied*, 136 S. Ct. 1167 (2016) ("*Avandia I*")). As such, Johnson is free to litigate his claims regarding the Illinois Rules of Professional Conduct in the Illinois court, because such claims are separate from the dispute before this MDL Court. If this MDL Court were to issue an injunction preventing the Illinois court from issuing an order with respect to the disbursement of the assessment monies, such an injunction would not prevent Johnson from litigating his duties to his clients in the Illinois court. In addition, such an injunction would not prevent Johnson from litigating potential conflicts of interest issues among himself, Baum, and Rosemond in the Illinois courts. Therefore, Johnson's argument that *Younger* abstention applies here is without merit.

final judgment on the merits in the prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."[19] All three requirements are met here.

First, as noted, in February 2015, this Court was informed by the Committee that Johnson disputed payment of the PTO 70 assessment, and that Johnson specifically contested this MDL Court's jurisdiction—both personal and subject matter jurisdiction. This Court held a hearing on the issue of jurisdiction, and on July 21, 2015, issued a final judgment on the merits, concluding it had jurisdiction over Johnson. The Court necessarily found that it had personal jurisdiction by holding that it had "jurisdiction over the Johnson Firm for the purpose of interpreting PTO 70 and determining whether an assessment is owed to the Common Benefit Fund, pursuant to PTO 70, for the settled *Gabel* claims."[20] Therefore, this MDL Court concluded that Johnson was obligated to pay the PTO 70 assessment on all settled claims in the *Gabel* litigation. Johnson appealed to the Third Circuit, which affirmed. In what should have been Johnson's last resort, he petitioned for certiorari to the Supreme Court, but his petition was denied. However, after failing to obtain the relief in federal court, Johnson went to the Illinois court to again dispute his obligation to pay the PTO 70 assessment and this MDL Court's jurisdiction.

Second, the prior litigation in 2015 involved the same parties as the current litigation—that is, Johnson and the Committee.[21]

---

[18] *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). *See also Purter v. Heckler*, 771 F.2d 682, 689-90 (3d Cir. 1985) ("*Res judicata*, or claim preclusion, is a court-created rule that is designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand.")

[19] *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks and citations omitted).

[20] *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.*, 2015 WL 4480827, at *6. The Court also wrote that "pursuant to PTO 70, a 7% assessment to the Common Benefit Fund is owed on all settled claims in the *Gabel* case." *Id.*

[21] Even if Johnson and his law firm by the same name are not the same parties, they are in privity with each other for purposes of *res judicata*. *See Perelman v. Adams*, 945 F. Supp. 2d 607, 618-19 (E.D. Pa. 2013).

Third, the subsequent suit before the Illinois court involves the same cause of action[22] as the previous suit before this MDL court: in both cases, Johnson disputes whether he and the *Gabel* claimants are obligated to pay the PTO 70 assessment. To do so, in both cases, Johnson claims that this MDL Court lacked personal and subject matter jurisdiction over him.[23] The subsequent 2017 litigation in the Illinois court, therefore, is based upon the very same jurisdictional claim Johnson unsuccessfully asserted in the 2015 litigation in this MDL Court. Thus, Johnson's claim that the Court lacks personal jurisdiction over him is barred by the doctrine of *res judicata*.[24]

---

[22] The same cause of action, for purposes of *res judicata*, is a "broad, transactional concept that focuses on the 'essential similarity' of the two claims. *Porter v. Cancelmi*, 318 F. App'x 48, 50 (3d Cir. 2008) (quoting *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999)). In other words, the claims in the state and federal cases must "arise from the same common nucleus of fact or transaction." *Strong v. Town of Smyrna Del.*, 627 F. App'x 92, 94 (3d Cir. 2015) (internal quotation marks and citation omitted).

[23] In fact, Johnson submitted supplemental exhibits that included his opposition to GSK's motion before the Illinois court. In this opposition, he writes that GSK seeks an order from the Illinois court that releases GSK from its obligation to hold the funds at issue in escrow "'pursuant to the terms of Pretrial Order No. 70 . . . entered by the Honorable Cynthia M. Rufe, United States District Court for the Eastern District of Pennsylvania, in *In re Avandia Sales Practices and Products Liability Litigation*, MDL No. 1871, . . . . But Judge Rufe's order was entered without personal or subject matter jurisdiction over Johnson or the Johnson Plaintiffs. It would thus be error for [the Illinois] court to do anything 'pursuant to' Judge Rufe's order; rather, [the Illinois] court must make its own independent determination concerning whether Johnson or the Johnson Plaintiffs owe anything to the common benefit fund." Supp. Ex. 2 at 3. To say here that Johnson is not attempting to relitigate this MDL Court's prior ruling that it had jurisdiction over Johnson and the *Gabel* claimants is dubious, at best.

[24] Even if Johnson's personal jurisdiction defense were not barred by *res judicata*, the argument fails because the reserved funds are already being held in Philadelphia, Pennsylvania. *See Shaffer v. Heitner*, 433 U.S. 186, 209 (1977) ("The presence of property in a State may bear upon the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and defendant, it would be unusual for the State where the property is located not to have jurisdiction."). It is undisputed that GSK still holds seven percent of the *Gabel* settlement fund in reserve, pending disposition of any common benefit fund obligations under PTO 70. The reserved funds are currently being held in an attorney trust account in Philadelphia, Pennsylvania—a fact to which Johnson's former attorney stipulated at the hearing held on April 24, 2015, when the Court heard the parties' arguments on the very same jurisdictional issues presented today. Because the funds are being held in escrow in Philadelphia, the Court has authority over the funds and can enforce its July 21, 2015 order that obligated Johnson to pay the assessment.

### B. AN EXCEPTION TO THE ANTI-INJUNCTION ACT WOULD ALLOW THIS COURT TO ISSUE AN INJUNCTION PURSUANT TO THE ALL-WRITS ACT

Johnson contends that the Anti-Injunction Act prohibits an injunction. In contrast, the Committee argues that the "necessary in aid of jurisdiction"[25] exception to the Anti-Injunction Act allows an injunction to be issued pursuant to the All Writs Act.

"An injunction is necessary in aid of jurisdiction only if 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration of disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'"[26] The Third Circuit considers three factors "to determine whether sufficient interference is threatened"[27] to apply this exception:

> First, we look to the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding. Second, we assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action. And finally, we consider principles of federalism and comity, for a primary aim of the Anti-Injunction Act is "to prevent needless friction between the state and federal courts."[28]

First, the Court considers the nature of the federal action.[29] It is recognized that under the appropriate set of facts, a federal court entertaining complex litigation, especially those involving a consolidation of cases from multiple districts, "may appropriately enjoin state court proceedings in order to protect its jurisdiction."[30] The appropriate set of facts is present here,

---

[25] 28 U.S.C. § 2283.

[26] *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 234 (3d Cir. 2002) (quoting *Atlantic Coast Line R.R. Co.*, 398 U.S. at 295).

[27] *Id.*

[28] *Id.* (citation omitted).

[29] *Id.*

[30] *Id.* at 235 (quoting *Carlough v. Amchem Prods., Inc.,* 10 F.3d 189, 202-04 (3d Cir. 1993)); *see also Winkler v. Eli Lily Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996) ("[T]he Anti-Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings."); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. 1981) (finding that an injunction was appropriate in a

where the Avandia MDL involves complex mass tort cases that were coordinated before this Court more than a decade ago. PTO 70 was entered in 2009, and since then, it has governed the Committee's reimbursement of its work, which was completed for the benefit of all plaintiffs' attorneys working on Avandia cases who used the Committee's work product, as counsel did in the *Gabel* case. The MDL Court has previously ruled that Johnson and the *Gabel* claimants are obligated to pay the PTO 70 assessment. The MDL Court has also ruled that similarly-situated attorneys and claimants are obligated to pay the PTO 70 assessment. Johnson seeks to undo the Court's prior ruling and change his obligations. The imposition of duplicative and competing obligations on plaintiffs' attorneys at this late stage would likely frustrate the proceedings and disrupt the orderly resolution of this matter, which has neared its conclusion. Thus, the nature of the federal action suggests that issuing an injunction is appropriate.

Second, the Court assesses the state court's actions to determine whether they present a significant threat to the federal action.[31] Here, if the Illinois court were to allow Johnson's attempt to oppose payment under PTO 70, which the Court has already ruled he must pay, that action would pose a significant threat to the Avandia MDL, delay enforcement of the Court's order regarding the applicability of PTO 70 to Johnson and the *Gabel* claimants, and call into question the Court's authority to enforce PTO 70 over claimants who pursued claims in state court separate from the MDL, but who nonetheless benefitted from the Committee's work product. Allowing the Illinois court to continue consideration of Johnson's opposition to PTO 70 may cause confusion among similarly positioned attorneys and claimants about their obligations, and would jeopardize several rulings this Court has made on the applicability of

---

"complicated antitrust action [that] has required a great deal of the district court's time and has necessitated its ability to maintain a flexible approach in resolving the various claims of the many parties.").

[31] *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d at 234.

PTO 70 to those individuals. In other words, the Illinois court's actions directly affect the parties to the Avandia MDL and may be contrary to this Court's previous rulings.

Last, the Court considers the principles of federalism and comity.[32] Here, Johnson had the opportunity to litigate the *Gabel* case without the benefit of the MDL work product, yet decided to reap its benefit in securing a settlement on behalf of his clients. Johnson also had the opportunity to argue at every level of the federal courts that PTO 70 should not apply to these settlements after they were obtained. Johnson now attempts to relitigate in the Illinois Court whether this MDL Court properly ruled that PTO 70 applies to the *Gabel* litigation. The MDL Court cannot allow Johnson to relitigate this claim. Thus, if an injunction were to be issued, it would only be issued to the extent that it prevents the Illinois court from interfering with the completed federal court proceedings on Johnson's obligation under PTO 70 and necessary disbursement of the seven percent assessment into the Avandia common benefit fund.[33]

Johnson also argues in the Illinois court that applying the assessment puts him at risk of violating the Illinois Rules of Professional Conduct because he failed to advise his clients that their recovery may be subject to the assessment, and that applying the assessment may result in payments to his co-counsel that would otherwise be barred by Illinois rules concerning conflicts of interest. These arguments, however, have no bearing on whether GSK must release the funds held in escrow to effectuate this MDL Court's prior order directing payment to the Avandia common benefit fund. Johnson may litigate in the Illinois court as to how the assessment affects his fees, his co-counsels' fees, and his clients' recovery. Consistent with the principles of federalism and comity, any injunction that this Court would issue would not prevent Johnson

---

[32] *Id.*

[33] *See In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d at 238 ("Because an injunction must be *necessary* in aid of jurisdiction to fall under this application of the Anti-Injunction Act, it is important to carefully tailor such injunctions to meet the needs of the case.").

from separately litigating these claims regarding the Illinois Rules of Professional Conduct in the appropriate Illinois court.[34]

In order to protect its jurisdiction and interpret its own Order, the Court has determined that issuance of a writ pursuant to the All Writs Act may be necessary. In making this determination, the MDL Court has considered carefully whether the issuance of an injunction is compatible with the Anti-Injunction Act, and concludes that it is. Because a ruling in the Illinois court "threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation,"[35] this MDL Court must ensure that its prior ruling that Johnson and the *Gabel* claimants are obligated to pay the assessment under PTO 70 is not thwarted. In doing so, this MDL Court may be forced to issue a tailored injunction to protect its jurisdiction and to ensure a timely and appropriate resolution of the MDL. However, in the interests of comity and mutual respect between the state and federal courts, this Court will defer entry of such order. This Court will first direct the parties to jointly provide a copy of this memorandum to the Illinois court to permit that court an opportunity to be fully apprised of the District Court's analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court will defer ruling on the Motion for an Injunction under the All Writs Act, and will direct the parties to jointly provide a copy of this memorandum to the Illinois court.

---

[34] Therefore, the principle embodied in the Anti-Injunction Act that federal courts maintain respect for state court proceedings would not undermined by issuance of this type of narrowly tailored injunction.

[35] *Winkler*, 101 F.3d at 1202.