# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL NO. 1871<br>07-md-1871 |
| THIS DOCUMENT APPLIES TO: | |
| *Allied Services Division Welfare Fund v. GSK* | Civil Action No. 09-730 |

FILED
NOV 08 2019
KATE BARK... Clerk
By_____ Dep. Clerk

## MEMORANDUM OPINION

**Rufe, J.**                                    **November 8, 2019**

In the course of this multi-district litigation regarding the diabetes medication Avandia, Defendant GSK moved for sanctions against two of the third-party payor plaintiffs, Allied Services Division Welfare Fund and United Benefit Fund, and their counsel.[1] GSK later withdrew its Motion as to Allied and UBF,[2] whose claims were voluntarily dismissed with prejudice.[3] GSK now presses the Motion against James Dugan and Art Sadin, attorneys for Allied.[4]

GSK's Motion for Sanctions is premised on allegations in both Allied and UBF's Amended Complaints that GSK made direct misrepresentations about Avandia to these Plaintiffs. When the time came to produce evidence of those alleged misrepresentations, GSK argues, Dugan and Sadin suddenly and inexplicably attempted to substitute another plaintiff for

---

[1] MDL No. 08-1871, Doc. No. 5031.

[2] Doc. No. 124; Civil Action No. 10-5419, Doc. No. 99

[3] Doc No. 99; Civil Action No. 10-5419, Doc. No. 73.

[4] Any other counsel who may be subject to GSK's Motion for Sanctions are not involved in this discovery dispute.

1

Allied. This unusual move led GSK to believe that Dugan and Sadin made those allegations having failed to investigate whether a factual basis existed to support them.

The Court permitted limited discovery on the Motion for Sanctions.[5] GSK served one set of requests for admission on each of the Allied attorneys, Dugan and Sadin.[6] Although Dugan and Sadin had earlier represented that they did not expect to take discovery unless their Motion to Dismiss the Motion for Sanctions was denied,[7] they each served interrogatories and document requests on GSK without the Court having ruled on their Motion to Dismiss.[8] Each party objected to the other's discovery responses as inadequate and moved to compel.

## I. Dugan and Sadin's Motion to Compel

A motion to compel discovery responses under Federal Rule of Civil Procedure 37(a) "must include a certification that the movant has in good faith conferred or attempted to confer" with the opposing party in an effort to resolve disputes before presenting them to the court. Likewise, Local Rule 26.1(f) obliges counsel to certify that they have made a good-faith effort to resolve discovery disputes on their own. As courts in this district have often explained, these rules impose a substantial "professional obligation" on counsel to "resolve discovery problems before bringing them to the attention of the court."[9] That professional obligation permits the

---

[5] *See* Ex. A to GSK's Mem. Opp. Mot. to Compel [Doc. No. 129] at 56 59 Discovery on a sanctions motion is often unnecessary. *See Indianapolis Colts v Mayor of Baltimore*, 775 F.2d 177, 183 (7th Cir. 1985). But district courts have broad discretion with respect to discovery matters and can permit discovery on the question of sanctions. *See Byrne v Nezhat*, 261 F.3d 1075, 1084 (11th Cir. 2001). In particular, discovery may be warranted when (as here) sanctions are sought for an attorney's alleged failure to investigate adequately the factual support for the claims in the complaint. *Id*

[6] GSK's Mem. Supp. Mot to Compel [Doc. No. 130] at 1.

[7] Joint Status Report Relating to GSK's Motion for Sanctions [Doc. No. 120] at 2.

[8] Dugan and Sadin's Mem. Supp. Mot. to Compel [Doc. No. 128] at 3.

[9] *Evans v American Honda Motors Co.*, 2003 WL 22844186, at *1 (E.D. Pa. Nov. 26, 2003) (first quoting *Crown Cork & Seal Co. v. Chemed Corp*, 101 F.R.D. 105, 106 (E.D. Pa 1984), then quoting *DiSantis v Kool Vent Aluminum Prods*, No. 97-5434, 1998 WL 472753, at *1 (E.D. Pa. Aug. 12, 1998)).

filing of a motion to compel only when a genuine impasse has been reached and further negotiation would be pointless.[10]

Dugan and Sadin's Motion to Compel does not comply with this requirement either in form or in substance. Their filing did not contain a certificate of compliance as required by both Rule 37(a) and Local Rule 26.1(f). Nor could it, as Dugan and Sadin's counsel made only minimal efforts to confer with GSK's counsel about GSK's responses to Dugan's requests and did not even contact GSK's counsel about its responses to Sadin's requests, filing this Motion only four days after receiving them. Accordingly, their Motion will be denied as to both Dugan and Sadin's discovery requests for failure to comply with Rule 37(a) and Local Rule 26.1(f).

In addition, the Motion to Compel responses to Dugan's set of requests (comprising Dugan Interrogatories 1–10 and Dugan Document Requests 1–7) is without merit. Interrogatories 1–7 sought disclosure of the "factual allegation[s], "statements," and "representations" on which GSK's sanctions motion is based.[11] But that information, as GSK points out, is readily available on the docket after multiple rounds of briefing on the sanctions motion.[12] Similarly, Document Request 1 sought the "binder of documents . . . referred to by Attorney Sean Fahey" at the January 30, 2018 hearing on the sanctions motion.[13] GSK has already produced an index of the documents in that binder, all of which are available on the docket or otherwise in Dugan and

---

[10] *Id*

[11] Ex. 1, Dugan and Sadin's Mem Supp. Mot. to Compel at 4 5.

[12] 27 C.J.S. *Discovery* § 136 (2019); *see also Tequila Centinela, S.A de C V. v Bacardi & Co*, 242 F.R.D. 1, 11 (D D.C. 2007) ("Typically, courts do not order discovery of public records which are equally accessible to all parties."); *SEC v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y 1973) ("The purpose of discovery is to enable a party to discover and inspect material information which by reason of an opponent's control, would otherwise be unavailable for judicial scrutiny."). If Dugan and Sadin were still genuinely confused about the basis for GSK's sanctions motion when they moved to compel, any confusion is surely resolved now, as GSK has identified by docket number the filings in which it detailed the attorneys' alleged misconduct. *See* GSK's Mem. Opp. Mot. to Compel [Doc. No 129] at 10 n 39.

[13] Ex. 3, Dugan and Sadin's Mem Supp. Mot. to Compel at 1.

Sadin's possession. Finally, Interrogatories 8–10 and Document Requests 2–7 sought substantiation of "the amount of money [GSK] allegedly spent defending itself" against the particular allegations on which its sanctions motion is based.[14] As the Court has already explained, however, calculating GSK's damages is premature at the liability phase of its sanctions motion.[15] Thus, this Motion would be denied in any event.

Although Dugan and Sadin do not raise the point, the Court notes that to prevail under 28 U.S.C. § 1927, GSK is required to show that the attorneys' alleged misconduct increased the cost of the proceedings.[16] GSK has alleged that it incurred at least some extra costs in defending the particular allegations at issue here,[17] and will need to substantiate those costs for damages purposes should it prevail.

## II. GSK's Motion to Compel

GSK served requests for admission on Dugan and Sadin. While it is undisputed that GSK's requests are relevant,[18] Dugan and Sadin objected to a number of GSK's requests as either calling for responses protected by attorney-client privilege or work-product protection or as calling for speculation about information better known to third parties. After making reasonable efforts to resolve the disputes in accordance with Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26.1(f), GSK moved to compel.[19]

---

[14] Ex 1, Dugan and Sadin's Mem Supp. Mot. to Compel at 5-6

[15] *See* Jan 30, 2018 Hearing Tr. at 58:4-59:6. Dugan and Sadin argue that "GSK's ability to prove damages is an integral part of their *liability* claim, as a sanctions award requires clear and convincing evidence of a pattern of vexatious conduct exhibiting patented [sic] unreasonableness or bad faith." Reply Mem. Supp. Mot. to Compel [Doc No. 131] at 2. Logically, however, this is not so- neither patent unreasonableness nor bad faith necessarily engenders calculable monetary damages to the opposing side—and the attorneys do not elaborate.

[16] *In re Prudential Ins Co Am. Sales Practice Litig Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002).

[17] *See* GSK's Mem. Opp Mot. to Compel at 12-13.

[18] *See id* at 3, 5.

[19] *Id* at 3-4

A party requesting admissions may move to determine the sufficiency of an answer or objection and to compel responses.[20] "Unless the court finds an objection justified, it must order that an answer be served."[21] The "party moving to compel discovery bears the initial burden of proving the relevance of the requested information."[22] Once that burden is met, the burden shifts to the objecting party to establish the grounds for its objection; where, as here, a party objects on the grounds of attorney-client privilege or work-product protection, the objecting party bears the burden of establishing that the privilege or work-product protection applies.[23]

The attorney-client privilege protects communications from discovery when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.[24]

The privilege belongs to the client, not to the attorney.[25] An attorney may—indeed, often must— assert the privilege on the client's behalf.[26] But because the client holds the privilege, an attorney may not assert it on his or her own behalf.[27]

---

[20] *See* Fed. R. Civ. P. 36(a)(6); Fed. R. Civ. P. 37(a).

[21] Fed. R. Civ. P. 36(a)(6).

[22] *Cope v Brosius*, No. 12-2382, 2016 WL 5871157, at *2 (M.D. Pa. Oct. 7, 2016).

[23] *See id.*

[24] *Rhone-Poulenc Rorer Inc. v Home Indem Co*, 32 F 3d 851, 862 (3d Cir. 1994). Federal privilege law applies to these discovery motions, since the underlying sanctions motion is brought under federal law -28 U.S.C. § 1927, Local Rule 83 6.1, and the Court's inherent sanctions power. In any event, however, "the Third Circuit and the state of Pennsylvania apply the same test in evaluating attorney-client privilege." *Howard v Rustin*, No. 06-200, 2008 WL 1925102, at *2 (E.D. Pa. Apr. 30, 2008) (citing *Rhone-Poulenc*, 32 F.3d at 861).

[25] *In re Chevron Corp*, 650 F.3d 276, 283 n 8 (3d Cir. 2011)

[26] *Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir. 1984) (citing MCCORMICK ON EVIDENCE § 92 (E. Cleary 3d ed. 1984)).

[27] *See, e g*, 2 KEVIN T. BARNETT ET AL., ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 11.1 (2018); *In re Am. Metrocomm Corp.*, 274 B.R. 641, 654 (Bankr. D. Del. 2002) ("[B]y arguing that turnover is improper without a

The work-product protection shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," including its attorney.[28] It protects the attorney's ability to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."[29]

Most of the disputed requests for admission probe Dugan and Sadin's investigative process in preparing to prosecute Allied's claims. They call for the attorneys to reveal what documents and information they requested from various sources and reviewed before each of the occasions on which they asserted that GSK had made direct misrepresentations about Avandia. The Motion to Compel seeks admissions that can be grouped into four categories:

### a. Dugan Requests 5, 6, 8, 10, 12, 20, and 23, and Sadin Requests 6, 7, 9, 21, and 24

These requests call for Dugan and Sadin to state whether they requested certain kinds of information and documentation, other than claims data showing that it had purchased Avandia, from Allied. Dugan and Sadin objected on grounds of attorney-client privilege and work-product protection. As to the privilege, the parties dispute whether these requests seek the privileged content of communications between the attorneys and their client or merely the fact and general subject of those communications. The Court need not resolve this issue, however, because both client and counsel in this matter have previously made clear that they are not treating this information as privileged.

---

waiver of the attorney-client privilege, [the attorneys] effectively attempt to assert the privilege against their own client, the privilege-holder.... [The attorneys] have no ability to assert the privilege unless acting with [the client's] authority to do so.").

[28] Fed. R. Civ. P. 26(b)(3)(A).

[29] *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

6

Allied has acknowledged that in the course of working up its lawsuit against GSK, Dugan and Sadin never requested any information or documentation other than claims data showing that it purchased Avandia. Allied's representative signed an affidavit to that effect, which GSK filed with one of the many briefs the parties have exchanged in litigating the sanctions motion.[30] As the privilege-holder, then, Allied has made clear that it is not asserting the privilege over the information GSK seeks.[31] Dugan and Sadin do not have standing to assert the privilege on their own behalf when the client has made clear it does not oppose disclosure or even consider the information privileged.[32]

Further, Dugan and Sadin have produced an email they sent Allied, in which they asked whether its members had purchased Avandia, as proof that they adequately investigated Allied's potential claims against GSK and reasonably believed those claims were supported by the facts.[33] Presumably, counsel would not have done so unless the material was not privileged. The attorneys have not explained why the statement, "We requested claims data from Allied," is meaningfully different from the statement, "We requested no other data from Allied," such that one could be privileged while the other is not. Dugan and Sadin therefore have not met their burden of showing that these requests are barred by the attorney-client privilege.

As to the work-product protection doctrine, Dugan and Sadin appear to acknowledge that these requests do not seek "documents [or] tangible things."[34] Instead, they argue that because these requests call for counsel to disclose whether they requested documentation from their

---

[30] Ex. A, Doc. No. 122.

[31] *See* BARNETT ET AL., *supra* note 27, § 11.1.

[32] *See id.*

[33] GSK's Mem. Supp. Mot. to Compel at 10, n.24–25

[34] Fed. R. Civ. P. 26(b)(3)(A).

7

client, the requests "go directly to legal strategy and case work-up."[35] This kind of intangible work product—the "thoughts and recollections of counsel" and the like—is often entitled to protection and can even qualify as core opinion work product.[36] GSK's requests, however, seek only "facts concerning the creation of work product."[37] They do not ask after theories or strategies, but rather after the factual underpinning (or lack thereof) of Allied's claims.[38] Particularly in the context of a sanctions motion, affording opinion work-product status to even the broadest, vaguest contours of an attorney's investigation would vitiate the courts' authority and imperative to police the conduct of counsel appearing before them.

Here too, moreover, the disclosures Dugan and Sadin oppose are indistinguishable from the disclosure they made voluntarily—that they asked for and received claims data from Allied. Work-product protection may not be used as both a sword and a shield to disclose otherwise protected information that helps and withhold information that hurts.[39] The fact that the attorneys requested claims data from Allied also "go[es] directly to legal strategy and case work-up," yet

---

[35] Dugan and Sadin's Mem. Opp. Mot. to Compel at 5. Dugan and Sadin's one-sentence explanation of why work-product protection applies to GSK's requests, *see id.*, was not helpful to the Court in resolving this Motion.

[36] *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 662 (3d Cir. 2003). Even requests for factual information can intrude upon protected work product where disclosing the facts would also reveal the attorney's thought processes For example, another court has held that "[w]hen a factual document selected or requested by counsel exposes the attorney's thought processes and theories, it may be appropriate to treat the document as opinion work product." *F.T C v Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142, 151-52 (D C. Cir. 2015). But the heightened protection afforded to opinion work product "is warranted only if the selection or request reflects the attorney's focus in a meaningful way." *Id*; *see also id* at 152 ("[A]ttorney notes of preliminary interviews with a witness were not necessarily opinion work product . . . Rather, there must be some indication that the lawyer 'sharply focused or weeded the materials.'" (quoting *In re Sealed Case*, 124 F.3d 320, 323 (D C. Cir. 1997), *rev'd on other grounds*, *Swidler & Berlin v U.S.*, 524 U.S. 399 (1998))). GSK's requests would not divulge Dugan and Sadin's focus "in a meaningful way"—they seek only enough to determine whether the attorneys took the basic investigatory steps the Federal Rules of Civil Procedure require.

[37] *See Resolution Trust Corp v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995), *see also id* ("[W]ork product does not preclude inquiry into the mere fact of an investigation.").

[38] *See Hawthorne v Municipality of Norristown*, No. 15-1572, 2016 WL 1720501, at *1, 3 (E.D Pa. Apr. 29, 2016) (granting motion for sanctions after Plaintiff's counsel acknowledged that he (a) reviewed dashboard camera footage showing that the allegations in the Complaint were false and (b) discussed that footage with his clients).

[39] *See, e g, Travelers Cas & Sur. Co v Ins Co of N Am.*, 609 F.3d 143, 164 (3d Cir. 2010) (citing *United States v. Bilzerian*, 926 F.3d 1285, 1292 (2d Cir. 1991)).

8

they disclosed that information when it benefited them. The other supporting data they requested from Allied, if any, is therefore fair game.

### b. Dugan Requests 7, 11, 13, 21, 24, and 26, and Sadin Requests 8, 11, 14, 22, 25, and 27

These requests call for Dugan and Sadin to disclose whether they requested certain kinds of information or documentation from Allied's Pharmacy Benefit Managers ("PBMs"). As GSK points out, Dugan and Sadin do not represent the PBMs.[40] The attorneys have made no effort to show that the PBMs were their clients. Again, therefore, Dugan and Sadin have not met their burden of showing that the admissions sought are protected by the privilege, and the work-product protection doctrine is inapplicable for the same reason explained above. They must serve answers to these requests as well.

### c. Dugan Requests 9, 14, 22, and 25, and Sadin Requests 10, 15, 23, and 26

These requests call for Dugan and Sadin to admit that before making allegations of direct misrepresentations—in the Complaint, in the Second Amended Complaint, and on other occasions—they did not review documents other than the claims data Allied provided. In other words, the requests seek an account of what data the attorneys reviewed in determining whether the facts supported their claim that GSK made direct misrepresentations to Allied.

The fact that an attorney did or did not review a document is not privileged because it is not a communication.[41] Nor is it covered by work-product protection for the same reasons discussed above. These requests are not aimed at Dugan and Sadin's strategies, but rather at the existence of a factual basis for the pleadings they filed, and the attorneys' voluntary disclosure of

---

[40] *See Rhone-Poulenc*, 32 F.3d at 862 (explaining that the first element of the privilege is that "the asserted holder of the privilege is or sought to become a client").

[41] *See Upjohn*, 449 U.S. at 395 ("The priviIege only protects disclosure of communications . ").

9

identical information—that they reviewed the claims data—undermines any notion that work-product protection covers what else they might have reviewed. Because the attorneys have not met their burden of establishing that the admissions sought are protected by the privilege or as work product, they must respond to these requests.

### d. Dugan Request 19 and Sadin Request 20

The final set of requests asks Dugan and Sadin to admit that before the complaint was filed, Allied and its PBMs never specifically communicated with each other about Avandia. Dugan and Sadin objected that the requests require them to speculate about communications between third parties and are "more properly directed to the clients."[42]

These requests do call for information potentially outside Dugan and Sadin's first-hand knowledge. However, a party answering requests for admission "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."[43] Dugan and Sadin need only say whether, to the best of their knowledge after making reasonable inquiry, these communications took place.

An appropriate Order follows.

---

[42] Dugan and Sadin's Mem. Opp. Mot. to Compel [Doc. No. 132] at 5. The attorneys also objected to these requests on grounds of attorney-client privilege and work-product protection, see Ex. A and B, GSK's Mem. Supp. Mot. to Compel, but did not argue that position in their response brief, instead arguing only the speculation issue, see Dugan and Sadin's Mem. Opp. Mot to Compel at 4 (arguing that the attorney-client privilege covers Dugan Request Nos. 6–14 and 20 26 and the corresponding Sadin requests); *id* at 5 (arguing that work-product protection covers Dugan Request Nos. 7 14 and 20 22 and the corresponding Sadin requests); *id* at 5 (arguing that Dugan Request Nos. 18 and 19 and the corresponding Sadin requests called for speculation).

[43] Fed. R Civ. P. 36(a)(4).