IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 1871 07-md-1871 |
| | : | |
| THIS DOCUMENT APPLIES TO: | : : | |
| *Allied Services Division Welfare Fund v. GSK* | : : | Civil Action No. 09-730 |

### MEMORANDUM OPINION

Rufe, J.                                                                                                                                       June 26, 2020

        Before the Court is Defendant GlaxoSmithKline's ("GSK") motion for sanctions against counsel for Plaintiff Allied Services Division Welfare Fund ("Allied"), attorneys James Dugan and Art Sadin.[1] In 2009, Allied filed suit against GSK alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state consumer laws in connection with its marketing of Avandia. This was one of four actions that were collectively referred to as Third-Party Payor ("TPP") cases. The actions were filed into the Avandia Marketing, Sales Practices and Products Liability Multi-District Litigation ("MDL"). After years of litigation, Allied moved to voluntarily dismiss its claims. GSK argues that Dugan and Sadin filed suit without adequate investigation and unreasonably prolonged the litigation without evidence to support Allied's claims. Although the Court is deeply troubled by certain statements made by counsel in this litigation, statements that wasted court time and had no apparent basis in fact, the Court will deny the motion for sanctions for the following reasons.

---

[1] As originally filed, the motion also sought sanctions against United Benefit Fund, which filed a similar lawsuit. GSK has withdrawn the motion as to UBF and its counsel, and as to Allied itself, and therefore the Court will address only the actions of Allied's counsel, and where necessary, Allied.

### I. STANDARD OF REVIEW

A district court may impose sanctions pursuant to 28 U.S.C. § 1927, Local Rule 83.6.1, and its inherent power to control the litigation before it.[2] First, § 1927 provides: "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[3] A court may impose sanctions under § 1927 if it finds that an attorney has: "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."[4] The principal purpose of imposing these sanctions "is the deterrence of intentional and unnecessary delay in the proceedings."[5]

Second, Local Rule 83.6.1 states that sanctions are authorized against an attorney who "present[s] to the Court vexatious motions or vexatious opposition to motions . . . or otherwise so multipl[ies] the proceedings in a case as to increase unreasonably and vexatiously the costs thereof."[6] Local Rule 83.6.1 further provides that an attorney who fails to comply with the Rule "may be disciplined as the Court shall deem just."[7] These provisions are directed to the conduct of counsel.

---

[2] *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 129, 131, 141–42 (3d Cir. 2009) (discussing a district court's ability to impose sanctions under 28 U.S.C. § 1927, Local Rule 83.6.1, and its inherent powers).

[3] 28 U.S.C. § 1927.

[4] *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002).

[5] *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 297 (3d Cir. 1996).

[6] E.D. Pa. R. Civ. P. 83.6.1(b).

[7] E.D. Pa. R. Civ. P. 83.6.1(c).

Third, when "in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power" to impose sanctions.[8] Such a situation may arise "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[9]

A finding of bad faith, proved by clear and convincing evidence, usually is required for sanctions imposed under § 1927, Local Rule 83.6.1, or the court's inherent powers.[10] Bad faith is a demanding standard—sanctions are warranted only where an attorney's conduct was "of an egregious nature," rather than resulting from "misunderstanding, bad judgment, or well-intentioned zeal."[11] A finding of bad faith must be made with specificity, clearly linking any sanction imposed to particular conduct of an individual party or attorney.[12] Evidence of bad faith includes "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment."[13] Bad faith may also be inferred "where a party pursues claims that are clearly frivolous."[14] Once a finding of bad faith is made, the court must determine the appropriateness of a range of possible sanctions.[15]

---

[8] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

[9] *In re Prudential*, 278 F.3d at 189 (quoting *Chambers*, 501 U.S. at 45-46).

[10] *See Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991) ("[A] finding of willful bad faith on the part of the offending lawyer is a prerequisite for imposing sanctions under [28 U.S.C. § 1927]"); *see also In re Prudential*, 278 F.3d at 181 ("Similarly, an award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith."); *Grider*, 580 F.3d at 143 (explaining that the district court could have found that some attorneys involved in the litigation acted in bad faith to warrant sanctions under Local Rule 83.6.1).

[11] *Grider*, 580 F.3d at 142; *see Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012) (explaining in analogous spoliation context that bad faith means sanctioned party specifically acted with intent to influence the litigation).

[12] *Grider*, 580 F.3d at 143–45.

[13] *In re Prudential*, 278 F.3d at 188.

[14] *Johnson v. SmithKline Beecham Corp.*, No. 11-5782, 2015 WL 1004308, at *7 (E.D. Pa. Mar. 9, 2015).

[15] *Hackman*, 932 F.2d at 242.

## II. BACKGROUND

Allied is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act ("ERISA") that provides medical coverage, including prescription drug coverage, to its members and their dependents. In 2009, Allied filed a case into the MDL alleging that GSK violated RICO and various state consumer protection laws in connection with its marketing of Avandia. In particular, Allied alleged that GSK concealed cardiovascular risks associated with Avandia use, and that but for this concealment, it would not have included Avandia on their formularies and would not have paid for Avandia prescriptions.

GSK moved to dismiss Allied's suit against it, arguing (among other things) that Allied could not establish statutory standing for its RICO claim because it failed to adequately allege causation. On GSK's theory, Allied was required to allege a "specific representation by GSK that caused it to pay for a prescription of Avandia."[16] The Court rejected that theory, agreeing with Plaintiffs' theory that it was sufficient for the Complaint to allege, as it did, that GSK "deliberately *concealed* Avandia's cardiovascular risk, as well as issuing affirmatively misleading statements."[17] The Court certified the ruling for interlocutory appeal and the Third Circuit affirmed.[18]

After resolution of the appeal, the case moved to discovery. On June 7, 2016, a case management order ("CMO 1") was entered and agreed to by the parties, and in part required Plaintiffs to produce data and documents supporting their claims.[19] Schedule A to CMO 1 set out the data and documents required to be produced, including Allied's data for the claims paid for

---

[16] *In re Avandia Mktg.*, 2013 WL 5761202, at *6 (quoting GSK's memorandum).

[17] *Id.*

[18] *In re Avandia Mktg.*, 804 F.3d 633 (3d Cir. 2015).

[19] The Court entered a Re-Amended CMO 1 on July 7, 2016, which imposed the same obligations on Plaintiffs and extended some production deadlines.

diabetes drugs as well as other documents reflecting communications with GSK. Although Allied produced some data and documents in response to CMO 1, the production was incomplete. Rather than comply with CMO 1, Allied moved to voluntarily dismiss its claims, arguing in part that it was no longer in a position to prosecute its claims.

GSK then sought monetary sanctions against Allied, Dugan, and Sadin in the sum of one-quarter of all costs it incurred in the litigation.[20] It also requested that certain facts be deemed established, such as that GSK made no representations about Avandia to Allied, and that Allied did not rely on statements by GSK in making its formulary decisions. The Court held a hearing on the motion for sanctions at which it was determined that some discovery on the motion would be necessary and appropriate.

In June 2019, Dugan and Sadin filed a memorandum styled as a motion to dismiss the motion for sanctions. That motion raised new substantive and procedural arguments in opposition to sanctions.[21] Soon thereafter, GSK withdrew its motion as to Allied.[22] As part of the agreement between Allied and GSK, a representative of Allied executed an affidavit describing the investigatory steps that were taken by Allied and by its counsel prior to filing suit against GSK.[23] The parties took discovery on the remaining aspects of the sanctions motion.

Over the long lifespan of this motion, which has not always been diligently pursued by its proponent, the issues seem to have narrowed somewhat in accordance with the winnowing of the

---

[20] *See* Doc. Nos. 96, 97. Unless otherwise indicated, all citations to the docket are to this individual matter, *Allied Services Division Welfare Fund v. Glaxosmithkline*, Civil Action No. 09-730.

[21] Because the Court will deny the motion for sanctions, the motion to dismiss is essentially moot.

[22] *See* Doc. No. 124. GSK originally moved for sanctions against both Allied and their counsel and another TPP plaintiff, United Benefit Fund, and their counsel. GSK withdrew its motion as to UBF at the same time it withdrew its motion as to Allied, and since then GSK has also reached accord with UBF's counsel, withdrawing its motion for sanctions against her.

[23] *See* Doc. No. 124, Ex. A.

motion's targets. The Court has given the parties multiple opportunities to request new briefing contextualizing the information revealed in discovery and explaining which allegations and arguments were relevant to the specific claims against Dugan and Sadin. The parties declined, insisting that the motion was ripe for resolution on the existing record and briefing.[24] The Court has therefore considered those parts of the original briefing and motion-to-dismiss briefing that appear to the Court, as best it can tell, to be relevant to the limited motion that remains.[25]

GSK originally sought both monetary sanctions and the entry of several factual findings that would, it argued, cure any prejudice that the targeted attorneys' alleged misrepresentations had caused to GSK in opposing class certification. Now that the motion against Allied itself has been withdrawn, GSK no longer seeks factual findings. GSK still seeks one-quarter of its costs and fees in defending the TPP litigation on the theory that Allied brought one of the four TPP actions. It also asks the Court to bar the targeted attorneys from further participation in the TPP litigation.

### III. DISCUSSION

GSK argues that Allied's counsel should be sanctioned for failing to conduct an adequate investigation before filing suit and for unreasonably prolonging the litigation for more than seven years without evidence to support its claims. The original motion and briefing made little effort

---

[24] *See* Status Report [Doc. No. 137] at 3. The Court notes that Dugan and Sadin suggested for the first time in the parties' most recent joint status report that if their motion to dismiss were denied, they would seek to retain experts and conduct additional discovery. *Id.* at 2-3. It is long past the time to request new avenues of discovery, especially since Dugan and Sadin had several previous opportunities to do so. Since the motion for sanctions will be denied, however, Dugan and Sadin will not be prejudiced by the lack of opportunity for further discovery.

[25] GSK has left the Court to sort through a confusing patchwork of motions, briefs, and status reports to determine what allegations it still wishes to press with respect to the remaining targeted attorneys. Both parties submitted briefs regarding GSK's original motion for sanctions. Both parties also submitted briefs regarding the targeted attorneys' motion to dismiss the motion for sanctions. GSK submitted some of the targeted attorneys' discovery responses as exhibits to its motion to compel further discovery responses. Finally, GSK submitted the remainder of the targeted attorneys' discovery responses—those disclosed after the Court granted in large part the motion to compel—as an attachment to a status report only after the Court prompted it to provide an update regarding the status of discovery.

to distinguish between party and counsel, and GSK's decision not to re-brief the issues pertinent to the remaining targeted attorneys had made the "individualized analysis" required for the imposition of sanctions challenging.[26]

At the heart of GSK's motion is the assertion that Allied had alleged that GSK made misrepresentations about Avandia directly to Allied. According to GSK, Allied never produced any evidence of direct misrepresentations, and eventually chose to dismiss the case when the time came to provide evidence it had always lacked. GSK argues that counsel failed to conduct an adequate investigation before filing suit and then continued this failure throughout the litigation, prolonging it unnecessarily.

### A.  Failure to Conduct an Adequate Investigation

GSK first contends that the Court should sanction Allied's counsel for failing to conduct an adequate investigation before filing suit, resulting in meritless allegations. The Court concludes, however, that the targeted attorneys did not act in bad faith and conducted some investigation of Allied's claims against GSK before filing suit.

First, the Court questions whether Dugan and Sadin ever actually made the particular allegations that GSK claims were made without a factual basis. GSK bases its motion for sanctions on the notion that the targeted attorneys, with no investigation, included in their Complaint allegations that GSK made direct misrepresentations *to their client*, and continued to make that claim at subsequent stages of the litigation. Throughout its briefing, GSK repeatedly asserts that Dugan and Sadin alleged that GSK made direct misrepresentations about Avandia *to Allied*, their client.[27] But the allegations GSK has identified regarding direct misrepresentations

---

[26] *Grider*, 580 F.3d at 144.

[27] *See* Mem. Supp. Mot. for Sanctions [Doc. No. 96] at 2 ("Allied produced some documents, but it produced no evidence that GSK made misrepresentations *to Allied* or that any alleged misrepresentations affected Avandia's formulary placement." (emphasis added)); Reply Mem. Supp. Mot. for Sanctions [Doc. No. 107] at 4 ("There was

refer not to Allied specifically, but to "consumers, *Third-Party Payors*, physicians and pharmacies" generally.[28] As explained above, the standard for sanctions is a demanding one. It is not at all clear to the Court from the statements GSK has identified that Dugan and Sadin ever made the challenged allegations as GSK characterizes them.[29]

Second, GSK has not shown that Dugan and Sadin's efforts to investigate Allied's case before filing its Complaint were so inadequate that they amounted to bad faith, justifying sanctions. Allied explained the procedure it uses to determine whether to file suit against a drug manufacturer in third-party payor actions:

> Allied asks its co-counsel (Arthur Sadin) to keep it apprised of prescription drug litigation to which it might be a party or the beneficiary of a class action settlement. If Allied elects to investigate the potential for litigation, before a lawsuit is ever filed, Mr. Sadin's office contacts Allied's administrator and asks the administrator to determine Allied's payments, if any, for a particular drug that appeared to be overpriced or which had issues of safety and efficacy. The administrator then

---

no evidence that GSK made misrepresentations directly to either Allied or UBF."); Mem. Opp. Mot. to Dismiss Mot. for Sanctions [Doc. No. 123] at 2 ("[Dugan and Sadin] filed a complaint alleging that GSK had made direct misrepresentations to Allied and its PBMs regarding the safety and efficacy of Avandia . . . .").

[28] *See* Mem. Supp. Mot. for Sanctions [Doc. No. 96] at 4 (quoting Allied's Second Amend. Compl. ¶ 83); *see also id.* at 5 (quoting from Allied's motion-to-dismiss briefing, which argued that "[t]he complaints are replete with examples of GSK's false misrepresentations to the public, the scientific and medical community, [third-party payors] and diabetes patients").

[29] The Court is somewhat troubled by GSK's stated intention to use the factual findings it originally requested as a sanction in opposing a class certification motion by the remaining putative class members. Sanctions against one party or its counsel ought not to be used as a weapon against separate parties who did not engage in the alleged conduct and who might have meritorious claims if not hamstrung at the outset by factual findings entered not on the merits but as a sanction.

In that vein, some of GSK's arguments read as attempts to re-litigate issues already resolved in Allied's favor. For example, GSK takes issue with Allied's allegation that but for GSK's misinformation, third-party payors would have chosen to pay for safer drugs other than Avandia. GSK argues that Dugan and Sadin are subject to sanctions because they made this allegation when they knew or should have known that Allied continued to pay for Avandia even after questions about its safety were publicly revealed. But the Court rejected this exact argument in its ruling on GSK's motion to dismiss, holding that Allied's continued payments for Avandia after the public revelations were not necessarily an obstacle to liability.

At the same time, Dugan and Sadin rest much of their opposition to the motion on the theory that they cannot be subject to sanctions for the direct-misrepresentation allegations because the Court ruled that they were not required to prove a direct misrepresentation theory to win the case. If it were clear, however, that the attorneys had knowingly made baseless allegations in a pleading, sanctions could be warranted even if those allegations were not an element of any claim. Attorneys are not free to spice up their pleadings with false accusations merely because they could prevail on a theory that would not require them to prove those accusations.

searches the records for such payments. If payments are found, a suit may be filed. This is all done in the regular course of business and has been repeated in this fashion over many years and a number of cases.[30]

Allied essentially explained that, for potential third-party payor actions, it confirms that plan participants purchased the drug in question before filing suit. With respect to the Avandia MDL, Allied confirmed to the targeted attorneys that some of its plan participants purchased Avandia from 1999 to 2007, and discovered that it had paid more than $31,000 for Avandia prescriptions during that period.[31] Allied also confirmed that the price of Avandia exceeded the cost of metformin, an alternative diabetes medication.[32] On the other hand, Dugan and Sadin did not verify that Avandia was placed in a more favorable position on the formulary than other diabetes medications, or that Allied would have paid for cheaper alternatives to Avandia but for GSK's alleged misrepresentations. They also did not investigate whether GSK in fact made any misrepresentations directly to Allied or its PBM or to other third-party payors that caused them to place Avandia on their formularies.[33]

Though more should be expected from experienced attorneys representing a seasoned third-party payor plaintiff when investigating its claims, Dugan and Sadin's failure to investigate further cannot be said to rise to the level of bad faith.[34] GSK has not offered clear and convincing

---

[30] Allied's Mem. Opp. Mot. for Sanctions [Doc. No. 105] at 5–6 (citations omitted).

[31] *Id.* at 7.

[32] *Id.*

[33] *See* Status Report [Doc. No. 137], Ex. A, B.

[34] *Compare Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 337–38 (W.D. Pa. 2012) (finding that an attorney acted in bad faith by failing to conduct an adequate investigation in a products liability action against a firearm manufacturer, where "despite the fact that he had been in possession of the firearm for nearly two years before filing suit— [counsel] lodged this allegation without ever having the gun inspected by his own firearms consultant and without ever receiving any sort of preliminary determination that the gun was possibly defective" and where the attorney had no reason to believe that the injuries alleged in the complaint were caused by an explosion of the firearm), *with Hawk Mountain LLC v. Mirra*, No. 13-2083, 2016 WL 3182778, at *23–24 (D. Del. June 3, 2016) (concluding that the plaintiffs' attorney did not act in bad faith in filing suit, and explaining that "Plaintiffs reviewed documentary evidence" and conducted interviews prior to initiating the litigation).

evidence that their limited investigation was done "vexatiously, wantonly, or for oppressive reasons."[35] Instead, they conducted some investigation into the claims Allied could pursue against GSK, and verified a factual basis for the theory of liability upon which they primarily relied and which this Court and the Third Circuit validated. Although Dugan and Sadin should now be on notice that more is expected of them before filing suit, the Court will not impose sanctions under these circumstances.

### B.  Prolonging the Litigation Without Evidence to Support Allied's Claims

GSK also contends that Allied's counsel unnecessarily prolonged this litigation despite not having evidence to support their client's claims, which became clear when Allied failed to comply with CMO 1 and moved to voluntarily dismiss its claims with prejudice.

As previously noted, this Court entered CMO 1, requiring Allied to produce documents relevant to its claims. Although Allied produced some documents in response to CMO 1, its initial production was incomplete. For instance, Allied provided claims data only from 2008 to 2012, despite being required to produce data from 1999 to the present. Allied notified GSK "that it no longer has its own paper records of claims paid from 1999 to 2002, and that its PBM purged documents from 2001-2007."[36] It was not until GSK filed the motion for sanctions that Allied produced the claims data from 1999 through 2007.

Dugan and Sadin contend that the later-produced claims data and documentation support its claims, whereas GSK maintains Allied never had evidence to support its claims. Without opining on the merits of Allied's defunct case against GSK, the Court concludes that Allied did

---

[35] *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d at 189 (quoting *Chambers*, 501 U.S. at 45-46).
[36] GSK's Mem. Supp. Mot. for Sanctions [Doc. No. 96] at 11 (citation omitted).

eventually produce evidence arguably in support of its claims.[37] For example, Allied produced documents demonstrating that it paid more than $31,000 for Avandia prescriptions and that Avandia was more costly than metformin, an alternative diabetes medication. Contrary to GSK's contention that Allied never produced evidence to support its claims, Allied has pointed to the record to identify what it believes is relevant and persuasive evidence to prove its case. Based on the allegations and statements GSK has challenged, therefore, the Court cannot conclude that Allied's claims were frivolous or abusive.[38]

### C. General Conduct of the Litigation

Although the Court will deny the motion for sanctions, that should not be taken as approbation of counsel's conduct. The Court finds serious fault with how the targeted attorneys—and in particular, Mr. Dugan—handled this litigation. Mr. Dugan demonstrated a penchant for dramatic embellishment in his oral presentations before the Court that arguably amounts to more than "well-intentioned zeal."[39] For example, the Court distinctly recalls that Mr. Dugan represented on multiple occasions that he had hundreds, if not thousands, of additional third-party payor plaintiffs standing by to join a potential class.[40] Only four third-party payor

---

[37] *Compare Hawthorne v. Municipality of Norristown*, No. 15-1572, 2016 WL 1720501, at *5 (E.D. Pa. Apr. 29, 2016) (finding that an attorney acted in bad faith in continuing to pursue a civil rights action against a town and its police officers after the attorney obtained a police dash cam video that disproved his client's claims), *with Harrison v. Delguerico's Wrecking & Salvage, Inc.*, No. 13-5353, 2016 WL 1720354, at *4–5 (E.D. Pa. Apr. 29, 2016) (concluding that an attorney did not act in bad faith when keeping an opt-in plaintiff in the litigation after the plaintiff's deposition disproving his claims because most of the other plaintiffs in the suit had evidence to support their claims and the attorney withdrew the meritless claim shortly after the deposition, causing little additional work for the defendant).

[38] *See Thomas v. Shaw*, 632 F. App'x 716, 720 (3d Cir. 2015) (denying sanctions under Federal Rule of Civil Procedure 11, because "[w]hile Plaintiff's claims ultimately did not succeed, the District Court found that sanctions were not appropriate because Plaintiff's claims were not frivolous or abusive.") (internal quotation marks and citation omitted).

[39] *Grider*, 580 F.3d at 142.

[40] *See, e.g.*, Oral Argument Tr., June 27, 2011 [Doc. No. 1559], at 84 (explaining Allied's claim for "equitable relief in the form of notice to the 20,000 third party [payors] in this country who reimbursed for Avandia that they should—that GSK should notify them on the current status of Avandia.").

plaintiffs ever materialized, and two of those voluntarily dismissed their claims when the time came to produce evidence. Mr. Dugan's outrageously overblown representations wasted countless hours of court time. The Court is reluctant to let such dubious and harmful conduct slide.

The Court does not see, however, that GSK raised this as a possible ground for sanctions. GSK's argument for sanctions, it seems fair to say, has been limited to challenging those representations that were substantively damaging to GSK, and where an opposite factual finding could have benefitted GSK in opposing class certification. Because litigation of this sanctions motion has dragged on into its fourth year at this point, the Court determines that it would not now be equitable to begin the process anew by requesting supplemental briefing on this issue. The Court wishes to impress upon counsel, however, that this unacceptable bluster did not go unnoticed and is not in keeping with the high standards of advocacy this Court expects.

### IV.   CONCLUSION

After considering all of the circumstances of the TPP litigation within the Avandia MDL, although there are certainly bases for criticizing the conduct of Allied's counsel, the Court concludes that GSK has not articulated a clear legal basis for sanctioning Dugan and Sadin after being given every opportunity to do so. Because GSK has not proved by clear and convincing evidence that Allied's counsel acted in bad faith, the Court will deny the motion for sanctions. An appropriate Order follows.