IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 1871<br>No. 07-md-01871-CMR |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**TWENTY-SEVENTH REPORT AND RECOMMENDATION OF
THE SPECIAL MASTER AS TO ALLOCATION OF THE RESERVE FUNDS IN THE
COMMON BENEFIT FUND CREATED BY PTO NO. 70**

The Special Master recommends that the Court approve the order accompanying this Twenty-Seventh Report and Recommendation of the Special Master, setting forth the equitable distribution of the Common Benefit Fund reserve funds in accordance with the Court's June 10, 2020 Order (Doc. No. 5308).

### BACKGROUND

On August 26, 2009, the Court entered Pre-Trial Order No. 70 (Doc. No. 495), establishing a Common Benefit Fund to compensate and reimburse attorneys for MDL administration and common benefit work. Pursuant to PTO No. 70, the Common Benefit Fund was funded through an assessment of 7% levied on the gross monetary recovery of all Avandia claims subject to the jurisdiction of the MDL. *See* PTO No. 70, §§ 3(a), 4(b).

On February 16, 2012, the Court entered Pre-Trial Order No. 154 (Doc. No. 2131), disbanding the Plaintiffs' Steering Committee, which had been responsible over the prior four years for coordinating, overseeing, managing, and leading all pre-trial litigation in the MDL. In addition, PTO No. 154 established a Fee and Cost Allocation Committee ("Fee Committee") to "develop a plan for allocation and payment of interim and final awards of counsel fees and costs among entitled petitioners." PTO No. 154 at 2. Dianne M. Nast was appointed chairperson of the Fee Committee, with Vance R. Andrus, Bryan E. Aylstock, Thomas P. Cartmell, Stephen A. Corr, Paul R. Kiesel, Bill Robins, and Joseph J. Zonies appointed as the remaining members. *Id.*

Following a submission from the Fee Committee and a hearing in September 2012, the Court issued Pre-Trial Order No. 175 (Doc. No. 2820) on October 19, 2012, approving the Fee Committee's request of an award of 6.25% of the estimated value of the settlements subject to PTO No. 70. *See* PTO No. 175 at 23. The Order also approved an additional award of $10,050,000 from the Common Benefit Fund to be held in reserve for payment of future administrative fees and expenses. *Id.*

After the Fee Committee submitted a motion for approval of the allocation of the Common Benefit Fund (Doc. No. 2865), a number of firms involved in the MDL objected to the proposed allocation. These objections were all resolved through mediation between the individual firms and the Fee Committee, and on February 14, 2013, the Court entered an Order (Doc. No. 3089) approving the modified allocation of the Common Benefit Fund and reaffirming that a reserve of $10,050,000 should accrue

in the Fund "for payment of ongoing fees and expenses, which may be disbursed only upon further order of this Court." Feb. 14, 2013 Order at 2.

In the more than eight years following creation of the Fee Committee (which at some point in 2012 became the Plaintiffs' Advisory Committee, or PAC, made up of the same eight members), the Committee members incurred substantial expenses and worked thousands of hours on matters related to the MDL, particularly the allocation and payment of the Common Benefit Fund award and collection of assessments pursuant to PTO No. 70. As a result, the PAC moved on June 3, 2020 for disbursement of the reserve funds of $10,050,000 to the PAC members. *See* Doc. No. 5307.

On June 10, 2020, the Court entered an Order (Doc. No. 5308) approving the PAC's request to disburse the reserve funds to the members of the PAC. The Court also referred the issue of allocation of the reserve funds among the PAC members to the Special Master.

## DISCUSSION

The PAC members are most familiar with the work each member has performed over the past eight-plus years to contribute to the common benefit of all MDL claimants. The PAC members also have demonstrated their ability to work cooperatively to assign tasks and fairly determine each member's respective contribution to the work of the Fee Committee and the PAC. Thus, after conferring with the PAC, the Special Master requested that the PAC attempt to determine in the first instance an equitable allocation of the reserve funds among the PAC members and, if able to reach agreement on such

an allocation, submit to the Special Master a proposed allocation with supporting information. On July 20, 2020, the PAC submitted a proposed allocation with a detailed explanation to the Special Master.

After reviewing the PAC's submission, the Special Master finds that it represents a fair and reasonable allocation of the reserve funds and should be approved by the Court. In summary, the supporting information regarding each PAC member included the following:

**Vance Andrus** actively participated in much of the Fee Committee's and PAC's work, including leading the negotiations and implementation of multiple private lien resolution programs. Mr. Andrus was involved in negotiations with numerous law firms over common benefit fee obligations and payments, and worked on many disputes and other matters related to collection of Common Benefit Fund assessments. Mr. Andrus spent 2,234.1 hours working as a member of the Fee Committee and PAC on these and other matters and incurred $10,771.25 in expenses on behalf of the Fee Committee and PAC.[*]

**Bryan Aylstock** expended a substantial amount of effort developing procedures for and overseeing the collection of fee and expense reports for common benefit firms. Mr. Aylstock also was extensively involved in numerous motions related to third-party lien claims, collection of common benefit assessments, and other disputes in which the PAC

---

[*] The PAC members were all assisted in their work on behalf of the Fee Committee and PAC by their respective firms, and the work described in the text, as well as the hours spent and expenses incurred, includes the work of each member's firm.

4

was involved. Mr. Aylstock was extensively involved in the process that led to creation of private lien resolution programs. Mr. Aylstock spent 2,009.2 hours working as a member of the Fee Committee and PAC on these and other matters and incurred $27,052.81 in expenses on behalf of the Fee Committee and PAC.

**Thomas Cartmell** participated in all aspects of the process for proposing, mediating, modifying, and obtaining approval of the allocation of the Common Benefit Fund. He also was active in litigating disputes with many firms that resisted their assessment obligations under PTO No. 70. Mr. Cartmell spent 655.6 hours working as a member of the Fee Committee and PAC on these and other matters and incurred $22,686.66 in expenses on behalf of the Fee Committee and PAC.

**Stephen Corr** has served as Plaintiffs' Liaison Counsel throughout the eight years of the Fee Committee and PAC's existence. He also had primary responsibility for organizing the voluminous information regarding each MDL firm's time spent on common benefit tasks for purposes of determining an appropriate allocation of the Common Benefit Fund. Mr. Corr worked on other aspects of the fee-allocation litigation as well, including the submission to the court and hearing that led to approval of the distribution of the Fund and the mediations with numerous firms over the allocation of the Fund. He also was involved at both the trial and appellate levels in the disputes with many firms over their obligations under PTO No. 70. Mr. Corr spent 1,576.7 hours working as a member of the Fee Committee and PAC on these and other matters and incurred $246.38 in expenses on behalf of the Fee Committee and PAC.

**Paul Kiesel** spent a substantial amount of time on the tasks related to allocation of the Common Benefit Fund, including the initial proposed allocation and the mediations with objecting law firms over the allocation. He also was involved in many of the disputes with firms contesting their assessment obligations under PTO No. 70. Mr. Kiesel spent 863.8 hours working as a member of the Fee Committee and PAC on these and other matters and incurred $5,973.66 in expenses on behalf of the Fee Committee and PAC.

**Dianne Nast** chaired the Fee Committee and was deeply involved in all aspects of the Common Benefit Fund allocation and distribution, including the various proposals, objections, and mediations, as well as development of the process for submission and analysis of fee requests from common benefit firms. Ms. Nast has stayed directly involved in all aspects of the distribution and administration of the Common Benefit Fund over the ensuring years and was a major participant in the numerous successful efforts to defeat attempts by certain law firms to avoid their assessment obligations. Ms. Nast spent 3,473.7 hours working as a member of the Fee Committee and PAC on these and other matters and incurred $62,472.73 in expenses on behalf of the Fee Committee and PAC.

**Bill Robins** participated in all aspects of the Common Benefit Fund allocation process, worked on many of the disputes with firms resisting payment of their assessments under PTO No. 70, and was involved in the negotiations and creation of the private lien resolution programs. Mr. Robins spent 635.4 hours working as a member of the Fee Committee and PAC on these and other matters.

**Joseph Zonies** spent a great amount of time on the Fee Committee's work, including the proposal for approval of the Common Benefit Fund distribution and all aspects of the allocation process, including development of the initial allocation proposal, the mediations with objecting firms, and the ultimate approval of the allocation. Mr. Zonies was involved as either trial counsel or negotiation counsel in many of the disputes with firms objecting to payment of the assessment under PTO No. 70, and served as appellate counsel in one of the most protracted of these disputes. Mr. Zonies spent much time as well on the negotiations and mediation over private lien resolution programs. Mr. Zonies spent 1,145.1 hours working as a member of the Fee Committee and PAC on these and other matters and incurred $34,713.85 in expenses on behalf of the Fee Committee and PAC.

In an attempt to ensure the most equitable allocation of the reserve funds and in recognition of the varying tasks and projects that PAC members handled, the PAC did not propose an allocation of the reserve funds in precise proportion to the hours expended by each member. Rather, it proposed allocation amounts in two tiers, one tier for the five PAC members with the greatest number of hours expended (all over 1,000 hours) and a second tier for the three PAC members with the fewest hours (all under 1,000 hours). In this way, the PAC credited both the total amount of time spent on MDL activities by each PAC member and the subject-matter of those activities, without placing undue emphasis on either one. The Special Master finds that this was a reasonable approach to allocating the reserve fund among the PAC members.

The Special Master has carefully reviewed the information provided to him by the PAC regarding its proposed allocation of the reserve funds. In addition, the Special Master has been involved in this MDL for more than eleven years and is well aware of the contributions and commitment of each PAC member to the common benefit of the MDL. Based on the Special Master's institutional knowledge of the MDL proceedings, review of all prior filings and court orders related to the Common Benefit Fund, and consideration of the submission of the PAC regarding allocation of the reserve fund, the Special Master finds that the proposed allocation of the reserve funds is fair, equitable, reasonable, and appropriate.

**RECOMMENDATION**

The Special Master recommends that the Court enter the order accompanying this Report and Recommendation, and approve an allocation of the reserve fund of $10,050,000 as follows:

- Vance R. Andrus: $1,602,430.56, representing a fee of $1,591,659.31 and expenses of $10,771.25;

- Bryan F. Aylstock: $1,618,712.12, representing a fee of $1,591,659.31 and expenses of $27,052.81;

- Thomas P. Cartmell: $665,282.03, representing a fee of $642,595.37 and expenses of $22,686.66;

- Stephen A. Corr: $1,591,905.69, representing a fee of $1,591,659.31 and expenses of $246.38;

- Paul R. Kiesel: $648,569.03, representing a fee of $642,595.37 and expenses of $5,973.66;

- Dianne M. Nast: $1,654,132.04, representing a fee of $1,591,659.31 and expenses of $62,472.73;

- Bill Robins III: $642,595.37, representing a fee of $642,595.37 and expenses of $0; and

- Joseph J. Zonies: $1,626,373.16, representing a fee of $1,591,659.31 and expenses of $34,713.85.

        Respectfully submitted,

        /s/ Bruce P. Merenstein
        Bruce P. Merenstein, Special Master

Dated: July 29, 2020