**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **MDL NO. 1871** <br> **07-md-1871** |
| **This Document Relates To:** | |
| *J.B. Hunt Transportation Services, Inc. v. GlaxoSmithKline* | Civil Action No. 11-4013 |
| *UFCW Local 1776 and Participation Employers Health and Welfare Fund v. GlaxoSmithKline* | Civil Action No. 10-2475 |

## ORDER

The Third Party Payors ("TPPs") have moved to compel non-party Crivella Technologies Limited[1] to comply with a subpoena. The dispute was referred to Special Discovery Master Bruce Merenstein for a Report and Recommendation ("R&R"), which recommended that the Court grant the motion to compel.[2] Crivella Technologies has appealed the R&R under the relevant Pretrial Orders.[3]

### A. Background[4]

In 2008, the Plaintiffs' Steering Committee ("PSC") contracted with Crivella Technologies to "provide for an online searchable document repository and review system" to

---

[1] The Court will refer to all Crivella-related business entities (Areté Legal, Crivella West, Knowledge Kiosk Solutions Limited and Crivella Technologies Limited) as "Crivella Technologies."

[2] *See* Doc. No. 5359. All docket citations refer to the 07-md-1871 docket and use ECF pagination unless otherwise specified.

[3] *See* Doc. No. 5362; *see also* Doc. Nos. 136, 222.

[4] The Court assumes familiarity with the procedural history of the Avandia MDL, this dispute, and the Special Master's R&R.

manage the discovery materials produced by GSK in the Avandia MDL.[5] Under the contract, Crivella Technologies agreed both to provide document hosting services for the Avandia MDL materials and to analyze the materials using proprietary machine learning and natural language processing techniques. It was "anticipated that the PSC [would] utilize the litigation management systems to serve as the primary document repository and review system for all Avandia productions."[6]

In February 2012, after many of the Avandia personal injury cases had been resolved, the Court effectively disbanded the PSC and appointed Paul Kiesel as Plaintiff's Coordinating Counsel. In March 2014, Mr. Kiesel notified Crivella Technologies to "remove all user access and thereafter to deactivate this system."[7] Crivella Technologies claims that as a response to this request, it "off loaded" the Avandia MDL materials from its server. Crivella Technologies states that it sent the materials on hard drives to three PSC members who had requested copies,[8] and then some time later, the Avandia MDL materials "were deleted" from Crivella Technologies' "active servers remaining only on back up tapes," and the "backup tapes were recycled over a three-month period."[9] Around March or April 2014, the PSC-Crivella agreement was terminated.[10]

In late 2015, shortly after the Third Circuit affirmed this Court's Order denying in part GSK's motion to dismiss the TPPs' complaints, this Court consolidated the TPP actions and

---

[5] *See* Doc. No. 5359 at 2.

[6] *Id.* at 3.

[7] Crivella Ex. 3 at 4.

[8] Crivella Technologies claims to have sent the Avandia MDL materials to Paul Kiesel, Bryan Aylstock, and Joseph Zonies.

[9] Doc. No. 5345-1 at 7.

[10] *Id.*

appointed interim lead counsel and an executive committee for the TPP class. In May 2016, the TPPs entered into an agreement with Crivella Technologies to provide access to Avandia MDL materials. Crivella Technologies apparently restored the materials from the PSC system[11] and the TPPs had access until at least October 2017, when Crivella Technologies notified them that their account was "seriously past due" and threatened to suspend access.[12]

In January 2018, after the Court granted summary judgment for GSK, the TPPs emailed Crivella Technologies to discuss "what can be done to essentially mothball the documents and data," in order to "put things in hiatus for as long as necessary to resolve the appeal."[13] Mary Geever, a Crivella Technologies employee, replied that they could "discuss" the request but no evidence of further discussions is in the record. The TPP-Crivella agreement was terminated around that time.

In late 2019, the Third Circuit reversed this Court's grant of summary judgment for GSK in part. In March 2020, the TPPs contacted Crivella Technologies to restart access to the Avandia MDL database. Mary Geever responded: "[w]e do have the system for this litigation and would be happy to discuss reactivating it."[14] The TPPs asked about restarting access in a few months, and Ms. Geever responded with item points "to have everything in place and ready to

---

[11] There is some dispute over what exactly the TPPs had access to under the 2016 contract. As discussed below, the Court finds it  more likely than not that the TPPs had access to the full Avandia MDL database.

[12] Doc. No. 5345-6 at 2.

[13] Doc. No. 5364-3 at 2.

[14] Doc. No. 5345-8 at 4.

go" for "the Avandia system" when the TPPs were ready.[15] At this time, Crivella Technologies provided the TPPs an updated pricing matrix.[16]

On December 29, 2020, after a meeting discussing reinstatement of the services, Crivella Technologies sent a proposal. The proposal stated that "[t]he current size of the produced document collection and related work product is 17,836,460 pages," and noted that "[r]estoration of the data will be required."[17] The proposal stated that the "cost of data restoration . . . for this engagement will be: $48,352."[18] However, instead of the previously shared pricing matrix, the proposal included a monthly fee for "Analytic and Document Management Services" of $50,905.[19]

The TPPs rejected the proposal, stating that it was "far and away the highest quote we have ever received" for discovery management services, and requested a meeting to discuss transferring the documents.[20] Michael McNees, managing director of Crivella Technologies, responded that "it is burdensome to retrieve and ready this collection for your use. Crivella Technologies is unwilling to employ the time, resources, and proprietary information to transfer this data to another party."[21] In early February 2021, after some further discussion, Mr. McNees responded "[a]fter further review and consideration, we are no longer interested in working on

---

[15] *Id.* at 2.

[16] *See* Doc. No. 5342-4. The "Crivella Technologies Limited -- Services and Pricing Matrix" proposed a monthly rate of $2,185 per terabyte for the services the TPPs had previously obtained, plus $290 per user per month. *Id.* at 1.

[17] Doc. No. 5345-9 at 3.

[18] *Id.*

[19] *Id.*

[20] Doc. No. 5345-10 at 2.

[21] Doc. No. 5345-12 at 4.

this project with your firm and our Proposal is withdrawn."[22] Mr. McNees stated that if the TPPs wanted the "documents and data pertaining to the Avandia matter," there would be "a Restoration fee of $48,352 (assuming the entire collection) and Twenty five cents (.25) per page for documents you request be provided."[23] For all 17,836,460 pages of the Avandia MDL documents, the requested fee would exceed $4.5 million even though the documents were to be produced in electronic form.

In March 2021, the TPPs served a subpoena on Crivella Technologies for the Avandia MDL documents, requesting the "complete database held by Crivella for the Avandia Litigation, which Crivella has represented consists of 17,836,460 pages and all data associated with those pages, including, but not limited to, coding done by the [PSC] and associated attorneys in the Avandia Litigation."[24] Crivella Technologies objected, stating that "no potentially responsive materials exist" and that the subpoena "appears to seek documents that are not reasonably accessible because of undue burden and cost."[25]

The TPPs moved to compel, and Crivella Technologies objected, arguing: 1) this Court lacks jurisdiction to consider the motion; 2) production of the Avandia material would be unduly burdensome; and 3) the subpoena was not issued with good cause because the material could be obtained from members of the PSC.[26] Crivella Technologies also argued that if compelled, it should be paid $4,507,560.00 to cover the cost of production.[27] On May 18, 2021, this Court

---

[22] Doc. No. 5342-7 at 2.

[23] *Id.*

[24] Doc. No. 5342-8 at 7.

[25] Doc. No. 5342-13 at 2.

[26] *See* Doc. No. 5345 at 3–6.

[27] *Id.* at 7.

referred the motion to compel to Special Discovery Master Bruce Merenstein for an R&R, and

on June 24, 2021, the Special Master held an evidentiary hearing and heard testimony from PSC

members Bryan Aylstock, Paul Kiesel, and Joseph Zonies, and from the CEO of Crivella

Technologies, Arthur Crivella.

### B.  Special Discovery Master's Report and Recommendation

In a well-reasoned and thorough R&R, the Special Master recommended that the Court

grant the TPPs' motion to compel and require Crivella Technologies to produce all 17,836,460

pages of the Avandia MDL documents in electronic form. The R&R further recommended that

the TPPs pay Crivella Technologies $48,352 for the cost of production.[28]

In making this recommendation, the Special Master considered each of Crivella

Technologies' arguments. First, the Special Master determined that this Court possesses

jurisdiction over the TPPs' subpoena over Crivella Technologies. The Special Master then

determined that production of the documents would not be unduly burdensome, because

"Crivella Technologies possesses the Avandia MDL documents . . . , and its contention that

compliance with the TPPs' subpoena in the manner sought by the present motion would require

the disclosure of Crivella Technologies' intellectual property or other protected material is not

supported by the record."[29]

Because the Special Master found that Crivella Technologies possessed the documents,

the TPPs were not required to show good cause for the subpoena. However, because the Special

Master found that the record did not support Crivella Technologies' contention that the Avandia

MDL materials had been returned to the PSC, the TPPs had good cause for the subpoena in any

---

[28] *See* Doc. No. 5359 at 32.

[29] *See id.* at 27.

event.[30] Finally, because Crivella Technologies "consistently represented that restoration of the Avandia MDL documents would cost $48,352," the Special Master determined that $48,352 was an appropriate fee.[31]

Crivella Technologies brings two objections to the Special Master's R&R: 1) the Court does not have jurisdiction under Federal Rule of Civil Procedure 45(3)(A) to compel compliance with a subpoena directed at an out-of-district non-party; and 2) the Special Master's conclusion that Crivella Technologies possesses the Avandia MDL material is "based on speculation and conjecture" and not supported by the record. [32] The Court considers Crivella Technologies' objections *de novo*.[33] For the reasons stated below, the Court will approve the R&R.

## C. Discussion

### 1. This Court has Jurisdiction to Adjudicate the Motion to Compel

Crivella Technologies is in the Western District of Pennsylvania and argues that under the Federal Rules of Civil Procedure, this Court lacks jurisdiction to compel compliance with the TPPs' documents-only subpoena.[34] Rule 37(a)(2) provides that "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken."[35] Rule 45 provides that a subpoena to a non-party issues from the court where the underlying action is pending, and

---

[30] In finding this, the Special Master found the testimony of Aylstock, Kiesel, and Zonies credible, and the testimony by Arthur Crivella about visiting Joseph Zonies' office and discussing the Avandia MDL documents not credible. *See id.* at 22.

[31] *Id.* at 30.

[32] *See* Doc. No. 5363 at 1–3.

[33] *See* Doc. No. 136 at 3.

[34] This Court recently considered this same jurisdictional issue in *In re Generic Pharmaceutical Pricing Antitrust Litigation*, and determined that it did have jurisdiction as an MDL Transferee court. *See* Order at 1–4, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-MD-2724 (E.D. Pa. Dec. 8, 2020), ECF Doc. No. 1620.

[35] Fed. R. Civ. P. 37(a)(2).

that enforcement of the subpoena is decided in the district where compliance is required.[36] Under these Rules, and in the absence of an MDL, the Court likely would not have jurisdiction over the motion.[37]

However, because this is an MDL, 28 U.S.C. § 1407 controls. Section 1407 "empowers the transferee judge in multidistrict cases to act not only on behalf of the transferee district, but also with 'the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated proceedings.'"[38] As this Court previously explained, "[s]eparating deposition subpoenas from document subpoenas would violate the purpose of § 1407, which is to 'coordinate and consolidate pretrial proceedings, providing centralized management to ensure just and efficient conduct.'"[39]

Crivella Technologies argues that § 1407 should be narrowly interpreted to apply only to deposition subpoenas.[40] But Congress provided MDL courts with all powers necessary for "conducting pretrial depositions," which include the power to compel a party to produce documents in conjunction with a deposition.[41] Because Congress intended the powers to allow for coordinating and consolidating pretrial proceedings, it follows that greater power to compel

---

[36] *See* Fed. R. Civ. P. 45(c).

[37] *See* Fed. R. Civ. P. 45(c)(2)(A). There is some dispute over whether PSI transacts business in this District and if therefore enforcement would be within the range of the Court's jurisdiction, but the Court does not need to address that issue.

[38] *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.12 (3d Cir. 2002) (quoting 28 U.S.C. § 1407(b)).

[39] Order at 3, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-MD-2724 (E.D. Pa. Dec. 8, 2020), ECF Doc. No. 1620 (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 154 (E.D. Pa. 2009)).

[40] Doc. No. 5345 at 4 (citing *VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002)).

[41] Order at 2, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-MD-2724 (E.D. Pa. Dec. 8, 2020), ECF Doc. No. 1620 (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 154 (E.D. Pa. 2009)).

deposition testimony and documents would include the lesser power of compelling only documents.[42]

As the United States Court of Appeals for the Sixth Circuit has explained, "[b]ecause [Rules 37 and 45] could hamstring an MDL court's ability to conduct coordinated pretrial proceedings over cases that have been consolidated from far-flung foreign districts, the MDL statute empowers an MDL judge to act as a judge of the deposition or discovery district. A judge presiding over an MDL case therefore can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted."[43] The Court has jurisdiction over the TPPs' motion to compel.

      2.   *The Special Master's Conclusion that Crivella Technologies is in Possession of the Avandia MDL Documents is Supported by the Record*

Crivella Technologies argues that "the Special Master's principal conclusion—that Crivella Technologies presently is in possession of the *case materials* pertinent to this case—was

---

[42] *Cf. Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 408 (3d Cir. 2004). In *Hay Group*, the Third Circuit rejected the "power-by-implication analysis" for the Federal Arbitration Act ("FAA") and found that language conferring the power to compel depositions did not also confer the power to compel document production. *See id.* at 408. But this holding rested on a finding that the language of the FAA granted specific powers related to depositions, and this specific grant implicitly withheld broader powers. *See id.* There is not a similar specific grant of deposition powers under 28 U.S.C. § 1407.

[43] *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 468–69 (6th Cir. 2006) (citations omitted); *see also In re Clients & Former Clients of Baron & Budd, P.C.*, 478 F.3d 670, 671 (5th Cir. 2007) ("The question of law that we must decide to evaluate the mandamus petition is whether the authority conferred on the MDL court by § 1407(b) extends beyond depositions so as to embrace the instant subpoenas. . . . Based on the overwhelming weight of authority, we answer in the affirmative."); *In re Korean Air Lines Co., Ltd., Antitrust Litig.*, 642 F.3d 685, 699 (9th Cir. 2011) (The MDL court "may handle and resolve discovery motions, including those involving scope of discovery, appropriateness of protective orders or sanctions, and regulation of depositions.").

The Third Circuit has noted in dicta that an MDL court has jurisdiction to compel compliance with a subpoena *duces tecum* under § 1407(b). *See In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.12 (3d Cir. 2002).

based on speculation and conjecture."[44] Crivella Technologies further argues that "[t]he Special Master also too easily brushed aside the contemporaries [sic] documents where the preparation for the return of the case materials was planned."[45]

Crivella Technologies asserts that after the termination of the PSC contract, the Avandia MDL materials were "off loaded" and returned to Paul Kiesel, Bryan Aylstock, and Joseph Zonies. Then, some time later, the Avandia MDL materials were deleted from Crivella Technologies' servers and no back-ups were retained. As Mr. Crivella explained, "our engagement concluded. It was done. . . . when Kiesel said deactivate the system, we're done, contract's over. So these case materials, from my standpoint, are like just liability. I mean, I'm not housing documents for free."[46] Crivella Technologies claims that it currently only has possession of the analytics analysis performed, reports generated, and any data models created with the Avandia MDL materials.

The Court does not find this plausible. First, the evidence does not support Crivella Technologies' contention that the Avandia MDL materials were "off loaded" and returned. To this point, Crivella Technologies relied on emails showing preparations being made to transfer the Avandia MDL materials onto external hard drives, and the testimony of Arthur Crivella.[47] However, Crivella Technologies presented no evidence showing external hard drives containing the materials were shipped, delivered, or invoiced,[48] and attorneys Paul Kiesel, Bryan Aylstock,

---

[44] Doc. No. 5363 at 1.

[45] *Id.* at 2.

[46] Doc. No. 5364-2 at 131–32.

[47] *See* Doc. No. 5359 at 6–8.

[48] Under the contract with the PSC, upon termination of the contract, all Avandia MDL materials were to be "deliver[ed] to CUSTOMER, at CUSTOMER's cost and expense." Doc. No. 5345-2 at 15.

and Joseph Zonies each testified that they had no recollections or records that the materials were returned.[49]

On this issue, the Court finds the testimony about Joe Zonies to be particularly illuminating. Mr. Zonies was not mentioned in Mr. Crivella's affidavit, and it was at the hearing that he first informed the TPPs that Mr. Zonies had requested and received a copy of the materials. Mr. Crivella explained:

> I don't know exactly the date. . . . I remember him making the request and then I flew up there to Joe [Zonies'] office, and I met with Joe and his assistant, Shea, and they had received it and they had loaded it completely onto Relativity. And he said, "It's working great."[50]

Mr. Zonies testified in rebuttal and denied requesting or receiving the Avandia MDL material. He stated:

> By 2014, I was already settled in Avandia, and I was well on my way into the Zoloft litigation and mesh litigations and would not have been -- I would have been busy settling my Avandia cases, not doing anything with the primary Avandia documents.
>
> So to my knowledge I've never had those documents. I know I had no Relativity space. I know I paid no billing for anybody to upload anything into Relativity, nor would I pay [Relativity] by the gig for that. And we had moved on. So I don't believe any of that is true.[51]

The Court agrees with the Special Master's finding that the "[t]he former PSC members testified credibly" and that "Arthur Crivella's testimony regarding his visit to Joseph Zonies' office . . . is not credible."[52] Because of this—and because Crivella Technologies presented no

---

[49] *See* Doc. No. 5364-2 at 63–64, 32–34, 260–61

[50] *Id.* at 127. When asked if he had any documents related to this meeting, Arthur Crivella responded, "No. I don't have a document, but I personally spoke to him. I mean, I was in his office. I mean . . ." *Id.* at 127–28 (ellipses in original).

[51] *Id.* at 260–61.

[52] Doc. No. 5359 at 22.

documentary evidence to corroborating the return of the materials—the Court rejects Crivella Technologies' assertion that the Avandia MDL materials were returned in 2014.

The Court also finds that it is not plausible that the Avandia MDL materials were deleted after the PSC-Crivella contract was terminated in 2014. The TPPs signed an agreement with Crivella Technologies in 2016, after the materials were allegedly "offloaded." During his testimony, Mr. Crivella claimed that the TPPs were mainly using the system to view the Crivella Technologies-generated analytics, analysis, and reports,[53] but later appeared to agree that the Avandia MDL materials were "probably" there.[54] Mr. Crivella also testified that he "never actually saw" the system used by the TPPs.[55]

Mr. Crivella's suggestion that the TPPs only had access to the analytics does not comport with the pricing information presented, which shows that the TPPs were paying a monthly fee consistent with the storage of the full materials.[56] More importantly, on June 7, 2016, the Court issued Amended Case Management Order No. 1, which noted that the TPPs "have access to all documents produced by GSK in MDL 1871 and to the transcripts of 62 depositions of former or current employees of GSK relating to Avandia, Avandamet, and Avandaryl (collectively "Avandia")."[57] The TPPs would not have made such a representation to the Court if it were not accurate.

Finally, the Court does not find plausible that the Avandia MDL materials were deleted after 2017. At the hearing, Mr. Crivella testified that the "latest date that [the deletion] could

---

[53] Doc. No. 5364-2 at 100, 114–15.

[54] *Id.* at 99, 117

[55] *Id.* at 114.

[56] *See* Doc. No. 5359 at 23.

[57] Doc. No. 4881 at 1.

have occurred" was in 2018 when Crivella Technologies upgraded its servers.[58] But from March 2020 to January 2021, Crivella Technologies discussed with the TPPs the possibility of reactivating the Avandia MDL database. From the discussions, it is clear that Crivella Technologies contemplated reactivating the system and making available all 17,836,460 pages of documents, and throughout these discussions, both parties acted as if Crivella Technologies still possessed the materials.

Mr. Crivella suggested that this was because his employees, Mary Geever and Michael McNees, did not know the difference between the Avandia MDL materials and the data analytics, because Ms. Geever is "not a technical person" and Mr. McNees "is strictly a salesperson."[59] But given the specificity of the proposals and the extensive discussions that occurred, the Court finds it unlikely that the negotiations would have proceeded for over a year if the Avandia MDL materials had been permanently deleted. Moreover, Crivella Technologies' argument that it only has possession of the analytics and analysis is contradicted by Mr. Crivella's testimony that "whatever" the TPPs had access to in 2016 and 2017, Crivella Technologies "can probably get it back to that same place."[60]

The Court overrules Crivella Technologies' objections and approves and adopts the R&R. The Court will grant the TPPs' motion to compel.

---

[58] Doc. No. 5364-2 at 97.

[59] *Id.* at 237–47.

[60] *Id.* at 241–42; *see also id.* at 150–153 (similar testimony).

**AND NOW,** this 10th day of September 2021, upon consideration of the Third Party Payors' Motion to Compel Crivella Technologies Limited to Comply with Subpoena [Doc. No. 5342] and the responses and replies thereto; Special Discovery Master Bruce Merenstein's Report and Recommendation [Doc. No. 5359]; and Crivella Technologies Limited's Motion Appealing the Report and Recommendation [Doc. No. 5362] and the responses and replies thereto; and for the reasons stated above, it is hereby **ORDERED** that:

1. Crivella Technologies' objections to the Report and Recommendation are **OVERRULED**, and Crivella Technologies' Motion Appealing the Report and Recommendation [Doc. No. 5362] is **DENIED**.

2. Special Discovery Master Bruce Merenstein's Report and Recommendation [Doc. No. 5359] is **APPROVED and ADOPTED**.

3. The Third Party Payors' Motion to Compel Crivella Technologies to Comply with Subpoena [Doc. No. 5342] is **GRANTED**.

4. Crivella Technologies shall produce to the Third Party Payors the 17,836,460 pages of documents previously contained in Crivella Technologies' document repository and any data associated with those documents, and the Third Party Payors shall pay Crivella Technologies $48,352 for the production of those documents.

It is so **ORDERED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**

14