# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| : | |
| IN RE: AVANDIA MARKETING, SALES PRACTICES : | MDL No. 1871 |
| AND PRODUCTS LIABILITY LITIGATION : | |
| : | No. 07-MD-1871 |
| : | |
| : | Hon. Cynthia M. Rufe |
| This Document Relates To: : | |
| : | |
| ALL THIRD PARTY PAYOR ACTIONS : | |
| : | |

---

## THE SPECIAL DISCOVERY MASTER'S REPORT AND RECOMMENDATION AS TO GSK'S RE-PRODUCTION IN UNREDACTED FORM OF DOCUMENTS PREVIOUSLY PRODUCED IN REDACTED FORM

---

The Special Discovery Master submits this Report and Recommendation pursuant to Pre-trial Order No. 8 (Doc. No. 136), Pre-trial Order No. 28 (Doc. No. 222), and Pre-trial Order No. 147 (Doc. No. 1935), and recommends that the request of the third party payor plaintiffs ("TPPs") that defendant GSK be required to re-produce in unredacted form *all* previously produced documents with "trade secret" redactions be denied. The Special Discovery Master further recommends that the TPPs' alternative request that it be permitted to take discovery and develop a factual record regarding GSK's possession of original unredacted images of previously produced documents with "trade secret" redactions be denied. Finally, the Special Discovery Master recommends that GSK be required to re-produce in unredacted form all previously produced documents with relevant, responsive "trade secret" redactions for which GSK *does possess* original unredacted images.

## BACKGROUND

The Avandia MDL was formed by the Judicial Panel on Multidistrict Litigation in October 2007. Although the bulk of the claims in the MDL's earliest years were personal injury claims brought by individuals allegedly harmed from taking the diabetes drug Avandia, a number of TPP actions were filed in 2009, 2010, and 2011, alleging that GSK misrepresented or concealed Avandia's risks. On April 9, 2008, the Court issued Pre-trial Order No. 1 (Doc. No. 108), appointing fourteen plaintiffs' counsel to the Plaintiffs Steering Committee ("PSC"). Over roughly the next three years, the PSC and GSK engaged in extensive discovery during which GSK produced more than 17 million pages of documents ("MDL Documents").

In responding to the PSC's discovery requests during this period, GSK produced certain relevant, responsive documents with redactions of information GSK deemed not relevant or responsive. These redactions fell into a number of categories, with some of the most frequent ones being "Products and/or substances other than Avandia," "Outside the United States," "Trade secret," "Non-approved Uses and/or Dosages," and "Personal identifying information." GSK prepared and served on the PSC more than 50 redaction logs listing the documents that included these redactions, along with the locations (within each document) and reason (by category) for the redactions. The PSC challenged some of GSK's redactions, leading to discussions between the parties and in some cases the involvement of Special Discovery Master Jerome J. Shestack. Eventually, these disputes were resolved and GSK re-produced a number of the redacted documents with fewer or no redactions.

Following the resolution of most of the personal injury cases, the Court entered Pre-trial Order No. 154 (Doc. No. 2131) on February 16, 2012, effectively disbanding the PSC. Over the next eight years, very little discovery occurred in the TPP cases while the Court and the Third Circuit ruled on GSK's motion to dismiss and then its motion for summary judgment. In late 2019, the Third Circuit reversed in part and vacated in part the Court's entry of summary judgment for GSK. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 945 F.3d 749 (3d Cir. 2019).

After the TPPs' cases were remanded to this Court for further proceedings, the TPPs attempted to obtain the MDL Documents from the PSC's and TPPs' former document vendor. *See generally* Sept. 10, 2021 Order re TPPs' Motion to Compel (Doc. No. 5374). Following litigation with the document vendor and then negotiations with GSK, the TPPs eventually obtained the MDL Documents from GSK. *See* Oct. 26, 2021 Stipulation and Order (Doc. No. 5384); Jan. 28, 2022 Special Discovery Master Report (Doc. No. 5390).

A few months after the TPPs obtained the MDL Documents from GSK, they brought to the Special Discovery Master's attention a dispute with GSK over the redactions to the MDL Documents. In an April 29, 2022 letter, the TPPs requested that GSK be compelled to re-produce in unredacted form MDL Documents in which information relevant to the TPPs' claims had been redacted. More specifically, the TPPs requested that GSK be required to either (1) review and re-assess each redacted document on a document-by-document basis and re-produce without redactions those with information relevant to the TPPs' claims, or (2) re-produce all previously redacted

documents without redactions and allow for a clawback of selected documents after production. GSK opposed the TPPs' request, arguing primarily that the TPPs had not shown that the redacted information was both relevant to the TPPs' claims and not otherwise produced in the MDL.

The parties held a conference with the Special Discovery Master to discuss this dispute and then agreed that the Special Discovery Master would conduct an *in camera* review of a sample of the redacted MDL Documents in unredacted form before making a recommendation for resolution of the dispute. At the Special Discovery Master's request, the TPPs identified 35 redacted documents for *in camera* review, and the Special Discovery Master identified another 38 documents for review.

During this process, GSK disclosed that its document vendor no longer had original unredacted images of a number of the MDL Documents. Thus, GSK was able to provide the Special Discovery Master with unredacted versions of only 26 of the documents selected by the Special Discovery Master and 17 documents selected by the TPPs. The Special Discovery Master reviewed the redacted and unredacted versions of these 43 documents, as well as the redacted versions of approximately 50 additional documents. For all of these documents, the Special Discovery Master had access to the redaction logs that GSK had served on the PSC when producing the MDL Documents.

On June 22, 2022, the Special Discovery Master provided the parties with an overview of findings and conclusions from the *in camera* review. Based on that review, the Special Discovery Master found that GSK's redactions could be divided into four categories: "Trade secret" redactions; redactions of information regarding GSK

products completely unrelated to Avandia; redactions of information regarding Avandia formulations not at issue in the MDL; and all other redactions. The Special Discovery Master concluded that it was highly unlikely that more than a *de minimis* number of the redactions in the last three categories would contain information relevant to the TPPs' cases or responsive to their requests for production of documents. Those categories of redactions are not at issue in this Report & Recommendation.

The only category of redactions remaining in dispute is the "trade secret" category. Despite its shorthand title, this category actually encompasses a broader set of documents than those traditionally considered trade secrets. This information consists largely of cost, pricing, financial, budget, profit, and market share information. Much of the information in this category, though not all of it, is arguably relevant to the TPPs' claims.

In light of the Special Discovery Master's findings and conclusions, the parties held further discussions with the Special Discovery Master and, at the Special Discovery Master's request, on July 13, 2022, GSK made a proposal for addressing the redactions of arguably relevant information in the MDL Documents. GSK indicated that it had identified 13,104 of the MDL Documents with "trade secret" redactions that were responsive to the TPPs' discovery requests, and that GSK's document vendor possessed original unredacted images for 5,456 (approximately 40%) of these documents. GSK proposed to re-produce these 5,456 documents with the relevant and responsive "trade secret" redactions removed.

GSK contended that it would be unreasonably burdensome and expensive to re-produce in unredacted form the remaining 7,648 documents at issue because GSK would have to locate the unredacted images in original custodial document collections. GSK argued that this process would take months and cost a substantial amount, which was unwarranted because much of the redacted information in these documents was produced to the TPPs in other MDL Documents and in documents GSK recently produced to the TPPs from 27 agreed-upon custodial files in response to the TPPs' requests for production of documents.

The TPPs objected to GSK's proposed resolution, arguing in a July 21, 2022 letter and during a conference with the Special Discovery Master that same day that GSK was at fault for not maintaining original unredacted images of all of the MDL Documents. The TPPs argued that, if GSK was unable to produced unredacted versions of the relevant and responsive "trade secret" documents, GSK should be subject to an adverse-inference jury instruction at trial or monetary sanctions. At a minimum, the TPPs contended, they were entitled to discovery from GSK's document vendor regarding the unavailability of the 7,648 documents at issue.

On July 27, 2022, the Special Discovery Master recommended that GSK be required to re-produce in unredacted form those documents with "trade secret" redactions for which its document vendor possessed original unredacted images but it not be required to re-produce similar documents for which the vendor did not possess such images. The parties were given until August 2 to consider and respond to the recommendation. GSK accepted this recommendation but the TPPs rejected it.

The Special Discovery Master now submits this Report & Recommendation explaining the basis for the recommendation that GSK be required to re-produce only those documents with "trade secret" redactions for which GSK's document vendor has original unredacted images.

## ANALYSIS

The foundational basis for the Special Discovery Master's recommendation is that GSK and the PSC exerted much effort discussing and resolving disputes over GSK's non-privilege redactions roughly 10-15 years ago. Much of the TPPs' argument fails to take into account that, more than a decade ago, the documents at issue were produced with redactions, the PSC objected to some of the redactions, and the parties eventually agreed on the scope and specificity of redactions, which included GSK's re-production of many documents with fewer or no redactions. GSK reasonably concluded that there would be no need to revisit those discussions or agreements more than a decade later. The TPPs are effectively seeking to reopen and revisit these issues that were extensively litigated and resolved many years ago.

Thus, while the TPPs may be correct that the weight of federal-court authority does not permit redactions of non-privileged information absent the consent of the opposing party, this argument fails to take into account that the redactions at issue here *were* ultimately agreed to by the PSC. As a result, the MDL Documents at issue reflect agreements of the parties (at the time of the production) regarding the appropriateness of these redactions.

On the other hand, GSK repeatedly has relied on the existence of its prior production of the MDL Documents as an argument for circumscribing the TPPs' discovery on the issues specific to their cases. GSK has argued that the prior MDL discovery included much information in the MDL Documents and deposition testimony on the marketing issues specific to the TPPs' claims. GSK cannot point to the prior discovery, including the MDL Documents, as a basis to limit the TPPs' current discovery if those MDL Documents redacted a substantial amount of information relevant to the TPPs' claims.

Thus, the Special Discovery Master concluded that GSK should be required to re-produce in unredacted form those documents containing "trade secret" redactions for which its document vendor possessed original unredacted images. Requiring GSK to re-produce these documents, but not those documents for which its document vendor does not possess original unredacted images, is consistent with Rule 26(b) of the Federal Rules of Civil Procedure. It is "proportional to the needs of the case," and will avoid "unreasonably cumulative or duplicative" discovery. FED. R. CIV. P. 26(b)(1), (2)(C)(i).

In addition to the foundational grounds discussed above, this conclusion is based on a number of other factors. *First*, the number of documents at issue is relatively small, given GSK's voluminous production of the MDL Documents—again, more than 17 million pages of documents. Under this recommendation, fewer than 8,000 documents with arguably relevant redactions will not be re-produced.

*Second*, based on the Special Discovery Master's *in camera* review of redacted documents, there is much overlap in the redacted information in the roughly 13,000

documents with "trade secret" redactions. Even aside from duplicative or near-identical *documents*, some of the redacted *information* in distinct documents is essentially identical. As a result, the amount of redacted information contained in the 7,648 documents that would not be re-produced under this recommendation would be even less than might first appear, as some of this information will be contained in the 5,456 redacted documents that will be re-produced in unredacted form.

*Third*, GSK has recently produced documents specifically responsive to the TPPs' requests for production of documents, including documents with the type of financial and market share information that were part of the "trade secret" redactions of the MDL Documents. These more recent productions will not include any "trade secret" redactions and should include some of the same information in the redacted documents that would not be re-produced under this recommendation. Again, this will minimize even further, if not eliminate entirely, the relevant information that the TPPs will not obtain due to the "trade secret" redactions in documents that are not re-produced.

*Fourth*, the TPPs' arguments rely in part on claims of spoliation or other wrongdoing by GSK, but such contentions are unsupported. Spoliation occurs where, among other things, "there has been actual suppression or withholding of evidence [and] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012). As noted above, it was not reasonably foreseeable that GSK would need to preserve the original, unredacted images of documents that were produced—and for which redaction issues were fully litigated and resolved—more than a decade ago. There also is no indication that GSK has intentionally suppressed the 7,648

documents for which its vendor does not possess original, unredacted images. *See id.* at 79 ("a finding of bad faith is pivotal to a spoliation determination"). Nor does the record here support the TPPs' alternative request for discovery of GSK's document vendor. *See, e.g., Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*, No. 16-2499, 2018 U.S. Dist. LEXIS 21810, at *6-*7 (E.D. Pa. Feb. 7, 2018) ("Without any showing of bad faith or unlawful withholding of documents, requiring such discovery on discovery would unreasonably put the shoe on the other foot and require a producing party to go to herculean and costly lengths." (citation, internal quotation, and alterations omitted)).

*Finally*, the TPPs have not shown at this time that, to the extent—if any—that the redacted information in the documents that would not be re-produced under this recommendation is not contained in the other documents produced by GSK, such information is critical to their case. In response to their own requests for production, as well as in the MDL Documents re-produced without "trade secret" redactions, the TPPs should receive cost, pricing, financial, budget, profit, and market share information that is relevant to their claims. In the unlikely event that, after reviewing these documents and the other documents produced by GSK, the TPPs can show that information essential to their claims has not been produced and likely is contained in the redacted documents that were not re-produced, nothing precludes them from raising that issue at that time. *Cf.* Fed. R. Civ. P. 56(d) (providing that party opposing summary judgment may specify why "it cannot present *facts essential* to justify its opposition" (emphasis added)).

## RECOMMENDATION

The Special Discovery Master recommends that GSK be required to re-produce without "trade secret" redactions the 5,456 documents containing relevant, responsive "trade secret" information for which GSK's document vendor possesses original unredacted images, and that GSK not be required to re-produce the 7,648 documents containing relevant, responsive "trade secret" information for which GSK's document vendor does not possess original unredacted images.

Respectfully submitted,

/s/ Bruce P. Merenstein
Bruce P. Merenstein, Special Discovery Master
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2249

Dated: August 4, 2022